# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

JANE DOE,
**Plaintiff-Appellant,**

v.

CENK SIDAR,
**Defendant-Appellee.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

---

### OPENING BRIEF OF PLAINTIFF-APPELLANT – JANE DOE

---

Walter E. Steimel, Jr.
STEIMEL COUNSELORS LAW
  GROUP PLLC
Suite 400
1455 Pennsylvania Ave, NW
Washington, DC   20004
(202) 271-9258  PH
wes@sclgrp.com

Thomas F. Urban, II
FLETCHER, HEALD
  & HILDRETH, PLC
Suite 1100
1300 North 17th Street
Arlington, VA   22209
(703) 861-5235  PH
urban@fhhlaw.com

**Counsel for Plaintiff-Appellant – Jane Doe**

# **DISCLOSURE STATEMENT**

No Disclosure Statement is required as this action is between private parties.

Fed. R. App. Proc. 26.1.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiff/Appellant Jane Doe ("Jane Doe") respectfully requests oral argument considering the importance and novelty of the issues presented. The principle that a victim of rape, a severe sexual crime[1], must forfeit her anonymity and proceed publicly against Defendant/Appellee Cenk Sidar ("Cenk Sidar") who has been adjudicated to have raped Jane Doe, further penalizes an innocent victim of rape with the threat of additional personal and economic harm and injury. This appeal raises important questions of the rights of victims of sexual crimes to proceed anonymously when the liability of the rapist is settled, and affirming the District Court's decision would undercut government policies encouraging the victims of sexual crimes to come forward, especially when doing so may expose them to significant personal, economic, and physical harm.

This appeal also raises the question – when does an innocent victim of a sexual crime have a right to obtain the DNA from her adjudicated rapist to demonstrate that the rapist's failure to use a condom or other protection during the commission of a rape constitutes willful and wanton disregard for the life, health, emotional stability, and safety of a rape victim leading to an independent claim for damages. Jane Doe raises important public policy considerations balancing the

---

[1] "Short of homicide, [rape] is the ultimate violation of self." *Coker v. Georgia*, 433 U.S. 584, 597 (1977).

rights of rape victims against the rights of rapists and the treatment of rape victims

in the court system at large.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................1

STATUTES.............................................................................................4

STATEMENT OF ISSUES FOR REVIEW ...........................................4

STATEMENT OF THE CASE..................................................................5

I.   General Questions Presented...........................................................5

II.  Factual Background.........................................................................6

III. Procedural History..........................................................................8

    **A.**  Filing History.........................................................................8

    **B.**  Anonymity..............................................................................9

    **C.**  DNA......................................................................................10

STANDARD OF REVIEW ......................................................................15

    **A.**  Issue 1; Removing Pseudonym Protection.............................15

    **B.**  Issue 2; Jane Doe's Right to Recover Damages Versus Cenk Sidar's Waived Privacy Rights.................................................15

SUMMARY OF ARGUMENT .................................................................15

    **A.**  Issue 1; Jane Doe's Privacy Rights versus General Court Policy............16

    **B.**  Issue 2; Jane Doe's Right to Recover Damages Versus Cenk Sidar's Waived Privacy Rights in his DNA. ...........................17

ARGUMENT ..........................................................................................18

I.   Issue 1; Removing Pseudonym Protection.....................................18

    **A.**  Abuse of Discretion; Erroneous Factual Premises; Facts Not in the Record.........................................................................19

    **B.**  Abuse of Discretion; Failure to Consider Judicially Recognized Factors. .............................................................20

    **C.**  Abuse of Discretion; Deciding Instead as if by General Rule, or Even Arbitrarily........................................................24

    **D.**  Abuse of Discretion, Failure or Refusal, Either Express or Implicit, to Exercise Discretion.............................................25

    **E.**  Abuse of Discretion; Explicit Refusal to Exercise Discretion. ................25

**F.** Abuse of Discretion; No Reasonable or Articulated Basis to Reverse Ruling. .........................................................................26

**G.** Abuse of Discretion; Arbitrary Punishment of Jane Doe After Adjudicating Cenk Sidar as Her Rapist....................................27

II. Issue 2; DNA Sample Required for Punitive Damages to Show Reckless Disregard in Raping Someone Without a Condom. ........28

**A.** Abuse of Discretion, Misinterpretation of Valid Order. ..........28

**B.** Abuse of Discretion, Finding Contrary to Law.......................29

**C.** Abuse of Discretion; Failure to Adhere to Federal Rules. ......29

**D.** Abuse of Discretion, Ruling Contrary to Applicable Case Law.............29

**E.** Public Interest. .........................................................................30

CONCLUSION ...............................................................................31

ADDENDUM: STATUTES ..............................................................36

# TABLE OF AUTHORITIES

**RELIED UPON CASES**

*Ashby v. Mortimer*, 329 F.R.D. 650 (D. Idaho 2019)................................32
*Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019)...................................16
*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)....................1
*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014)............................................24
*Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016) .........................................................29
*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) .......................................1
*Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105 (4th Cir. 2013) ...........................21


**OTHER CASES**

*Appellant B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) ...........................................2
*Coker v. Georgia*, 433 U.S. 584 (1977)............................................ ii
*D'Angelo v. Potter,* 224 F.R.D. 300, 302-304 (D. Mass. 2004)...........................32
*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) ....................................24, 25
*Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869 (7th Cir. 1997) .........................................................25
*Doe v. City of Chicago*,360 F.3d 667 (7th Cir.2004) ...............................25
*Doe v. Coll. of N.J.*, 997 F.3d 489 (3d Cir. 2021) .......................................2
*Doe v. De Amigos, LLC,* No. 11-cv-1755 (D.D.C. Apr. 30, 2012) ........................24
*Doe v. Evans*, 202 F.R.D. 173 (E.D.Pa.2001) .........................................25
*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) .........................................2
*Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022)....................................1
*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981)..........................................3
*Doe v. Vill. of Deerfield*, 819 F.3d 372 (7th Cir. 2016).................................2
*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) .........................................................2
*In re Sealed Case*, 931 F.3d 92 (D.C. Cir. 2019).......................................2
*Indus. Servs. Grp. v. Dobson*, No. 22-1465 (4th Cir. May 16, 2023).......................4
*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir. 1995).........................................................16
*McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002) .........................................................32
*Raiser v. Brigham Young Univ.*, 127 F. App'x 409 (10th Cir. 2005) ........................2
*Ray v. Park*, 2:21-cv-04001-NKL (W.D. Mo. Sep. 24, 2021)................................31

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 4:18-CV-06037-DGK (W.D. Mo. July 22, 2019) ....................................................... 31

*Rousseau v. Coates*, No. 2:18-cv-205 (D. Vt. July 17, 2019) ................................. 32

*Stillman v. Wal-Mart Stores East I, L.P.*, No. 4:19-CV-00222 (W.D. Mo. Dec. 3, 2019) ............................................................................................... 31

*United States v. Pilcher*, 950 F.3d 39 (2d Cir. 2020) ............................................... 2

## STATUTES

28 U.S.C. § 1292 ....................................................................................................... 1

28 U.S.C. § 1332 ....................................................................................................... 1

Va. Code Section 19.2-11.01, A., A.1. and A.2 ....................................................... 25

# JURISDICTIONAL STATEMENT

This matter consolidates two appeals – 23-1151 and 23-1177. This Court has jurisdiction over both interlocutory appeals from the District Court under 28 U.S.C. § 1292, and the doctrines discussed for each below. The District Court had jurisdiction under 28 U.S.C. § 1332.

**Issue 1**. Appeal Number 23-1177 challenges the District Court's order reversing two prior orders and lifting Jane Doe's anonymity. This Court has jurisdiction over Issue 1 under the Collateral Order Doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). Application of the collateral order doctrine to this interlocutory appeal is clear. In the Fourth Circuit an order lifting anonymity is appealable under the Collateral Order Doctrine (*James v. Jacobson*, 6 F.3d 233, 236-38 (4th Cir. 1993)). Virtually every circuit in the United States has arrived at the same conclusion. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 65-66 (1st Cir. 2022); *Doe v. Coll. of N.J.*, 997 F.3d 489, 494 (3d Cir. 2021); *United States v. Pilcher*, 950 F.3d 39, 41 (2d Cir. 2020) (*per curiam*); *In re Sealed Case*, 931 F.3d 92, 95-96 (D.C. Cir. 2019); *Doe v. Vill. of Deerfield*, 819 F.3d 372, 375-76 (7th Cir. 2016); *Appellant B v. Francis*, 631 F.3d 1310, 1314-15 (11th Cir. 2011); *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 410 (10th Cir. 2005); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1066-67 (9th Cir. 2000); *Doe v. Frank*, 951 F.2d 320, 322 & n.1 (11th Cir. 1992);

*Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. 1981). Lifting of Jane Doe's anonymity is incurable on appeal; once publicly identified she can never regain anonymity. Anonymity is a collateral issue in the case. Cenk Sidar knows who he raped and who brought this action. Destroying anonymity invokes the essence of the Collateral Order Doctrine – a ruling determinatively and permanently establishing collateral rights incurable and irreversible on appeal.

**Issue 2**.      Appeal Number 23-1151, the first appeal filed by Jane Doe, challenges the District Court's order permitting Cenk Sidar's continued violation of an outstanding court order, finding that Jane Doe does not need Cenk Sidar's DNA to prove willful, wanton, and reckless disregard for her rights and the extent of her damages, and permitting Cenk Sidar to blatantly disregard an order of a U.S. Court to provide his DNA.

This Court has jurisdiction over Issue 2 under the pendent appellate jurisdiction doctrine. Issues 1 and 2 are inextricably linked and the review of each is necessary to ensure a meaningful review of the other. Both issues involve (i) Cenk Sidar's waiver of his rights (laches in raising anonymity and waiver of privacy through prior voluntary provision of DNA); (ii) Jane Doe's rights in litigation against her adjudicated rapist Cenk Sidar; (iii) balancing Jane Doe's privacy and judicial rights against the waived rights of her adjudicated rapist and a general court policy of proceeding openness; (iv) the District Court's judicial

finding that Cenk Sidar raped Jane Doe; (v) the District Court's abuse of discretion in ignoring prior orders, relying on facts not on record, refusing to address critical issues, and misapplying law; and (vi) this Court's inability to cure either ruling after trial upon appeal. Both rulings by the District Court embolden assailants to weaponize the judicial system against victims, and discourage victims from defending their rights, as is evidenced by the history of this case and Jane Doe's now almost three-year legal saga.[2] Addressing these related issues at this time will lessen Jane Doe's already substantial financial burden in pursuing this cause. These issues are exorbitantly intertwined, and review of Issue 2 is necessary to ensure a meaningful review of Issue 1. *Indus. Servs. Grp. v. Dobson*, No. 22-1465, at *15-16 (4th Cir. May 16, 2023).

This Court also has jurisdiction over Issue 2 under the Collateral Order Doctrine. Blocking Jane Doe's ability to obtain and test Cenk Sidar's DNA sample is tantamount to a summary judgment against Jane Doe on this element of damages, constituting a final appealable ruling on this issue. Furthermore, the

---

[2] The problem of assailant weaponization of the judicial system against sexual assault victims has been judicially recognized in various contexts. *See, e.g.*, *Sagaille v. Carrega*, 194 A.D.3d 92, 94, 143 N.Y.S.3d 36, 38 (N.Y. App. Div. 2021), *leave to appeal denied,* 37 N.Y.3d 909, 174 N.E.3d 710 (2021) (" most victims cannot afford years of litigation, nor do they wish to have their personal information disclosed through invasive discovery or to relive their personal trauma through litigation, including depositions, filings, and testimony in court.") *Id.* at 194 A.D.3d 94 (*footnote omitted*).

DNA evidence held by the London Met Police will not be available forever. Several years have passed (partially due to Covid) since Jane Doe's rape kit was collected and examined, with the kit finding male sperm DNA in Jane Doe's high vaginal swab exam. There is a likelihood that once this case is concluded in the District Court and winds through the appeals process the DNA sample and test results in London will be unavailable for examination, permanently destroying Jane Doe's right to demonstrate that Cenk Sidar did not use a condom or other protection when he raped her. The issue raised by Jane Doe will determine the rights of the parties to Cenk Sidar's DNA and Jane Doe's examination of the sample. It will determine whether an adjudged rapist, acting in bad faith disregarding court orders and disrespecting our judicial system, will be permitted to further ignore legal orders from a U.S. District Court.

## STATUTES

### 28 U.S.C. § 1292

### 28 U.S.C. § 1332

Va. Code Section 19.2-11.01, A., A.1. and A.2

## STATEMENT OF ISSUES FOR REVIEW

**Issue 1**.      Does an adult female rape victim have a right to proceed under a pseudonym? Once a Court Order determines that the defendant is liable for the

rape is the victim entitles to continued protection of her identity? Does proceeding anonymously for over three years ratify the right to proceed under a pseudonym?

**Issue 2**.     Does an adult female rape victim have a right to obtain a DNA buccal swab to match the DNA against that collected in a rape kit, for the purposes of the damages and punitive damages phases of a civil suit? Does a defendant's waiver of his privacy rights by voluntarily providing a DNA sample to police diminish any privacy rights he might otherwise have? May a rapist liable under a default judgment for bad faith violation of Court orders be rewarded with a refusal to provide DNA under a valid Court Order, thereby defeating a damage claim?

## STATEMENT OF THE CASE

## I.     General Questions Presented.

This appeal involves balancing tests. In Issue 1 it balances (i) innocent victim Jane Doe's privacy rights to maintain her anonymity in the face of personal, business, and safety risks cited in the record versus (ii) a general court policy of proceeding openness. It balances (i) adjudged rapist Cenk Sidar's few residual fairness rights versus (b) Cenk Sidar's failure to object to anonymity for over two years in the prior case in Fairfax County Circuit Court. In Issue 2 it balances (i) innocent victim Jane Doe's right to seek damages and justice against her adjudicated rapist Cenk Sidar versus (ii) adjudicated rapist Cenk Sidar's privacy rights which he waived when he previously voluntarily provided a DNA sample to

the London police. These balancing tests must be viewed considering Cenk Sidar's bad faith non-compliance with an order of the Court and the need of Jane Doe for this evidence as evidence for damages and punitive damages.

## II. Factual Background.

Cenk Sidar, married with children, raped Jane Doe in September 2017 (as Cenk Sidar admitted by voluntarily trading a default judgment on liability for noncompliance with a Court order to produce himself for DNA sample collection). Jane Doe and Cenk Sidar knew each other as alumni of Johns Hopkins SAIS program ten years prior to the rape. JA025, 308. Jane Doe was in London for a defense show and extended her stay to attend a small gathering of Johns Hopkins SAIS alums and to attend a dinner Cenk Sidar hosted for Cenk Sidar's company. JA025-26.

Cenk Sidar raped Jane Doe in the early morning of September 17, 2017, while she was sleeping in an Air BnB apartment in London, England. JA027-28. While Jane Doe slept, Cenk Sidar pulled Jane Doe's pajama bottoms to the side and entered her vagina with his unprotected penis. [3] Jane Doe woke up, fought off Cenk Sidar, and immediately dressed and ran out of the apartment to a rape clinic – The Havens. JA114, 154. The Havens collected a forensic rape kit and took DNA

---

[3] Jane Doe did not consent to physical activity with Cenk Sidar, she knew he was married with two children and had no romantic interest in him. JA027.

samples. *Id*. Jane Doe then proceeded to the Met Police to report the rape. JA114. A forensic examination of the rape kit collected by The Havens found male sperm DNA in Jane Doe's high vaginal exam. JA509-10, 512.

Jane Doe was interviewed by the Met Police, and she gave the Met Police her telephone and provided Cenk Sidar's communications to the London Met Police. JA114. The Met Police interviewed Cenk Sidar, and he *voluntarily provided* a DNA buccal swab to the Met Police. JA022, 115, 122, 155, 168, 308. The Met Police accidentally lost Cenk Sidar's DNA buccal swab prior to testing. JA115, 155, 168. When the London Met Police contacted Cenk Sidar and requested a replacement sample, Cenk Sidar refused to return to London to permit the Met Police to collect a replacement sample. JA618, 624, 787.

Cenk Sidar has never accepted responsibility for his actions. To the contrary, Cenk Sidar attempted to make himself the victim. Cenk Sidar badgered Jane Doe with text messages and phone calls, admitting he raped her but attempting to coerce her silence, until she blocked him communications. JA028, 29, 42-56, 114, 119, 122. Cenk Sidar texted Jane Doe after he raped her admitting that "I basically acted like an animal" and "I am luck [sic] this happened with you." JA028, 53-54, 255, 862.

Cenk Sidar has worked tirelessly to delay justice to Jane Doe, making this case as expensive and painful for Jane Doe as possible, attempting to publicly

identify Jane Doe and repeatedly refusing to provide a DNA sample and other legitimate discovery responses to Jane Doe. During the initial case in Fairfax County Circuit Court Cenk Sidar challenged jurisdiction in the Commonwealth even though he had lived there for years, domiciled his solely owned LLC in Fairfax County, leased expensive BMWs from Fairfax BMW, and engaged in extensive other contacts in the Commonwealth. Cenk Sidar was sanctioned with almost $50,000 in attorney's fees for his frivolous and baseless challenge to Virginia jurisdiction. JA024, 38-40, 303.

Although he never challenged Jane Doe's anonymity in Fairfax County or when Jane Doe non-suited, he began a campaign to publicly identify Jane Doe in federal court. The District Court initially entered two orders granting her anonymity, but after Cenk Sidar was adjudged to have raped Jane Doe, Cenk Sidar renewed his original challenge, making the same arguments he originally made. JA848-50. Oddly, and contrary to the record in the case, the District Court granted Cenk Sidar's second motion to remove her anonymity, leading to this appeal. JA920-23.

## III. Procedural History.

### A. Filing History.

Jane Doe initially filed suit in Fairfax County Circuit Court in September 2019, under a pseudonym, for assault, battery, intentional infliction of emotional

distress, and punitive damages. JA021-56. Cenk Sidar never challenged or complained of the pseudonym designation in proceedings in Fairfax County. JA113-14, 301. Frustrated by the ability of the Fairfax County Circuit Court to consistently require or enforce discovery demands, Jane Doe nonsuited in Fairfax County in November 2021 and refiled in the Eastern District of Virginia in May 2022. JA021, 709.

B.    **Anonymity.**

In both Jane Doe's original action in Fairfax County and the current one pending before the Eastern District of Virginia, Jane Doe continuously maintained her actions under a pseudonym with permission of the court in each instance. JA113-15. Cenk Sidar never challenged the pseudonym designation in Fairfax County, nor did Cenk Sidar ever object to the designation during the tolling period. JA113-15. Cenk Sidar only objected to anonymity after Jane Doe refiled in the Eastern District of Virginia. JA113-15, 122, 155.

The District Court granted (JA063) Jane Doe's motion for anonymity that she filed  the same day she filed her action (JA057). After a hearing, the District Court rejected Cenk Sidar's first motion to lift anonymity by Order dated July 29, 2022 (JA319-20) for reasons discussed on the bench. JA312. Cenk Sidar filed a "renewed" motion to lift Jane Doe's anonymity on December 30, 2022, (JA308). Without a hearing and with no new facts or arguments before it, the Court reversed

itself only days before the scheduled trial, on February 16, 2023 (JA920-23), prioritizing ruling on requests for electronic devices in the courtroom over this crucial motion. (JA015). The District Court's reversal based its findings on (i) facts not supported by the record, (ii) refusal to address critical issues, and (iii) misapplication of both facts and law. This flawed order was directly contrary to the first two orders and comments made from the bench during a prior hearing.

Jane Doe immediately filed an interlocutory appeal (JA924) and a motion to stay proceedings pending appeal (JA926-36), both the same day as the District Court issued its order. Case No. 23-1177. Jane Doe's appeal is timely as it was filed the same day as the Order was entered. This Court then consolidated this appeal with the appeal of Issue 2.

## C. DNA.

Jane Doe has repeatedly demanded a DNA buccal swab sample from Cenk Sidar. JA638-40. Jane Doe was unsuccessful in this effort in Fairfax County and repeated her requests after refiling in the Eastern District of Virginia. JA625-27, 38-40. Cenk Sidar has repeatedly refused to provide a DNA sample during discovery in this case and a previous case in Fairfax County Circuit Court. JA353-86, 618-19, 38-40. In the Fairfax court, Cenk Sidar twice failed to appear as and when ordered by a Court, causing Jane Doe to incur attorneys' and medical assistants' fees. JA625-27, 38-40. Ultimately, Cenk Sidar convinced one judge to

refuse to require such a test for any purpose. After Cenk Sidar successfully stymied the Fairfax County Circuit Court, Jane Doe non-suited and refiled this action in federal court. Cenk Sidar has persisted in the same conduct before the District Court.

Jane Doe propounded a demand for Cenk Sidar's DNA buccal swab after refiling in the District Court. When Cenk Sidar refused to appear for testing, Jane Doe moved to compel production. JA165-70. Magistrate Judge Buchanan ordered Cenk Sidar to appear for DNA testing. JA433-39, 440-41.[4] Judge Buchanan ordered DNA collection for Monday, August 29, 2022, with a clear instruction that Cenk Sidar produce himself for a DNA buccal swab collection or face sanctions, including a potential default judgment.[5] JA433-39, 440-41. Cenk Sidar ignored the warning and defied Magistrate Judge Buchanan's Order. Cenk Sidar never obtained a stay of Magistrate Judge Buchanan's Order prior to its effective date, despite challenging the Order before this Court and appealing the Order to the U.S. Court of Appeals for the Fourth Circuit. JA714-33.

---

[4]     Jane Doe's Notice for taking the DNA sample specifically stated that the sample was not only needed to establish liability against Cenk Sidar, but that the "information will further be relevant to Plaintiff's claim for punitive damages." JA171. Plaintiff's Motion to Compel the DNA Sample also specifically explained that "existence of a DNA match would constitute an important element for punitive damages." JA167 (¶ 13); *see also* JA166 (¶ 4).

[5]     This admonition was likely made due to Cenk Sidar's failure to show up for previous DNA collections.

Jane Doe filed a Motion to Compel and for Sanctions based upon Cenk Sidar's failure to comply with the Court's Order to provide the DNA sample. JA617-19, 23-32. In her Memorandum in Support of that Motion, Jane Doe clearly identified that the sample was necessary for both liability and Jane Doe's demand for punitive damages. JA632. At the hearing on Jane Doe's Motion on December 2, 2022, Magistrate Judge Anderson explained that the obligation to comply with Magistrate Judge Buchanan's Order was not stayed by any attempts to appeal it and the obligation to comply with the Motion was on-going as the Order continued to be valid. Magistrate Judge Anderson found that "defendant unjustifiably failed to comply with [Magistrate Judge Buchanan's] order and still has not complied with that order" (JA009) and recommended that "the court enter a judgment of default against defendant as to liability and to proceed on damages alone." JA736-37. Nowhere in that recommendation or order did Magistrate Judge Anderson vacate Magistrate Judge Buchanan's Order requiring Cenk Sidar to submit a DNA sample to Jane Doe. Although Magistrate Judge Anderson denied Jane Doe's motion to extend discovery, discovery did not close until December 9, 2022, a week after the hearing and Order.

The District Court entered a default judgment against Cenk Sidar due to his refusal to comply with an order to appear for collection of a DNA sample, and for deliberately disobeying orders of the District Court (JA736-37, JA781) without

seeking a stay or other relief prior to disobeying that order, acting in bad faith. JA736-37. Cenk Sidar appealed but later made a bargain with the Court to accept a default judgment in exchange for voluntarily dismissing his interlocutory appeal. JA775. The Court subsequently entered a default judgment against Cenk Sidar on liability adjudging that Cenk Sidar raped Jane Doe JA781-82. The Court of Appeals granted Cenk Sidar's voluntary dismissal of his appeal after he agreed in District Court to accept a default judgment on liability in exchange for not providing his DNA. JA783.

As Magistrate Judge Anderson ruled that Magistrate Judge Buchanan's Order was still valid despite Cenk Sidar's appeal to the Fourth Circuit, Jane Doe immediately served a Notice on Cenk Sidar requiring Cenk Sidar to come to Jane Doe's counsel's office on December 7, 2022 (before the close of discovery) and provide a DNA sample to Jane Doe. JA753-54. Although Cenk Sidar filed an Objection to the Notice, JA756-58, his Objection merely regurgitated arguments that had been rejected by Magistrate Judge Buchanan and the District Court. Cenk Sidar's Counsel did not notify Jane Doe that Cenk Sidar would not be attending the sampling. Jane Doe had her medical contractor ready at the office on December 7, 2022, ready, willing, and able to take the DNA sample. Again, Cenk Sidar failed to show up for the sampling required by Magistrate Judge Buchanan's Order.

Jane Doe then filed her Second Motion to Compel and for Sanctions based upon Cenk Sidar's failure to attend the DNA sampling appointment noticed on December 2, 2022, demanding that Cenk Sidar comply with the District Court Orders and appear for DNA sample collection. JA743-49. The matter was referred to Magistrate Judge Anderson, who denied the Motion without full briefing or a hearing. JA763.

The Magistrate Judge denied Jane Doe's second request and found, contrary to the facts on the record, that Jane Doe did not need access to Cenk Sidar's DNA, preventing Jane Doe from also proving that Cenk Sidar did not use a condom when he raped her. JA763. Jane Doe objected to this order (JA784-94) which objection was overruled on January 18, 2023 (JA904). On February 8, 2023, Jane Doe appealed, JA905, filing a motion to stay on February 15, 2023 (JA907-18). As Jane Doe filed this appeal, Case No. 23-1151, within thirty (30) days of the order her appeal is timely. Jane Doe noticed the appeal under the Collateral Order Doctrine, but once consolidated with Case No. 23-1177, the pendent appellate jurisdiction doctrine also applies, *supra*.

# STANDARD OF REVIEW

### A.     Issue 1; Removing Pseudonym Protection.

The Fourth Circuit has held that review of a District Court order lifting anonymity is reviewed under the abuse of discretion standard. *Jacobson*, 6 F.3d at 239.

### B.     Issue 2; Jane Doe's Right to Recover Damages Versus Cenk Sidar's Waived Privacy Rights.

The Fourth Circuit has held that it must "afford[] a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). But that discretion is not boundless, and a district court or magistrate judge may abuse its discretion when it denies a motion to compel production of non-privileged materials whose relevance greatly exceeds the burden or expense of production. *Brooks v. Johnson*, 924 F.3d 104, 121 (4th Cir. 2019) (*citing* Fed. R. Civ. P. 26(b)).

# SUMMARY OF ARGUMENT

The gravamen of Jane Doe's appeals is the District Court's error, and abuse of its discretion, in issuing two Orders – (1) lifting Jane Doe's anonymity after it had been preserved for over two years, absent any change in circumstances and issuance of an order citing facts both contrary to and outside of the record; and (2) denying Jane Doe's demand for Cenk Sidar's DNA sample as part of its damages

case, after Cenk Sidar was adjudged to have raped Jane Doe , and ignoring the importance of a DNA sample to prove damages and punitive damages contrary to Jane Doe's showing of the continuing need for the DNA sample.

### A.     Issue 1; Jane Doe's Privacy Rights versus General Court Policy.

The District Court abused its discretion when it reversed course on Jane Doe's anonymity considering no fact, law, finding, or changed circumstances that could support the changed ruling. The public, the court system, and the adjudicated rapist have no countervailing interest that overrules the rights of a victim of rape, particularly when Cenk Sidar has been adjudicated to be the rapist and when Jane Doe request meets or exceeds all applicable *Jacobsen* factors.

This Court should reverse the District Court for abuse of discretion. The District Court abused its discretion by reciting facts that are directly contrary to the record. The facts clearly support Jane Doe's continued anonymity, and the uncontroverted facts demonstrate that she lives and works in the Middle East, contrary to the District Court's erroneous finding. The District Court abused its discretion by misapplying the *Jacobsen* factors. The District Court's statement that it only "fair" for Jane Doe to be publicly identified because Cenk Sidar has been adjudicated as a rapist flies in the face of the fairness balancing required by *Jacobsen*, and essentially punishes Jane Doe for the District Court's adjudication of rape. The District Court applies a negative connotation to two factors that are

neutral, contrary to the correct application of those factors. The District Court's opinion will have the effect of deterring others subjected to sexual assault and rape from coming forward – if you are a victim and your attacker is deemed guilty then you will be punished with publication of your name. This cannot be the law in this jurisdiction.

### B. Issue 2; Jane Doe's Right to Recover Damages Versus Cenk Sidar's Waived Privacy Rights in his DNA.

The District Court abused its discretion when it permitted Cenk Sidar to disregard a still outstanding order of the Court, and provided no justification for suppression of evidence when Cenk Sidar was willing to accept a default judgment on liability instead of complying with a court order to provide his DNA. This is especially true given that Cenk Sidar had already waived his rights when voluntarily providing a DNA sample to the London police *in the same matter.*

This appeal will settle an important question independent of the subject matter, that is, does a civil plaintiff have a right to a DNA sample from a rapist, and in this case where Cenk Sidar is adjudged to have raped Jane Doe. It will conclusively determine the relative rights between plaintiff rape victims and defendant rapists for this case and future cases.

# ARGUMENT

## I.     Issue 1; Removing Pseudonym Protection.

The District Court abused its discretion by lifting Jane Doe's anonymity based on facts not in the record and directly contrary to the record; failing to apply proper analysis; and ignoring Cenk Sidar's waiver of the issue. A District Court's abuse of discretion includes (a) a "failure or refusal, either express or implicit, actually to exercise discretion, (b) deciding instead as if by general rule, or even arbitrarily," (c) a "failure, in attempting to exercise discretion, adequately to take into account judicially recognized factors constraining its exercise," or (d) "an exercise that is flawed by erroneous factual or legal premises." *Jacobsen*, 6 F. 3d at 239. In the current case, the District Court abused its discretion by relying upon "erroneous factual premises," misapplication of the *Jacobsen* principles, and flawed factual and legal premises, without properly identifying the legal basis for the change from its previous rulings.

Cenk Sidar's renewed motion to remove Jane Doe's pseudonym designation raised no new issues or argument from his first motion that was denied. The only amended fact was a clarification that not only does Jane Doe work in the Middle East, but Jane Doe also lives in the Middle East while working there. JA304, JA860-61. The only changed circumstance is that Cenk Sidar was adjudicated to

have raped Jane Doe. Cenk Sidar refiled his motion to lift anonymity relying on the same facts and arguments that led to the District Court's initial denial.

### A. Abuse of Discretion; Erroneous Factual Premises; Facts Not in the Record.

In its order reversing itself, the District Court recited that "Plaintiff lives in the United States." JA921. This is contrary to all the evidence on record and is irrelevant to the fact that she works in the Middle East. The record is replete with references to the fact that Jane Doe works extensively in the Middle East (JA115, 120, 155, 160, 241, 253-54), is supported by two affidavits from Jane Doe (JA253-56, 860-63) clearly stating that she works in the Middle East, stating that her "work requires me to stay in the Middle East for weeks at a time negotiating business arrangement, attending meetings, inspecting locations." (JA253-56, 860-63). Jane Doe stated that "I spend much of my time there [Dubai and the UAE] and in other locations in the Middle East…." (JA860-62). Jane Doe worked for the Abu Dhabi government in Abu Dhabi for two years before Cenk Sidar raped her, explaining that "[i]n 2012 and 2013 I was employed by the Abu Dhabi government." JA860 Cenk Sidar knows that Jane Doe lives in the Middle East. ("[p]rior to when Defendant raped me, when he and I were talking, he asked me about my professional life. I told him what I do and that I'm based in the Middle East…." (JA861). Jane Doe makes clear that she works in the Middle East. If Cenk Sidar wanted to challenge these facts, he could have deposed Jane Doe, but he did not,

and neither he nor the District Court have any factual basis for challenging Jane Doe's work and living situation.

The District Court also found that "Plaintiff fails to point to particularized potential harm that could come to her if this case proceeds without a pseudonym." JA921 The District Court's statement is contrary to and disregards the extensive evidence of potential harm contained in Jane Doe's Affidavits and in articles submitted to the District Court citing the risk to persons accused of sexual relations outside of marriage in the Middle East. JA139, 147. Jane Doe specifically stated that lifting her anonymity "would cause me to be ostracized and subjected to legal inquiry or discriminatory treatment." JA861. It is difficult to understand how Jane Doe could have been more explicit about the risk of harm she faces.

"A District Court abuses its discretion "by resting its decision on a clearly erroneous finding of material fact, or by misapprehending the law with respect to underlying issues in litigation." *Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105, 112 (4th Cir. 2013). This Court should apply the same factor to this appeal and find that the District Court's ruling was arbitrary and capricious.

**B. Abuse of Discretion; Failure to Consider Judicially Recognized Factors.**

The District Court considered extraneous non-judicially recognized facts and factors in its discussion and application of *Jacobsen*. The District Court stated that Jane Doe "has chosen to bring this civil suit in the United States and seek

damages." JA921 The District Court recognizes that Cenk Sidar raped Jane Doe in London but ignores the record evidence that Cenk Sidar cannot return to London because he is evading providing another DNA sample to the London Met Police. JA159, 255, 914. The District Court's statement also interjects an extraneous factor – basically punishing Jane Doe for having brought her case in a U.S. court in the jurisdiction that had personal jurisdiction over Cenk Sidar. The District Court's recitation has nothing to do with a *Jacobsen* factor.

The District Court states that Jane Doe has not "demonstrated the level of need for anonymity sufficient to allow nondisclosure." JA921. However, the District Court made this finding on the very same record he relied upon to make his initial determination that Jane Doe was entitled to anonymity, as Cenk Sidar's "renewed" motion raised no new facts or arguments but simply regurgitated his original motion. The District Court statement ignores the uncontroverted evidence presented by Jane Doe discussed immediately above.

The District Court cites the third and fourth *Jacobsen* factors, but it is impossible to determine whether the District Court found these factors to be neutral, as it should, or somehow held them against Jane Doe. The District Court should have recognized that these factors were neutral and had no basis in a decision.

The District Court also misapplied the fifth *Jacobsen* fairness factor. The Court recognizes that Cenk Sidar has been found liable through a default judgment entered by the Court – a determination that Cenk Sidar raped Jane Doe – but "continues in the suit using his legal name." JA922. Obviously Cenk Sidar continues in his name – he has never asked for his name to be redacted, never moved for anonymity, and never objected to his name being used in any formal or informal filing. He voluntarily met with the London police and provided a DNA sample without objection. Unlike Jane Doe, who has told no one about the rape (JA863), he has told numerous friends and acquaintances. Whether Cenk Sidar chooses to boast about his rape to others should not be a factor in determining whether Jane Doe – the victim – can maintain her anonymity. The District Court's finding interprets *Jacobsen* to mean that when Cenk Sidar is adjudicated to have raped Jane Doe, then Jane Doe loses her anonymity. The District Court's application of this factor is a gross mischaracterization of *Jacobsen* and would be used by every rapist to inflict more harm on their victims throughout the criminal and judicial process.

The District Court's interpretation also flies in the face of statutory and court-imposed protections for rape victims to protect them and encourage them to come forward and confront their rapists, as expressed by courts and legislatures, and cited by Jane Doe to the District Court. Jane Doe cited *Cabrera*, where the

Court recognized that "[c]ourts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects." *Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (*citations omitted*). The court continued to observe "a strong [public] interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'" *Id*. at 6; *quoting Doe v. De Amigos, LLC*, No. 11-cv-1755, at 6 (D.D.C. Apr. 30, 2012), at *6 (*quoting Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006))." *Cabrera*, 307 F.R.D. at 6. In *Kolko*, the court observed "[a]dditionally, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes. *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa.2001) (granting anonymity to sexual assault victim)." *Kolko*, 242 F.R.D. at 195-96.

Even the 7th Circuit, which hews strongly against the use of fictitious names, recognizes that sexual assault victims are commonly accorded anonymity. *Kolko*, 242 F.R.D. at 195, *citing Doe v. Blue Cross & Blue Shield United of Wisc*., 112 F.3d 869, 872 (7th Cir. 1997) (recognizing that rape victims are entitled to anonymity) (" fictitious names are allowed when necessary to protect the privacy of ... rape victims, and other particularly vulnerable parties or witnesses"), 112 F. 3d at 872; *see also Doe v. City of Chicago*,360 F.3d 667, 669 (7th Cir.2004).

Although written into the criminal code, Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution. *See*, Va. Code Section 19.2-11.01, A., A.1. and A.2. Although addressing victim rights in a criminal law context, this section clearly sets forth the Commonwealth's policy of protection of rape victims.

The District Court abused its discretion by misapplying *Jacobsen* and ignoring the other cases and public policy considerations recognized in other circuits and by the Virginia legislature.

### C. Abuse of Discretion; Deciding Instead as if by General Rule, or Even Arbitrarily.

The District Court originally found that "there is a showing that there can be retaliation or difficulties, or mental anguish or harm related to this case in the employment that she has in the area of the world where she is working." JA312. Without any change in facts, law, or circumstances, however, the Court later rules that Jane Doe "has not demonstrated the level of need for anonymity sufficient to allow nondisclosure." JA921. There is no explanation or support for the District Court's arbitrary reversal of opinion. The same factors that supported Jane Doe's request for anonymity on July 22, 2022, suddenly are "not sufficient" on February 16, 2023, even though there has been no change in law or fact. The District Court arbitrarily made the opposite determination based on the same facts.

**D.    Abuse of Discretion, Failure or Refusal, Either Express or Implicit, to Exercise Discretion.**

The District Court initially observed that Jane Doe's anonymity "hasn't been so unfair so far because the designation has been pending there for a couple of years and has no problem. JA312. The District Court then reverses course stating that Cenk Sidar, "now been found liable through a default judgment entered by this Court" and who "continues in the suit using his legal name" somehow now makes Jane Doe's anonymity unfair to the rapist? The District Court's reasoning makes no sense and is completely arbitrary. The District Court's apparent "general disapproval of party anonymity at trial" and acting "on the basis of legal-factual misapprehension at to the factor it seemed mainly to rely – prejudice to the defendant" were the exact same grounds that this Court in *Jacobsen* found to constitute failure to "actually exercise discretion." *Jacobsen*, 6 F. 3d at 242.

**E.    Abuse of Discretion; Explicit Refusal to Exercise Discretion.**

The District Court also declined to consider the issue of waiver, raised by Jane Doe both times the issue was considered. The District Court expressly declined to consider the issue of waiver when it upheld Jane Doe's anonymity (JA312) and fails to address it at all when it reversed its position. The refusal, and then later failure, to consider Jane Doe's waiver argument flies in the face of *Jacobsen* and constitutes an arbitrary and capricious ruling. The record is replete with evidence that Cenk Sidar never requested anonymity, either before the case

was filed, nor during the proceedings before the Fairfax County Circuit Court, nor when Jane Doe non-suited and informed Cenk Sidar that she was going to file in federal court. He raised the issue for the first time after Jane Doe filed in the District Court, and he has never requested that his name be redacted or removed, never requested a protective order, and never requested that the docket be sealed. Cenk Sidar's delay in raising the issue constitutes both waiver and laches raised by Jane Doe (cite memos), and the District Court erred by refusing and failing to consider waiver as part of its anonymity analysis.

### F. Abuse of Discretion; No Reasonable or Articulated Basis to Reverse Ruling.

Judge Hilton previously denied Cenk Sidar's very same motion on July 29, 2022, and in his subsequent recent Order does not explain this Court's change in reasoning. In fact, the District Court ignores facts in evidence that have been the basis for Jane Doe's anonymity since she first filed in Fairfax County. Facts recited in the Order are directly contrary to the only evidence on record. The Order states that Jane Doe lives in Virginia. In fact, as set forth in her Affidavit with no contrary evidence, she currently lives and works in the Middle East. JA860-63. Jane Doe works in a male-dominated industry in the Middle East. JA860-63. Exposing Jane Doe's name and the facts of this case in countries in which she works would expose her to legal liability and the distinct possibility of public harm and lead to additional attempts by men to take advantage of her. JA860-63. There

has been no change on the law and no change in the facts to support the Court's Order, and the Order is contrary to the clear and unchanged facts. Cenk Sidar merely re-filed his same motion without any explanation regarding the change in circumstances and the Court similarly gave no rationale for a change.

### G. Abuse of Discretion; Arbitrary Punishment of Jane Doe After Adjudicating Cenk Sidar as Her Rapist.

Moreover, this is a case in which liability has been established – Cenk Sidar raped Jane Doe. While this determination was made because of Cenk Sidar's refusal to comply with this Court's Order to provide a DNA sample, this was no "technical" violation of a discovery order. Rather, it was a calculated decision by Cenk Sidar, who knows that his DNA will match that being held by the London Police which was taken from Jane Doe's vagina after the rape. Cenk Sidar does not want to provide the DNA because of the other unrelated legal ramifications of a positive match. Given the default judgment finding that Cenk Sidar raped Jane Doe, it is even more incumbent on the courts to protect her identity. *See Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (court *granted* Plaintiff's [person likely wrongfully accused of sexual misconduct] request for pseudonymity specifically citing that sexual misconduct carries a stigma, is a "matter of sensitive and highly personal nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations alone.") If the District Court can protect a person who may have been wrongfully **accused**

of sexual misconduct, it surely can protect a woman who was clearly the **victim of a rape**.

## II.    Issue 2; DNA Sample Required for Punitive Damages to Show Reckless Disregard in Raping Someone Without a Condom.

The District Court abused its discretion by permitting Cenk Sidar to violate a standing court order to submit to DNA testing and failing to address the role that DNA plays in Jane Doe's proof that Cenk Sidar raped her without a condom exhibiting reckless disregard for Jane Doe's health and mental well-being. The District Court's opinion contains factual and legal findings that are clearly erroneous and the ruling itself is contrary to law. The District Court's opinion is tantamount to a summary judgment on an issue of damages.

### A.    Abuse of Discretion, Misinterpretation of Valid Order.

The District Court incorrectly found that the DNA Sampling Order was limited to providing evidence establishing liability in the current action. JA764-65. As was made clear in the original Notice (JA171), Jane Doe's Motion to Require a DNA Sample (JA167), the Motion to Compel Compliance with the DNA Order (JA632), the Second Notice (JA753-54), the request for the DNA sample, and the Order issued by Magistrate Judge Buchanan were all based upon evidence from the DNA sample being used for both liability and punitive damages.

### B. Abuse of Discretion, Finding Contrary to Law.

The District Court's order was contrary to law because it failed to require

Cenk Sidar to comply with a valid order of the District Court which had been

issued within the time set for discovery in that matter.

### C. Abuse of Discretion; Failure to Adhere to Federal Rules.

The District Court's refusal to require Cenk Sidar to provide a buccal swab

sample for damages even though it required a sample for liability is contrary to the

required liberal interpretation of Fed. R. Civ. App. 35. *See*, *Ray v. Park*, 2:21-cv-

04001-NKL, at *1 (W.D. Mo. Sep. 24, 2021) ("Like other rules of discovery, Rule

35 should be "broadly and liberally construed.") (*citing Stillman v. Wal-Mart*

*Stores East I, L.P.*, No. 4:19-CV-00222, 2019 WL 11851712, at *1 (W.D. Mo.

Dec. 3, 2019) (*citing RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,

No. 4:18-CV-06037-DGK, 2019 WL 3291570, at *1 (W.D. Mo. July 22, 2019))"),

07-C-086-C (W.D. Wis. May 25, 2007).

### D. Abuse of Discretion, Ruling Contrary to Applicable Case Law.

The District Court's actions are contrary to decisions in other circuits,

including those previously cited by Jane Doe in this case. *See Ray; Rousseau v.*

*Coates*, No. 2:18-cv-205 (D. Vt. July 17, 2019); *Ashby v. Mortimer*, 329 F.R.D.

650 (D. Idaho 2019); *D'Angelo v. Potter,* 224 F.R.D. 300, 302-304 (D. Mass.

2004); *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55, 61 (E.D.N.Y. 2002).

Whether a rapist defendant can avoid providing a buccal swab sample in a civil

case, for proof of damages when liability is already settled, needs to be settled by the Court of Appeals. Denial of this proof is the equivalent of a summary judgment on this element of damages and is ripe for review. Once settled, the Court of Appeals' ruling will determine how this case is tried, and if the Court of Appeals sides with Jane Doe, and she believes it will, the damages portion of the case would have to be retried to the immense harm to Jane Doe, and to the possible loss of the DNA sample from the high vaginal swab.

### E. Public Interest.

The public interest would be substantially damaged if Cenk Sidar is allowed to avoid providing a DNA sample to Jane Doe. Cenk Sidar is not concerned about a default judgment because he knows that he is guilty of raping Jane Doe and that the evidence is so overwhelming that he could not win on liability. He knows that a DNA sample will match his DNA to the sperm DNA held by the London Police. Cenk Sidar has mocked the United States federal judicial system by ignoring a valid Court order issued by a United States Magistrate Judge and affirmed by the District Court. Cenk Sidar never had any intention of complying with the District Court's order, but always intended to either run out the clock by repeated appeals that were filed on the very last day permitted for appeal and, if necessary, blatantly disregarding the Order of the District Court, even had it been fully adjudicated all the way to the U.S. Supreme Court. For Cenk Sidar, who is trying to escape full

justice, providing this DNA would conclusively prove his guilt and subject him to consequences beyond the U.S. legal system. By allowing Cenk Sidar to avoid providing this DNA sample, this Court would be assisting Cenk Sidar in thumbing his nose at our justice system and escaping the ramifications of his actions.

For these reasons, the District Court Order must be reversed, and this Court must remand with instructions to the District Court to compel Cenk Sidar to provide a DNA sample to Jane Doe for use in establishing her entitlement to punitive damages in this action.

## CONCLUSION

The District Court abused its discretion when it entered an Order lifting Jane Doe's anonymity (i) after more than two years of litigation before two courts; (ii) when Cenk Sidar failed to raise the issue until after Jane Doe refiled her case in the Eastern District of Virginia, thereby waiving any right to request lifting of anonymity; (iii) after Cenk Sidar had been adjudged to have raped Jane Doe with the entry of a default judgment against Cenk Sidar; (iv) absent any allegation of changed facts or circumstances by either Cenk Sidar or the District Court; (v) relying on facts not in the record and in direct contradiction with established facts of record; (vi) evidencing reckless disregard for the safety, health, and well-being of the raped Jane Doe; (vii) and encouraging public voyeuristic interest in the details of a rape case when the fact of the rape has been judicially established. For

these reasons, this Court must reverse the Order of the District Court compelling Jane Doe to surrender her anonymity.

The District Court also abused its discretion by (a) failing to enforce a valid order; (b) failing to adhere to Fed. R. Civ. App. 35; (c) entering a ruling directly contrary to established case law; and (d) disregarding Jane Doe's right to obtain evidence from her adjudicated rapist. The public interest requires enforcement of and compliance with valid outstanding court orders and prohibiting abuse of the judicial system by adjudicated rapists. Absent enforcing its orders, the courts risk encouraging similarly situated defendants to ignore the rule of law and the authority of the U.S. Courts system and rules.

For the foregoing reasons, this Court should reverse and remand this matter to the District Court with instructions that (a) Jane Doe's anonymity is to be preserved permitting her to proceed under the name "Jane Doe;" and (b) Cenk Sidar must submit himself for DNA collection as part of the damages phase of the underlying case. This is the time to address these issues with serious and long-lasting public policy considerations, reaffirm the rights of rape victims to seek justice against their adjudicated rapists, and ensure a climate that promotes the important public and governmental interest in encouraging victims of rape and serious sexual offenses to confront the perpetuators of these crimes.

Dated: June 30, 2023

Respectfully submitted,


/s/ Walter E. Steimel, Jr.
WALTER E. STEIMEL, JR.
STEIMEL COUNSELORS LAW GROUP
PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com

THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

*Counsel for Appellant Jane Doe*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Circuit Rule 32(g), I hereby certify that the foregoing Opening Brief of Appellant Jane Doe contains 8,862 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count, and therefore is within the word limit set by the Court.

Dated: June 30, 2023        /s/ Walter E. Steimel, Jr.

                                        Walter E. Steimel, Jr.

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 25, I hereby certify that on this 30th day of June 2023, a copy of the foregoing Appellant's Opening Brief was served electronically through the Court's CM/ECF system on all ECF-registered counsel.

/s/ Walter E. Steimel, Jr.
Walter E. Steimel, Jr.

# **ADDENDUM**


## **STATUTES**

# 28 U.S.C. § 1292

Section 1292 - Interlocutory decisions

**(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

**(1)** Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

**(2)** Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

**(3)** Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

**(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**(c)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction-

**(1)** of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

**(2)** of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

**(d)**

**(1)** When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially

advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(2)** When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(3)** Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

**(4)**

**(A)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

**(B)** When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

**(e)** The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

*28 U.S.C. § 1292*

June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, §49, 65 Stat. 726; Pub. L. 85-508, §12(e), July 7, 1958, 72 Stat. 348; Pub. L. 85-919, Sept. 2, 1958, 72 Stat. 1770; Pub. L. 97-164, §125, Apr. 2, 1982, 96 Stat. 36; Pub. L. 98-620, title IV, §412, Nov. 8, 1984, 98 Stat. 3362; Pub. L. 100-702, title V, §501, Nov. 19, 1988, 102 Stat. 4652; Pub. L. 102-572, title I, §101, title IX, §§902(b), 906(c), Oct. 29, 1992, 106 Stat. 4506, 4516, 4518.



**HISTORICAL AND REVISION NOTES**Based on title 28, U.S.C., 1940 ed., §§225(b), 227, 227a, and section 61 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §§128, 129, 36 Stat. 1133, 1134; Feb. 13, 1925, ch. 229, §1, 43 Stat. 937; Feb. 28, 1927, ch. 228, 44 Stat. 1261; Apr. 3, 1926, ch. 102, 44 Stat. 233; May 20, 1926, ch. 347, §13(a), 44 Stat. 587; Apr. 11, 1928, ch. 354, §1, 45 Stat. 422; May 17, 1932, ch. 190, 47 Stat. 158).Section consolidates sections 225(b), 227 and part of 227a of title 28, U.S.C., 1940 ed., with necessary changes in phraseology to effect the consolidation. The second paragraph of section 225(b) of title 28, U.S.C., 1940 ed., relating to review of decisions of the district courts, under section 9 of the Railway Labor Act (section 159 of title 45), was omitted as covered by section 1291 of this title.Words in section 227 of title 28, U.S.C., 1940 ed., "or decree," after "interlocutory order," were deleted, in view of Rule 65 of the Federal Rules of Civil Procedure, using only the word "order."Provisions of sections 227 and 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal were omitted as superseded by Federal Rules of Civil Procedure, Rule 73. Provisions of section 227 of title 28, U.S.C., 1940 ed., requiring an additional bond by the district court as a condition of appeal were omitted in view of Federal Rules of Civil Procedure, Rule 73.Words in section 227 of title 28, U.S.C., 1940 ed., "and sections 346 and 347 of this title shall apply to such cases in the circuit courts of appeals as to other cases therein," at the end of the first sentence of section 227 of title 28, U.S.C., 1940 ed., were deleted as fully covered by section 1254 of this title, applicable to any case in a court of appeals. Other procedural provisions of said section 227 were omitted as covered by section 2101 et seq. of this title.In subsection (4), which is based on section 227a of title 28, U.S.C., 1940 ed., words "civil actions" were substituted for "suits in equity" and word "judgments" was substituted for "decree," in view of Rules 2 and 54 of the Federal Rules of Civil Procedure.The provision of sections 227 and 227a of title 28, U.S.C., 1940 ed., that appeal must be taken within thirty days after entry of order, decree or judgment is incorporated in section 2107 of this title.The provisions of section 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal, were omitted as superseded by Rule 73 of the Federal Rules of Civil Procedure.The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.) Consequently the specific reference in section 225 of title 28, U.S.C., 1940 ed., to "the United States district courts for Hawaii" was omitted.The District Court for the District of Puerto Rico is not enumerated in section 225(b) of title 28, U.S.C., 1940 ed., nevertheless subsection (2) of the revised section does not except such court. Thus in conformity with the last sentence of section 864, title 48, U.S.C., 1940 ed. For distribution of said section 864, see Distribution Table.Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1294 of this title.

### EDITORIAL NOTES

**AMENDMENTS**1992-Subsec. (d)(2). Pub. L. 102-572, §§902(b)(1), 906, substituted "When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims" for "When any judge of the United States Claims Court".Subsec. (d)(3). Pub. L. 102-572, §902(b)(2), substituted "Court of Federal Claims" for "Claims Court" in two places.Subsec. (d)(4). Pub. L. 102-572, §902(b), substituted "United States Court of Federal Claims" for "United States Claims Court" in subpar. (A) and "Court of Federal Claims" for "Claims Court" in two places in subpar. (B).Subsec. (e). Pub. L. 102-572, §101, added subsec. (e).**1988**-Subsec. (d)(4). Pub. L. 100-702 added par. (4). **1984**-Subsec. (b). Pub. L. 98-620, §412(a), inserted "which would have jurisdiction of an appeal of such action" after "The Court of Appeals".Subsec. (c)(1). Pub. L. 98-620, §412(b), inserted "or (b)" after "(a)".**1982**-Subsec. (a). Pub. L. 97-164, §125(a)(1), substituted "Except as provided in subsections (c) and (d) of this section, the courts" for "The courts" in introductory provisions.Subsec. (a)(4). Pub. L. 97-164, §125(a)(2), (3), struck out par. (4) which related to judgments in civil actions for patent infringement which were final except for accounting.Subsecs. (c), (d). Pub. L. 97-164, §125(b), added subsecs. (c) and (d). **1958**- Pub. L. 85-919 designated existing provisions as subsec. (a)



*and added subsec. (b).Par. (1). Pub. L. 85-508 struck out reference to District Court for Territory of Alaska. See section 81A of this title which established a United States District Court for the State of Alaska.***1951-***Par. (1). Act Oct. 31, 1951, inserted reference to District Court of Guam.*

***STATUTORY NOTES AND RELATED SUBSIDIARIES***

***EFFECTIVE DATE OF 1992 AMENDMENT*** *Amendment by section 101 of Pub. L. 102-572 effective Jan. 1, 1993, see section 1101(a) of Pub. L. 102-572 set out as a note under section 905 of Title 2, The Congress.Amendment by sections 902(b) and 906(c) of Pub. L. 102-572 effective Oct. 29, 1992, see section 911 of Pub. L. 102-572 set out as a note under section 171 of this title.*

***EFFECTIVE DATE OF 1988 AMENDMENT***Pub. L. 100-702, title V, §502, Nov. 19, 1988, 102 Stat. 4652, *provided that: "The amendment made by section 501 [amending this section] shall apply to any action commenced in the district court on or after the date of enactment of this title [Nov. 19, 1988]."*

***EFFECTIVE DATE OF 1982 AMENDMENT*** *Amendment by Pub. L. 97-164 effective Oct. 1, 1982, see section 402 of Pub. L. 97-164 set out as a note under section 171 of this title.*

***EFFECTIVE DATE OF 1958 AMENDMENT*** *Amendment by Pub. L. 85-508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c16, as required by sections 1 and 8(c) of Pub. L. 85-508 see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.*

***TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE***For termination of the United States District Court for the District of the Canal Zone at end of the *"transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 3831 and 3841 to 3843 of Title 22, Foreign Relations and Intercourse.*

 casetext

# 28 U.S.C. § 1332

Section 1332 - Diversity of citizenship; amount in controversy; costs

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-

  **(1)** citizens of different States;

  **(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

  **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

  **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

**(b)** Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

**(c)** For the purposes of this section and section 1441 of this title-

  **(1)** a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of-

    **(A)** every State and foreign state of which the insured is a citizen;

    **(B)** every State and foreign state by which the insurer has been incorporated; and

    **(C)** the State or foreign state where the insurer has its principal place of business; and

  **(2)** the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

**(d)**

  **(1)** In this subsection-

    **(A)** the term "class" means all of the class members in a class action;

**(B)** the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

**(C)** the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

**(D)** the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

**(2)** The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-

**(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant;

**(B)** any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

**(C)** any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

**(3)** A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of-

**(A)** whether the claims asserted involve matters of national or interstate interest;

**(B)** whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

**(C)** whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

**(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

**(E)** whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

**(F)** whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

**(4)** A district court shall decline to exercise jurisdiction under paragraph (2)-

**(A)**



**(i)** over a class action in which-

    **(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    **(II)** at least 1 defendant is a defendant-

        **(aa)** from whom significant relief is sought by members of the plaintiff class;

        **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        **(cc)** who is a citizen of the State in which the action was originally filed; and

    **(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

    **(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

**(B)** two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

**(5)** Paragraphs (2) through (4) shall not apply to any class action in which-
    **(A)** the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

    **(B)** the number of members of all proposed plaintiff classes in the aggregate is less than 100.

**(6)** In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**(7)** Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

**(8)** This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

**(9)** Paragraph (2) shall not apply to any class action that solely involves a claim-
    **(A)** concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 ( 15 U.S.C. 78p(f)(3)[2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 ( 15 U.S.C. 78bb(f)(5)(E) );



**(B)** that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

**(C)** that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 ( 15 U.S.C. 77b(a)(1) ) and the regulations issued thereunder).

**(10)** For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

**(11)**
**(A)** For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

**(B)**
**(i)** As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

**(ii)** As used in subparagraph (A), the term "mass action" shall not include any civil action in which-
**(I)** all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

**(II)** the claims are joined upon motion of a defendant;

**(III)** all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

**(IV)** the claims have been consolidated or coordinated solely for pretrial proceedings.

**(C)**
**(i)** Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

**(ii)** This subparagraph will not apply-
**(I)** to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or



**(II)** if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

**(D)** The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

**(e)** The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

[1] So in original. Probably should be preceded by "section".

[2] So in original. Probably should be "77p(f)(3)".

*28 U.S.C. § 1332*

June 25, 1948, ch. 646, 62 Stat. 930; July 26, 1956, ch. 740, 70 Stat. 658; Pub. L. 85-554, §2, July 25, 1958, 72 Stat. 415; Pub. L. 88-439, §1, Aug. 14, 1964, 78 Stat. 445; Pub. L. 94-583, §3, Oct. 21, 1976, 90 Stat. 2891; Pub. L. 100-702, title II, §§201(a), 202(a), 203(a), Nov. 19, 1988, 102 Stat. 4646; Pub. L. 104-317, title II, §205(a), Oct. 19, 1996, 110 Stat. 3850; Pub. L. 109-2, §4(a), Feb. 18, 2005, 119 Stat. 9; Pub. L. 112-63, title I, §§101, Dec. 7, 2011, 102, Dec. 7, 2011, 125 Stat. 758.

*HISTORICAL AND REVISION NOTES*Based on title 28, U.S.C., 1940 ed., §41(1) (Mar. 3, 1911, ch. 231, §24, par. 1, 36 Stat. 1091; May 14, 1934, ch. 283, §1, 48 Stat. 775; Aug. 21, 1937, ch. 726, §1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).Other provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1331, 1341, 1342, 1345, 1354, and 1359 of this title. (See reviser's notes under said sections.) Jurisdiction conferred by other sections of this chapter, except section 1335, is not dependent upon diversity of citizenship. (See annotations under former section 41 of title 28, U.S.C.A., and 35 C.J.S., p. 833 et seq. §§30-43. See, also, reviser's note under section 1331 of this title.) As to citizenship of bank where jurisdiction depends upon diversity of citizenship, see section 1348 of this title.Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" in order to conform to Rule 2 of the Federal Rules of Civil Procedure.Words "or citizens of the District of Columbia, Territory of Hawaii, or Alaska, and any State or Territory" which were inserted by the amendatory act April 20, 1940, are omitted. The word "States" is defined in this section and enumeration of the references is unnecessary. The revised section conforms with the views of Philip F. Herrick, United States Attorney, Puerto Rico, who observed that the act of April 20, 1940, permitted action between a citizen of Hawaii and of Puerto Rico, but not between a citizen of New York and Puerto Rico, in the district court. This changes the law to insure uniformity. The 1940 amendment applied only to the provision as to controversies between "citizens of different States." The new definition in subsection (b) extends the 1940 amendment to apply to controversies between citizens of the Territories or the District of Columbia, and foreign states or citizens or subjects thereof. The diversity of citizenship language of section 41(1) of title 28, U.S.C., 1940 ed., as amended in 1940, was described as ambiguous in McGarry v. City of Bethlehem, 45 F.Supp. 385, 386. In that case the 1940 amendment was held unconstitutional insofar as it affected the District of Columbia. However, two other district courts upheld the amendment. Winkler v. Daniels, D.C.Va. 1942, 43 F.Supp. 265; Glaeser v. Acacia Mutual Life Ass'n., D.C.Cal. 1944, 55 F.Supp. 925.This section is intended to cover all diversity of citizenship instances in civil actions in accordance with the judicial construction of the language in the original section 41(1) of title 28, U.S.C., 1940 ed. Therefore, the revised language covers civil actions between-Citizens of a State, and citizens of other States and foreign states or citizens or subjects thereof;Citizens of a Territory or the District of Columbia, and foreign states or citizens or subjects thereof;Citizens of different States; Citizens of

*different Territories;Citizens of a State, and citizens of Territories;Citizens of a State or Territory, and citizens of the District of Columbia;Citizens of a State, and foreign states or citizens or subjects thereof. The revised section removes an uncertainty referred to in the McGarry case, supra, as to whether Congress intended to permit citizens of the Territories or the District of Columbia to sue a State or Territory itself rather than the citizens thereof. The court observed that "Congress could hardly have had such intention."The sentence "The foregoing provisions as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section" was omitted as unnecessary. Those paragraphs are (2)-(28) of said section 41 of title 28, U.S.C., 1940 ed., which are revised and incorporated in this chapter and, except for those relating to actions against the United States and interpleader, contains no provision as to a sum or value necessary to confer jurisdiction. Consequently the omitted sentence is covered by excluding such requirement.Section 41(1) of title 28, U.S.C., 1940 ed., as originally enacted, purported to include all jurisdictional provisions relating to the district courts. Subsequently, many special jurisdictional provisions were enacted and incorporated in other titles of the U.S.C., 1940 ed., as follows:*

| *Title* | *Section* |
| --- | --- |
| *7* | *209* |
| *7* | *210* |
| *7* | *216* |
| *7* | *292* |
| *7* | *499g* |
| *7* | *608a(6)* |
| *7* | *608c(15)(B)* |
| *7* | *610(b)(2)* |
| *7* | *648* |
| *7* | *1175* |
| *7* | *1365-1367* |
| *7* | *1376* |
| *7* | *1508(c)* |
| *8* | *164* |
| *8* | *701* |
| *8* | *903* |
| *9* | *4* |
| *9* | *8* |
| *9* | *9* |
| *11* | *11(a)* |
| *11* | *46* |
| *11* | *205(a), (l)* |
| *11* | *401* |
| *11* | *511* |
| *11* | *512* |
| *11* | *514-516* |
| *11* | *711* |
| *11* | *712* |



| | |
|---|---|
| *11* | *811* |
| *11* | *812* |
| *11* | *1011* |
| *11* | *1012* |
| *11* | *1013* |
| *11* | *1200* |
| *12* | *93* |
| *12* | *195* |
| *12* | *632* |
| *15* | *4* |
| *15* | *9* |
| *15* | *15* |
| *15* | *25* |
| *15* | *26* |
| *15* | *31* |
| *15* | *53* |
| *15* | *68e* |
| *15* | *77t* |
| *15* | *77v* |
| *15* | *77vvv* |
| *15* | *78u(e)* |
| *15* | *78u(f)* |
| *15* | *78aa* |
| *15* | *79k(d), (e)* |
| *15* | *79r(f), (g)* |
| *15* | *80a-25* |
| *15* | *80a-34* |
| *15* | *80a-35* |
| *15* | *80a-41(c), (e)* |
| *15* | *80a-43* |
| *15* | *80b-14* |
| *15* | *97* |
| *15* | *99* |
| *15* | *433* |
| *15* | *715d(c)* |
| *15* | *715i* |
| *15* | *717s* |
| *15* | *717u* |
| *16* | *10* |
| *16* | *583e* |
| *16* | *820* |
| *16* | *825m* |

| | |
|---|---|
| 16 | 825n |
| 16 | 825p |
| 17 | 26 |
| 17 | 34 |
| 21 | 193 |
| 21 | 332 |
| 21 | 355 |
| 25 | 314 |
| 25 | 345 |
| 26 | 3633 |
| 26 | 3800 |
| 27 | 207 |
| 29 | 101 |
| 29 | 103-109 |
| 29 | 160(e) |
| 29 | 216 |
| 29 | 217 |
| 30 | 188 |
| 31 | 232 |
| 33 | 495 |
| 33 | 918 |
| 33 | 921 |
| 35 | 63 |
| 35 | 66 |
| 35 | 67 |
| 35 | 72a |
| 35 | 90 |
| 38 | 445 |
| 40 | 257 |
| 40 | 270b |
| 40 | 361 |
| 41 | 113(b)(2) |
| 42 | 405(c)(5), (g) |
| 43 | 546 |
| 43 | 1062 |
| 45 | 56 |
| 45 | 88 |
| 45 | 89 |
| 45 | 153(p) |
| 45 | 159 |
| 45 | 185 |
| 45 | 228j(b)4 |



| 45 | 228k |
| 45 | 268 |
| 45 | 355(f) |
| 46 | 597 |
| 46 | 688 |
| 46 | 711 |
| 46 | 741 et seq. |
| 46 | 781 et seq. |
| 46 | 941(c) |
| 46 | 951 |
| 46 | 954 |
| 46 | 1114(c) |
| 46 | 1128d |
| 47 | 11 |
| 47 | 13 |
| 47 | 33 |
| 47 | 36 |
| 47 | 207 |
| 47 | 401 |
| 47 | 406 |
| 47 | 407 |
| 48 | 242 |
| 48 | 245 |
| 49 | 5(8) |
| 49 | 9 |
| 49 | 16(2) |
| 49 | 16(9) |
| 49 | 16(12) |
| 49 | 17(9) |
| 49 | 19a(l) |
| 49 | 20(9) |
| 49 | 23 |
| 49 | 26(h) |
| 49 | 41(1), (3) |
| 49 | 43 |
| 49 | 181(b), (c) |
| 49 | 305(g) |
| 49 | 322(b) |
| 49 | 647 |
| 49 | 916 |
| 49 | 1017 |
| 49 | 1021 |



*50        23*

*D.C. Code 11-305-11-307*

*D.C. Code 11-309*

*D.C. Code 11-324*

### EDITORIAL NOTES

**REFERENCES IN TEXT** Rule 23 of the Federal Rules of Civil Procedure, referred to in subsec. (d)(1)(B), (11)(C)(ii), is set out in the Appendix to this title.

**AMENDMENTS** **2011**-Subsec. (a). Pub. L. 112-63, §101(1), struck out concluding provisions which read as follows: "For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Subsec. (a)(2). Pub. L. 112-63, §101(2), inserted before semicolon at end ", except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State". Subsec. (c)(1). Pub. L. 112-63, §102, substituted "every State and foreign state" for "any State", "it has been incorporated and of the State or foreign state" for "it has been incorporated and of the State", and "such insurer shall be deemed a citizen of-" for "such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and" and added subpars. (A) to (C). **2005**-Subsecs. (d), (e). Pub. L. 109-2 added subsec. (d) and redesignated former subsec. (d) as (e). **1996**-Subsecs. (a), (b). Pub. L. 104-317 substituted "$75,000" for "$50,000". **1988**-Subsec. (a). Pub. L. 100-702, §201(a), substituted "$50,000" for "$10,000" in introductory text. Pub. L. 100-702, §203(a), inserted at end "For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Subsec. (b). Pub. L. 100-702, §201(a), substituted "$50,000" for "$10,000". Subsec. (c). Pub. L. 100-702, §202(a), amended subsec. (c) generally. Prior to amendment, subsec. (c) read as follows: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: Provided further, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business." **1976**-Subsec. (a)(2). Pub. L. 94-583 substituted "and citizens or subjects of a foreign state;" for ", and foreign states or citizens or subjects thereof; and". Subsec. (a)(3). Pub. L. 94-583 substituted "citizens or subjects of a foreign state are additional parties; and" for "foreign states or citizens or subjects thereof are additional parties". Subsec. (a)(4). Pub. L. 94-583 added par. (4). **1964**-Subsec. (c). Pub. L. 88-439 inserted proviso deeming an insurer of liability insurance, in an action to which the insurer is not joined as a party-defendant, a citizen, of the State of which the insured is a citizen, as well as the State the insurer has been incorporated by and the State where it has its principal place of business. **1958**- Pub. L. 85-554 included costs in section catchline. Subsec. (a). Pub. L. 85-554 substituted "$10,000" for "$3,000". Subsecs. (b) to (d). Pub. L. 85-554 added subsecs. (b) and (c) and redesignated former subsec. (b) as (d). **1956**-Subsec. (b). Act July 26, 1956, included the Commonwealth of Puerto Rico.

### STATUTORY NOTES AND RELATED SUBSIDIARIES



***EFFECTIVE DATE OF 2011 AMENDMENT*** *Pub. L. 112-63, title I, §105, Dec. 7, 2011, 125 Stat. 762, provided that:"(a) IN GENERAL.-Subject to subsection (b), the amendments made by this title [enacting section 1455 of this title and amending this section and sections 1441, 1446, and 1453 of this title] shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act [Dec. 7, 2011], and shall apply to any action or prosecution commenced on or after such effective date."(b) TREATMENT OF CASES REMOVED TO FEDERAL COURT.-For purposes of subsection (a), an action or prosecution commenced in State court and removed to Federal court shall be deemed to commence on the date the action or prosecution was commenced, within the meaning of State law, in State court."*

***EFFECTIVE DATE OF 2005 AMENDMENT*** *Pub. L. 109-2, §9, Feb. 18, 2005, 119 Stat. 14, provided that: "The amendments made by this Act [enacting chapter 114 and section 1453 of this title and amending this section and sections 1335 and 1603 of this title] shall apply to any civil action commenced on or after the date of enactment of this Act [Feb. 18, 2005]."*

***EFFECTIVE DATE OF 1996 AMENDMENT*** *Pub. L. 104-317, title II, §205(b), Oct. 19, 1996, 110 Stat. 3850, provided that: "The amendment made by this section [amending this section] shall take effect 90 days after the date of enactment of this Act [Oct. 19, 1996]."*

***EFFECTIVE DATE OF 1988 AMENDMENT****Pub. L. 100-702, title II, §201(b), Nov. 19, 1988, 102 Stat. 4646, provided that: "The amendments made by this section [amending this section] shall apply to any civil action commenced on or after the 180th day after the date of enactment of this title [Nov. 19, 1988]."Pub. L. 100-702, title II, §202(b), Nov. 19, 1988, 102 Stat. 4646, provided that: "The amendment made by this section [amending this section] shall apply to any civil action commenced in or removed to a United States district court on or after the 180th day after the date of enactment of this title [Nov. 19, 1988]."Pub. L. 100-702, title II, §203(b), Nov. 19, 1988, 102 Stat. 4646, provided that: "The amendment made by this section [amending this section] shall apply to claims in civil actions commenced in or removed to the United States district courts on or after the 180th day after the date of enactment of this title [Nov. 19, 1988]."*

***EFFECTIVE DATE OF 1976 AMENDMENT*** *Amendment by Pub. L. 94-583 effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94-583 set out as an Effective Date note under section 1602 of this title.*

***EFFECTIVE DATE OF 1964 AMENDMENT****Pub. L. 88-439, §2, Aug. 14, 1964, 78 Stat. 445, provided that: "The amendment made by this Act to section 1332(c), title 28, United States Code, applies only to causes of action arising after the date of enactment of this Act [Aug. 14, 1964]."*

***EFFECTIVE DATE OF 1958 AMENDMENT*** *Amendment by Pub. L. 85-554 applicable only in the case of actions commenced after July 25, 1958, see section 3 of Pub. L. 85-554 set out as a note under section 1331 of this title.*

 casetext

# Va. Code § 19.2-11.01

Section 19.2-11.01 - [Effective 7/1/2023] Crime victim and witness rights

**A.** In recognition of the Commonwealth's concern for the victims and witnesses of crime, it is the purpose of this chapter to ensure that the full impact of crime is brought to the attention of the courts of the Commonwealth; that crime victims and witnesses are treated with dignity, respect and sensitivity; and that their privacy is protected to the extent permissible under law. It is the further purpose of this chapter to ensure that victims and witnesses are informed of the rights provided to them under the laws of the Commonwealth; that they receive authorized services as appropriate; and that they have the opportunity to be heard by law-enforcement agencies, attorneys for the Commonwealth, corrections agencies and the judiciary at all critical stages of the criminal justice process to the extent permissible under law. Unless otherwise stated and subject to the provisions of § 19.2-11.1, it shall be the responsibility of a locality's crime victim and witness assistance program to provide the information and assistance required by this chapter, including verification that the standardized form listing the specific rights afforded to crime victims has been received by the victim.

As soon as practicable after identifying a victim of a crime, the investigating law-enforcement agency shall provide the victim with a standardized form listing the specific rights afforded to crime victims. The form shall include a telephone number by which the victim can receive further information and assistance in securing the rights afforded crime victims, the name, address and telephone number of the office of the attorney for the Commonwealth, the name, address and telephone number of the investigating law-enforcement agency, and a summary of the victim's rights under § 40.1-28.7: 2.

1. Victim and witness protection and law-enforcement contacts.

   **a.** In order that victims and witnesses receive protection from harm and threats of harm arising out of their cooperation with law-enforcement, or prosecution efforts, they shall be provided with information as to the level of protection which may be available pursuant to § 52-35 or to any other federal, state or local program providing protection, and shall be assisted in obtaining this protection from the appropriate authorities.

   **b.** Victims and witnesses shall be provided, where available, a separate waiting area during court proceedings that affords them privacy and protection from intimidation, and that does not place the victim in close proximity to the defendant or the defendant's family.

2. Financial assistance.

   **a.** Victims shall be informed of financial assistance and social services available to them as victims of a crime, including information on their possible right to file a claim for compensation from the Crime Victims' Compensation Fund pursuant to Chapter 21.1 (§ 19.2-368.1 et seq.) and on other available assistance and services.



**b.** Victims shall be assisted in having any property held by law-enforcement agencies for evidentiary purposes returned promptly in accordance with §§ 19.2-270.1 and 19.2-270.2.

**c.** Victims shall be advised that restitution is available for damages or loss resulting from an offense and shall be assisted in seeking restitution in accordance with §§ 19.2-305 and 19.2-305.1, Chapter 21.1 (§ 19.2-368.1 et seq.), Article 21 (§ 58.1-520 et seq.) of Chapter 3 of Title 58.1, and other applicable laws of the Commonwealth.

**3.** Notices.

**a.** Victims and witnesses shall be (i) provided with appropriate employer intercession services to ensure that employers of victims and witnesses will cooperate with the criminal justice process in order to minimize an employee's loss of pay and other benefits resulting from court appearances and (ii) advised that pursuant to § 18.2-465.1 it is unlawful for an employer to penalize an employee for appearing in court pursuant to a summons or subpoena.

**b.** Victims shall receive advance notification when practicable from the attorney for the Commonwealth of judicial proceedings relating to their case and shall be notified when practicable of any change in court dates in accordance with § 19.2-265.01 if they have provided their names, current addresses and telephone numbers.

**c.** Victims shall receive notification, if requested, subject to such reasonable procedures as the Attorney General may require pursuant to § 2.2-511, from the Attorney General of the filing and disposition of any appeal or habeas corpus proceeding involving their case.

**d.** Victims shall be notified by the Department of Corrections or a sheriff or jail superintendent (i) in whose custody an escape, change of name, transfer, release or discharge of a prisoner occurs pursuant to the provisions of §§ 53.1-133.02 and 53.1-160 or (ii) when an accused is released on bail, if they have provided their names, current addresses and telephone numbers in writing. Such notification may be provided through the Virginia Statewide VINE (Victim Information and Notification Everyday) System or other similar electronic or automated system.

**e.** Victims shall be advised that, in order to protect their right to receive notices and offer input, all agencies and persons having such duties must have current victim addresses and telephone numbers given by the victims. Victims shall also be advised that any such information given shall be confidential as provided by § 19.2-11.2.

**f.** Victims of sexual assault, as defined in § 19.2-11.5, shall be advised of their rights regarding physical evidence recovery kits as provided in Chapter 1.2 (§ 19.2-11.5 et seq.).

**g.** Upon the victim's request, the victim shall be notified by the Commissioner of Behavioral Health and Developmental Services or his designee of the release of a defendant (i) who was found to be unrestorably incompetent and was committed



pursuant to Article 5 (§ 37.2-814 et seq.) of Chapter 8 of Title 37.2, committed pursuant to Chapter 9 (§ 37.2-900 et seq.) of Title 37.2, or certified pursuant to § 37.2-806 or (ii) who was acquitted by reason of insanity and committed pursuant to § 19.2-182.3.

**4.** Victim input.

**a.** Victims shall be given the opportunity, pursuant to § 19.2-299.1, to prepare a written victim impact statement prior to sentencing of a defendant and may provide information to any individual or agency charged with investigating the social history of a person or preparing a victim impact statement under the provisions of §§ 16.1-273 and 53.1-155 or any other applicable law.

**b.** Victims shall have the right to remain in the courtroom during a criminal trial or proceeding pursuant to the provisions of § 19.2-265.01.

**c.** On motion of the attorney for the Commonwealth, victims shall be given the opportunity, pursuant to § 19.2-295.3, to testify prior to sentencing of a defendant regarding the impact of the offense.

**d.** In a felony case, the attorney for the Commonwealth shall consult with the victim either verbally or in writing (i) to inform the victim of the contents of a proposed plea agreement and (ii) to obtain the victim's views about the disposition of the case, including the victim's views concerning dismissal, pleas, plea negotiations and sentencing. However, nothing in this section shall limit the ability of the attorney for the Commonwealth to exercise his discretion on behalf of the citizens of the Commonwealth in the disposition of any criminal case. The court shall not accept the plea agreement unless it finds that, except for good cause shown, the Commonwealth has complied with clauses (i) and (ii). Good cause shown shall include, but not be limited to, the unavailability of the victim due to incarceration, hospitalization, failure to appear at trial when subpoenaed, change of address without notice, or failure to provide an address or phone number as required in subdivision A 3 b.
The victim shall be notified in accordance with subdivision A 3 b of any proceeding in which the plea agreement will be tendered to the court. The attorney for the Commonwealth may satisfy his responsibility under this provision by consulting with a parent or guardian of an unemancipated minor victim, if the parent or guardian is not a suspect, person of interest, or defendant in the criminal investigation of the proceeding.

The responsibility to consult with the victim under this subdivision shall not confer upon the defendant any substantive or procedural rights and shall not affect the validity of any plea entered by the defendant.

**e.** Whenever the Attorney General represents the Commonwealth in any criminal appeal, he shall consult with the victim in the manner prescribed by subdivision d.

**5.** Courtroom assistance.

**a.** Victims and witnesses shall be informed that their addresses, any telephone numbers, and email addresses may not be disclosed, pursuant to the provisions of §§ 19.2-11.2 and 19.2-269.2, except when necessary for the conduct of the criminal proceeding.



**b.** Victims and witnesses shall be advised that they have the right to the services of an interpreter in accordance with §§ 19.2-164 and 19.2-164.1.

**c.** Victims and witnesses of certain sexual offenses shall be advised that there may be a closed preliminary hearing in accordance with § 18.2-67.8 and, if a victim was 14 years of age or younger on the date of the offense and is 16 or under at the time of the trial, or a witness to the offense is 14 years of age or younger at the time of the trial, that two-way closed-circuit television may be used in the taking of testimony in accordance with § 18.2-67.9.

**6.** Post trial assistance.

**a.** Within 30 days of receipt of a victim's written request after the final trial court proceeding in the case, the attorney for the Commonwealth shall notify the victim in writing, of (i) the disposition of the case, (ii) the crimes of which the defendant was convicted, (iii) the defendant's right to appeal, if known, and (iv) the telephone number of offices to contact in the event of nonpayment of restitution by the defendant.

**b.** If the defendant has been released on bail pending the outcome of an appeal, the agency that had custody of the defendant immediately prior to his release shall notify the victim as soon as practicable that the defendant has been released.

**c.** If the defendant's conviction is overturned, and the attorney for the Commonwealth decides to retry the case or the case is remanded for a new trial, the victim shall be entitled to the same rights as if the first trial did not take place.

**B.** For purposes of this chapter, "victim" means (i) a person who has suffered physical, psychological, or economic harm as a direct result of the commission of (a) a felony, (b) assault and battery in violation of § 18.2-57 or 18.2-57.2, stalking in violation of § 18.2-60.3, a violation of a protective order in violation of § 16.1-253.2 or 18.2-60.4, sexual battery in violation of § 18.2-67.4, attempted sexual battery in violation of § 18.2-67.5, or maiming or driving while intoxicated in violation of § 18.2-51.4 or 18.2-266, or (c) a delinquent act that would be a felony or a misdemeanor violation of any offense enumerated in clause (b) if committed by an adult; (ii) a spouse or child of such a person; (iii) a parent or legal guardian of such a person who is a minor; (iv) for the purposes of subdivision A 4 only, a current or former foster parent or other person who has or has had physical custody of such a person who is a minor, for six months or more or for the majority of the minor's life; or (v) a spouse, parent, sibling, or legal guardian of such a person who is physically or mentally incapacitated or was the victim of a homicide; however, "victim" does not mean a parent, child, spouse, sibling, or legal guardian who commits a felony or other enumerated criminal offense against a victim as defined in clause (i).

**C.** Officials and employees of the judiciary, including court services units, law-enforcement agencies, the Department of Corrections, attorneys for the Commonwealth and public defenders, shall be provided with copies of this chapter by the Department of Criminal Justice Services or a crime victim and witness assistance program. Each agency, officer or employee who has a responsibility or responsibilities to victims under this chapter or other applicable law shall make reasonable efforts to become informed about these



responsibilities and to ensure that victims and witnesses receive such information and services to which they may be entitled under applicable law, provided that no liability or cause of action shall arise from the failure to make such efforts or from the failure of such victims or witnesses to receive any such information or services.

*Va. Code § 19.2-11.01*

1995, c. 687; 1996, c. 546; 1997, c. 691; 1998, c. 485; 1999, cc. 668, 702, 844; 2000, cc. 272, 827; 2001, cc. 410, 530, 549; 2002, cc. 310, 810, 818; 2003, cc. 103, 751, 764; 2006, c. 241; 2007, cc. 94, 109, 423; 2014, c. 230; 2017, c. 535; 2018, cc. 47, 83; 2019, c. 216; 2021, Sp. Sess. I, cc. 344, 345.

Amended by Acts 2023 c. 784,§ 1, eff. 7/1/2023.

Amended by Acts 2023 c. 746,§ 1, eff. 7/1/2023.

Amended by Acts 2023 c. 559,§ 1, eff. 7/1/2023.

Amended by Acts 2021SP1 c. 345,§ 1, eff. 7/1/2021.

Amended by Acts 2021SP1 c. 344,§ 1, eff. 7/1/2021.

Amended by Acts 2019 c. 216, § 1, eff. 7/1/2019.

Amended by Acts 2018 c. 83, § 1, eff. 7/1/2018.

Amended by Acts 2018 c. 47, § 1, eff. 7/1/2018.

Amended by Acts 2017 c. 535, § 1, eff. 7/1/2017.

Amended by Acts 2014 c. 230, § 1, eff. 7/1/2014.

This section is set out more than once due to postponed, multiple, or conflicting amendments.

 casetext