# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**JANE DOE,**

**Plaintiff-Appellant,**

v.

**CENK SIDAR,**

**Defendant-Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

### JOINT APPENDIX - VOLUME II

Walter E. Steimel, Jr.
STEIMEL COUNSELORS LAW
   GROUP PLLC
Suite 400
1455 Pennsylvania Ave., NW
Washington, DC   20004
(202) 271-9258  PH
wes@sclgrp.com

**Counsel for Appellant**

Thomas F. Urban, II
FLETCHER, HEALD
   & HILDRETH, PLC
Suite 1100
1300 North 17th St.
Arlington, VA  22209
(703) 861-5235  PH
urban@fhhlaw.com

**Counsel for Appellant**

John D. Perry
Mariam W. Tadros
REES BROOME, PC
1900 Gallows Rd.
Tysons Corner, VA
   22182
(703) 790-6221 PH
jperry@reesbroome.
   com
mtadros@rees-
broome.com

**Counsel for Appellee**

## Joint Appendix Index
## Volume I

Relevant Docket Entries, Case No. 22-cv-00545-CMH-JFA
(current as of June 24, 2023) ......................................................... JA001

Complaint and Demand for Jury Trial, filed 05-12-2022 .................... JA021

    1-1 – Exhibit 1 – Judge Bellow's June 16,2020 Order,
        Finding Personal Jurisdiction Over Defendant ..................... JA035

    1-2 – Exhibit 2 – Text Messages Between Plaintiff and
        Defendant ............................................................................ JA041

Motion to File Complaint and Proceed Under a Pseudonym,
filed 05-12-2022 ............................................................................. JA059

    4-1 - Proposed Order to Proceed Under a Pseudonym ........... JA057

Order Granting Motion to File Complaint and Proceed under
Pseudonym, filed 05-13-2022 .......................................................... JA063

Answer Filed by Cenk Sidar, filed 05-23-2022 ................................. JA064

Defendant's Motion to Remove Pseudonym Designation,
filed 06-27-2022 ............................................................................. JA072

    19-1 - Proposed Order Granting Defendant's Motion to
        Remove Pseudonym Designation ................................. JA074

Defendant's Memorandum in Support of Motion to Remove
Pseudonym Designation, filed 06-27-2022 ...................................... JA075

    20-1 - Exhibit A - Plaintiff's Responses to Defendant's First
        Set of Interrogatories to Plaintiff ...................................... JA090

Plaintiff's Opposition to Defendant's Motion to Remove Pseudonym
Designation, filed 07-11-2022 ......................................................... JA113

24-1 - Exhibit A - Frontiers in Psychology Article .................... JA125

24-2 - Exhibit B - Asia Times Article ........................................ JA147

24-3 - Proposed Order Denying Motion to Remove
Pseudonym Designation .................................................. JA151

Plaintiff's Opposition to Defendant's Motion to Remove
Pseudonym Designation, filed 07-11-2022 ..................................... JA153

Plaintiff's Motion to Obtain Physical Examination and DNA
Sample from Defendant, filed 07-15-2022 ..................................... JA165

26-1 - Exhibit A - Plaintiff's Notice of Physical Examination
and DNA Sample of Defendant ...................................... JA171

26-2  - Exhibit B - D'Angelo v. Potter ........................................ JA173

26-3  - Exhibit C - McGrath v. Nassau ..................................... JA178

26-4  - Exhibit D - Sidar's Motion for Protective Order ............ JA188

26-5  - Exhibit E - Ashby v. Mortimer ...................................... JA202

26-6  - Proposed Order .......................................................... JA208

Defendant's Reply to Plaintiff's Opposition to Defendant's
Motion to Remove Pseudonym Designation, filed 07-18-2022 ...... JA210

28-1- Exhibit A - Declaration of Cenk Sidar ............................. JA228

28-2- Exhibit B ......................................................................... JA230

28-3 - Exhibit C ....................................................................... JA235

Plaintiff's Notice of Supplemental Evidence, filed 07-25-2022 ......... JA240

31-1 - Exhibit A - Affidavit of Walter Earl Steimel, Jr.
Regarding Pseudonym Reply Allegations .................... JA243

      31-2 - Exhibit B - Affidavit of Plaintiff Jane Doe Regarding
          Defense Motion to Lift Pseudonym................................. JA253


Defendant's Objection to Affidavit of Plaintiff Jane Doe
  Regarding Defense Motion to Lift Pseudonym, filed 07-28-2022 ... JA257

      33-1  - Exhibit A - Email from Tadros to Urban,
          dated 07-20-2022 .......................................................... JA261

      33-2 - Exhibit B - Plaintiff's Responses to Defendant's First
          Set of Interrogatories to Plaintiff .................................... JA264

Defendant's Notice of Supplemental Evidence,
  filed 07-28-2022................................................................... JA287

      34-1 - Exhibit A - Declaration of Cenk Sidar............................ JA289

Minute Entry for proceedings held before District Judge
  Claude M. Hilton Motion, filed 07-29-2022 ...................................... JA319

Transcript of Motion Hearing before Honorable Claude M.
  Hilton, held 07-29-2022 .................................................... JA291

Order Denying Defendant's Motion to Remove Pseudonym,
  filed 07-29-2022 ............................................................... JA320

Defendant's Opposition to Plaintiff's Motion to Obtain Physical
  Examination of and DNA Sample from Defendant,
  filed 07-29-2022 ............................................................... JA321

      37-1 - Exhibit A - Defendant's Objections to Plaintiff's
          Notice of Physical Examination and DNA Sampling
          of Defendant.................................................................. JA341

      37-2 - Proposed Order ........................................................... JA344

Plaintiff's Reply to Defendant's Opposition to Plaintiff's
  Motion to Obtain Physical Examination of DNA Sample from
  Defendant, filed 08-03-2022 ............................................................. JA345

    38-1  - Exhibit A - Partial DNA Timeline ................................... JA352

    38-2  - Exhibit B - Judge Smith's Remarks ............................. JA380

    38-3  - Exhibit C - Exemplar DNA Correspondence
              Between Counsel ......................................................... JA392

    38-4 - Exhibit D - Medovations No Show Fee......................... JA400

    38-5 - Exhibit E - Excerpts of Defendant's Statements to
              London Police.................................................................. JA403

    38-6 - Exhibit F - Defendant Denial of Penetration in
              Interrogatories................................................................. JA413

    38-7 - Exhibit G - Bode Technology Retention ........................ JA426

Minute Entry for proceedings held before Magistrate Judge
  Theresa Carroll, filed 08-05-2022 .................................................... JA430

Order Granting Plaintiff's Motion to Obtain Physical
  Evidence and DNA from Defendant, filed 08-05-2022.................... JA440

Transcript of Motion Hearing before Honorable Theresa
  Carroll Buchanan, held 08-05-2022................................................. JA431

Defendant's Memorandum in Support of Objection to
  Buchanan's August 5, 2022 Order, filed 08-19-2022 ..................... JA442

    41-1 - Proposed Order ............................................................. JA462

Defendant's Objection to Buchanan's August 5, 2022 Order,
  filed 08-19-2022 ............................................................................... JA463

Corrected Memorandum in Support of Defendant's Objection
  to Buchanan's August 5, 2022 Order, filed 08-19-2022 ................. JA465

44-1 - Proposed Order ........................................................... JA485

Defendant's Motion to Stay Buchanan's August 5, 2022
 Order, filed 08-28-2022 .................................................... JA486

Defendant's Memorandum in Support of Motion to Stay, filed
 08-28-2022 ...................................................................... JA488

47-1 - Proposed Order ........................................................... JA494

Defendant's Motion to Continue Hearing, filed 09-02-2022 ............. JA495

49-1 - Exhibit A - Memorandum in Support oof Motion to
    Continue Hearing .......................................................... JA497

49-2  - Exhibit B - Notice of Waiver of Oral Argument ............. JA499

49-3 - Proposed Order .......................................................... JA501

# Joint Appendix Index
## Volume II

Plaintiff's Opposition to Defendant's Motion to Continue
Hearing, filed 09-02-2022 ................................................................ JA502

Plaintiff's Opposition to Defendant's Objection to Buchanan's
August 5, 2022 Order, filed 09-02-2022 ......................................... JA505

    51-1  - Exhibit A - Comparison of Defendant's
                   Memorandum.................................................... JA516

    51-2  - Exhibit B - Discussions Defendant and London
                   Police from July 2020..................................... JA563

    51-3  - Exhibit C - Plaintiff's Email to Defendant's Counsel ..... JA568

    51-4  - Exhibit D - Invoice from J & M Paternity ...................... JA573

    51-5  - Exhibit E - Technical Information for Bode
                   Technologies and J & M Paternity ................................. JA575

    51-6 - Proposed Order ........................................................... JA589

Defendant's Reply to Plaintiff's Opposition for Motion to
Continue Hearing, filed 09-06-2022 ............................................... JA591

    52-1  - Exhibit A - Email from Tadros to Urban
                   dated 08-26-2022 ........................................... JA594

    52-2  - Exhibit B - Email from Tadros to Steimel
                   dated 08-19-2022........................................... JA598

Plaintiff's Opposition to Defendant's Motion to Stay
Buchanan's August 5, 2022 Order, filed 09-07-2022 .................... JA601

Defendant's Reply to Plaintiff's Opposition to Defendant's
Objection to Buchanan's August 5, 2022
Order, filed 09-08-2022 ................................................................. JA603

54-1- Exhibit A - Email from Tadros to Steimel
dated 09-19-2022 .......................................................... JA611

Order Affirming Buchanan's August 5, 2022 Order,
filed 09-12-2022................................................................ JA614

Defendant's Notice of Appeal, filed 10-13-2022............................... JA615

Plaintiff's Motion for Sanctions and to Further Compel
Compliance, filed 11-23-2022........................................... JA617

63-1 - Proposed Order ........................................... JA621

Plaintiff's Memorandum Supporting Motion for Sanctions and
Further Compel Compliance, filed 11-23-2022............................... JA623

64-1 - Exhibit A - Sidar Responses to Requests for
Admissions ...................................................... JA634

64-2- Exhibit B - Partial DNA Timeline ................................... JA638

64-3 - Exhibit C - Correspondence Regarding Failure to
Comply with Order ........................................... JA641

Opposition to Plaintiff's Motion for Sanctions and Further
Compel Compliance, filed 11-30-2022 ........................................... JA645

65-1 - Proposed Order ........................................... JA656

65-2 - Exhibit A - Circuit Court Order...................................... JA657

65-3 - Exhibit B - Transcript of Circuit Court
November 19, 2021 Hearing............................................. JA660

65-4  - Exhibit C - Email from Tadros to Steimel
dated 08-19-2022 ........................................... JA679

65-5  - Exhibit D - Email from Tadros to Popplewell
dated 09-30-2022........................................... JA682

65-6 - Exhibit E - Declaration of Mariam W. Trados ............... JA685

65-7 - Exhibit F - Plaintiff's Responses to Defendant's First
Set of Requests for Documents to Plaintiff...................... JA686

65-8 - Exhibit G - Plaintiff's Responses to Defendant
Cenk Sidar's First Set for Production of Documents
to Plaintiff ...................................................................... JA693

Plaintiff's Reply to Defendnant's Opposition of Motion for
Sanctions and Further Compel Compliance, filed 12-01-2022 ....... JA708

67-1 - Exhibit A - Circuit Court Order dated 02-21-2020.......... JA712

Minute Entry for proceedings held before Magistrate Judge
John F. Anderson, filed 12-02-2022 ................................................ JA735

Transcript of Motion Hearing before Honorable John F.
Anderson, 12-02-2022..................................................................... JA713

Order Granting Motion to Compel, filed 12-02-2022 ........................ JA736

Plaintiff's Second Motion for Sanctions and to Further
Compel Compliance with August 5, 2022 Order, filed 12-08-2022 ... JA738

74-1- Proposed Order ............................................................. JA741

Plaintiff's Memorandum Supporting Second Motion for
Sanctions and to Further Compel Compliance with
August 5, 2022 Order, filed 12-08-2022 ........................................ JA743

75-2  - Exhibit A - Notice for DNA Sampling............................ JA752

75-2 - Exhibit B - Objections .................................................... JA755

75-3 - Exhibit C - Email from Urban to Tadros
dated 12-06-2022............................................................. JA760

Order Denying Second Motion to Compel and to Further Compel
Compliance with August 5, 2022 Order, filed 12-12-2022 .............. JA763

Minute Entry for proceedings held before District Judge
   Claude M. Hilton, filed 12-15-2022 ................................................. JA780

Transcript of Motion Hearing before Honorable Claude M.
   Hilton, held 12-15-2022 .................................................................... JA766

Order of Default Judgement Against Defendant as to Liability,
   filed 12-16-2022................................................................................. JA781

Voluntary Dismissal of Defendant's Appeal, filed 12-16-2022 ......... JA783

Plaintiff's Rule 72(a) Objection to Order Denying Second
   Motion to Compel, filed 12-23-2022................................................. JA784

      101-1 - Exhibit A - Transcript of September 4, 2020 Hearing.. JA795

      101-2 - Proposed Order .......................................................... JA806

Defendant's Renewed Motion to Remove Pseudonym
   Designation, filed 12-30-2022.......................................................... JA808

      104-1 - Exhibit A - Memorandum in Support of Motion ........... JA810

      104-2 - Exhibit B - Notice of Hearing...................................... JA837

      104-3 - Proposed Order .......................................................... JA839

Defendant's Opposition to Plaintiff's Objection to
   December 12, 2022 Order, filed 01-11-2023 ................................... JA840

      107-1 - Proposed Order .......................................................... JA847

Plaintiff's Opposition to Defendant's Renewed Motion to Remove
   Pseudonym Designation, filed 01-11-2023 ..................................... JA848

      108-1 - Exhibit A - Affidavit of Plaintiff Jane Doe..................... JA860

      108-2 - Proposed Order .......................................................... JA864

Plaintiff's Reply to Defendant's Opposition to Rule 72(a)
   Objection filed 01-11-2023 ............................................................. JA866

      109-1 - Exhibit A - Defendant's Objections to Plaintiff's
         Notice of Physical Examination and DNA Sampling
         Of Defendant .................................................................... JA870

Defendant's Reply to Plaintiff's Opposition to Defendant's
   Renewed Motion to Remove Pseudonym Designation, filed
   01-12-2023 ...................................................................................... JA874

      111-1 - Exhibit A – Declaration of Cenk Sidar ......................... JA892

      111-2 - Exhibit B – Correspondence to Chief Administrative
         Officer of Enquire AI, Inc. dated May 5, 2022 ................... JA894

      111-3 - Exhibit C - Fairfax Circuit Court, Court's Public
         Access Network Information Package .......................... JA899

Order Overruling Plaintiff's Objection to December 12, 2022
   Order, filed 01-8-2023 .................................................................... JA904

Plaintiff's Notice of Appeal, filed 02-08-2023 ................................... JA905

Plaintiff's Motion to Stay Proceedings, filed 02-15-2023 ................. JA907

      145-1 - Proposed Order ......................................................... JA909

Plaintiff's Memorandum Supporting Motion to Stay,
    filed 02-15-2023 ...................................................................... JA911

Order Granting Defendant's Renewed Motion to Remove Pseudonym
   Designation, filed 02-16-2023 ......................................................... JA920

Plaintiff's Notice of Appeal, filed 02-16-2023 ................................... JA924

Plaintiff's Emergency Motion to Stay Proceedings,
    filed 02-16-2023 .............................................................................. JA926

      155-1 - Proposed Order ......................................................... JA928

Plaintiff's Memorandum In Support of Emergency Motion to
Stay, filed 02-16-2023 .................................................................. JA930

Order Granting Emergency Motion to Stay Proceeding,
filed 02-24-2023................................................................................ JA937

Order for Transcript, filed 03-06-2023 .............................................. JA938

Transcript Order Acknowledgment, filed 03-07-2023 ........................ JA939

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE HEARING**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, opposes Defendant's

Motion to Continue Hearing ("Continuance"). *ECF No. 49.*

Defendant's assertion that "Plaintiff's counsel has not objected" is inaccurate. Plaintiff's

counsel has not had time to respond, and has not responded, to Defendant's request for a

continuance of the hearing set for Friday, September 9, 2022. Plaintiff has been occupied

opposing Defendant's Objection to Judge Buchanan's DNA Order (due today), opposing

Defendant's late-filed Motion to Stay Judge Buchanan's DNA Order (trying to complete today),

appearing for a DNA collection ordered by Judge Buchanan (for which Defendant was a no-

show), and preparing a Motion to Compel and Request for Sanctions for Defendant's failure to

appear for a DNA buccal swab collection as required by the still outstanding and valid Order of

Judge Buchanan that has not been stayed.[1] Further, Defendant's request was the second item in

---

[1]    In addition, Mr. Urban spent the first half of the week in New York City taking his son to
college while Mr. Steimel has been in Texas since Tuesday taking care of his ill mother.

an email informing Plaintiff's counsel that Defendant may defy Judge Buchanan's Order and not appear for the Court ordered DNA buccal swab collection.

Plaintiff opposes Defendant's request. Defendant picked the hearing date upon conferring with Plaintiff, and Plaintiff's counsel arranged their schedules around that date. Plaintiff's counsel Walter Steimel postponed his plans to visit his ailing 93-year-old mother to attend the DNA collection (for which Defendant did not show) and has purchased a ticket to cut that trip short to return for the September 9th hearing. Defendant's counsel has provided no specific information to justify further disrupting Plaintiff's counsel's schedules and plans other than for her own convenience. Defendant's Counsel has not explained how her plans changed from the time that she set this hearing to the present day. Further, neither Plaintiff's counsel is available on the 16th and the earliest date counsel is available for a hearing is September 23rd. Plaintiff opposes a continuance as Defendant's motions and tactics are delaying Plaintiff's ability to timely collect evidence needed to prepare her case and for trial and causing Plaintiff's counsel to have to incur additional unnecessary expenses.

**VI. Conclusion.**

WHEREFORE, Plaintiff Jane Doe moves the Court to deny Defendant's Motion to Continue Hearing for the reasons set forth above and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100

2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE HEARING

Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of September 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE HEARING

JA504

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
| **A Domiciliary of the** | ) | |
| **Commonwealth of Virginia** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE
JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING
MOTION TO COMPEL DNA**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, opposes Defendant's

Objection to Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order Regarding

Motion to Compel DNA ("Objection"). *ECF No. 43*.

Defendant's Objection (*ECF No. 43*) and Corrected Memorandum (*ECF No. 44*) add no

new evidence or arguments to his Opposition (*ECF No. 37*), or arguments made before Judge

Buchanan. Defendant's Objection simply reiterates his earlier arguments and cases which Judge

Buchanan already found to be inapplicable or non-persuasive. Further, Defendant's Objection is

moot as he failed to timely request a Stay of Judge Buchanan's Order ("Order")(*ECF No. 40*)

and has since violated the Order by failing to appear for DNA collection at the time and place set

in the Order.

**I.     Opposition Requirements are not Met**

Defendant's Objection (*ECF No. 43*) and Corrected Memorandum (*ECF No. 44*) fall far

short of the long-standing requirements for an objection to a magistrate judge's order. The

Objection contains no specificity and is only a general objection, and the Corrected

Memorandum is a largely verbatim copy of Defendant's Opposition. Defendant's Objection must

be denied based on its failure to meet Rule 72 requirements.

An appeal of a Magistrate's Order under Rule 72 may not simply repeat prior arguments,

it must identify specific errors in the magistrate's ruling. In *O'Connell v. Colvin*, the court stated

"[g]eneral objections to a magistrate judge's report and recommendation, reiterating arguments

already presented, lack the specificity required by Rule 72 and have the same effect as a failure

to object. *Veney*, 539 F. Supp. 2d at 845. This Court will thus not address those objections that

merely repeat arguments previously addressed by the magistrate judge. *Id.*" *O'Connell v. Colvin*,

No. 6:13-cv-00035, at *7-8 (W.D. Va. Sep. 30, 2014).

The facts in *Veney*, cited in *O'Connell*, are almost identical to the instant facts. The *Veney*

court observed that "The document filed by Plaintiff's counsel captioned "Plaintiff's Objections

to the Magistrate Judge's Report and Recommendation" is in fact an almost verbatim copy of the

"Argument" section of Plaintiff's previously filed summary judgment brief." *Veney v. Astrue*,

539 F. Supp. 2d 841, 844 (W.D. Va. 2008). The court rejected Plaintiff's attempt to relitigate the

same issues via Objection, clearly stating the reason for the rule and providing a plethora of

examples of its application. We provide the complete excerpt of the court's reasoning as it

directly applies to Defendant's Objection.

> To the extent that Plaintiff can be said to have stated an objection to the Report at
> all, it is a general objection to the entirety of the Report. This despite clear statutory
> and judicial statements mandating specific objections, such as (1) "a party may
> serve and file specific, written objections to the proposed findings and
> recommendations," Fed.R.Civ.P. 72(b) (emphasis added); (2) "[a] judge of the
> court shall make a de novo determination of those portions of the report or specified
> proposed findings or recommendations to which objection is made," 28 U.S.C. §
> 636(b)(1)(C) (emphasis added); and (3) "[a]ny adjudication of fact or conclusion of
> law rendered [in the Report] not specifically objected to . . . may become conclusive

<div align="center">2</div>

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) . . . may be construed by any reviewing court as a waiver of such objection" (Report 8 (emphasis added)).

A general objection such as that offered by Plaintiff fails to satisfy the requirements of Rule 72(b) and 28 U.S.C. § 636(b)(1)(C). *See United States v. Midgette*, 478 F.3d 616, 621-22 (4th Cir. 2007) ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized. . . ."); *Page v. Lee*, 337 F.3d 411, 416 n. 3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court. . . ."). Accordingly, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505, 509 (6th Cir. 1991); *see also Hyatt v. Town of Lake Lure*, 314 F. Supp.2d 562, 580 (W.D.N.C. 2003). As the Fourth Circuit has explained:

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Midgette,* 478 F.3d at 622 (*further citations omitted*).

*Veney*, 539 F. Supp. 2d at 845.

Defendant's Objection contains no specificity but is general in nature. Defendant's

Corrected Memorandum advances no new arguments, but simply reiterates the arguments made

before Judge Buchanan. To demonstrate this point, Plaintiff provides a redline of Defendants

Opposition (*ECF No. 37*) to his Corrected Memorandum (*ECF. No. 44*). *See* Exhibit A.

Defendant's arguments are mostly word-for-word verbatim regurgitations of the arguments made

before Judge Buchanan. The differences between the documents consist of (i) edits to refer to the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

Order; (ii) edits to add references to Plaintiff's Reply (*ECF No. 38*); (iii) delete arguments related to an earlier meet and confer issue; (iv) add a reference to Rule 72 and include a standard of review statement (which states an incorrect standard of review); and (v) slightly rearrange prior arguments. Defendant's Objection is not just a reiteration of prior arguments, it is largely a cut-and-paste of his prior arguments.

At most Defendant's Objection adds further detail to his prior arguments concerning the availability and contents of the rape kit and qualifications of the medical personnel who were appointed to collect the buccal swab. Even these arguments were presented to Judge Buchanan, resulting in an Order specifying the medical personnel who would collect the buccal swab and who would analyze the DNA. Defendant's arguments address whether and how Plaintiff will present admissible evidence, issues not before the court at this time as the evidence has not yet been collected or analyzed.

As Defendant raises no new arguments.  His Objection constitutes a failure to object and should be denied.

## II.    Standard of Review

Defendant misstates the correct standard of review. Although the objections to legal rulings are subject to a *de novo* review, the standard for this Court's review of factual determinations is whether the magistrate's finding is "clearly erroneous and contrary to law." *O'Connell at 8*. This standard was clearly set forth by this court in *Carlucci v. Han*

> Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision. Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co*., 333 U.S. 364, 395 (1948); *see also Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985). The leading treatise

4

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

JA508

on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify." 12 Wright & Miller, *Federal Practice & Procedure* § 3069 (2d ed. 1997). As a non-dispositive pre-trial matter, the ***review of a magistrate's granting of Plaintiff's Motion for leave to File Second Amended Complaint is properly governed by the "clearly erroneous or contrary to law" standard of review***. *Everett v. Cherry*, 671 F. Supp. 2d 819, 820 (E.D.Va. 2009) *aff'd sub nom. Everett v. Prison Health Services*, 412 F. App'x 604 (4th Cir. 2011).

*Carlucci v. Han*, 1:12cv451 (JCC/TCB), at *5-6 (E.D. Va. Apr. 16, 2013)(emphasis added).

Judge Buchanan's decision is well-supported by the pleadings and Defendant's Opposition does not meet the extreme level of difficulty to overturn the Order or provide any new or reasonable justification for reversal of the Order,

## III.    Objection Fails on the Merits

Defendant's Objection fails on the merits, as well. This is a rape case. The Defendant raped the Plaintiff. Even though he admitted raping Plaintiff in multiple text messages, attached to the Complaint (*ECF No. 1-2*), telling her "at least it happened with her," he continues to deny it in his discovery responses, as set forth in Plaintiff's Motion (*ECF No. 26*). The fact that Defendant raped Plaintiff is THE controversy and matching his DNA to the male sperm samples found on Plaintiff's clothing and in her high vaginal swabs taken at The Havens would prove penetration – which he denies.

Defendant's arguments belie a serious lack of candor. Defendant would have this Court believe Plaintiff has no point of comparison for the DNA in a buccal swab[1] from Defendant. Contrary to his implication that there is no point to Plaintiff's discovery request, *both he and his UK attorneys* have known *since at least as early as July of 2020* that male sperm DNA was found in Plaintiff's high vaginal swab.  Defendant further argues that DNA would be present on

---

[1]    A "buccal swab" is a fairly non-invasive means of collecting DNA from the cells on the inside of a person's cheek with a cotton swab.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

Plaintiff's clothes because she stayed with him for two days prior to the rape, implying that the DNA at issue is skin tissue, despite the fact that he knows that it is sperm DNA.

During discovery in Fairfax County Circuit Court case, Defendant provided email strings between Defendant and the London Police. To ensure they become part of the record in this case, Plaintiff provided copies of discussions between Defendant and the London Police from July 2020 as part of her August 11, 2022, document production. *See*, Exhibit B, Bates Doe Doc Prod 000124-7. At 10:14 a.m. on July 28, 2020, Detective Juliette Long of the London Metropolitan Police told Mr. Nicholas Dent of Kingsley Napoli that "[t]he lab have [sic] traced mail DNA within the high vaginal swabs. It is this we wish to compare against your clients DNA." Exh. B, Doe Doc Prod 126. In response to a follow-up inquiry Detective Long clarified on July 28 at 11:58 a.m. "I can clarify that the reason for the DNA sample from Mr. Sidar, is to prove or disprove penetration. A comparison of Mr. Sidar's DNA will be compared to the vaginal swabs taken from the victim." Exh. B, Doe Doc Prod 127. Defendant pretends that the identity of the "rape kit" is unknown – it is clear from correspondence from the London Police that both Defendant, and now this Court, know exactly what the "rape kit" consists of. It consists of the underclothes and high vaginal swab of Plaintiff besotted with Defendant's sperm.

To reiterate, male DNA was found inside Defendant in the high vaginal swab taken by The Havens. Defendant has known this since July of 2020 and provided these documents to Plaintiff on August 28, 2020. Plaintiff submits the only way male sperm DNA would be found in a high vaginal swab is through penetration. Simply staying in a separate room in an Air BnB would not lead to Defendant's sperm miraculously finding its way deep inside Plaintiff. It is incredulous that Defendant would claim otherwise. Defendant's lack of candor alone justifies denial of his Objection, if not sanctions against both Defendant and defense counsel.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

Defendant's lack of candor is nothing new in the history of this case. Defendant appealed an attorneys' fee award to Plaintiff resulting from Fairfax County Judge Bellows, whofound no merit to or support for Defendant's prior claims that Defendant was not subject to jurisdiction in Virginia. During the writ panel argument before the Virginia Supreme Court, yesterday, September 1, 2022, Justice Wesley Russell identified two falsehoods relevant to Defendant's challenge to jurisdiction in the Commonwealth (Defendant had denied he paid taxes in Virginia in 2017 and denied that his solely owned LLC was active in Virginia when the complaint was filed there) that Defendant made in his Motion to Dismiss before the Fairfax County Circuit Court. Defendant's counsel admitted that both statements were false. This is just the tip of the iceberg of false statements that Defendant has made in court filings and under penalty of perjury in this litigation.

Defendant's Objection continues his penchant for bending and breaking the truth. Clearly, comparing the male sperm DNA the London Police lab recovered from the rape kit to a DNA buccal swab from Defendant would establish that he penetrated her, contrary to his denials in his discovery responses and settle this essential portion of the case or controversy.

## IV.   Mischaracterizations

Defendant's Objection continues a litany of gross and irrelevant mischaracterizations of matters before the Fairfax County Circuit Court. Defendant was sanctioned for violation of discovery orders at least twice, and Plaintiff obtained attorneys' fee awards from Defendant at least three times. Defendant failed to appear for court ordered DNA testing and ignored several orders of the court. Defendant has engaged, and continues to engage, in self-help for court orders with which he disagrees. In contrast, in not a single instance was Plaintiff compel to produce any

7

discovery, sanctioned, or required to pay attorneys' fees to Defendant. Plaintiff asks this Court to order Defendant to cease and desist from his pejorative and irrelevant misrepresentations.

Defendant also mischaracterizes the DNA sample that was lost by the London Police. The London Police collected a buccal swab sample from Defendant while conducting a criminal investigation of him due to his raping Plaintiff. The London Police inadvertently lost that buccal swab sample, and Defendant refused to return to London to provide another one. The rape kit sample containing male sperm DNA on Plaintiff's clothes and in her upper vaginal swab, ***has not been lost*** and was profiled. Defendant's reference to a lost sample is a red herring with no relevance here; it has only frustrated the criminal investigation by the London Police.

**V.     Defendant's Baseless Aspersions Cast Upon Medical Professionals**

Defendant's challenges to the qualifications of the medical professionals directed to collect and analyze Defendant's buccal swab sample are likewise baseless, and a rehash of prior arguments. Out of an abundance of caution Plaintiff provides this Court with further background on Bode Technologies (Joan Gullickson is an employee at Bode) and J and M Paternity. Bode is a premier national DNA and forensic testing laboratory. J and M Paternity provides buccal swab collection and a wide variety of DNA and forensic support services for attorneys and legal process. A brief review of the web page screen shots for both entities attached at Exhibit E demonstrates that both are suitably licensed medical professionals, experienced in DNA and forensic examination and providing evidence in court cases. Defendant has proffered no evidence to the contrary. *See*, Exh. E.

**VI.     Defendant's Objections are Moot**

While Defendant filed his Objection within fourteen (14) days of Judge Buchanan's Order, he failed to request a stay of that order until Sunday afternoon, August 28, 2022, twenty-

three (23) days after this Court's Order (*ECF No. 40*), and only hours before he defied the Court's Order by failing to appear for DNA collection. Judge Buchanan had ordered DNA collection for Monday, August 29, 2022 with a clear instruction that Defendant should attend the collection or face sanctions, including a potential default judgment.[2]  Defendant decided to ignore this warning despite the fact that his late-filed Motion for Stay has not yet been briefed, much less decided.  Defendant had every opportunity to file his Motion to Stay earlier or even request a later collection date from Judge Buchanan during the hearing.

Plaintiff's counsel and Melanie with J and M Paternity were at Mr. Urban's office at 9:45 a.m. on Monday, August 29, 2022, and stayed until 11 a.m. Plaintiff sent an email notifying Defendant's counsel that they were at the office and waiting for Defendant to arrive. Melanie, from J and M, had to drive almost 1.5 hours to get to the office in time for the DNA collection.

Defendant did not appear for that collection. Plaintiff's counsel and the Court-ordered medical collection team waited for Defendant for over an hour. Plaintiff sent an email to Defendant's counsel reminding Defendant of his obligation under the Order. *See* Exhibit C. Even though Defendant's counsel had warned Plaintiff that Defendant might ignore the Court's Order, with no stay in place, Plaintiff and medical personnel had to arrive and wait for Defendant to attend the sample collection. Defendant is now in violation of a standing Court order. Plaintiff will have to reimburse J and M for the non-show fee (*see*, Invoice, Exh. D), the second time she has been assessed expenses for Defendant's failure to appear for DNA collection in violation of a court order.

---

[2]     This admonition was likely made due to Defendant's failure to show up for previous DNA collections.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

By failing to timely seek a stay and undertake the self-help mechanism of defiance of an order, the Defendant should be deemed to have waived his right to oppose Judge Buchanan's order. Judge Buchanan admonished Defendant, from the bench, that she would order sanctions, including a default finding on liability, for failing to comply with the Order. Plaintiff believes that Defendant should be sanctioned for violating the Order without a stay. Plaintiff further believes Defendant's counsel could be sanctioned if she directed her client to violate the Order.

**VII.  Failure to Order Transcript**

Fed. R. Civ. P. 72(b)(2) provides "[u]nless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient." It does not appear that Defendant has ordered a transcript and provided a copy for this Court's review.  Therefore, Defendant's Objection does not comply with the Rules and should be denied.

**VIII.  Conclusion.**

WHEREFORE, Plaintiff Jane Doe moves the Court to deny Defendant's Objections to Judge Buchanan's Order and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

JA514

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of September 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA

EXHIBIT A

REDLINE OF DEFENDANTS OPPOSITION (*ECF NO. 37*) TO HIS CORRECTED
MEMORANDUM (*ECF. NO. 44*)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR | : |
| | : |
|     Defendant. | : |

_____

**CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANT'S ~~OPPOSITION~~OBJECTION TO ~~PLAINTIFF'S~~MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO ~~OBTAIN PHYSICAL~~ ~~EXAMINATION OF AND~~COMPEL DNA ~~SAMPLE FROM DEFENDANT~~**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following

~~Opposition~~Memorandum in Support of Defendant's Objection to ~~Plaintiff Jane Doe's ("Plaintiff")~~Magistrate Judge Theresa Carroll Buchanan's[1] August 5, 2022, Order ("Order") Regarding Motion to ~~Obtain Physical Examination of and~~ Compel DNA ~~Sample~~.

## I.    INTRODUCTION.

This case arises from an alleged assault that occurred in London in 2017. Plaintiff Jane Doe ("Plaintiff") asserts that Defendant ~~("Motion").~~sexually assaulted her. She claims that she went to the Havens, a sexual assault referral center and that the Havens created a rape kit. After she went to the Havens, the Defendant gave a DNA sample to the London Police, which the London Police promptly lost. In an effort to obtain DNA to send to the London Police, the Plaintiff has filed this action and issued a subpoena for DNA to the Defendant. Plaintiff, however, has failed to provide a scintilla of evidence demonstrating that: (1) either the Havens or the London Police have Plaintiff's rape kit and the alleged clothing, (2) the rape kit has not been degraded and that it contains enough DNA for testing, and (3) the tests performed by Plaintiff, in the United States, can be validly compared to the rape kit located at the Havens or with the London Police. As Plaintiff has failed to establish these basic facts, and because any results are likely to be inadmissible for the reasons outlined below, the underlying Motion fails to meet the "good cause" requirement of Rule 35. Further, the Notice of Physical Examination and DNA Sampling of Defendant ("Notice") (ECF No. 26-1) contains numerous facts and, therefore, does not comply with the requirements of Rule 35.

~~Plaintiff's Motion should be denied, as a threshold matter, on the grounds that she failed to comply with this Court's Local Rules, including the requirement of a meaningful meet-and-confer. Additionally, Plaintiff fails to demonstrate that a DNA sample from Defendant is relevant to any party's claim or defense because Plaintiff fails to explain how she intends to compare a~~

1
JA518

~~DNA sample compelled from Defendant to anything. Plaintiff also falls far short of her burden of establishing a prima facie showing of a reasonable possibility of a match between the alleged DNA sample from her and one from Defendant. Additionally, Plaintiff's grossly overbroad and vague request fails to comply with Rule 35 by omitting, *inter alia*, the manner, conditions, and scope of the examination, as well as the person(s) who will perform it. In sum, Plaintiff is making a request for unprecedented "relief" with little more than the unverified general allegations in her complaint as support. As such, her request should be denied and Defendant should be granted a protective order.~~

## ~~I.~~**II.** **BACKGROUND**.

On May 12, 2022, Plaintiff ~~Jane Doe~~ filed a Complaint against Defendant for assault (Count I), battery (Count II), and intentional infliction of emotional distress (Count III) resulting from an ~~-~~

---

[1] On August 15, 2022, this case was reassigned to Magistrate Judge John F. Anderson.

alleged rape. On July 15, 2022, Plaintiff served to Defendant Plaintiff's Notice of Physical Examination and DNA Sampling of Defendant ("Notice") (ECF No. 26-1). The Notice providesprovided that Plaintiff "will conduct an [sic] Physical Examination of Defendant . . . which will include the taking of a sample of Defendant's Deoxyribonucleic acid (DNA)." ECF No. 26-1 at

1. The Notice iswas "for the taking of samples of Defendant's DNA for the purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26-1 p. 1.

Plaintiff continued and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26-1 at 1.

Plaintiff continues that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing" and that "Defendant will present himself for the taking of these samples at the office of Plaintiff's Counsel....... " ECF No. 26-1 at 1. The Notice provides provided that "[t]he inspection and taking of the DNA sample will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by The Havens." ECF No. 26-1 at p. 1 (emphasis added). Plaintiff asserts that "[t]his information will further be relevant to Plaintiff's claim for punitive damages." ECF No. 26-1 at

ECF No. 1. As detailed in Part II.B, *infra*, Plaintiff failed to make any meaningful effort to meet and confer regarding the compulsion of a DNA sample, essentially just requesting Defendant's counsel's availability for a hearing; the first of the two dates offered would not have even permitted a full briefing schedule.

A 26-1 p. 1.

On July 15, 2022, a few hours after serving her Notice, also on July 15, 2022, Plaintiff filed her Motion to Obtain Physical Examination of and DNA Sample from Defendant ("Motion"). 1"). In her Motion, "Plaintiff seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit" and asserts that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." ECF No. 26 ¶ 2. Plaintiff reiterates reiterated that she "seeks to have Defendant present himself for the taking of these samples at the office of Plaintiff's Counsel" and that "[t]he inspection will be for the purpose,

2

JA521

*among other things*, of determining whether

and that "[t]he inspection will be for the purpose, *among other things*, of determining whether

---

[1] Plaintiff failed once again to comply with the local rules which require a separate motion and written brief. *See* Local Civ. R. 7(F)(1); Local Civ. R. 37(A) (noting that a motion to compel "must be accompanied by a brief").

JA522

Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by the Havens." ECF No. 26 ¶¶ 3-4 (emphasis added)..

On July 29, 2022, Defendant filed his opposition ("Opposition") to Plaintiff's Motion (ECF No. 37). In accordance with Local Rule 26(C), simultaneously with thishis Opposition, Defendant servesserved his objections to the Notice. See **Exhibit A.** (ECF No. 37-1). Plaintiff filed a reply to Defendant's Objections to Plaintiff's NoticeOpposition on August 3, 2022 (ECF No. 38). of Physical Examination and DNA Sampling of Defendant.

Counsel for the parties appeared before Magistrate Judge Theresa Carroll Buchanan on August 5, 2022. Judge Buchanan granted Plaintiff's motion and entered the corresponding Order. The Order mandates that Defendant "appear on Monday, August 29, 2022, at 10:00 a.m. at the office of Plaintiff's counsel . . . and shall submit to the employee(s) of J and M Paternity Service, LLC., for the buccal swab samples....... " ECF No. 40 p. 1. The Order continues that "J and M Paternity Service, LLC shall transfer the samples to Eurofins Europe/London Police and Bode Technologies for testing . . . ." ECF No. 40 p. 1. There was no evidence presented that Eurofins Europe or the London Police had a valid rape kit with a testable sample.

Defendant now files his objection to the Order because, *inter alia*, Plaintiff failed to meet her burden to establish the "in controversy" and "good cause" requirements imposed by Rule 35, which are not addressed in the Order. Additionally, the Order does not provide that Plaintiff meets the good cause and in controversy requirements (nor can it) given that there was no evidence presented that there is a valid DNA sample against which to test Defendant's DNA. Further, even if the sample could be tested, the results are likely inadmissible in this Court.

Additionally, the Order does not specify the conditions and scope of the examination, that the examination must be conducted by a medical professional, nor does it designate a proper

"place" for such examination. Therefore, Defendant respectfully requests that this Court sustain

his objection and issue a protective order prohibiting Plaintiff from continuing to seek a

DNA sample and/or physical examination of Defendant.

**II.III.  ARGUMENT.**

    **A.    Legal Standard for Rule 72 Objection.**

    Pursuant to Federal Rule of Civil Procedure 72, a party has fourteen days to object to the

order of a magistrate judge regarding a pretrial matter that is not dispositive of a party's claim or

defense. *See* Fed. R. Civ. P. 72(a). Rule 72(a) provides that a district judge must "modify or set

aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

A ruling is clearly erroneous "when although there is evidence to support it, the reviewing court

on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *CertusView Techs., LLC v. S&N Locating Servs., LLC*, 107 F.Supp.3d 500, 504

(E.D. Va. 2015). "In practical terms, the 'contrary to law' standard is equivalent to *de novo*

review." *Riddick v. Norfolk S. Ry. Co.*, 2022 WL 2614877, at *1 (E.D. Va. May 6, 2022).

    **A.B.   The Court Erred in Granting Plaintiff's Motion, Despite Not Determining that Plaintiff Had Established the Good Cause and In Controversy Requirements.**

Rule 35 provides that a court "may order a party whose mental or physical condition—

including blood group—is in controversy to submit to a physical or mental examination by a

suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). An order "may be made only

on motion for good cause." Fed. R. Civ. P. 35(a)(2)(A). The Fourth Circuit has held that "[u]nder

Rule 35, the invasion of the individual's privacy by a physical or mental examination is so

serious that a strict standard of good cause, supervised by the district courts, is manifestly

appropriate." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir.

1962); *see also Petition of Trinidad Corp.*, 238 F. Supp. 928, 936 (E.D. Va. 1965) (relying on the

Case 1:22-cv-00545-CMH-JFA Document 51-1 Filed 09/02/22 Page 120 of 47 PageID#

United States Supreme Court opinion *Schlagenhauf v. Holder* and stating "[i]t is plain" that the good cause requirement under Rule 35 "is not to be treated lightly").

The United States Supreme Court has discussed the "in controversy" and "good cause" requirements applicable to Rule 35, stating that these requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Therefore, the Court noted,

Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations ~~had~~has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Id.* at 118-19. "[T]he movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* at 119. ~~Furthermore, even if a party shows good cause, the court still has discretion as to whether to order an examination under Rule 35~~Plaintiff established neither the "good cause" nor "in controversy" requirements. Importantly, the Order does not specify that Plaintiff established either of these, yet her Motion was granted.[2] ~~See, e.g., Curtis v. Express, Inc., 868 F. Supp. 467, 468 (N.D.N.Y. 1994) ("Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination."); Great W. Life Assurance Co. v. Levithan, 153 F.R.D. 74, 76 (E.D. Pa. 1994) ("Thus, an order for the physical or mental examination of a party is not granted as of right and when the matter is contested, it is addressed to the sound discretion of the trial court."); Peters v. Nelson, 153 F.R.D. 635, 638 (N.D. Iowa 1994) ("Rather, even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court."); Stinchcomb v. U.S., 132 F.R.D. 29, 30 (E.D. Pa. 1990) ("Even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court."); Hardy v. Riser, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination.").~~

## A. ~~Plaintiff Failed to~~ **Make Any Meaningful Effort to Meet and Confer.**

~~As a threshold matter, Plaintiff, through her counsel, failed to make any meaningful effort to meet and confer before filing the present Motion, in derogation of the Local Rules. Local Civil~~

Case 1:22-cv-00543-CMH-JFA Document 51-1 Filed 09/02/22 Page 13 of 47 PageID# 610

Rule 37, relating to Motions to Compel and Sanctions, provides:

> Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery

> matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy. The Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue.

Local Civ. R. 37(E). Plaintiff merely alleges in her Motion that "Plaintiff has provided the attached Notice to Defendant, who has refused to consent to a request to voluntarily comply with the Notice" and "[t]herefore, Plaintiff has been forced to file this Motion to seek that the Court order such compliance." ECF No. 26 ¶ 9. In fact, Plaintiff's counsel emailed Defendant's counsel on July 14, 2022, stating: "[W]e will be filing a motion to have a DNA sample taken from your client. Please let us know if you will consent to providing that DNA sample. If not, please let us know if you are available on July 29 or August 5 to have that motion heard by the Court." Defendant's counsel indicated that Defendant did not consent and that she was available August 5 for the motion. The next day, July 15, 2022, Plaintiff's counsel sent Defendant's counsel the Notice and a few hours later filed the instant Motion. There was neither a conference in person or by telephone, nor had Plaintiff's counsel requested either.

Additionally, the time for Defendant to lodge an objection to the Notice had not even passed. Pursuant to the Local Rules, "an objection to any . . . application under Fed. R. Civ. P. 26 through 37, shall be served within fifteen (15) days after the service of the . . . application." Local Civ. R. 26(C). Defendant is permitted fifteen days from the date of service, alone, to object to the Notice. Plaintiff's filing of a Motion to Compel a few hours after serving the Notice is akin to asking a party if they would provide responses to discovery, even before serving the actual discovery requests themselves upon that party, then serving discovery on the party, and then, within the same day, filing a motion to compel, all before the fifteen-day deadline for filing

objections has even passed, let alone the actual deadline for providing responses. This improper behavior and failure to comply with this Court's Local Rules, alone, is sufficient to deny the Motion.

### B. The Request is Not Relevant to Any Party's Claim or Defenses.

Plaintiff's request is not relevant to any party's claim or defense because a DNA sample is meaningless in a vacuum.[2]

Plaintiff fails to explain, nor can she, how she intends to compare a sample compelled from Defendant to anything. Plaintiff asserts that her "counsel will also request cooperation with the Metropolitan Police of London and judicial authorities in the U.K. under the Hague Convention and pursuant to applicable mutual assistance treaties in order to obtain DNA and other evidence in their possession that are relevant to the matters in this case." ECF No. 1 ¶ 4. However, Plaintiff's counsel has not actually done so or provided any sort of correspondence or affidavit from the London Police stating that they would provide the sample to Plaintiff and her counsel or even whether such sample still exists. Plaintiff admits that the London Police have already lost a previously provided DNA sample. *See* ECF No. 26 ¶ 17; *see also* ECF No. 25 at 3 (noting that the London Metropolitan Police's testing lab "accidentally lost or destroyed" the DNA sample). Additionally, Plaintiff fails to allege that there is a DNA sample at The Havens that is of such a quantity and of such a quality as to allow for accurate DNA analysis. She has also not established

---

[2] Plaintiff also alleges that "DNA was obtained on the clothes of Plaintiff, as well as part of a rape kit taken by the medical clinic, The Havens." ECF No. 26 ¶ 1. She states that "[t]he DNA sample is relevant because . . . there is a previous DNA sample against which it can be compared that was taken from Plaintiff's clothing soon after the rape." ECF No. 26 ¶ 17. Firstly, Plaintiff fails to establish how DNA found on Plaintiff's clothing would establish a rape. Defendant's DNA on Plaintiff's clothes would not be surprising, as Plaintiff admitted in her Complaint that she agreed to stay with Defendant for two nights. *See* ECF No. 1 ¶ 19 ("Defendant offered his apartment, in the SoHo area of London, as an alternative and free place to stay for the extra two days. Plaintiff accepted ........."); ECF No. 1 ¶ 20 ("Defendant invited Plaintiff to stay in the apartment's bed and stated he would sleep on the sofa in the living room area. Plaintiff agreed to this arrangement ......."); ¶ 21 (noting that Plaintiff was sleeping "in the apartment's bed").

that the integrity of The Havens sample has been preserved or that it even still exists. As Plaintiff has failed to establish that she will be able to compare a sample obtained from Defendant to anything, she is not entitled to such a sample.

    1.    ~~Plaintiff Has Not Established~~Demonstrate Good Cause and the Order Does Not State That She Demonstrated Such.

        *a.*    *"Good Cause" Requires More than Mere Relevancy.*

---

[2] According to Plaintiff, "Defendant argues for the application of a legal standard that is too high" and that her "burden is not proof beyond a reasonable doubt, which is a criminal standard, but is only the elements required under Rule 35—(A) good cause, and (B) the time, place, manner conditions, and scope of the examination, as well as the person or persons who will perform it." ECF No. 38 p. 5. Neither of these assertions have any merit. Firstly, Plaintiff must establish the "in controversy" requirement detailed by the United States Supreme Court, which she omits in her interpretation of the standard. Furthermore, Defendant is not arguing that Plaintiff has to meet the "criminal standard" of "proof beyond a reasonable doubt." Rather, as detailed *infra*, Plaintiff must meet the legal burden of a "reasonable possibility" of a match.

The United States Supreme Court has held that physical and mental examinations of parties under Rule 35 are "limited by Rule 26(b)'s provision that 'the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .'" *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964) (citing Fed. R. Civ. P. 26(b)). However, "[t]he scope of Rule 35, Federal Rules of Civil Procedure, is not coextensive with that of Rule 26, Federal Rules of Civil Procedure." *In re Mitchell*, 563 F.2d 143, 143 (5th Cir. 1977)).

As the Fourth Circuit has noted, "[t]he specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard had already been imposed by Rule 26(b)." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). The court concluded that the addition of the "good cause" requirement indicated that there must be "greater showing of need" than under other discovery rules. *Id.* Therefore, in order to establish that she is entitled to a DNA sample pursuant to Rule 35, Plaintiff has a much higher burden than mere relevancy, which is not met by her general allegations she failed to establish, as detailed below.[3]

> b. Plaintiff Has Failed to Make a Prima Facie Showing of a Reasonable Possibility of a Match.

In *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), the United States Supreme Court addressed the compulsion of mental and physical examinations under Rule 35.[3][4] *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). The matter was a mandamus proceeding challenging the district court's order requiring a defendant to submit to mental and physical examinations. *Id.* at 106. The

---

[3] Plaintiff also asserts in her Reply that her "request is supported by good cause" because "Defendant has denied that he penetrated or raped the Defendant." ECF No. 38 p. 3. Plaintiff continues that "[s]emen was found by the London Police in their examination of the rape kit" and that "[t]he best evidence to prove Defendant raped Plaintiff is to compare the DNA of semen that was found on Plaintiff's underwear, close to her crotch, with a current DNA sample from Defendant." ECF No. -38 p. 3. Rape requires sexual intercourse. *See* Va. Code § 18.2-61. If DNA were found on Plaintiff's underwear, as opposed to inside of Plaintiff, this would not demonstrate rape.

[4] While this case did not involve the actual taking of a DNA sample, many of the district courts ruling on the issues of compelling a DNA sample look to this case for guidance and apply the principles mandated by the United States Supreme Court when interpreting Rule 35.

6

Court held that "the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* at 119. The Court concluded that "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Id.* at 120. Plaintiff has repeatedly fallen far short of her duty to provide sufficient information, instead generally asserting in her Motion that "[t]here is authority under the Federal Rules for ordering a DNA sample" and cites to the cases of *D'Angelo v. Potter*, 224 F.R.D. 300 (D. Mass. 2004), and *McGrath v. Nassan Health Care Corporation*, 209 F.R.D. 55 (E.D.N.Y. 2002) ECF No. 26 ¶ 12. She also relies upon the case of *D'Angelo* again in her Reply, merely stating that "[s]imilar to *D'Angelo* . . . the presence of [Defendant's] DNA in the sperm found on/or in Plaintiff or her underwear would establish a *prima facie* case that Defendant raped Plaintiff." ECF No. 38 p. 4. However, neither of these cases that Plaintiff relies upon offers any support for her and are easily distinguishable.[5]

In *D'Angelo v. Potter*, 224 F.R.D. 300 (D. Mass. 2004), the plaintiff brought a sexual assault claim against a male supervisor, alleging that he raped her in the boiler room of a postal station. *D'Angelo v. Potter,* 224 F.R.D. 300 (D. Mass. 2004). She sought an order compelling the defendant to provide samples of his DNA for testing whether his DNA matched semen found in the boiler room. *Id.* at 301. The plaintiff had testified at her deposition that the defendant had raped her, but the defendant denied that he ever had sexual relations with her, consensual or otherwise. *Id.* A senior forensic chemist with the Postal Inspection Service had taken swabs from the boiler room and two tested positive for the presence of semen. *Id.*

---

[5] Additionally, in her Reply, instead of addressing Defendant's case law, Plaintiff merely states that "[t]he caselaw cited in Plaintiff's Motion fully supports Plaintiff's request and we will address that as necessary at the hearing rather than burden the record here." ECF No.

---

[3] While this case did not involve the actual taking of a DNA sample, many of the district courts ruling on the issues

of compelling a DNA sample look to this case for guidance and apply the principles mandated by the United States Supreme Court when interpreting Rule 35.

38 p. 4. This is yet another example of the apathy, other than the consistent use of inflammatory baseless language, that Plaintiff has demonstrated throughout the litigation in this matter, including her failure to provide anything other than inadmissible hearsay in support of her Motion.

The defendant argued that his DNA was not "in controversy" and that "good cause" had not been "shown" for an examination of his DNA. The court began by noting that DNA testing "is an 'extreme discovery tool' in that it is only in a very few cases where, as a matter of discovery in a civil suit, litigants are required to provide such a sample." *Id.* at 303. The court next determined that the plaintiff had made "a prima facie showing of a reasonable possibility of a match" because two of the swabs that the forensic chemist took from the boiler room tested positive for semen and that the plaintiff testified as to what occurred in the boiler room and had, therefore, shown a reasonable possibility of a match. *Id.* The court held that in the instant case, the plaintiff had offered an evidentiary basis for concluding that the semen belonged to defendant. Unlike in *D'Angelo, v. Potter,* 224 F.R.D. 300 (D. Mass. 2004) Plaintiff did not offer testimony regarding the alleged rape, but rather filed an unverified complaint. She has also not actually established that a useable sample was recovered by the London Police or that such sample still exists or that its integrity has been maintained.

Absent an affidavit or other verification from the London Police that theyshe can test Defendant's DNA against an uncompromised, useable sample, Defendant should not be forced to provide his DNA. .[6] Plaintiff's bare, unverified allegations in a complaint are woefully insufficient to require Defendant to submit his DNA.

In *McGrath v. Nassau Health Care Corporation,* 209 F.R.D. 55, 57 (E.D.N.Y. 2002), the other case relied upon by Plaintiff, a female hospital employee brought a sexual harassment suit against a hospital and its male employee. 209 F.R.D. 55, 57 (E.D.N.Y. 2002). The plaintiff moved for a protective order precluding the use of a blanket purportedly stained with her menstrual blood. *Id.* at 56-57. The individual defendant cross-moved for an order directing plaintiff to produce a DNA sample. *Id.* at 57. The-

---

8

---

[6] As detailed, *infra*, Plaintiff's counsel's unverified statements regarding what the London Police allegedly told him falls far short of providing any sort of actual evidence.

defendant claimed that the blanket was stained with plaintiff's blood when he and she engaged in consensual sexual intercourse on it and that it would provide a basis for impeaching the plaintiff's testimony that she and the defendant never had a consensual sexual relationship

_(which she testified to at deposition and in her responses to interrogatories). *Id.* at 57. The court adopted the requirement "that the movant must make a prima facie showing that the DNA sample is warranted, through the introduction of sworn statements and other evidence." *Id.* at 58.

The court noted "the understanding that a DNA sample is meaningless in a vacuum—the sample must be compared to something to determine if the two DNA profiles match, and there must be some demonstrable possibility that a match will be found." *Id.* at 61. The court continued that "parties should not be permitted to engage in fishing expeditions, hoping that some useful evidence might be gleaned from obtaining the DNA sample, nor should they be allowed to use demands for DNA evidence to pressure or intimidate other parties." *Id.*

The court granted the motion to compel the DNA sample, noting that the defendant "has met his burden of showing a reasonable possibility that the DNA testing is likely to yield a match." *Id.* at 61. First, he had "shown that the evidence to be tested—the blanket—actually contains a male and a female DNA profile that can be tested against individual DNA samples" and that the "letter submitted by [the defendant] from LabCorp states that preliminary testing of the blanket revealed the presence of blood, and the presence of 'a major DNA profile consistent with a male source' and 'a major DNA profile consistent with a female source.'" *Id.* at 61-62. The court continued that "[t]he lab also stated that the DNA profiles 'can be compared to any reference sample submitted.'" *Id.* at 62. The court concluded that the defendant "has shown not only that there is something to test [the plaintiff]'s DNA sample against, but also that there is some factual basis for believing that a match may be made" and the defendant "testified at the-

hearing as to the specific incident that allegedly resulted in the semen and blood stains on the blanket." *Id.* at 62. Ultimately, the court found "that the defendant has shown, through his affidavit and testimony at the hearing, a reasonable possibility that such a match may be found." *Id.* at 62.

~~affidavit and testimony at the hearing, a reasonable possibility that such a match may be found."~~ ~~*Id.*~~ ~~at 62.~~

Conversely, Plaintiff has offered no testimony in support of the ~~bald~~bold allegations in her unverified complaint. ~~She has not testified in a deposition.~~ She has also not provided any admissible evidence, much less a letter appended to an affidavit, from the entity that allegedly took the sample in London, that such a sample still exists, that the sample has not been degraded or that it contains a DNA profile that can be tested against a DNA sample~~, or even that~~. Moreover, Plaintiff ~~could be~~has not provided any evidence regarding the chain of custody of the rape kit that is now five years old. *See Hargrove v. Commonwealth,* 53 Va. App. 545, 554 (Va. App. 2009) (holding that when a vital link in possession or treatment of evidence is unaccounted for, the chain of custody is incomplete, and the evidence is inadmissible); *see also* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.") Absent any information from the Havens, there is no way for Plaintiff to meet the requirements of Rule 35.

Further, it would be highly prejudicial to allow the profile created in London to be utilized in this matter as Defendant would not have access to the sample to determine if the profile created is accurate or if cross-contamination occurred during the extraction process or at the time a sample was taken as there was clothing nearby that also contained DNA. The word of the London Police, who lost the first sample provided by Defendant, would go unchallenged. *See District Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52, 82 (holding that risks of contamination increase every time someone attempts to extract DNA).

10

Additionally, the DNA sample from London would likely be inadmissible. Any evidence of the DNA sample, including any profile created, is not self-authenticating. At a minimum, the physician who obtained the swabs would need to testify, as well as the police employees who handled and kept custody of the samples over the past nearly five years. *See, e.g.*, ~~with the sample.~~ *Williams v. Illinois*, 567 U.S. 50, 76 (2012) ("As to the source of the sample, the State offered conventional chain-of-custody evidence, namely, the testimony of the physician who obtained the vaginal swabs, the testimony of the police employees who handled and kept custody of that evidence until it was sent to Cellmark, and the shipping manifests, which provided evidence that the swabs were sent to Cellmark [Diagnostics Laboratory] and then returned to the [Illinois State Police] lab.").

Clearly, Plaintiff has fallen far short of her burden of establishing a *prima facie* showing of a reasonable possibility of a match.

        c.    *Plaintiff's Continued Reliance on Ashby v. Mortimer 329 F.R.D. 650, 652-53 (D. Idaho 2019) is ~~Befuddling and~~ Misplaced.*

Plaintiff places much reliance on the case of *Ashby v. Mortimer* 329 F.R.D. 650, 652-53 (D. Idaho 2019). In *Ashby*, a biological mother and her former husband, whose daughter was born during their marriage via artificial insemination, brought a medical malpractice action against a medical practice and her treating obstetrician, alleging that he fraudulently used his own sperm to impregnate her. *Ashby v. Mortimer*, 329 F.R.D. 650, 652-53 (D. Idaho 2019). ~~*Mortimer*, 329 F.R.D. 650, 652-53 (D. Idaho 2019).~~ Many years after her birth, the daughter received a notification from Ancestry.com that a DNA sample that she had submitted matched a sample submitted by the defendant. *Id.* at 653. The website predicted that there was a parent–child relationship between the two based on the samples. *Id.* This eventually led to the medical

11

JA542

malpractice action, where the plaintiffs filed a motion to compel the defendant's "submission to a buccal (cheek) swab DNA test." *Id.*

The defendant argued that good cause could not "be established because Plaintiffs can

simply rely on the Ancestry.com test." *Id.* at 654. The plaintiffs argued that there was good cause

to order the defendant "to submit to a DNA test because the Ancestry.com test could not serve as

conclusive evidence of paternity at trial" as "the Ancestry.com test is inadmissible evidence of

paternity under Idaho law, there is no documented chain of custody for either [the defendant]'s or [the daughter]'s DNA samples, and there is no way for an expert to evaluate Ancestry.com's results in light of the chain of custody issue." *Id.*

The court ultimately concluded that "[g]ood cause supports a DNA test because [the defendant]'s relation to [the daughter] is not, contrary to [the defendant]'s contention, available through other means." *Id.* at 655. The court elaborated:

> Here, the Ancestry.com test does not provide conclusive proof of paternity because, *inter alia*, there is no documented chain of custody. As such, [the defendant] could launch a variety of attacks on the competency of the Ancestry.com results at trial, including: (1) that someone else may have produced the saliva in the sample submitted under his name or in the sample submitted under [the daughter]'s name; (2) that he (or [the daughter]) did not follow the appropriate procedures for giving a sample; (3) that excessive heat, cold, age of test, or some other defect before processing by Ancestry.com degraded the accuracy of the results; or (4) that mix-ups at Ancestry.com rendered the results inconclusive.

*Id.* ~~at 655 (emphasis added).[4]~~ at 655.[7] Plaintiff asserts that "[t]he instant case goes a step further— not only had Defendant voluntarily provided his DNA, he is seeking a protective order to prevent the sharing of his DNA with the exact same entity with whom he had shared his DNA in the past without objection." ECF No. 26 ¶ 15. Plaintiff continues that:

---

[7] Plaintiff also relies on *Ashby v. Mortimer*, 329 F.R.D. 650, 652-53 (D. Idaho 2019) to support her proposition that "[c]learly, the voluntary provision of DNA once constitutes a waiver of any argument against providing DNA evidence." ECF No. 26 ¶ 15. Under this logic, any time law enforcement wants to obtain a DNA sample, they would merely have to establish that the person previously provided DNA in any context, such as a 23 and Me DNA Ancestry Test or even routine blood work or the donation of blood at a Red Cross blood drive. This is a dangerous precedent implicating a myriad of serious privacy concerns.

If Plaintiff is prohibited from sharing Defendant's DNA with The Havens or otherwise comparing the DNA samples, Defendant could argue at trial that (1) the comparison was invalid as it was not made against the actual samples; (2) that one or other of the facilities either did not use the proper test, or used different tests; (3) that defects in processing by The Havens or a U.S. lab resulted in inconclusive results; or (4) that there were mix-ups in tests performed in different countries by different agencies. These precise issues were identified as problems in *Ashby*. *Id.* at 655. The court in *Ashby* ordered

---

[4] Plaintiff also relies on *Ashby* to support her proposition that "[c]learly, the voluntary provision of DNA once constitutes a waiver of any argument against providing DNA evidence." ECF No. 26 ¶ 15. Under this logic, any time law enforcement wants to obtain a DNA sample, they would merely have to establish that the person previously provided DNA in any context, such as a 23 and Me DNA Ancestry Test or even routine blood work.

> defendant to provide DNA for direct comparison to commercial test results, as opposed to Ancestry.com's DNA database. *Id.* Any attempt to bar Plaintiff from obtaining DNA and performing a test against the rape kit in the possession of The Havens and the London Police could prevent her from proving that the DNA samples were identical.

ECF No. 26 ¶ 16. Plaintiff's argument lacks any logical consistency and is ~~painstakingly~~ irrelevant. This logic would apply if Defendant ~~was~~were trying to get Plaintiff to rely upon a prior specimen as opposed to providing one. ~~Plaintiff~~Here, there is ~~putting the proverbial cart before the horse. Firstly,~~ no other sample previously provided by Defendant ~~is not seeking a protective order to prevent the sharing of his DNA with the London Police—he is opposing Plaintiff's Motion in full and seeking a protective order prohibiting her from attempting to obtain his DNA at all. Secondly,~~ that Defendant ~~is not attempting to argue that Plaintiff should rely upon a prior DNA specimen—he is asserting, correctly, that she is not entitled to a DNA sample at all. Regardless, applying the general principles of~~can challenge (such as ancestry.com sample), making the reliance on *Ashby* ~~to this case, the tests would still be performed in different countries by different agencies. As Plaintiff's Notice and Motion are woefully deficient, it is unclear what test was used in London and what test would be used in the present matter or how the sample in London was processed or how the sample Plaintiff seeks to compel would be processed.~~ wholly inapplicable.[8]

> d. *Potential Support for Punitive Damages is Not a Proper Ground for a DNA Request.*

Plaintiff alleges that "[t]he existence of a DNA match would also constitute an important element for punitive damages." ECF No. 26 ¶ 13. Plaintiff fails to specify *how* the existence of a DNA match would constitute an element for punitive damages, much less an "important" one. Regardless, a DNA sample is not to be ordered pursuant to Rule 35 merely for the issue of damages. *See, e.g., Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428, 431-32 (D. Mass.

1993) (noting, in denying a Rule 35 motion, that "defendants seek the blood test to determine

future damages, not liability").

---

[8] In her Reply, instead of addressing Defendant's arguments, Plaintiff merely asserts that "as in *Ashby v. Mortimer* . . . Defendant has already voluntarily provided a DNA sample, waiving any argument against providing DNA evidence." ECF No. future damages, not liability").

38 p. 5.

JA549

    1.      The Court Erred in Granting Plaintiff's Motion Because **Plaintiff Failed to Establish the "In Controversy" Requirement, as the Request is Not Relevant to Any Party's Claim or Defenses.**

Plaintiff's request is not relevant to any party's claim or defense because a DNA sample is meaningless in a vacuum.[9] Defendant asserted in his Opposition that Plaintiff failed to explain, nor could she, how she intends to compare a sample compelled from Defendant to anything. ECF No. ~~Comply~~37 p. 10. In response, Plaintiff stated:

> The London Metropolitan Police sent the rape kit collection sample to its outside labs, including Eurofins Europe, for testing after The Havens collected the sample within an hour of Defendant raping Plaintiff. The London Police . . . has told us that Eurofins profiled the DNA using ESI-17 profiling chemistry for standard DNA profiling, and that if YSTR work is required (not performed routinely) it would be Y-23. Plaintiff has engaged Bode Technologies to perform the profiling of Defendant's sample and has discussed this case extensively with Joan Gullickson, a leading expert on DNA profiling and forensics, at Bode Technologies . . . . Bode has supplied Plaintiff with two kits—one for Bode and one to submit to Eurofins Europe/London Police—to compare not only DNA profiles but also any direct comparisons that may be necessary.

ECF No. 38 p. 2. Notably absent from Plaintiff's Reply is any affidavit from either the London Police, Eurofins Europe, The Havens, or Joan Gullickson[10] to offer any sort of support for these statements. Plaintiff's counsel has not actually provided any sort of correspondence or affidavit

---

[9] Plaintiff also alleges that "DNA was obtained on the clothes of Plaintiff, as well as part of a rape kit taken by the medical clinic, The Havens." ECF No. 26 ¶ 1. She states that "[t]he DNA sample is relevant because . . . there is a previous DNA sample against which it can be compared that was taken from Plaintiff's clothing soon after the rape." ECF No. 26 ¶ 17. Firstly, Plaintiff fails to establish how DNA found on Plaintiff's clothing would establish a rape. Defendant's DNA on Plaintiff's clothes would not be surprising, as Plaintiff admitted in her Complaint that she agreed to stay with Defendant for two nights. *See* ECF No. 1 ¶ 19 ("Defendant offered his apartment, in the SoHo area of London, as an alternative and free place to stay for the extra two days. Plaintiff accepted ........"); ECF No. 1 ¶ 20 ("Defendant invited Plaintiff to stay in the apartment's bed and stated he would sleep on the sofa in the living room area. Plaintiff agreed to this arrangement ......."); ECF No. 1 ¶ 21 (noting that Plaintiff was sleeping "in the apartment's bed").

[10] Plaintiff's assertion that Joan Gullickson is "a leading expert on DNA profiling and forensics" is questionable, at best, as a quick internet search of the name "Joan Gullickson," even adding the additional context of either the search term "DNA" or "Bode" does not yield any results demonstrating such.

from the London Police stating that they would provide the sample to Plaintiff and her counsel or even whether such sample still exists. Plaintiff admits that the London Police have already lost a previously provided DNA sample. *See* ECF No. 26 ¶ 17; *see also* ECF No. 25 p. 3 (noting the London Metropolitan Police's testing lab "accidentally lost or destroyed" the DNA sample). Additionally, Plaintiff fails to offer any evidence that there is a DNA sample at The Havens that is of such a quantity and of such a quality as to allow for accurate DNA analysis. She has also not established that the integrity of The Havens sample has been preserved or that it even still exists. As Plaintiff has failed to reliably establish that she will be able to compare a sample obtained from Defendant to anything, she is not entitled to such a sample.

### ~~B.~~C.    The Order Does Not Meet the Requirements ~~of~~Imposed by Rule 35.

Rule 35~~(a)(2)~~ provides ~~the requirements for an~~ that a court "may order a party . . . to submit to a physical or mental examination *by a suitably licensed or certified examiner*." Fed. R. Civ. P. 35(a)(1) (emphasis added). Rule 35(a)(2) also requires that an order issued pursuant to Rule 35, stating that an order: ~~"(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B)~~ "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). ~~35(a)(2). In her Motion, Plaintiff baldly asserts that she:~~

> ~~has complied with all of the requirements of Rules 34 and 35, by providing herein and by previous notice to Defendant, the person to be examined and to all parties, that specified "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and [] the time for filing the report and furnishing the copies," as well as "describing in reasonable particularity each item . . . to be inspected."~~

1.      The Order Does Not Specify the Conditions and Scope of the Examination.

The Order continues that "J and M Paternity Service, LLC., shall transfer the samples to

Eurofins Europe/London Police and Bode Technologies for testing ......." ECF No. 40 p. 1. The

Order does not specify what "testing" is to take place or the methods for such testing. Nor do

Plaintiff's Notice or Motion provide guidance to appropriately limit the scope of the examination.

The

ECF No. 26 ¶ 8. However, this is demonstrably false. Plaintiff asks, "that the Court enter an

Order compelling Defendant to submit to the Physical Inspection and Examination, including the

taking of samples for DNA testing, described in this Motion and the attached Notice." ECF No. 26

at 6. Furthermore, Plaintiff's proposed order merely provides that the Motion is granted, and that

"Defendant shall present himself for the examination and taking of these samples at the office of

Plaintiff's Counsel . . . on August 29. [sic] 2022, at 10:00 a.m." ECF No. 26-6 ¶¶ 1-2.

The Notice states that it is made "by and through the undersigned counsel and a suitably

certified health care provider," and provides that Plaintiff "will conduct an [sic] Physical

Examination of Defendant . . . *which will include* the taking of a sample of Defendant's

Deoxyribonucleic acid (DNA)." ECF No. 26-1 at 1 (emphasis added). The Notice does not specify

in what manner the DNA is to be taken, but only that the Notice is "for the taking of samples of

Defendant's DNA for the purposes of DNA testing and comparison with DNA that was found on

the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26-1 at 1. She also fails

~~to specify what other purposes a physical examination would be used for other than the taking of a sample of DNA. In her Motion, she does clarify somewhat that she "seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26 ¶ 2. Plaintiff still does not specify how these samples would be procured, who specifically would take them, or what a "skin" sample would even consist of. She also does not specify why she needs five different methods of collecting DNA. Defendant was not able to locate any case law where a Defendant was compelled to provide a skin sample, or even a urine or hair sample and Plaintiff provides no such authority, as is her burden.~~

~~Also very problematically, the~~ Notice provides that "[t]he inspection and taking of the DNA sample will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by The Havens." ECF No. 26-1 ~~at~~p. 1

(emphasis added). Similarly, the Motion provides that "[t]he inspection will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by the Havens." ECF No. 26 ¶¶ 3-4. Plaintiff does not specify what these "other things" may be. Considering the wide latitude that Plaintiff apparently wants in the use of these samples, such an order should be more narrowly tailored than the general term "testing." Furthermore, it is unclear, and Plaintiff has not attempted to explain, why a sample needs to be sent to both Eurofins Europe/London Police and Bode Technologies when there is only one DNA sample to compare.

      2.      The Order Does Not Provide that the Examination Must Be Conducted By a Medical Professional.

The Order requires that Defendant "shall submit to the *employee(s)* of J and M Paternity Service, LLC., for the buccal swab samples........ " ECF No. 40 p. 1 (emphasis added). However, Rule 35 provides that a court "may order a party ...... to submit to a physical or mental examination *by a suitably licensed or certified examiner*." Fed. R. Civ. P. ~~Plaintiff does not specify what these "other things" may be, falling desperately short of the well- established "in controversy" and "good cause" requirements.~~

~~The Notice further provides that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing."~~ 35(a)(1) (emphasis added). Problematically, the generic term "employees" does not impose the requirement of a suitably licensed or certified examiner. Additionally, while Plaintiff's Notice states that it is made "by and through the undersigned counsel and a suitably certified health care provider," Plaintiff did not provide an affidavit or signature of any "suitable heath care provider" that was apparently making the Notice on Plaintiff's behalf. ECF No. 26-1 p. 1. Notably, there was no signature on the Notice from a health care provider, much less a "suitably certified" one. There was also no affidavit or other

supporting documentation from any health care provider.

3.    The "Place" Designated in the Order is Improper.

The Order improperly mandates that Defendant "appear on Monday, August 29, 2022, at 10:00 a.m. at the office of Plaintiff's counsel . . . for the buccal swab samples." ECF No. 40 p. 1.

<u>This is improper</u>ECF No. 26-1 at 1. The Motion also similarly provides that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." ECF No. 26 ¶ 2. Again, Plaintiff does not specify what laboratory that she intends to use or that she has even found a laboratory that will perform the comparison that she is seeking. *See Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) ("[W]e do not believe that

their motion, as ~~presented, could be granted. Rule 35(a) requires that an order for examination 'specify the time, place, manner, conditions, and scope~~the site of the examination.~~' Plaintiffs' general request for 'psychological testing' provides little guidance for determining the scope of any eventual examination. Furthermore, it is unclear from plaintiffs' motion who~~ should ~~conduct the desired examination.") (internal citation omitted). Plaintiff also improperly "seeks to have Defendant present himself for the taking of these samples at the office of Plaintiff's Counsel," as opposed to a~~ be a medical office. ~~ECF No. 26 ¶¶ 3-4. See~~ or otherwise neutral location. *See, e.g.,* *Smith v. Café Asia*, 724 F. Supp. 2d 125, 126-27 (D.D.C. 2010) (granting a Rule 35 motion after noting that the ~~motion identified the doctor who would conduct the examination, his medical specialty, a proposed date for the examination, the length of the examination, and the type of examination and, additionally, that the party seeking the examination "submitted with their motion an affidavit by [the doctor] that described the nature of the examination" and that the~~ "*motion agreed to 'a neutral location to be determined by the parties'*"~~).~~") (emphasis added).

### ~~C.~~D.    ~~Defendant is Entitled to~~The Court Erred in Denying Defendant's Request for a Protective Order.

The United States Supreme Court has noted that physical and mental examinations of parties under Rule 35 are limited by the provisions of the Federal Rules "permitting the district court, upon motion, to limit, terminate, or otherwise control the use of discovery devices so as to prevent either their use in bad faith or undue 'annoyance, embarrassment, or oppression.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964). Rule 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [T]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one of more of the following: (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1)(A). This provision "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As noted *supra,* "DNA testing is an extreme discovery tool which is very intrusive to the targets of such discovery" and should not be used as a "fishing expedition." *Harris v. Athol-Royalston Reg'l Sch. Dist. Comm.*, 206 F.R.D. 30, 35 (D. Mass. 2002); *see also McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002) (directing that "parties should not be permitted to engage in fishing expeditions, hoping that some useful evidence might be gleaned from obtaining the DNA sample, nor should they be allowed to use demands for DNA evidence to pressure or intimidate other parties"). ~~In her Motion, "Plaintiff seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26 ¶ 2.[5] Yet, she made shockingly little effort to show why she is entitled to such extreme relief. The conclusion is that, at best, she has no support or, at worst, that she brought the motion in an attempt to use a discovery device in bad faith. This can best be demonstrated by the fact that she is seeking to compel Defendant to provide five different DNA samples in the office of Plaintiff's counsel. This can simply be for no other purpose than to embarrass Defendant, a theme throughout the litigation of this matter. There is no reason that Plaintiff would need five samples from Defendant—blood, hair, skin, urine, and a saliva swab and it is clearly improper to compel Defendant to provide such samples in the law office of Plaintiff's counsel.~~

~~Plaintiff's~~ Plaintiff has continuously made

---

[5] ~~Plaintiff asserts~~

17

shockingly little effort to show why she is entitled to the extreme relief that ~~"a DNA buccal swab represents 'only a minimal intrusion.'" ECF No. 26 ¶ 17 (citing *McGrath*, 209 F.R.D. at 61). However, Plaintiff~~she seeks ~~samples of Defendant's blood, hair, skin,~~. The conclusion is that, at best, she has no support, or, at worst, that she brought the motion in an attempt to use a discovery device in bad faith, repeatedly used to attempt to pressure and ~~urine in addition to a saliva swab, so~~intimidate Defendant, a theme throughout this ~~assertion is meaningless~~

litigation. Plaintiff's misuse of Rule 35 should not be rewarded; Defendant is entitled to ~~be a~~ a

protective order prohibiting her from obtaining a DNA sample from him.

## ~~III.~~IV. CONCLUSION.

For the reasons set forth herein, Defendant Cenk Sidar respectfully requests that the

Court sustain Defendant's Objection to Magistrate Judge Theresa Carroll Buchanan's August 5,

2022, Order Regarding Motion to Compel DNA, deny ~~Plaintiff's~~Plaintiff Jane Doe's Motion to

Obtain Physical Examination of and DNA Sample from Defendant, enter a protective order

prohibiting Plaintiff from seeking a DNA sample ~~from Defendant, award Defendant his costs~~

~~and attorneys' fees, pursuant to Local Civil Rule 37(G)-(H), incurred in opposing Plaintiff's~~

~~Motion~~and/or physical examination of Defendant, and grant such other and further relief in

favor of Defendant as this Court deems just and proper.

Dated: ~~July~~
~~29~~August 19, 2022

CENK SIDAR

By Counsel:

JA560

_____

_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No. (703) 848-2530
mtadros@reesbroome.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ~~July 29~~August 19, 2022, a copy of the foregoing **CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANT'S ~~OPPOSITION~~OBJECTION TO ~~PLAINTIFF'S~~ MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO ~~OBTAIN PHYSICAL EXAMINATION OF AND~~COMPEL DNA ~~SAMPLE FROM DEFENDANT~~** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC 20004
wes@sclgrp.com

_____
Mariam W. Tadros

EXHIBIT B

DISCUSSIONS BETWEEN DEFENDANT AND THE LONDON POLICE FROM JULY 2020
BATES DOE DOC PROD 000124-7

Gmail - Investigation

 **Gmail**

Cenk Sidar <cenksidar@gmail.com>

## Investigation
5 messages

**Mark.Papasavva@met.police.uk** <Mark.Papasavva@met.police.uk>    Thu, Nov 8, 2018 at 10:45 AM
To: cenksidar@gmail.com

Hello Sir,

I am emailing with regards to your investigation which is being conducted.

I am hoping you could provide me with a convenient time to call you tomorrow.

If you could provide me with some times that are suitable that would be greatly appreciated.

Kind regards

Mark Papasavva

DC

Central CASO

07917 883434

Consider our environment - please do not print this email unless absolutely necessary.

NOTICE - This email and any attachments may be confidential, subject to copyright and/or legal privilege and are intended solely for the use of the intended recipient. If you have received this email in error, please notify the sender and delete it from your system.  To avoid incurring legal liabilities, you must not distribute or copy the information in this email without the permission of the sender. MPS communication systems are monitored to the extent permitted by law. Consequently, any email and/or attachments may be read by monitoring staff. Only specified personnel are authorised to conclude any binding agreement on behalf of the MPS by email. The MPS accepts no responsibility for unauthorised agreements reached with other employees or agents.  The security of this email and any attachments cannot be guaranteed. Email messages are routinely scanned but malicious software infection and corruption of content can still occur during transmission over the Internet. Any views or opinions expressed in this communication are solely those of the author and do not necessarily represent those of the Metropolitan Police Service (MPS).

Find us at:

Facebook: https://m.facebook.com/metpoliceuk

Twitter: @metpoliceuk

**Cenk Sidar** <cenksidar@gmail.com>    Thu, Nov 8, 2018 at 10:47 AM
To: Mark.Papasavva@met.police.uk

Mr. Papasavva,

Sidar001116

**Doe Doc Prod 000124**

JA564

I am available now. Could you please call me if possible?

202 403 17 29?

I could call you as well.

[Quoted text hidden]
--
**Cenk Sidar**
Cell: +1 (202) 403-1729
cenksidar@gmail.com
BIO | Web Site | Twitter

---

**Mark.Papasavva@met.police.uk** <Mark.Papasavva@met.police.uk>          Thu, Nov 8, 2018 at 10:49 AM
To: cenksidar@gmail.com

Hello Sir,

Calling now.

Kind regards

Mark

[Quoted text hidden]
[Quoted text hidden]

---

**Cenk Sidar** <cenksidar@gmail.com>                                     Thu, Nov 8, 2018 at 10:51 AM
To: Mark.Papasavva@met.police.uk

Thank you. Standing by.

[Quoted text hidden]

---

**Cenk Sidar** <cenksidar@gmail.com>                                     Sat, Jul 25, 2020 at 2:41 AM
To: Alex Mitrakas <Amitrakas@mitrakasco.com>, Anna Dvorchik <anna@advofirm.com>


Sent from my iPhone

Begin forwarded message:

> **From:** Mark.Papasavva@met.police.uk
> **Date:** November 8, 2018 at 10:49:44 AM EST
> **To:** cenksidar@gmail.com
> **Subject: RE: Investigation**


[Quoted text hidden]

Sidar001117

<table>
<tr><td>**From:**</td><td>Juliette.A.Long@met.police.uk</td></tr>
<tr><td>**Sent:**</td><td>Tuesday, July 28, 2020 10:14 AM</td></tr>
<tr><td>**To:**</td><td>Nicholas Dent</td></tr>
<tr><td>**Subject:**</td><td>RE: Our Client: CS [KN-Active.FID1361498]</td></tr>
</table>

**External – this email originated outside your organisation.**

Dear Mr Dent,

The lab have traced male DNA within the high vaginal swabs. It is this we wish to compare against your clients DNA.

Kind regards
Juliette

**From:** Nicholas Dent <NDent@kingsleynapley.co.uk>
**Sent:** 28 July 2020 12:25
**To:** Long Juliette A - CE-CU <Juliette.A.Long@met.police.uk>
**Cc:** Sandra Paul <SPaul@kingsleynapley.co.uk>
**Subject:** RE: Our Client: CS [KN-Active.FID1361498]

Dear DC Long

Thank you for your email  I understand that the Police wish to conduct a comparison of Mr Sidar's DNA with the Complainant's vaginal swabs  However, in order to be able to advise Mr Sidar on this issue (in circumstances where he has already voluntarily provided a sample, and as far as I am aware, there is no obligation for him to provide a further sample) please can you confirm the reason why the Police need to compare his DNA with the Complainant's vaginal swabs? For example  has a high vaginal swab demonstrated the presence of semen in the Complainant's vagina?

It would be very helpful to receive this clarification so that I can properly understand the issue and communicate this to Mr Sidar.

I look forward to hearing from you

Kind regards

Nick


Nicholas Dent
Senior Associate
**Kingsley Napley LLP**

Kingsley Napley LLP | Knights Quarter | 14 St John's Lane | London EC1M 4AJ
Direct dial: +44 (0)20 3535 1507 | Mobile: +44 (0) 7554 458 210
Switchboard: +44 (0)20 7814 1200 | Main fax: +44 (0)20 7490 2288 | Direct fax:
Email: ndent@kingsleynapley.co.uk | Website: www.kingsleynapley.co.uk

**From:** Juliette.A.Long@met.police.uk [mailto:Juliette.A.Long@met.police.uk]
**Sent:** 28 July 2020 11:58
**To:** Nicholas Dent
**Subject:** RE: Our Client: CS [KN-Active.FID1361498]

1
Sidar001118

**Doe Doc Prod 000126**

External – this email originated outside your organisation.

Dear Mr Dent.

I can clarify that the reason for the DNA sample from Mr Sidar, is to prove or disprove penetration. A comparison of Mr Sidar's DNA will be compared to the vaginal swabs taken from the victim.

I hope this makes sense.

Please let me know if you client agrees to a further sample being taken, and we can arrange this at Heathrow airport.

Kind regards
Juliette

**From:** Nicholas Dent <NDent@kingsleynapley.co.uk>
**Sent:** 28 July 2020 11:37
**To:** Long Juliette A - CE-CU <Juliette.A.Long@met.police.uk>
**Subject:** RE: Our Client: CS [KN-Active.FID1361498]

Dear DC Long

Thank you for your email   Please may you remind me of your number?

Kind regards

Nick

Nicholas Dent
Senior Associate
**Kingsley Napley LLP**

Kingsley Napley LLP | Knights Quarter | 14 St John's Lane | London EC1M 4AJ
Direct dial: +44 (0)20 3535 1507 | Mobile: +44 (0) 7554 458 210
Switchboard: +44 (0)20 7814 1200 | Main fax: +44 (0)20 7490 2288 | Direct fax:
Email: ndent@kingsleynapley.co.uk | Website: www.kingsleynapley.co.uk

**From:** Juliette.A.Long@met.police.uk [mailto:Juliette.A.Long@met.police.uk]
**Sent:** 28 July 2020 11:36
**To:** Nicholas Dent
**Subject:** RE: Our Client: CS [KN-Active.FID1361498]

External – this email originated outside your organisation.

Dear Mr Dent,

I am available today until 3pm, and again tomorrow between 7 and 3pm.

Kind regards
Juliette

**From:** Nicholas Dent <NDent@kingsleynapley.co.uk>
**Sent:** 28 July 2020 11:27

2

Sidar001119

Doe Doc Prod 000127

EXHIBIT C

PLAINTIFF'S EMAIL TO DEFENDANT'S COUNSEL REMINDING DEFENDANT OF HIS
OBLIGATION UNDER THE ORDER



**From:** **Walter Steimel** wes@sclgrp.com
**Subject:** Re: DNA Order
**Date:** August 29, 2022 at 9:23 AM
**To:** Mariam Tadros  MTadros@reesbroome.com
**Cc:** Thomas Urban  urban@fhhlaw.com
**Bcc:** Walter Steimel  wes@sclgrp.com

Mariam,

We have been waiting at Tom Urban's office since 9:45 this morning to conduct the DNA sampling per the court order. We expect Defendant Cenk Sidar to appear.

Defendant will need to call us when he is downstairs so that one of us can bring him upstairs.

We will be here until 11 waiting for the Defendant.

Thank you

Walt

Sent from my iPhone

On Aug 26, 2022, at 16:58, Mariam Tadros <MTadros@reesbroome.com> wrote:

Mr. Urban – I fully understand the terms of the order and, as indicated, Mr. Sidar has properly objected to the order and effectively noticed an appeal therefrom, to be heard by Judge Hilton. While we do not believe any motion to stay is required, we are happy to file one. Please let me know if you consent. I assume you do not. To your point regarding destruction of a sample, we do not believe that destruction of any evidence is appropriate and it effectively moots any review by the Court.

I inadvertently noticed the hearing for a date that I am out of town on a trip previously planned. I intend to continue the motion one week, assuming you are available. Alternatively, I can do the motion a week earlier (this coming Friday) but that would shorten time for responses.

Mariam Tadros

**From:** Thomas Urban <urban@fhhlaw.com>
**Sent:** Friday, August 26, 2022 1:09 PM
**To:** Mariam Tadros <MTadros@reesbroome.com>; Walter Steimel <wes@sclgrp.com>
**Subject:** RE: DNA Order

Ms. Tadros –

I have returned from out of the country and have seen your emails on this subject.

Please understand that there is an active order requiring Mr. Sidar to be present in our office on Monday for DNA testing. There has been no stay of that order. Therefore, we are not waiving our rights regarding Mr. Sidar's required compliance with that order.

You have had three weeks to obtain a stay of the order.  You did not ask Judge Buchanan for a stay at the hearing nor have you requested any stay at any other time.

Please understand that if Mr. Sidar fails to show up on Monday (as he has done in violation of other orders), then he will face the consequences of his decision.  On the other hand, if he does attend, then Judge Hilton can always order that the test samples be destroyed if he rules in your favor.

Thank you for your attention to this matter.

Thomas F. Urban II
Member
Fletcher, Heald & Hildreth, PLC
Licensed to practice law in the Virginia, District of Columbia, and Texas.
1300 N. 17th Street, Suite 1100 | Arlington, VA 22209
Tel: 703.812.0462 | Fax: 703.812.0486 | Mobile: 703-861-5235

---

**From:** Mariam Tadros [mailto:MTadros@reesbroome.com]
**Sent:** Friday, August 19, 2022 2:13 PM
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Thomas Urban <urban@fhhlaw.com>
**Subject:** Re: DNA Order

Walt - we have fourteen days to appeal what we believe is an erroneous order. We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not appear until we get a final ruling on this issue. As this is ten days before the date you had unilaterally, we see no prejudice and will strongly oppose any sanctions motion.

Mariam

Sent from my iPhone

On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com> wrote:

 Mariam,

Respectfully, we do not consent to any such motion. Judge Buchanan was very clear in her ruling and Order. You do not identify any basis for appealing her Order and we believe none exists. Further, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a magistrate judge's

provides that a district judge may reconsider a magistrate judge's determination of a nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law."  We believe that Judge Buchanan's Order is fully supported by all applicable law and is not "clearly erroneous" under any standard. The bar for overturning Judge Buchanan's Order is high, and you have presented no arguments for doing so. Therefore, we do not consent.

Your email is the first indication that Defendant intended to appeal the Order. You made no statement on or off the record at the hearing that Defendant would be objecting to or appealing the Order, and waited until the last day to note that Defendant would be making such a filing. We have already arranged for his appearance and testing.

I see nothing in the Local Rules or FRCP providing that an appeal of a Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order.  In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros
> <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and intend
> to notice the motion for September 9. Please let me know if you
> consent to the motion. Also, please let me know your availability
> for September 9. If that date doesn't work, please provide your
> next available Friday.

**Mariam Tadros** | **Rees Broome, PC**

JA571

Shareholder

1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182

☏ 703.790.1911 | ☏ 703.848.2530

mtadros@reesbroome.com | reesbroome.com

&lt;image001.png&gt;

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

EXHIBIT D

INVOICE FROM J AND M PATERNITY



# J and M Paternity Service LLC

3540 Crain Hwy
Suite #205
Bowie,Md 20716
jandmpaternityservicellc@gmail.com
www.fastpaternity.com
703-568-0755

# Invoice

| | |
|---|---|
| **Invoice No:** | 8/30/2022 |
| **Date:** | 08/30/2022 |

**Bill To:**   Walter E. Steimel, Jr.
wes@sclgrp.com
202-271-9258

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Case# 1:22-cv-545 (CMH/TCB)<br>Alleged Father Ceno Sidar<br>Fee:$100 | 1 | $100.00 | $100.00 |

**Payment Details**

Please pay in full

**Please make payment to:**

Bank Account Number: Redact

Routing Number: Redact



| | |
|---|---|
| Subtotal | $100.00 |
| Total | $100.00 |
| PAID | $0.00 |
| **Balance Due** | **$100.00** |

**EXHIBIT E**

**TECHNICAL INFORMATION FOR BODE TECHNOLOGIES AND J AND M
PATERNITY**

Case 1:22-cv-00545-CMH-JFA   Document 51-5   Filed 09/02/22   Page 2 of 14 PageID# 658   9/2/22, 10:54 AM



(/)



**About Bode Technolog**

Bode Technology provide

Trusted forensic DNA ana
services
Innovative products and
Quality service and supp

**Company Overview**

Bode Technology serves
enforcement and identifi
markets and is unique in
provides both state-of-the
human DNA analysis and
innovative DNA collection
products. The range of
Bode's services include
offerings such as high-th
DNA testing services, cas
analysis, missing person
identification, private
and CODIS databanking
convicted offenders or ar

as well as paternity identification. Our patented DNA collection systems are in use worldwide for collections of DNA from convicted offenders and arrestees, from crime scenes, as well as from parents
children for genealogy and identification services. By leveraging the strength and experience of our research and development teams and casework analysts, Bode Technology offers worldwide DNA a
services, consulting, training, and validation services on a customized basis.

As the operator of one of the most internationally respected private DNA laboratories, Bode Technology's forensic DNA experts have assisted in identifying criminals in every state in the United States,
as victims of war, terrorism, crime, and natural disasters, including the 2001 attack on the World Trade Center, the conflicts in Cyprus, and the remains of U.S. soldiers dating back to the Vietnam War.
played an integral role in assisting with the identification efforts related to Hurricane Katrina, and new advances in extraction technologies that have led to the reopening of efforts to identify victims of t
Trade Center attack.

**Bode Technology's extensive experience in DNA forensics includes:**

▶ More than 150,000 completed forensic cases and the processing of more than 30,000 cases per year
▶ The use of validation specialists who have validated all aspects of forensic DNA typing, including automation, STRs, mini-STRs, Y-STRs and improved extraction procedures
   The leveraging of specialized teams of qualified analysts who are dedicated to the screening of unscreened evidence and/or processing of screened evidence from sexual assault, homicide, kid
   and property crime cases
   More than 3.5 million DNA profiles delivered to U.S. states and a number of federal agencies
   A fully-integrated laboratory information management system (LIMS) for sample tracking, ensuring sample integrity and chain of custody
   A commitment to generating scientifically accurate results by striving to exceed the Quality Assurance Standards for Forensic DNA Testing Laboratories and Quality Assurance Standards for Co
   Offender DNA Databasing Laboratories that are issued by the FBI Director

**Mission and Values**

Case 1:22-cv-00545-CMH-JFA   Document 51-5   Filed 09/02/22   Page 3 of 14 PageID# 659

At Bode Technology, our mission is to make a positive contribution to society by using science responsibly and ethically to help create a safer and more secure world. We also strive to advance the cause of justice through the use of technologically advanced products and services. As a market leader, our goal is to become a trusted and respected resource in providing sophisticated DNA identification to law enforcement agencies, federal and state governments, crime laboratories and disaster management organizations around the world. Innovation and the advancement of science in the field of forensic identification is at the heart of everything that we do, and we strive to continue to be a leader in conducting research and development in the areas of molecular biology and related advanced technology.

**About the Lab**

Bode Technology's forensic DNA laboratory is located at 10430 Furnace Road, Suite 107, in Lorton, Virginia. The laboratory has been designed for maximum efficiency with state-of-the-art, reconfigurable equipment and furniture. We maintain a large pre-amplification laboratory with smaller connected laboratories for screening, extraction and research and development work.  The mitochondrial DNA laboratory is equipped with a positive charge to push air out and a HEPA filtration system to minimize contamination.

The layout of the laboratories is designed to allow convenient access to supplies and evidence. Additionally, there are vestibules at the entrance of each laboratory to control air flow and provide a loca[...] lab coats and protective supplies. The vestibules have built-in pass-through portals for transfer of samples from one laboratory to the next.

© 2022 Bode Cellmark Forensics, Inc. All rights reserved.

JA577



**Eliminate Backlogs of Untested Sexual Assault Kits**

When tested, DNA evidence contained by sexual assault kits can be an incredibly powerful tool to solve and prevent crime. DNA evidence from sexual assault kits can:

► Identify an unknown assailant
► Confirm the presence of a known suspect
► Identify serial offenders
► Exonerate the wrongly convicted

**To accomplish these things, sexual assault kits must be tested.**

## Expedited Testing - Non-Backlogged Kits

Bode ASAP (/pages/bode-asap) offers priority testing of non-backlogged sexual assault kits in as soon as 2, 4, or 8 weeks to help solve and prevent future crime.  Agencies submit batches of cases on weekly basis, and through Bode Cellmark's streamlined processes, the results are provided to the client quickly and efficiently.

► Prevent Backlogs
► Stop and Prevent Crime

**Bode ASAP Offers Turnaround Times of:**   2 WEEKS   4 WEEKS   8 WEEKS

## Backlog Reduction

Bode's Sexual Assault Kit Backlog reduction (/node/4075) programs have helped agencies across the United States clear backlogs of sexual assault kits.  For over 25 years, Bode's unmatched experi have have helped clear backlogs at the city-wide, county-wide, and state-wide levels.

**Bode has proven capacity of reporting 2,000+ sexual assault kits per month**

**Other On Demand Webinars:**

► **The 6 Pillars of Approaching Sexual Assault Kit Backlogs - Click Here for On Demand Webinar (https://attendee.gotowebinar.com/register/1465476788628482060)**
► **Sexual Assault Kit Tracking: The Approach and Impact of Statewide Tracking - Click Here for On Demand Webinar (https://attendee.gotowebinar.com/register/282028072272304769**
► **Automation and Speed: Creating a Process for 2-week Turnaround of Sexual Assault Kit Evidence - Click Here for On Demand Webinar (https://attendee.gotowebinar.com/register/5817414180110463500)**

## References

1. Holder EH, Robinson LO, Laub JH. The Road Ahead: Unanalyzed Evidence in Sexual Assault Cases. U.S. Department of Justice: National Institute of Justice. https://www.ncjrs.gov/pdffiles1/nij/233279.pdf (https://www.ncjrs.gov/pdffiles1/nij/233279.pdf). Published May 2011. Accessed August 14, 2018.

2. U.S. Department of Justice. 2016 Crime in the United States: Table 1. https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/... (https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-1). Accessed August 14, 2018.

3. U.S. Department of Justice. 2016 Crime in the United States: Table 18. https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-p... (https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-pages/tables/table-18). Accessed August 14, 2018.

4. U.S. Department of Justice. Uniform Crime Report: Crime in the United States, 2016. https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-p... (https://ucr.fbi.gov/crime-in-the-u.s.-2016/topic-pages/clearances.pdf). Published Fall 2017. Accessed Aug

5. Ritter N. Solving sexual assaults: Finding answers through research. *NIJ Journal.* 2012; 270:4-17.

© 2022 Bode Cellmark Forensics, Inc. All rights reserved.

JA579

Accreditations | Bode Technology                                                                                                              9/2/22, 10:54 AM



(/)

We hold multiple accreditations with third-party agencies. By holding these accreditations, Bode must adhere to the standards of each accrediting body. These standards cover all steps in a genetic te... the initial specimen collection to the issuance of the final results. Adherence to these standards provides assurance to the client that the test results are of the highest quality.

Bode consistently goes above and beyond the requirements of each accrediting body. With more than 25 years in continual quality assessments and process improvements, Bode delivers high-quality... Bode ensures that quality is a top priority at all times.

**ISO/IEC 17025-Accredited Laboratory**



The Bode laboratory is accredited by ANSI National Accreditation Board (ANAB) to the ISO/IEC 17025:2017 standards for Forensic Testing and Calibration Labor... Bode also maintains compliance with the FBI Quality Assurance Standards for *Forensic DNA Testing Laboratories* and *DNA Databasing Laboratories*. Bode has m... ISO17025 accreditation since 2002.

► ISO/IEC 17025 Certificate of Accreditation (/sites/default/files/210216-BT-AccrCert-V005.pdf)
► ISO/IEC 17025 Scope of Accreditation (/sites/default/files/210216-BT-AccrScope-V005.pdf)

**ISO18385:2016**



Bode has achieved ISO 18385:2016 certification for the Buccal DNA Collector and SecurSwab product lines. ISO18385:2016 confirms that Bode's products meet the standard... forensic market which enable these products to carry the label ISO18385 Forensic DNA Grade.

ISO18385:2016 Accreditation Certificate (/sites/default/files/ISO%2018385%20Cert_2021-2022.pdf)

**17043-Accredited Proficiency Testing Provider**



Bode is an ISO/IEC 17043 accredited proficiency testing provider. Accredited by ANSI National Accreditation Board (ANAB) in 2017, Bode's IQAS proficiency tes... meet the proficiency testing guidelines for ISO/IEC 17025 accredited laboratories, which are required to use ISO/IEC 10743 accredited proficiency test providers.

► ISO/IEC 17043 Certificate of Accreditation (/sites/default/files/ISO%20IEC%2017043%20Certificate%20of%20Accreditation.pdf)
► ISO/IEC 17043 Scope of Accreditation (/sites/default/files/ISO%20IEC%2017043%20Scope%20of%20Accreditation.pdf)

**Approved by New York State for Forensic Identity**

The Bode laboratory participates in the New York State Department of Health (NYSDOH), Clinical Laboratory Evaluation Program and is approved by the NYSDOH as a forensic identity laboratory. Th... department's certification is based on the FBI Quality Assurance Standards, New York public health laws, and state clinical laboratory standards for forensic identity testing.

► NYS DOH Clinical Laboratory Permit (/sites/default/files/NY%20DOH%20Lab%20Permit%20-%207.1.2022%20-%206.30.2023.pdf)
► NYS DOH Certification of Qualification (/sites/default/files/NYS%20DOH%20CQ%20Permit%20-%20Bever%207.24.2021%20-%207.24.2023.pdf)
► NYS DOH Forensic Genealogy SNP Testing Approval (/sites/default/files/NYS%20DOH%20Forensic%20Genealogy%20SNP%20Approval.pdf)
► NYS DOH Forensic Genealogy SNP Testing Amended Approval (/sites/default/files/Forensic%20Genealogy%20SNP%20Amend%204.28.2021.pdf)

**Licensed by the State of Maryland**

JA580

Case 1:22-cv-00545-CMH-JFA   Document 51-5   Filed 09/02/22   Page 7 of 14 PageID# 663

Bode has been granted a license to operate as a forensic laboratory in accordance with §17-2A-04 of the Health-General Article of the Maryland Code by the Maryland Department of Health and Ment Hygiene, Office of Health Care Quality. The state's licensure program is based on a certification that Bode Technology is fully accredited by a national accrediting body and in compliance with forensic regulations released under COMAR 10.51.01-10.51.07.

State of Maryland Forensic Laboratory License (/sites/default/files/MD%20DOH%20Accreditation%20License%20-%20Non%20-%20Expiring%20-%20Current.pdf)

**Texas  FSC-Accredited Laboratory**

Bode has been granted full Texas Forensic Science Commission (FSC) accreditation in accordance with Title 37, Texas Administrative Code, Chapter 651. The FSC accreditation program is based on maintaining accreditation from a national accrediting body and compliance with Title 37, Texas Administrative Code, Chapter 651.

FSC Accreditation Letter (/sites/default/files/TX%20FSC%20Accreditation%20Certificate%20%282.16.2021%20-%204.30.2025%29.pdf)

**ISO 9001:2015**



(/sites/default/files/BCFLenexa-eCertificate%20ISO9001%202015-EXP%20051025-BSI%20FM642502.pdf)Bode's Production Facility in Lenexa, KS is ISO 9001:20 certified. Bode manufactures collection products and collection kits within the facility. Through its ISO 9001:2015 certification, Bode demonstrates its ability to consi provide products that meet customer and applicable statutory and regulatory requirements. Bode also aims to enhance customer satisfaction through the effective a of the system, including processes for continual improvement of the system and the assurance of conformity to customer and applicable statutory and regulatory requirements.

Bode has been certified by BSI to ISO 9001:2015 under certificate number FM 642502  (/sites/default/files/BCFLenexa-eCertificate%20ISO9001%202015-EXP%20051025-BSI%20FM642502.pdf)

**AABB Accreditation**

  Bode has been granted AABB accreditation for Relationship Testing Activities. AABB is the primary agency that develops standards for relationship testing.

AABB Certificate of Accreditation  (/sites/default/files/AABB%20Accreditation%20Certificate%207.1.2021%20-%206.30.2023.pdf)

Bode's laboratory is CLIA certified by the Centers for Medicare & Medicaid Services (CMS) for the purpose of providing diagnostic testing.
(/sites/default/files/CLIA%20Certificate%20of%20Compliance%203.16.2021%20-%203.15.2023.pdf)

© 2022 Bode Cellmark Forensics, Inc. All rights reserved.

# J and M Paternity Services LLC

### Affordable, Dependable,Accurate!!!

### We have testing sites Nationwide.........

| Home | Paternity Fraud | Contact Us | Adoption |

**Can't Find Him/Her? We Can Help!!!**    **Attorneys**

## Do You Have Clients Who Need A DNA Test Fast?

J and M Paternity can travel to your office or place of preference for your client. We work with Attorneys to provide updates on when their clients are scheduled to be tested as well as when they are completed. We also work to ensure that the attorney receives their own legal copy of their clients report. Need us, we're just a phone call away.

Copyright ©2021

J and M Paternity Services LLC Affordable, Dependable,Accurate!!!We have testing sites Nationwide.........

© 2020 J and M Paternity Services LLC Affordable, Dependable,Accurate!!!We have testing sites Nationwide.......... All Rights Reserved.

Paternity Fraud

JA582

# J and M Paternity Services LLC

Affordable, Dependable,Accurate!!!

We have testing sites Nationwide.........

**Home**          Paternity Fraud          Contact Us          Adoption

Can't Find Him/Her? We Can Help!!!          Attorneys



Courteous,professional service always provided!!.

Name*

Email*

myemail@gmail.com

Number*

Prenatal Testing Mon-Thurs

DNA Paternity Testing

This site uses Google reCAPTCHA technology to fight spam. Your use of reCAPTCHA is subject to Google's Privacy Policy and Terms of Service.

Send Message

f

## Christian Owned/Black Owned Business since 1993

J and M Paternity Service LLC has been serving families in the DC Metropolitan, area since 1993. We offer legal, private and non-legal, DNA testing in the DC, Maryland,

JA584

Virginia area.. The lab that we use is AABB Accredited. In another State?? No problem..... Just provide us with your zip code. We have testing sites all over the US. We can send you to a testing site nearest you.

Need us to come out, early morning, after work, during the weekdays, or on the weekends? No problem! We cater to your schedule. J and M Paternity Service LLC now offers testing for the popular Non-Invasive Prenatal Test.

*Get the answer before your baby is born.. This test is for those who would like to have a DNA test performed prior to baby's arrival.. Call or text us A.S.A.P. to schedule an appointment. This procedure is safe and accurate. Find out more information by clicking on the Prenatal Testing, to check out the FAQs for Prenantal Testing tab,

*Text us to receive our 12 Reasons To Get A Legal DNA Test BEFORE You Sign Birth Certificate

## J and M Paternity Offers:

**\*DNA Paternity Test**-This test will determine, with accuracy, if a man is the biological father of a child/children.

**\* Maternity-**This test will determine, with indisputable accuracy, if a woman is the biological mother of a child/children.

**\*Immigration-**Some immigrant visa applicants are asked to confirm a biological relationship through DNA testing.We come to you.

**\*Adoption-**We offer DNA testing services for people involved in adoption. We test clients who are going through domestic or international adoptions. Click on the Adoption Tab for more info.

## \*Non-Invasive Prenatal Paternity

## Get the answer before the baby is born........

J and M performs the most accurate non-invasive way to establish paternity before the baby is born.. We come to you, rather it's in hospital or the privacy of your own home., We provide private and confidential test results at all times.

- **Accurate results in 7-11 business day turnaround times for results**
- **Requires only a simple blood collected from the mother & a Buccal Swab testing from the alleged father**
- **Can be performed any time starting in the 7th week of pregnancy**
- **Monday-Thurs at noon only**

## \*Forensic DNA Test

**\*Non-Standard Sample Collection-** Along with obtaining the standard mouth

swabs, J and M will accept blood samples, toothbrushes, bone and tissue samples, gum,flatware,condoms,garments(underwear,sheets,etc). Also,DNA can be extracted from an assortment of physical items. **These samples are to be put in an envelope or paper bags never a sandwich/plastic bag**

**\*Infidelity DNA Testing-** Do you have suspicions of a cheating spouse or partner? This test will determine if DNA exists on an article of evidence:

**\*clothing, bed sheet, pillows, condoms, underwear, or tissue** and whether that profile matches a known reference sample. You will be **provided with answers through simple DNA test. Call us today. We can help**. If the DNA Test comes from someone other than your spouse/partner, or you, it could be a sign of infidelity. We provide discrete, and accurate results.

**\*DNA Sibling Test-** A siblingship test determines whether two children share one or both parents.

**\*Ancestry By DNA-** Want to find out more about yourself and your family through our unique DNA test? Just give us a call.

When you choose J and M Paternity Services LLC, you can expect to receive professional, courteous, private and first class service.

For our Alleged Fathers who just want to know, J and M offers Motherless testing. We come out and test you and the child/children in the privacy of your home.

Our fees include the collection, and mileage. <u>NOTHING HIDDEN!!</u>

Call Melanie @ (703) 568-0755

## <u>We Go Where the Labs and Clinics Don't:</u>

J and M Paternity Service LLC has been performing paternity and immigration testing since 1993.

We offer Mobile collections at:

Your Home

Hospitals (Labor and Delivery)

Law offices

Funeral Homes

Morgues

Private locations

Prisons

Adoption Agencies

Work

2-5 day business days or the next business day for results

**Call Melanie @ (703) 568-0755**

**Child Support Paternity Test in Maryland, DC, Virginia**

Cheek Swab DNA
DNA Test
DNA Test in Maryland, DC, Virginia
Paternity Fraud
Paternity Test
Prenatal DNA Test

JA587

Copyright ©2021

J and M Paternity Services LLC Affordable, Dependable,Accurate!!!We have testing sites Nationwide.........

© 2020 J and M Paternity Services LLC Affordable, Dependable,Accurate!!!We have testing sites Nationwide.......... All Rights Reserved.

Paternity Fraud

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**[PROPOSED] ORDER DENYING
DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL
BUCHANAN'S AUGUST 5, 2022, ORDER REGARDING MOTION TO COMPEL DNA**

Upon consideration of Defendant's Rule 72 Objection to Magistrate Judge Theresa

Carroll Buchanan's August 5, 2022, Order Regarding Plaintiff's Motion to Compel DNA

("Objection"), the briefs filed by the Parties, and any argument regarding the Motion, it is hereby

ORDERED:

1.    That the Motion is hereby DENIED.

2.    Defendant SHALL make himself available for a DNA sample at a date and time

chosen by Plaintiff within the next ten (10) days from this Order.  Failure to comply with this

Order will result in severe sanctions.

_____
Judge Claude M. Hilton
United States District Court
Eastern District of Virginia

1

cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

*Counsel for Plaintiff Jane Doe*

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant Cenk Sidar*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE | : |
| | : |
|      Plaintiff, | : |
| | : |
| v. | :  Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : |
| CENK SIDAR | : |
| | : |
|      Defendant. | : |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE HEARING**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Reply to Plaintiff's Opposition to Motion to Continue the Hearing on his Objection ("Motion") to Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order Regarding Plaintiff Jane Doe's ("Plaintiff") Motion to Compel DNA from September 9, 2022, to September 16, 2022.

Plaintiff has offered no compelling reason to oppose a request for a continuance. Plaintiff's argument that "Defendant's assertion that 'Plaintiff's counsel has not objected' is inaccurate" and lacks a factual basis. ECF No. 50 at 1.  Defendant's counsel emailed Plaintiff's counsel on August 26, 2022, noting that she needed to seek a continuance of the hearing on Defendant's Motion. *See* **Exhibit 1**. Defendant did not object to this email. In fact, in that communication, undersigned counsel even proposed condensing the briefing the schedule so that the appeal of Judge Buchan's August 5, 2022, Order could be heard on September 2, 2022.

Furthermore, Defendant's counsel informed Plaintiff's counsel ten days before August 29, 2022, that Defendant would not be appearing for the Rule 35 examination. *See* **Exhibit 2**. Defendant's counsel then confirmed this again three days before August 29, 2022, that Mr. Sidar

would not be appearing. Therefore, all of Plaintiff's arguments regarding rescheduling and preparing for a Rule 35 examination that they knew was not going to happen are disingenuous at best. This is because **ten** days before the examination, Plaintiff's counsel was informed that Mr. Sidar would not be sitting for the examination.

However, if Plaintiff's counsel has now decided that they wish to oppose the hearing being moved to September 16, 2022, Defendant's counsel is available on September 23, 2022, in accordance with their schedules.

Therefore, Defendant Cenk Sidar respectfully requests that the Court grant his Motion to Continue the hearing on his Objection to Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order Regarding Plaintiff Jane Doe's Motion to Compel DNA from September 9, 2022, to September 16, 2022, or, alternatively, to September 23, 2022.

Dated: September 6, 2022

CENK SIDAR

By Counsel:

_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2022, a copy of the foregoing **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE HEARING** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____
Mariam W. Tadros

2

**From:** Mariam Tadros <MTadros@reesbroome.com>
**Date:** August 26, 2022 at 4:57:00 PM EDT
**To:** Thomas Urban <urban@fhhlaw.com>, Walter Steimel <wes@sclgrp.com>
**Subject: RE: DNA Order**

Mr. Urban – I fully understand the terms of the order and, as indicated, Mr. Sidar has properly objected to the order and effectively noticed an appeal therefrom, to be heard by Judge Hilton. While we do not believe any motion to stay is required, we are happy to file one. Please let me know if you consent. I assume you do not. To your point regarding destruction of a sample, we do not believe that destruction of any evidence is appropriate and it effectively moots any review by the Court.

I inadvertently noticed the hearing for a date that I am out of town on a trip previously planned. I intend to continue the motion one week, assuming you are available. Alternatively, I can do the motion a week earlier (this coming Friday) but that would shorten time for responses.

Mariam Tadros

**From:** Thomas Urban <urban@fhhlaw.com>
**Sent:** Friday, August 26, 2022 1:09 PM
**To:** Mariam Tadros <MTadros@reesbroome.com>; Walter Steimel <wes@sclgrp.com>
**Subject:** RE: DNA Order

Ms. Tadros –

I have returned from out of the country and have seen your emails on this subject.

Please understand that there is an active order requiring Mr. Sidar to be present in our office on Monday for DNA testing. There has been no stay of that order. Therefore, we are not waiving our rights regarding Mr. Sidar's required compliance with that order.

You have had three weeks to obtain a stay of the order.  You did not ask Judge Buchanan for a stay at the hearing nor have you requested any stay at any other time.

Please understand that if Mr. Sidar fails to show up on Monday (as he has done in violation of other orders), then he will face the consequences of his decision.  On the other hand, if he does attend, then Judge Hilton can always order that the test samples be destroyed if he rules in your favor.

Thank you for your attention to this matter.

Thomas F. Urban II
Member
Fletcher, Heald & Hildreth, PLC
Licensed to practice law in the Virginia, District of Columbia, and Texas.
1300 N. 17th Street, Suite 1100 | Arlington, VA 22209
Tel: 703.812.0462 | Fax: 703.812.0486 | Mobile: 703-861-5235

**From:** Mariam Tadros [mailto:MTadros@reesbroome.com]
**Sent:** Friday, August 19, 2022 2:13 PM
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Thomas Urban <urban@fhhlaw.com>
**Subject:** Re: DNA Order

Walt - we have fourteen days to appeal what we believe is an erroneous order. We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not appear until we get a final ruling on this issue. As this is ten days before the date you had unilaterally, we see no prejudice and will strongly oppose any sanctions motion.

Mariam

Sent from my iPhone

> On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com> wrote:
>
>  Mariam,

Respectfully, we do not consent to any such motion. Judge Buchanan was very clear in her ruling and Order. You do not identify any basis for appealing her Order and we believe none exists. Further, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a magistrate judge's determination of a nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law." We believe that Judge Buchanan's Order is fully supported by all applicable law and is not "clearly erroneous" under any standard. The bar for overturning Judge Buchanan's Order is high, and you have presented no arguments for doing so. Therefore, we do not consent.

Your email is the first indication that Defendant intended to appeal the Order. You made no statement on or off the record at the hearing that Defendant would be objecting to or appealing the Order, and waited until the last day to note that Defendant would be making such a filing. We have already arranged for his appearance and testing.

I see nothing in the Local Rules or FRCP providing that an appeal of a Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order.  In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and intend to notice the motion for September 9. Please let me know if you consent to the motion. Also, please let me know your availability for September 9. If that date doesn't work, please provide your next available Friday.

**Mariam Tadros | Rees Broome, PC**
Shareholder
1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182
t 703.790.1911 | f 703.848.2530
mtadros@reesbroome.com | reesbroome.com

<image001.png>

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

**From:** Mariam Tadros <MTadros@reesbroome.com>
**Date:** August 19, 2022 at 2:13:00 PM EDT
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Tom Urban <urban@fhhlaw.com>
**Subject: Re: DNA Order**


Walt - we have fourteen days to appeal what we believe is an erroneous order. We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not appear until we get a final ruling on this issue. As this is ten days before the date you had unilaterally, we see no prejudice and will strongly oppose any sanctions motion.

Mariam

Sent from my iPhone

> On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com> wrote:

> Mariam,

> Respectfully, we do not consent to any such motion. Judge Buchanan was very clear in her ruling and Order. You do not identify any basis for appealing her Order and we believe none exists. Further, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a magistrate judge's determination of a nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law." We believe that Judge Buchanan's Order is fully supported by all applicable law and is not "clearly erroneous" under any standard. The bar for overturning Judge Buchanan's Order is high, and you have presented no arguments for doing so. Therefore, we do not consent.

> Your email is the first indication that Defendant intended to appeal the Order. You made no statement on or off the record at the hearing that Defendant would be objecting to or appealing the Order, and waited until the last day to note that Defendant would be making such

a filing. We have already arranged for his appearance and testing.

I see nothing in the Local Rules or FRCP providing that an appeal of a Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order.  In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros
> <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and
> intend to notice the motion for September 9. Please let
> me know if you consent to the motion. Also, please let
> me know your availability for September 9. If that date
> doesn't work, please provide your next available Friday.
>
> **Mariam Tadros | Rees Broome, PC**
> Shareholder
> 1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182
> t 703.790.1911 | f 703.848.2530
> mtadros@reesbroome.com | reesbroome.com
>
> <image001.png>
>
> This e-mail and any files transmitted with it are confidential and are
> intended solely for the use of the individual or entity to whom they are
> addressed. This communication may contain material protected by the
> attorney-client privilege. If you are not the intended recipient or the
> person responsible for delivering the e-mail to the intended recipient,
> be advised that you have received this e-mail in error and that any use,

dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**<br>    **A Domiciliary of the**<br>    **Commonwealth of Virginia**    )<br><br>    **Plaintiff,**    )<br><br>**v.**    )<br><br>**CENK SIDAR**    )<br><br>    **Defendant.**    ) | **Civil Action No. 1:22-cv-00545**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022 ORDER**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, files this Opposition to Defendant's Motion to Stay referenced above ("Motion"). *ECF No. 46.*

Judge Hilton's clerk notified counsel this morning that he would deny Defendant's pending motion for continuance and rule on the papers on Defendant's Objections to Judge Buchanan's August 5, 2022, Order. As Judge Hilton's Order on that matter may render moot Defendant's Motion, Plaintiff simply notes her opposition to Defendant's Motion, as untimely and for reasons briefed in Plaintiff's other filings last week, but will refrain from further briefing to avoid burdening the Court. Plaintiff will fully brief her opposition to Defendant's Motion at this Court's request.

WHEREFORE, Plaintiff Jane Doe moves the Court to deny Plaintiff's Motion to Stay, order immediate compliance, and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: ___/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of August, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*_____
Thomas F. Urban II

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY MAGISTRATE JUDGE THERESA
CARROLL BUCHANAN'S AUGUST 5, 2022 ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
|     Defendant. | : | |
| _____ | | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S**
**AUGUST 5, 2022 ORDER REGARDING MOTION TO COMPEL DNA**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Reply to Plaintiff Jane Doe's ("Plaintiff") Opposition ("Opposition") to Defendant's Objection ("Objection") to Magistrate Judge Theresa Carroll Buchanan's[1] August 5, 2022 Order ("Order") Regarding Motion to Compel DNA.

I.   **ARGUMENT.**

A.   **Plaintiff Misrepresents Defendant's Rule 72 Motion.**

According to Plaintiff, "Defendant's Objection simply reiterates his earlier arguments and cases which Judge Buchanan already found to be inapplicable or non-persuasive." ECF No. 51 at 1. Plaintiff asserts that Defendant's "Objection contains no specificity and is only a general objection . . . ." ECF No. 51 at 2. This statement is patently false, as Defendant lodged specific objections regarding the Order's failure to specify that Plaintiff met the "good cause" and "in controversy" requirements of Rule 35, that the Order does not sufficiently specify the scope and conditions of the examination, that the Order does not require the examination to be performed by a medical professional, and that the Order specifies an improper location for the examination. Defendant has repeatedly asserted that Plaintiff's failure to establish that the London Police have a rape kit, much less one that has sufficient material to be tested, precludes her from seeking Defendant's DNA.

1.   Plaintiff Misunderstands the Difference Between Rule 72(**a**) and 72(**b**).

In support of her arguments, Plaintiff relies on the Western District of Virginia cases *O'Connell v. Colvin* and *Veney v. Astrue*.  Besides being non-binding authority, neither of the cases apply the rule and standard that are applicable to Defendant's Objection.

---

[1] On August 15, 2022, this case was reassigned to Magistrate Judge John F. Anderson.

*O'Connell v. Colvin* concerned objections to a magistrate judge's Report & Recommendation regarding motions for summary judgment, which are dispositive motions. *See O'Connell v. Colvin*, 2014 WL 4923951, at *1 (W.D. Va. Sept. 30, 2014). In ruling on the parties' objections, the court relied upon the standard of review with respect to objections falling under Rule 72(**b**)(2), not Rule 72(**a**). *See Id.* at *4. Similarly, in *Veney v. Astrue*, the court addressed an objection to a Report & Recommendation regarding a ruling on a motion for summary judgment, pursuant to Rule 72(**b**). 539 F. Supp. 2d 841, 842 (W.D. Va. 2008).

Rule 72(**b**) applies to "a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement." Fed. R. Civ. P. 72(b). A dispositive motion obviously requires a court to address a litany of issues, much more so than a Rule 72(**a**) objection, which applies to a discrete "pretrial matter not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). Magistrate Judge Buchanan issued an order that was one sentence over a single page, including the case caption. She did not issue an order that addressed the merits of Defendant's motion in any sort of detail or provide a basis for her ruling.

2.    <u>Regardless, Defendant Lodged Specific Objections to the Order</u>.

As detailed in Defendant's Memorandum in Support of his Objection, Defendant objects on the following grounds:

- The Order did not provide that Plaintiff met the "good cause" and "in controversy" requirements imposed by Rule 35. *See, e.g.,* ECF No. 44 at 3, 5.

- The Order does not specify the conditions and scope of the examination. *See, e.g.,* ECF No. 44 at 3, 15.

- The Order does not specify that the examination must be conducted by a medical professional. *See, e.g.,* ECF No. 44 at 3, 16.

- The Order does not designate a proper "place" for a Rule 35 examination. *See, e.g.,* ECF No. 44 at 3, 16-17.

Clearly, Plaintiff's argument that Defendant did not provide specific objections to the one-page Order is a misrepresentation.

**B.      Plaintiff, Yet Again, Fails to Sufficiently Address the Actual Merits of Defendant's Arguments.**

1.     <u>Plaintiff Still Fails to Offer Any Support that a DNA Sample Still Exists or That She is Entitled to Defendant's DNA.</u>

Plaintiff argues that there is correspondence showing that the London Police Department still had the DNA sample in July *2020.* ECF No. 51 at 6. As admitted by Plaintiff once again, "[t]he London Police inadvertently lost that buccal swab sample [collected from Defendant] . . . ." ECF No. 51 at 8. Plaintiff asserts, without providing a shred of evidence, that the rape kit "***has not been lost*** and was profiled." ECF No. 51 at 8. Over two years have passed since the 2020 correspondence and as the London Police already lost one sample, it is not improbable that they may have lost another. Again, absent an affidavit or other verification from the London Police that she can test Defendant's DNA against an uncompromised, useable sample, Defendant should not be forced to provide his DNA. Plaintiff's counsel's unverified statements regarding what the London Police allegedly told him and/or did falls far short of providing any sort of actual evidence. Moreover, Plaintiff has not provided any evidence regarding the chain of custody of the rape kit that is now nearly five years old.

2.     <u>A Paternity Company is Not a Medical Professional.</u>

According to Plaintiff, "Defendant's challenges to the qualifications of the medical professionals directed to collect and analyze Defendant's buccal swab sample are likewise baseless . . . ." ECF No. 51 at 8. In support of this statement, Plaintiff appends to her Opposition

"Technical Information for Bode Technologies and J and M Paternity." ECF No. 51-5. Plaintiff's own exhibit states that "Bode Technology provides Trusted [sic] forensic DNA analysis services." ECF No. 51-5 at 2. It does not state that Bode Technology is a medical professional. Regardless, the Order provides that Defendant submit to *employees* of *J and M Paternity Services*, so the qualifications of Bode Technologies are irrelevant to that portion of the Order. J and M Paternity Services, according to the exhibit provided by Plaintiff, offers "DNA Paternity Test," "Maternity," "Immigration," "Adoption," "Non-Invasive Prenatal Paternity," "Forensic DNA Test," "Non-Standard Sample Collection," "Infidelity DNA Testing," "DNA Sibling Test," and "Ancestry by DNA." ECF No. 51-5 at 11-13. The printout provides no further details on what specifically a "Forensic DNA Test" is or who performs it. Regardless, Plaintiff's exhibits are irrelevant, as what matters is what is provided in the Court's Order, which impermissibly allows a Rule 35 examination by *employees* of J and M Paternity Services.

**C.      Defendant's Objection is Not "Moot."**

Plaintiff contends that "Defendant's Objection is moot as he failed to timely request a Stay of Judge Buchanan's Order . . . and has since violated the Order by failing to appear for DNA collection at the time and place set in the Order." ECF No. 51 at 1. There is no legal support for such an argument.

1.      <u>Defendant Timely Objected in Accordance with Rule 72(a).</u>

Defendant complied with all of the requirements imposed by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 72(a) provides that, when a magistrate judge issues an order deciding a pretrial matter that is not dispositive of a party's claim or defense, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Additionally, Defendant complied with the applicable local rule, which provides:

"Any objection to a magistrate judge's order on a nondispositive matter pursuant to Fed. R. Civ. P. 72(a), shall be considered a motion and is subject to the briefing and notice requirements of Local Civil Rule 7 . . ." Local Civ. R. 72. Magistrate Judge Buchanan's Order was issued on August 5, 2022 (ECF No. 40). Defendant filed his Objection, as a motion, within the fourteen-day deadline, on August 19, 2022 (ECF No. 43). Additionally, Defendant filed a Motion to Stay, as detailed in Part I.B.3, *infra*.

       2.    <u>Defendant Provided Notice to Plaintiff that He Would Not Provide a DNA Sample Until His Objection Was Ruled Upon</u>.

Defendant's counsel informed Plaintiff's counsel ten days before August 29, 2022, that Defendant would not be appearing for the August 29, 2022, Rule 35 examination. *See* **Exhibit 1**. Defendant's counsel then confirmed again three days before August 29, 2022, that Defendant would not be appearing. Therefore, all of Plaintiff's arguments regarding rescheduling and preparing for a Rule 35 examination that Plaintiff's counsel knew was not going to happen are disingenuous at best. This is because **ten** days before the examination, Plaintiff's counsel was informed that Defendant would not be sitting for the examination.

       3.    <u>Defendant Filed a Motion to Stay</u>.

Prior to August 29, 2022, Defendant filed a Motion to Stay (ECF No. 46), as well as an accompanying Memorandum in Support (ECF No. 47) and Wavier of Oral Argument (ECF No. 48). As noted in Defendant's Motion to Stay, if Defendant's DNA sample was compelled to be produced on August 29, 2022, it would result in irreparable harm to Defendant. Plaintiff has made clear that her intention in procuring the DNA sample is to provide it to the London Metropolitan Police so it can be compared to DNA that was allegedly found in a rape kit taken there in September 2017. Plaintiff has alleged that Defendant violated English criminal laws. ECF No. 1 ¶ 56. The Order mandates that Defendant "appear on Monday, August 29, 2022, at

10:00 a.m. at the office of Plaintiff's counsel . . . and shall submit to the employee(s) of J and M Paternity Service, LLC for the buccal swab samples . . . . " ECF No. 40 at 1. The Order continues that "J and M Paternity Service, LLC shall transfer the samples to Eurofins Europe/London Police and Bode Technologies for testing . . . ." ECF No. 40 at 1. The irreparable harm caused by the production of the sample cannot be undone if the Court ultimately sustains Defendant's Objection, even if the Court requires Plaintiff to return and refrain from using the DNA sample, as it will already be in the hands of the London Police.

> **D.      Plaintiffs Misunderstands the Transcript Requirement Imposed by Rule 72.**

Plaintiff contends that Rule 72(b)(2) requires that a transcript be ordered, which Defendant has not ordered and provided. ECF No. 51 at 10. While Rule 72(**b**)(2) *does* provide that "the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient," again, Rule 72(**b**) only applies to dispositive motions and prisoner petitions. Fed. R. Civ. P. 72(b). Again, Defendant's Objection was made pursuant to Rule 72(**a**). As such, despite Plaintiff's erroneous interpretations of Defendant's Objection and Rule 72, Defendant was not required to order and provide a transcript.

## II.      CONCLUSION.

For the reasons set forth herein, Defendant Cenk Sidar respectfully requests that the Court sustain Defendant's Objection to Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order Regarding Motion to Compel DNA, deny Plaintiff Jane Doe's Motion to Obtain Physical Examination of and DNA Sample from Defendant, enter a protective order prohibiting Plaintiff from seeking a DNA sample and/or physical examination of Defendant, and grant such other and further relief in favor of Defendant as this Court deems just and proper.

Dated: September 8, 2022

CENK SIDAR

By Counsel:

_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 8, 2022, a copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE THERESA CARROLL BUCHANAN'S AUGUST 5, 2022 ORDER REGARDING MOTION TO COMPEL DNA** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____
Mariam W. Tadros

7

**From:** Mariam Tadros <MTadros@reesbroome.com>
**Date:** August 19, 2022 at 2:13:00 PM EDT
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Tom Urban <urban@fhhlaw.com>
**Subject: Re: DNA Order**

 Walt - we have fourteen days to appeal what we believe is an erroneous order.
We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not
appear until we get a final ruling on this issue. As this is ten days before the date
you had unilaterally, we see no prejudice and will strongly oppose any sanctions
motion.

Mariam

Sent from my iPhone

> On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com>
> wrote:

 Mariam,

Respectfully, we do not consent to any such motion. Judge Buchanan
was very clear in her ruling and Order. You do not identify any basis
for appealing her Order and we believe none exists. Further, 28
U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a
magistrate judge's determination of a nondispositive pretrial matter if
the magistrate judge's order is "clearly erroneous or contrary to law."
 We believe that Judge Buchanan's Order is fully supported by all
applicable law and is not "clearly erroneous" under any standard. The
bar for overturning Judge Buchanan's Order is high, and you have
presented no arguments for doing so. Therefore, we do not consent.

Your email is the first indication that Defendant intended to appeal
the Order. You made no statement on or off the record at the hearing
that Defendant would be objecting to or appealing the Order, and
waited until the last day to note that Defendant would be making such

a filing. We have already arranged for his appearance and testing.

I see nothing in the Local Rules or FRCP providing that an appeal of a Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order. In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros
> <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and intend to notice the motion for September 9. Please let me know if you consent to the motion. Also, please let me know your availability for September 9. If that date doesn't work, please provide your next available Friday.
>
> **Mariam Tadros | Rees Broome, PC**
> Shareholder
> 1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182
> t 703.790.1911 | f 703.848.2530
> mtadros@reesbroome.com | reesbroome.com
>
> <image001.png>
>
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use,

dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| JANE DOE | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-00545 |
| | ) | |
| | ) | |
| CENK SIDAR, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

THIS MATTER comes before the Court on Defendant's Rule 72 Objection to Magistrate Judge's August 5, 2022, Order regarding Plaintiff Jane Doe's Motion to Obtain DNA Sample from Defendant. The Court finds that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law and it is hereby

ORDERED that Magistrate Judge's Order of August 5, 2022 is AFFIRMED.

_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September 12, 2022

JA614

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JANE DOE | : |
| | : |
|      Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : |
| CENK SIDAR | : |
| | : |
|      Defendant. | : |

_____

## <u>NOTICE OF APPEAL</u>

Defendant, Cenk Sidar, by counsel, pursuant to the collateral order doctrine established in

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), appeals to the United

States Court of Appeals for the Fourth Circuit from the order filed on September 12, 2022, and

entered September 15, 2022, denying Defendant's Rule 72 Objection to Magistrate Judge's

August 5, 2022, Order regarding Plaintiff Jane Doe's Motion to Obtain DNA Sample from

Defendant.

Dated: October 13, 2022

/s/ Mariam Tadros_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
Tel: (703) 790-1911
Fax: (703) 848-2530
Email:  mtadros@reesbroome.com
*Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 13th day of October, 2022, a copy of the foregoing **NOTICE OF APPEAL** was served electronically through:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

/s/ Mariam Tadros
Mariam W. Tadros (VSB #75502)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|    **A Domiciliary of the** | ) | |
|    **Commonwealth of Virginia** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|    **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS AND TO FURTHER COMPEL**
**COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Motion for Sanctions and to

Further Compel Compliance with Magistrate Judge Theresa Carroll Buchanan's August 5, 2022,

Order ("DNA Order," ECF No. 40), as upheld on appeal by Judge Hilton (ECF No. 55).

As a sanction for Defendant's non-compliance Plaintiff requests entry of an Order to

(i) bar Defendant from objecting to Plaintiff's evidence of liability; (ii) bar Defendant from

presenting evidence in rebuttal of Plaintiff's evidence that Defendant raped Plaintiff; (iii) bar

Defendant from objecting to or striking the text messages from Defendant in which he admitted

raping Plaintiff; (iv) compel Defendant to submit to DNA buccal swab collection as part of both

Plaintiff's proof of liability and demand for punitive damages; and (iv) Plaintiff's attorney fees

and costs caused by Defendant's willful non-compliance.

**Background**

This is a rape case. Defendant raped the Plaintiff while she was asleep in a rental flat in

London. Defendant admitted to Plaintiff, in writing at the time, that he raped her. Defendant now

denies raping Plaintiff but refuses to comply with any court orders that he submit himself for a DNA buccal swab.

Immediately after Defendant raped Plaintiff, Plaintiff went to the police and then to The Havens to have medical examinations and evidence of rape collected. Male DNA was found inside Defendant in the high vaginal swab taken by The Havens. When the London Police contacted Defendant, he initially provided them with a DNA sample, which the London Police inadvertently destroyed. Contacted by the London Police to provide a replacement sample Defendant refused, as he refuses to this day.

### Defendant's Refusal to Comply With Multiple Court Orders

Defendant has consistently defied court orders to submit to a DNA buccal swab and testing. Twice he failed to  appear as and when ordered by a Court, causing Plaintiff to incur attorneys' and medical assistants' fees. Having successfully stymied the Fairfax County Circuit Court Defendant persists in the same conduct before this Court. Magistrate Judge Buchanan ordered Defendant to appear for DNA testing. (ECF No. 40) Judge Buchanan ordered DNA collection for Monday, August 29, 2022, with a clear instruction that Defendant produce himself for a DNA buccal swab collection or face sanctions, including a potential default judgment.[1] Defendant ignored the warning and defied Magistrate Judge Buchanan's Order.

As evidenced by the emails attached to Plaintiff's Memorandum Defendant continues to refuse to produce himself for DNA collection. While still in violation of this Court's DNA Order and without a request for stay, Defendant has appealed Judge Hilton's latest Order to the Fourth Circuit Court of Appeals. Defendant continues to believe that he can disregard orders of this

---

[1]     This admonition was likely made due to Defendant's failure to show up for previous DNA collections.

PLAINTIFF'S MOTION FOR SANCTIONS AND TO FURTHER COMPEL COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

Court without a stay or leave of this Court, even though Local Rule 8 explicitly states that "[f]iling a notice of appeal does not automatically stay the operation of the judgment, order or decision for which review is sought."

Defendant shows a clear contempt and disregard for Plaintiff, this Court, the Fairfax County Court, for judicial process, and for the rule of law. Defendant's outrageous actions deny Plaintiff and this Court any semblance of orderly due process. Defendant is browbeating Plaintiff into submission through his dilatory tactics and disdain of Court Orders. Defendant will be rewarded for his abusive behavior if he is successful in avoiding DNA collection through self-help and non-judicial process. Defendant should not be rewarded for his brazen conduct.

Plaintiff's arguments are set forth in the Memorandum filed with this Motion.

WHEREFORE, Plaintiff Jane Doe moves the Court to enter an order to

(i) bar Defendant from objecting to Plaintiff's evidence of liability;

(ii)  bar Defendant from presenting evidence in rebuttal of Plaintiff's evidence that Defendant raped Plaintiff;

(iii) bar Defendant from objecting to or striking the text messages from Defendant in which he admitted raping Plaintiff;

(iv) compel Defendant to submit to DNA buccal swab collection as part of both Plaintiff's proof of liability and demand for punitive damages; and

(iv) Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: ___/s/ Thomas F. Urban II_____
3

THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of November, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 1:22—cv-00545** |
| ) | |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** ) | |
| ) | |
| **Defendant.** ) | |

**[PROPOSED] ORDER REGARDING**
**PLAINTIFF'S MOTION FOR SANCTIONS AND TO FURTHER COMPEL**
**COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER**

Upon consideration of Plaintiff's Motion For Sanctions And To Further Compel

Compliance With Judge Buchanan's August 5, 2022, Order ("Motion"), the briefs filed by the

Parties, and any argument regarding the Motion, the Motion is hereby GRANTED;

Specifically,

1. The Defendant is barred from objecting to Plaintiff's evidence of liability;

2. The Defendant is barred from presenting evidence in rebuttal of Plaintiff's

   evidence that Defendant raped Plaintiff;

3. The Defendant is barred from objecting to or striking the text messages from

   Defendant in which he admitted raping Plaintiff;

4. The Defendant is compelled to submit to DNA buccal swab collection as part of

   both Plaintiff's proof of liability and demand for punitive damages at a date and

   time to be selected by Plaintiff; and

5. Defendant is assessed Plaintiff's attorney fees and costs caused by Defendant's

   willful non-compliance in the amount of $_____; and

6.      Defendant is assessed a fine of $_____ per day for his willful non-

compliance with Magistrate Judge Buchanan's Order of August 5, 2022 (ECF No.

40) from the date Defendant did not appear for DNA testing as ordered, August

29, 2022, through the day that Defendant complies with that order and presents

himself for testing.

_____
Judge,  United States District Court
Eastern District of Virginia


cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

*Counsel for Plaintiff Jane Doe*

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant Cenk Sidar*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**                 ) | |
|    **A Domiciliary of the**     ) | |
|    **Commonwealth of Virginia**  ) | |
|                    ) | |
|    **Plaintiff,**            ) | **Civil Action No. 1:22-cv-00545** |
|                    ) | |
| **v.**                      ) | |
|                    ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR**         ) | |
|                    ) | |
|    **Defendant.**          ) | |

**PLAINTIFF'S MEMORANDUM SUPPORTING MOTION FOR SANCTIONS AND
FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S
AUGUST 5, 2022, ORDER**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Motion for Sanctions and

Further Compel Compliance with Magistrate Judge Buchanan's August 5, 2022, Order ("DNA

Order," ECF No. 40) upheld on appeal by Judge Hilton (ECF No. 55).

As a sanction for Defendant's non-compliance Plaintiff requests entry of an order to (i)

bar Defendant from objecting to Plaintiff's evidence of liability; (ii) bar Defendant from

presenting evidence in rebuttal of Plaintiff's evidence that Defendant raped Plaintiff; (iii) bar

Defendant from objecting to or striking the text messages from Defendant in which he admitted

raping Plaintiff; (iv) compel Defendant to submit to DNA buccal swab collection as part of both

Plaintiff's proof of liability and demand for punitive damages; and (iv) Plaintiff's attorney fees

and costs caused by Defendant's willful non-compliance.

**Background**

This is a rape case. The Defendant raped the Plaintiff. Immediately after Defendant raped

Plaintiff, Plaintiff went to the police and then to The Havens to have medical examinations and

JA623

evidence of rape collected. Male DNA was found inside Defendant in the high vaginal swab taken by The Havens. When the London Police contacted Defendant, he initially provided them with a DNA sample, which the London Police inadvertently destroyed. Contacted by the London Police to provide a replacement sample Defendant refused, as he refuses to this day.

Initially Defendant admitted to Plaintiff that he raped her. Through multiple text messages send over several days, attached to the Complaint (*ECF No. 1-2*), Defendant told Plaintiff that "at least it happened with her." Although he admitted raping Plaintiff at the time, Defendant's litigation posture has been to consistently deny raping Plaintiff in his Interrogatory responses, attached to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Obtain Physical Examination of DNA Sample from Defendant as Exhibit 6 (*ECF No. 38, pp. 9-10*) and Defendant's recent responses to requests 10 through 12 of Plaintiff's Requests for Admission, attached hereto as Exhibit A. The fact that Defendant raped Plaintiff is an essential element of the controversy and matching his DNA to the male sperm samples found on Plaintiff's clothing and in her high vaginal swabs taken at The Havens would prove penetration – which he denies.

Matching Defendant's buccal swab DNA to the male sperm DNA found in Plaintiff's high vaginal swab is central to this case, just as it was important to the London Police during their investigation. During discussions with the Defendant the London Police informed Defendant that male sperm DNA was found in the high vaginal swabs taken by The Havens. In Plaintiff's Opposition to Defendant's Objection to Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order Regarding Motion to Compel DNA (ECF No. 51) Plaintiff provided copies of discussions between Defendant and the London Police from July 2020 as part of her August 11, 2022, document production. *See*, ECF No. 51-2, pp. 2-5, Exhibit B, Bates Doe Doc Prod 000124-7. At 10:14 a.m. on July 28, 2020, Detective Juliette Long of the London

2

PLAINTIFF'S MEMORANDUM SUPPORTING MOTION FOR SANCTIONS AND FURTHER COMPEL
COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

Metropolitan Police told Mr. Nicholas Dent of Kingsley Napoli that "[t]he lab have [sic] traced mail DNA within the high vaginal swabs. It is this we wish to compare against your clients DNA." ECF No. 51-2, p. 4, Exh. B, Doe Doc Prod 126. In response to a follow-up inquiry Detective Long clarified on July 28 at 11:58 a.m. "I can clarify that the reason for the DNA sample from Mr. Sidar, is to prove or disprove penetration. A comparison of Mr. Sidar's DNA will be compared to the vaginal swabs taken from the victim." ECF No. 51-2, p. 5, Exh. B, Doe Doc Prod 127.

The Defendant has known since at least as early as July of 2020 that male sperm DNA was found in Plaintiff's high vaginal swab. Defendant's denials that he raped Plaintiff would be determinatively disproven if the male sperm DNA collected in Plaintiff's high vaginal swab matched the DNA buccal swab that Plaintiff has been seeking in this case since July 15, 2022 (ECF No. 26), and since January 6, 2020, in the preceding case in Fairfax County Circuit Court.

**Defendant's Refusal to Comply With Multiple Court Orders**

Despite the clear relevance and critical importance to Plaintiff's case, Defendant has consistently defied court orders to submit to a DNA buccal swab and testing. Twice he failed to appear as and when ordered by a Court, causing Plaintiff to incur attorneys' and medical assistants' fees. We attach a chart showing the history of Defendant's defiance of Court Orders to submit to DNA testing in the underlying case in Fairfax County Circuit Court. Exhibit B.

Having successfully stymied the Fairfax County Circuit Court Defendant persists in the same conduct before this Court. Magistrate Judge Buchanan ordered Defendant to appear for DNA testing. (ECF No. 40) Judge Buchanan ordered DNA collection for Monday, August 29, 2022, with a clear instruction that Defendant produce himself for a DNA buccal swab collection

or face sanctions, including a potential default judgment.[1]  Defendant ignored the warning and again defied a court order.

Plaintiff's counsel and Melanie with J and M Paternity were at Mr. Urban's office at 9:45 a.m. on Monday, August 29, 2022, and stayed until 11 a.m. Plaintiff notified Defendant's counsel by email that they were at the office and waiting for Defendant. Melanie, from J and M, had to drive almost 1.5 hours to get to the office in time for the DNA collection. Defendant did not appear for that collection. Plaintiff's counsel and the Court-ordered medical collection team waited for Defendant for over an hour. Plaintiff sent an email to Defendant's counsel reminding Defendant of his obligation under the Order. *See* ECF No. 51-3, Exhibit C, pp. 2-5. Defendant's counsel warned Plaintiff that Defendant would ignore the Court's Order, but with no stay in place, Plaintiff and medical personnel had to arrive and wait for Defendant to attend the sample collection. Defendant defied the standing Order of this Court. Plaintiff had to reimburse J and M for the non-show fee (*see*, ECF. No 51-4, p. 2, Invoice, Exh. D). This was the second time Plaintiff has been assessed expenses for Defendant's failure to appear for DNA collection in violation of a court order.

Defendant apparently was directed by his counsel that he did not need a stay of Magistrate Judge Buchanan's Order and was free to disregard it. *See*, Exhibit C, Emails between counsel. After the attached email exchange Defendant finally requested a stay on Sunday afternoon, August 28, 2022, twenty-three (23) days after this Court's Order (*ECF No. 40*), and *only hours* before he defied the Court's Order by failing to appear for DNA collection. Judge

---

[1]     This admonition was likely made due to Defendant's failure to show up for previous DNA collections.

Hilton denied Defendant's appeal and upheld Judge Buchanan's Order on September 12, 2022,

(ECF No. 55), rendering moot Defendant's late-filed stay request.

Defendant continues disobey Court Orders commanding him to produce himself for

examination. Defendant appealed Judge Hilton's Order to the Fourth Circuit (ECF No. 56,

October 13, 2022), but again has not filed a request to stay this Court's Orders. Instead,

Defendant continues to avail himself of self-help, disregarding this Court's orders as though they

are a minor annoyance that do not apply to him or his counsel. Defendant continues to believe

that he can disregard orders of this Court without a stay or leave of this Court, even though Local

Rule 8 explicitly states that "[f]iling a notice of appeal does not automatically stay the operation

of the judgment, order or decision for which review is sought."

Defendant demonstrates a clear contempt and disregard for Plaintiff, this Court, the

Fairfax County Court, for judicial process, and for the rule of law. Defendant's outrageous

actions deny Plaintiff and this Court any semblance of orderly due process. Defendant is

browbeating Plaintiff into submission through his dilatory tactics and disdain of Court orders.

**Legal Standard**

District courts have wide authority to control discovery and impose a wide variety of

sanctions for noncompliance with discovery orders. *Certain Underwriters v. AdvanFort Co*.,

Civil Action No. 1:18-cv-1421 (TSE/TCB) (E.D. Va. July 25, 2019), at 6, *citing Hinkle v. City* of

*Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996) (*citation omitted*); *see also Vir2us, Inc. v.

Invincea, Inc*., 235 F. Supp. 3d 766, 779 (E.D. Va. 2017). The Court in *Certain Underwriters*

stated that "[i]n determining whether discovery sanctions are appropriate, courts should

determine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2)

whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is

appropriate for the violation." Further, when determining the appropriateness of sanctions courts should consider "consider "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (*citation omitted*)." *Certain Underwriters*, at 6.

### Analysis of Sanctions Standards

We apply the considerations that support the assessment of sanctions to show that sanctions are appropriate under any analysis.

### Three Part Criteria Considered in *Certain Underwriters*

(1)     Whether a Party Violated a Discovery Order or the Federal Rules of Civil Procedure

Defendant has clearly violated Magistrate Judge Buchanan's Order, as upheld by judge Hilton on appeal. Defendant has also violated Rule 37(b)(2)(A) and (B). by refusing to cooperate in discovery. Sanctions are contemplated by Rule 37(b)(2)(C), which states that the court *must* order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure. Plaintiff seeks this relief..

(2)     Whether the Violation was "Harmless" or "Substantially Justified"

Defendant's deliberate disobedience and refusal to comply with the Federal Rules of Civil Procedure and this Court's Order, and engage in self-help, are not "harmless" or "substantially justified." Not only are these actions harmful to the Plaintiff and the current litigation, but they are also harmful to the judicial process. Permitting parties to pick and choose and comply with only the orders they like would lead to a complete breakdown of the judicial

process. Pretending that an order does not apply when appealing it, rather than requesting a stay in advance, causes the same risks of converting litigation to a free-for-all where no rules apply. This standard is met.

> (3)     Which Sanction is Appropriate for Violation

Appropriate sanctions for Defendant's violations include those that prevent Defendant from obtaining any litigation advantage from his conduct and that compensate Plaintiff for unnecessary expenses, legal fees, and cumulative emotional distress.

**Four Part Criteria Considered in *Anderson***

> (4)     Whether Non-Complying Party Acted in Bad Faith

Defendant, the non-complying party, is clearly acting in bad faith. As demonstrated in his conduct before the Fairfax County Circuit Court, summarized in Exhibit A, and his current violation of Magistrate Judge Buchanan's Order as upheld by Judge Hilton, Defendant's disregard for the orders of any court and the rule of law is both deliberate and profound. Defendant clearly acts in bad faith and there can be no excuse or reward for his conduct.

> (5)     Prejudice Caused Plaintiff

Defendant's request and conduct have already caused irrevocable harm and will continue to cause plaintiff harm going forward. Plaintiff's counsel and DNA test lab have already made themselves available twice for court ordered testing, only to have the Defendant not appear. In the current instance, both the lab specifically named in the court order and counsel appeared and were ready to collect the DNA sample when at the last minute over the weekend the defendant files a motion to stay and decides on his own to completely disregard a court order. Defendant's conduct disrespectful to counsel and opposing party, to this court and to legal process. Plaintiff

has spent more time on this case attempting to secure Defendant's compliance with valid Court orders and rebutting frivolous claims that she has on the merits of her case.

(6)     Need for Deterrence

Defendant has demonstrated multiple times that he will continue to violate any court order with which he does not agree and attempt to manipulate the legal system. His conduct cannot be condoned and not only must he be deterred and future litigants must also be deterred from similar conduct.

Counsel also plays a role in these matters. Counsel are officers of the Court and are bound to encourage compliance with Court orders and procedures. Ultimately, counsel is responsible for controlling their client, and when a client cannot be effectively controlled counsel must withdraw or suffer the consequences of facilitating a party's offensive and disruptive conduct.

(7)     Whether Less Drastic Sanctions Would Be Effective

Despite being specifically admonished that if he did not submit to DNA testing as ordered by Judge Buchanan in the DNA Order that the Court would levy sanctions against Defendant, including entering a default judgment against Defendant, Defendant continues defy this Court, ignore its orders and blatantly refuse to comply with the DNA Order.

Defendant has been sanctioned several times for violating court orders, paying over $60,000 in attorneys fee sanctions in Fairfax County Circuit Court. While monetary sanctions have helped Plaintiff with the costs of rebutting Defendant's conduct, they have not yet led to a change in Defendant's behavior. Something less drastic is unlikely to have an effect. Plaintiff has requested a mix of sanctions that both help deter such conduct by litigants, compensate Plaintiff

for Defendant's vexatious conduct, preserve Plaintiff's case, and deter future litigants from blatant disregard of this Court's Orders and the Federal Rules of Civil Procedure.

Plaintiff's requested sanctions include --

(i) a bar against Defendant objecting to Plaintiff's evidence, to prevent Defendant from benefitting from his conduct, while preserving Plaintiff's right to introduce evidence that supports her demand for punitive damages;

(ii) a bar against Defendant presenting evidence in rebuttal of Plaintiff's evidence that Defendant raped Plaintiff, to prevent Defendant from benefitting from his conduct, while preserving Plaintiff's right to introduce evidence that supports her demand for punitive damages;

(iii) a bar against Defendant objecting to or striking the text messages from Defendant in which he admitted raping Plaintiff, to prevent Defendant from averring that he did not rape Plaintiff when he will not submit to testing (Defendant has also indicated that he did not preserve this evidence, which Plaintiff may address at a later time);

(iv) an order to compel Defendant to submit to DNA buccal swab collection as part of both Plaintiff's proof of liability and demand for punitive damages, with an instruction to the jury that non-compliance is a continuation of Defendant's abuse of Plaintiff and supports significant punitive damages above the cap typically allowed in Virginia; and

(iv) an aware of monetary fines, Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance, in an attempt to deter Defendant's conduct and to send a signal to similarly situated parties.

**Prayer**

WHEREFORE, Plaintiff Jane Doe moves the Court to enter an order to

(i) bar Defendant from objecting to Plaintiff's evidence of liability;

(ii)  bar Defendant from presenting evidence in rebuttal of Plaintiff's evidence that

Defendant raped Plaintiff;

(iii) bar Defendant from objecting to or striking the text messages from Defendant in

which he admitted raping Plaintiff;

(iv) compel Defendant to submit to DNA buccal swab collection as part of both

Plaintiff's proof of liability and demand for punitive damages; and

(iv) Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By:   _/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

PLAINTIFF'S MEMORANDUM SUPPORTING MOTION FOR SANCTIONS AND FURTHER COMPEL
COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

JA632

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of November, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Thomas F. Urban II
Thomas F. Urban II

11

**EXHIBIT A**

**Request No. 9:**

On or about September 16, 2017, Defendant told Plaintiff that he would not attempt any further romantic advances on Plaintiff.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 10:**

Early in the morning of September 17, 2017, Defendant attempted to engage in sexual intercourse with Plaintiff.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 11:**

Early in the morning of September 17, 2017, Defendant engaged in sexual intercourse with Plaintiff.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 12:**

Defendant had his penis exposed when he attempted to engage in sexual activity with Plaintiff early in the morning of September 17, 2017.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 13:**

Plaintiff pushed Defendant off of her early in the morning of September 17, 2017

**Objection:**

No objection.

**Response:**

Denied. Furthermore, Defendant avers that Plaintiff said "no" and he stopped. There was no physical fight.

**Request No. 14:**

Early in the morning of September 17, 2017, Plaintiff did not give verbal consent to Defendant to engage in sexual intercourse with her.

**Objection:**

Defendant objects to Request No. 14 as vague in its use of the phrases "verbal consent" and "engage in sexual intercourse."

**Response:**

Notwithstanding and without waving the foregoing objection, denied.

**Request No. 15:**

Early in the morning of September 17, 2017, Defendant knew that Plaintiff did not consent to sexual intercourse.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 16:**

Early in the morning of September 17, 2017, Plaintiff immediately told Defendant that she had not consented to sexual activity.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 17:**

Early in the morning of September 17, 2017, Plaintiff immediately left the apartment rented by Defendant after he attempted to have sexual activity with her.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 18:**

Early in the morning of September 17, 2017, Defendant apologized for engaging in sexual intercourse with Plaintiff without her consent.

**Objection:**

No objection.

**Response:**

Denied.

**Request No. 19:**

Defendant apologized for engaging in sexual intercourse with Plaintiff without her consent over the next few days after September 17, 2017.

**Objection:**

6

EXHIBIT B
FAIRFAX COUNTY COURT DNA TIMELINE OF CRITICAL DATES

| Event | Description | Date |
|---|---|---|
| | | |
| Original Case Filed, Fairfax County | | September 13, 2019 |
| Merits and DNA Discovery Served on Defendant | Served directly on Sidar | January 6, 2020 |
| Motions to Compel on all Discovery Including DNA | Served on Defendant and counsel for Defendant | January 31, 2020 |
| Order on Motion to Compel DNA | Hearing and Order signed Before SMITH GRANTING COMPEL | February 21, 2020 |
| Plaintiff email to Defendant arranging tests to be performed at home or in office; demanding submission for DNA and blood testing | | March 23, 2020 |
| Plaintiff demand letter for DNA, blood and other discovery | | May 20, 2020 |
| Plaintiff email to Defendant inquiring for a response to prior requests for DNA and discovery | | May 21, 2020 |
| Plaintiff follow up demand letter for DNA, blood and other discovery | | June 5, 2020 |
| Plaintiff's warning letter to Defendant that attempt to request reconsideration of DNA discovery order would lead to sanctions demand. | | June 12, 2020 |

1

| | | |
|---|---|---|
| Plaintiff second email to demanding tests and that we would send tester to collect samples | | June 12, 2020 |
| Plaintiff files Motion for Contempt Order, Arrest and Sanctions for Failure to Provide DNA | | June 24, 2020 |
| Defendant served Objections to Rogs, RFDs and DNA/blood sample | | July 8, 2020 |
| Motion to Reconsider DNA Order | Defendant's Motion | July 9, 2020 |
| Order denying without prejudice motion for criminal contempt for failure to provide DNA | Order signed by OBLON | July 24, 2020 |
| Order Denying Defendant's Motion to Reconsider on DNA | Bench ruling by SMITH | August 7, 2020 |
| Plaintiff sends letter to Defendant demanding compliance with court's DNA order | | August 10, 2020 |
| Defendant sends partial insufficient blood exam | | August 13, 2020 |
| Plaintiff sends email and letter to Defendant rejecting partial blood screen and demanding compliance with court's DNA order, and demanding cease and desist from outside interference | | August 16, 2020 |
| Plaintiff letter regarding production deficiencies, lack of DNA and Defendant's response | | August 16, 2020 |
| Plaintiff meet and confer to request hearing date for Motion for Contempt or in Alternative Show Cause for DNA | | August 20, 2020 |

| | | |
|---|---|---|
| Defendant files motion for protective order after the meet and confer, without notice | (Later denied by Judge Smith on September 4, 2020) | August 20, 2020 |
| Plaintiff files Motion for Civil Contempt or in Alternative Rule to Show Cause | | August 21, 2020 |
| Plaintiff files Affidavit in Support of Motion for Civil Contempt | | September 3, 2020 |
| Hearing on Plaintiff second motion for contempt; Defendant's first mention of protective order | Request for protective order denied, Rule to Show Cause Issued | September 4, 2020 |
| Court issues Rule to Show Cause | | October 7, 2020 |
| Rule to Show Cause personally served on Defendant | | October 28, 2020 |
| Service copy of Rule filed with Court | Service filed with Court by process server | November 2, 2020 |
| Hearing on Rule to Show Cause | | November 12, 2020 |
| Hearing on Rule 4:10 examination | | January 21, 2021 |

3

**EXHIBIT C**



**From:** **Mariam Tadros** MTadros@reesbroome.com
**Subject:** RE: DNA Order
**Date:** August 26, 2022 at 4:58 PM
**To:** Thomas Urban  urban@fhhlaw.com,  Walter Steimel  wes@sclgrp.com

Mr. Urban – I fully understand the terms of the order and, as indicated, Mr. Sidar has properly objected to the order and effectively noticed an appeal therefrom, to be heard by Judge Hilton. While we do not believe any motion to stay is required, we are happy to file one. Please let me know if you consent. I assume you do not. To your point regarding destruction of a sample, we do not believe that destruction of any evidence is appropriate and it effectively moots any review by the Court.

I inadvertently noticed the hearing for a date that I am out of town on a trip previously planned. I intend to continue the motion one week, assuming you are available. Alternatively, I can do the motion a week earlier (this coming Friday) but that would shorten time for responses.

Mariam Tadros

**From:** Thomas Urban <urban@fhhlaw.com>
**Sent:** Friday, August 26, 2022 1:09 PM
**To:** Mariam Tadros <MTadros@reesbroome.com>; Walter Steimel <wes@sclgrp.com>
**Subject:** RE: DNA Order

Ms. Tadros –

I have returned from out of the country and have seen your emails on this subject.

Please understand that there is an active order requiring Mr. Sidar to be present in our office on Monday for DNA testing.  There has been no stay of that order.  Therefore, we are not waiving our rights regarding Mr. Sidar's required compliance with that order.

You have had three weeks to obtain a stay of the order.  You did not ask Judge Buchanan for a stay at the hearing nor have you requested any stay at any other time.

Please understand that if Mr. Sidar fails to show up on Monday (as he has done in violation of other orders), then he will face the consequences of his decision.  On the other hand, if he does attend, then Judge Hilton can always order that the test samples be destroyed if he rules in your favor.

Thank you for your attention to this matter.

Thomas F. Urban II
Member
Fletcher, Heald & Hildreth, PLC
Licensed to practice law in the Virginia, District of Columbia, and Texas.
1300 N. 17th Street, Suite 1100 | Arlington, VA 22209
Tel: 703.812.0462 | Fax: 703.812.0486 | Mobile: 703-861-5235

---

**From:** Mariam Tadros [mailto:MTadros@reesbroome.com]
**Sent:** Friday, August 19, 2022 2:13 PM
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Thomas Urban <urban@fhhlaw.com>
**Subject:** Re: DNA Order

Walt - we have fourteen days to appeal what we believe is an erroneous order. We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not appear until we get a final ruling on this issue. As this is ten days before the date you had unilaterally, we see no prejudice and will strongly oppose any sanctions motion.

Mariam

Sent from my iPhone

> On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com> wrote:
>
>  Mariam,
>
> Respectfully, we do not consent to any such motion. Judge Buchanan was very clear in her ruling and Order. You do not identify any basis for appealing her Order and we believe none exists. Further, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a magistrate judge's determination of a nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law."  We believe that Judge Buchanan's Order is fully supported by all applicable law and is not "clearly erroneous" under any standard. The bar for overturning Judge Buchanan's Order is high, and you have presented no arguments for doing so. Therefore, we do not consent.
>
> Your email is the first indication that Defendant intended to appeal the Order. You made no statement on or off the record at the hearing that Defendant would be objecting to or appealing the Order, and waited until the last day to note that Defendant would be making such a filing. We have already arranged for his appearance and testing.
>
> I see nothing in the Local Rules or FRCP providing that an appeal of a

Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order.  In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and intend to notice the motion for September 9. Please let me know if you consent to the motion. Also, please let me know your availability for September 9. If that date doesn't work, please provide your next available Friday.
>
> **Mariam Tadros** ┃ **Rees Broome, PC**
> Shareholder
> 1900 Gallows Road, Suite 700 ┃ Tysons Corner, VA 22182
> ☏ 703.790.1911 ┃ ☏ 703.848.2530
> mtadros@reesbroome.com ┃ reesbroome.com
>
> <image001.png>
>
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FURTHER**
**COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5,**
**2022, ORDER**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Opposition to Plaintiff's Motion for Sanctions and [sic] Further Compel Compliance with Magistrate Judge Buchanan's August 5, 2022, Order.[1]

## I.     __INTRODUCTION.__

Plaintiff Jane Doe seeks the extraordinary remedy of barring Defendant from presenting evidence or moving to strike unauthenticated messages (which have never been produced in native format) even though Defendant has taken an appeal of a ruling made by the Honorable Claude M. Hilton.

Plaintiff also misrepresents what occurred in the Fairfax Circuit Court. The Fairfax Circuit Court ruled that Plaintiff was not entitled to Defendant's DNA sample. __Exhibit 1__, Jan. 21, 2021, Fairfax Circuit Court Order. Tellingly, in Plaintiff's Exhibit B, Plaintiff did not list a description of the January 21, 2021, hearing presumably because it showed that the Fairfax Circuit Court ultimately denied Plaintiff's motion to compel a DNA sample of Defendant.[2] In fact, when the Plaintiff took a nonsuit of the Fairfax case, Plaintiff's counsel stated, "We think there's a better chance of getting the DNA in Federal Court." *See* __Exhibit 2,__ Non-Suit Hearing Tr. 7:12-15. To that end, the Plaintiff's failure to explain to this Court that Defendant was not obligated in the Fairfax case to provide DNA is effectively a fraud on the Court.

Despite Plaintiff's assertions to the contrary, Defendant's actions are substantially justified, as he has properly appealed the order compelling him to provide his DNA, including, most recently, to the United States Court of Appeals for the Fourth Circuit. Defendant maintains, *inter alia*, that Plaintiff failed to meet her high burden of establishing the "in controversy" and

---

[1] On August 15, 2022, this case was reassigned to Magistrate Judge John F. Anderson.
[2] Plaintiff had previously attempted to compel an examination pursuant to Va. Sup. Ct. R. 4:9. The appropriate Rule was 4:10. When Plaintiff ultimately brought the motion under that Rule, the Court denied the motion.

"good cause" requirements imposed by Federal Rule of Civil Procedure 35 and that the order compelling the production of DNA does not meet the requirements imposed by Rule 35. Furthermore, Defendant did not act in bad faith as his counsel provided Plaintiff's counsel with notice that Defendant was appealing the order and would not appear for the August 29, 2022, examination, giving ten days' notice. Finally, the sanctions that Plaintiff seeks are wholly inappropriate and, tellingly, she fails to cite to any authority for some of the rather extreme sanctions she seeks, as there is none. Plaintiff fails to show authority that would allow a court to order that she be permitted to seek punitive damages in excess of the statutorily mandated cap or that she can be awarded emotional damages as a discovery sanction.

## II.   <u>BACKGROUND.</u>

On May 12, 2022, Plaintiff Jane Doe ("Plaintiff") filed a Complaint against Defendant for assault (Count I), battery (Count II), and intentional infliction of emotional distress (Count III) resulting from an alleged rape. On July 15, 2022, Plaintiff served to Defendant Plaintiff's Notice of Physical Examination and DNA Sampling of Defendant (ECF No. 26-1). Counsel for the Defendant immediately notified Plaintiff's counsel that Defendant objected to the request and would not be appearing for an examination. A few hours after serving her Notice, also on July 15, 2022, Plaintiff filed her Motion to Obtain Physical Examination of and DNA Sample from Defendant (ECF No. 26). On July 29, 2022, Defendant filed his opposition to Plaintiff's motion (ECF No. 37). In accordance with Local Rule 26(C), simultaneously with his opposition, Defendant served his objections to the notice (ECF No. 37-1). Plaintiff filed a reply to Defendant's opposition on August 3, 2022 (ECF No. 38).

Counsel for the parties appeared before Magistrate Judge Theresa Carroll Buchanan on August 5, 2022, after which, the same day, she granted Plaintiff's motion and entered a

corresponding order ("Order"). The Order mandated that Defendant "appear on Monday, August 29, 2022, at 10:00 a.m. at the office of Plaintiff's counsel . . . and shall submit to the employee(s) of J and M Paternity Service, LLC for the buccal swab samples . . . . " ECF No. 40 at 1. The Order continues that "J and M Paternity Service, LLC shall transfer the samples to Eurofins Europe/London Police and Bode Technologies for testing . . . ." ECF No. 40 at 1.

On August 19, 2022, Defendant filed his Objections to Magistrate Judge's Ruling or Recommendation ("Objection") re the Order (ECF No. 43), as well as a memorandum in support (ECF No. 44). On August 28, 2022, Defendant filed a Motion to Stay the Order (ECF No. 46). The Court ruled on Defendant's Objection on September 12, 2022, and affirmed Magistrate Judge Buchanan's Order. Defendant's counsel had previously provided Plaintiff's counsel with notice, on August 19, 2022, that the Order was being appealed and that the Defendant would not be appearing on August 29, 2022, *See* **Exhibit 3**, Email Correspondence.

On October 13, 2022, Defendant filed a Notice of Appeal (ECF No. 56) noting that, pursuant to the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 546 (1949), Defendant appealed to the United States Court of Appeals for the Fourth Circuit from the order filed on September 12, 2022, and entered on September 15, 2022, denying Defendant's Rule 72 Objection to Magistrate Judge's August 5, 2022, Order regarding Plaintiff Jane Doe's Motion to Obtain DNA Sample from Defendant (ECF No. 56).

## II.   **ARGUMENT.**

### A.   **Legal Standard.**

When determining whether to award discovery sanctions, a court follows "a three-step analysis of (1) whether a party violated a discovery order or the Federal Rules of Civil

Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 772 (E.D. Va. 2017). "[T]he district court has broad discretion in determining the appropriate sanction for a party's noncompliance with a discovery request." *Id.* (quoting *Majestic Distilling Co., Inc. v. Stanley Stawski Distrib. Co.*, 205 F.3d 1333 (4th Cir. 2000) (unpublished table decision)). The Fourth Circuit has also developed a four-part test for a district court to use when determining whether to impose sanctions, which requires the court to "determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Foundation for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).

### B.    Defendant's Actions are Substantially Justified.

Defendant has appealed Judge Hilton's September 12, 2022 Order to the United States Court of Appeals for the Fourth Circuit. *See* ECF No. 64 at 5. As noted in previously pleadings in this matter, Defendant maintains that Plaintiff failed to meet her burden to establish the "in controversy" and "good cause" requirements imposed by Rule 35 and that the Order does not meet the requirements imposed by Rule 35. Notably, the Fourth Circuit has held that "[u]nder Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962); *see also Petition of Trinidad Corp.*, 238 F. Supp. 928, 936 (E.D. Va. 1965) (relying on the United States Supreme Court opinion *Schlagenhauf v. Holder* and stating "[i]t is plain" that the good cause requirement under Rule 35 "is not to be treated lightly").

4

If Defendant's DNA sample was compelled to be produced prior to the Fourth Circuit hearing Defendant's appeal, it would result in irreparable harm to Defendant. Plaintiff has made clear that her intention in procuring the DNA sample is to provide it to the London Metropolitan Police so it can be compared to DNA that was allegedly found in a rape kit taken there in September 2017. Specifically, in the Motion and at the hearing, counsel for Plaintiff represented that London Police or the Havens:

> Sent the rape kit collection sample to its outside labs, including Eurofins Europe, for testing after The Havens collected the sample…The London Police, who the Defendant also has been in contact with, has told us that Eurofins profiled the DNA using ESI-17 profiling chemistry for standard DNA profiling, and that if YSTR work is required (not performed routinely) it would be Y-23.

ECF. No. 38 at 2.

There was no affidavit attached to the Motion. When undersigned counsel raised this issue, the Judge Buchanan indicated that Defendant could verify this information independently and that she accepted the representations of Plaintiff's counsel. Since that hearing, Defendant's London counsel has attempted to verify this information, without success. Undersigned counsel also emailed the London Police requesting verification of the information provided by Plaintiff's counsel in its Motion and in open court. **Exhibit 4**, Email Correspondence. The London Police have refused to provide any such information. **Exhibit 5**, Tadros Declaration.

Plaintiff has alleged that Defendant violated English criminal laws. ECF No. 1 ¶ 56. The Order mandated that Defendant "appear on Monday, August 29, 2022, at 10:00 a.m. at the office of Plaintiff's counsel . . . and shall submit to the employee(s) of J and M Paternity Service, LLC for the buccal swab samples . . . . " ECF No. 40 at 1. The Order continued that "J and M Paternity Service, LLC shall transfer the samples to Eurofins Europe/London Police and Bode

Technologies for testing . . . ." ECF No. 40 at 1. The irreparable harm caused by the production of the sample cannot be undone if the Fourth Circuit ultimately overturns the Order, as even if the Court requires Plaintiff to return and refrain from using the DNA sample, it will already be in the hands of the London Police. This would be particularly troubling given that the only "evidence" supporting the Motion was a representation by counsel, without an affidavit, and which representation cannot be verified by the Defendant.

      **C.**     **Defendant Did Not Act in Bad Faith.**

Federal Rule of Civil Procedure 72(a) provides that, when a magistrate judge issues an order deciding a pretrial matter that is not dispositive of a party's claim or defense, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Magistrate Judge Buchanan's Order was issued on August 5, 2022 (ECF No. 40). Defendant filed his Objection, as a motion, within the fourteen-day deadline, on August 19, 2022 (ECF No. 43). Additionally, Defendant filed a Motion to Stay.

Defendant's counsel provided Plaintiff's counsel with notice that Defendant was appealing the Order and would not appear on August 29, 2022, yet Plaintiff complains that she still had someone "drive almost 1.5 hours to get to the office in time for the DNA collection." ECF No. 64 at 4. Defendant's counsel informed Plaintiff's counsel ten days before August 29, 2022, that Defendant would not be appearing for the August 29, 2022, Rule 35 examination. Defendant's counsel then confirmed again three days before August 29, 2022, that Defendant would not be appearing. *See* Ex. 3. As Plaintiff knew Defendant was not appearing for the examination, she cannot complain that she expended time and resources attending the examination.

**D.     The Sanctions that Plaintiff Seeks are Improper.**

Plaintiff seeks, as sanctions, an order to:

> (i) bar Defendant from objecting to Plaintiff's evidence of liability;
> (ii) bar Defendant from presenting evidence in rebuttal of Plaintiff's
> evidence that Defendant raped Plaintiff; (iii) bar Defendant from
> objecting to or striking the text messages from Defendant in which
> he admitted raping Plaintiff; (iv) compel Defendant to submit to
> DNA buccal swab collection as part of both of Plaintiff's proof of
> liability and demand for punitive damages; and (iv) Plaintiff's
> attorney fees and costs caused by Defendant's willful non-
> compliance.

ECF No. 64 at 1. Plaintiff fails to even argue why she should be entitled to an order barring

Defendant from objecting to Plaintiff's evidence of liability and yet also compel Defendant to

submit to a DNA buccal swab collection for the purposes of proving liability. Defendant has

appealed his claim and the Fourth Circuit may reverse this Court's ruling, particularly in light of

the Plaintiff's inability to provide any verification to the claims in its Motion and the

Defendant's inability to obtain any information from the London Police to corroborate the

statements made by Plaintiff through her counsel.

Plaintiff's request regarding purported text messages appended to the Complaint also has

no basis. In the Fairfax litigation, the Plaintiff produced WhatsApp messages allegedly

exchanged between her and the Defendant. The messages have clearly been altered by the

Plaintiff, who, at a minimum renamed Defendant to "London Assailant." A printout of this

information has been produced but the native file, which contains the actual messages, have not,

despite requests in both the Fairfax County litigation and this litigation. **Exhibit 6,** Pl.'s Resps.

to Def's First Set of Reqs. for Production of Documents, Resp. to Req. No. 6; **Exhibit 7**, Pl's

Resps. to Def's First Set of Reqs. for Production of Documents, Resp. to Req. No. 3. Plaintiff

seeks to end-run the Federal Rules of Evidence and her obligations in discovery by having altered messages deemed authentic. This is inappropriate.

Plaintiff further seeks "an order to compel Defendant to submit to DNA buccal swab collection as part of both Plaintiff's proof of liability and demand for punitive damages, with an instruction to the jury that non-compliance is a continuation of Defendant's abuse of Plaintiff and supports significant punitive damages above the cap typically allowed in Virginia." ECF No. 46 at 9. Once again, Plaintiff misunderstands the constraints surrounding punitive damages in Virginia. Pursuant to statute, the jury is not even to be informed of the punitive damages cap in the first place; rather an award is later reduced by the court if the jury awards in excess of the statutory cap of $350,000. *See* Va. Code § 8.01-38.1 ("In no event shall the total amount awarded for punitive damages exceed $350,000. The jury shall not be advised of the limitation prescribed by this section. However, if a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award and enter judgment for such damages in the maximum amount provided by this section."). The Defendant has already filed a Motion to Strike the Punitive Damages amount to the extent it exceeds $350,000. (ECF No. 10). The Court denied the Motion but allowed Defendant to raise the Motion again at the close of discovery. Regardless, Plaintiff cites to no authority that would permit the court to take such an action as to permit an award of "significant punitive damages" above the statutorily mandated cap. This is because no such authority exists and the Plaintiff is asking the Court to do something that is in express contravention of Virginia law.

Plaintiff also asserts that compensation for Plaintiff's "cumulative emotional distress" is an "appropriate sanction" for Defendant's alleged violation. ECF No. 64 at 7. Again, Plaintiff

cites to no authority by which a court could award emotional distress damages for the violation of a discovery order. Again, this is because no authority exists for this proposition.

## III.   <u>CONCLUSION.</u>

For the reasons set forth herein, Defendant Cenk Sidar respectfully requests that the Court deny Plaintiff Jane Doe's Motion for Sanctions and [sic] Further Compliance with Magistrate Judge Buchanan's August 5, 2022, Order, and grant such other and further relief in favor of Defendant as this Court deems just and proper.

Dated: November 30, 2022                    CENK SIDAR
                                            By Counsel


_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 30, 2022, a copy of the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FURHTER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022 ORDER** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____
Mariam W. Tadros

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**<u>ORDER</u>**

This matter comes before the Court on Plaintiff's Motion for Sanctions and Further

Compel Compliance with Magistrate Judge Buchanan's August 5, 2022, Order. Having reviewed

the motion, the opposition thereto, and the argument of counsel, it is hereby:

**ORDERED** that Plaintiff's Motion for Sanctions and Further Compel Compliance with

Magistrate Judge Buchanan's August 5, 2022, Order is **DENIED**.

ENTERED this _____ day of _____, 2022.


_____
John F. Anderson
United States Magistrate Judge
Eastern District of Virginia

JA656

**EXHIBIT 1**

VIRGINIA

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **A Domiciliary of the** ) | |
| **Commonwealth of Virginia** ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | **Case No. CL-2019-12642** |
| ) | |
| **Cenk Sidar** ) | |
| ) | |
| Defendant(s). ) | |

### ORDER

**THIS CAUSE** came before the Court on January 8, 2021, on Plaintiff's motion for a Rule 4:10 physical examination of Defendant. Upon the matters presented to the Court at the hearing, it is hereby

**ADJUDGED**, **ORDERED**, and **DECREED** as follows:

Plaintiff's Motion is denied without prejudice. The Court does not find that good cause has been established to warrant a medical examination under Rule 4:10 of the Rules of the Virginia Supreme Court. One stated reason for the examination is to determine whether Defendant has a transmittable disease. The Complaint lacks factual allegations in support of this rationale. The second stated reason is to identify if Defendant's DNA is located on clothing in the possession of law enforcement. No Virginia precedent has been cited that would authorize a Rule 4:10 examination for this purpose.

Entered this _21st_ day of January, 2021.

_____

Judge Stephen C. Shannon

SEENt and Objected to for

_Thomas F. Urban II_
_____          _____
Counsel for Plaintiff(s)                   Counsel for Defendant(s)
VA Bar No. 40540

the reasons stated in Plaintiff's briefs, exhibits, and
other filings with the Court, including but not limited to
the fact that Plaintiff did provide good cause for both
DNA and sexually transmitted diseases testing and that
Plaintiff did provide proper authority to establish that
DNA testing is appropriate under Rule 4:10 and within
the power of the Court. TFU

SEEN:

_____                _____
Counsel for Plaintiff(s)                                      Counsel for Defendant(s)

Alexandre K. Mitrovny 77841

**EXHIBIT 2**



# Transcript of Hearing

**Date:** November 19, 2021
**Case:** Doe -v- Sidar

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
 1        IN THE CIRCUIT COURT FOR FAIRFAX COUNTY, VIRGINIA

 2    ------------------------------x

 3    JANE DOE,                      :

 4         Plaintiff,                :    Case No.

 5     v.                            :    CL-2019-0012642

 6    CENK SIDAR,                    :

 7         Defendant.                :

 8    ------------------------------x

 9

10

11                        HEARING

12           BEFORE THE HONORABLE ROBERT J. SMITH

13                   Fairfax, Virginia

14                Friday, November 19, 2021

15                      10:10 a.m.

16

17

18

19

20    Job No.: 415153

21    Pages: 1 - 13

22    Recorded By: Carl Hellandsjo
```

1       Hearing, held at the location of:

2

3

4

5       FAIRFAX COUNTY CIRCUIT COURT

6       4110 Chain Bridge Road

7       Fairfax, Virginia 22030

8

9

10

11

12

13       Pursuant to agreement, before Carl Hellandsjo,

14   Court Reporter.

15

16

17

18

19

20

21

22

```
1                    A P P E A R A N C E S

2

3        ON BEHALF OF THE PLAINTIFF:

4             THOMAS URBAN, ESQUIRE

5             FLETCHER, HEALD & HILDRETH, PLC

6             1300 North 17th Street, 11th Floor

7             Arlington, Virginia 22209

8             703.812.0400

9

10       ON BEHALF OF THE DEFENDANT:

11            MARIAM TADROS, ESQUIRE

12            REES BROOME, PC

13            1900 Gallows Road

14            Suite 700

15            Tysons Corner, Virginia 22182

16            703.790.1911

17

18

19

20

21   ALSO PRESENT:

22       Mr. Stimel - Accompanying Mr. Urban
```

JA663

1                    C O N T E N T S

2   ARGUMENT                                       PAGE

3        By Mr. Tadros                              10

4        By Mr. Urban                               11

5

6   DECISION                                       PAGE

7        By the Court                               11

8

9

10                   E X H I B I T S

11                   (None marked.)

12

13

14

15

16

17

18

19

20

21

22

```
 1              P R O C E E D I N G S

 2              (Whereupon, the court reporter was duly

 3    sworn.)

 4              THE COURT:  All right.  My apologies.

 5    We're having -- we're having trouble -- have a

 6    seat.  And if you're vaccinated and want to take

 7    off your mask, go right ahead.  We're having

 8    trouble with Webex, but I understand it might be

 9    ready.

10              MS. TADROS:  Yes --

11              THE COURT:  So --

12              MS. TADROS:  -- it is ready, we just

13    don't have Webex in we'll have to --

14              THE COURT:  Okay.  Do we have --

15    conciliation services are available.  Christopher

16    Day is available in hearing room 508.  If you

17    think you would benefit from conciliation

18    services, let me know, and I'll certainly send you

19    down there to use that service.  So I'm going to

20    call the docket for time estimates.  If you have

21    an agreed order, give me a one-minute estimate.

22    That way I know that it is an agreed order and
```

1  that we'll attend to those matters before we hear

2  the hearings.  So we begin with the Doe Facility

3  at the Commonwealth of Virginia versus Cenk Sidar.

4          MS. TADROS:  Good morning, Your Honor,

5  we estimate 30 minutes.

6          MR. URBAN:  Your Honor --

7          THE COURT:  Do I have everybody here I

8  need?

9          MR. URBAN:  Yes.

10          MS. TADROS:  Yes.

11          THE COURT:  Is anybody -- is Mr. -- is

12  there anybody appearing in Webex?  The -- the

13  gentleman from Texas, I forget the name right now.

14          MR. URBAN:  Oh, he's here.

15          THE COURT:  He's here?  Okay, here's

16  what we're going to do with this case.  As you all

17  know, this case has been characterized by

18  obstructionist tactics and all kinds of matters

19  that don't help the Court resolve the issue.  I'm

20  going to continue this case until -- hold on I'm

21  setting my calendar.  On December -- December 1st

22  at 2:00.  And in the meantime, I am charging all

1   of you with the responsibility of resolving this.

2          MS. TADROS:  Your Honor, I just received

3   a motion to non-suit.

4          MR. URBAN:  We just received their

5   motion to non-suit the case.

6          THE COURT:  Let me see that.

7          MR. URBAN:  I was -- I was just about to

8   hand it up, but I didn't get a chance to get

9   forward with it.

10          THE COURT:  Yeah, I'm sure you do, yeah,

11   I know you do.  I didn't plan for you to.

12          MR. URBAN:  And it's just -- we think

13   there's a better chance of getting the DNA in

14   Federal Court.  So that -- that's -- that's where

15   we're going to take it.

16          THE COURT:  Is this the reporter's on

17   this case?  You swear and affirm you have faithful

18   and accurate according to transcribing procedures?

19          THE REPORTER:  I do.

20          THE COURT:  Did you get the first part

21   where I was annoyed?  Well, I'm glad to hear this.

22          MR. URBAN:  I thought that would make

1  your day wonderful.

2          THE COURT:  Remember Roseanne --

3  Roseanna Danna (phonetic)?

4          MR. URBAN:  No, Your Honor.

5          THE COURT:  And you faced the brunt of

6  my ire earlier today too.

7          MS. TADROS:  It wasn't that bad.

8          THE COURT:  All right.  I'll be more

9  than happy to sign this.  Do I have -- looks like

10 I'm missing some signatures on the back page

11 though, Ms. Tadros.

12         MS. TADROS:  I literally just received

13 it while I was standing up, so I haven't had --

14         MR. URBAN:  We just got it.

15         MS. TADROS:  -- any opportunity.

16         THE COURT:  Do you object to the

17 non-suit?

18         MS. TADROS:  I -- I don't -- I don't

19 object to the non-suit, Your Honor.  I came up

20 without a pen.

21         THE COURT:  Do you ever not play?  Will

22 that freeze up my afternoon at the first still.

1          MR. URBAN:  I thought so, Your Honor.  I

2    thought he was either going to allow you to leave

3    earlier today or --

4          THE COURT:  No, I have a 2:00 hearing

5    today.  Self-inflicted one.

6          MR. URBAN:  I --

7          THE COURT:  It contains all the magic

8    language, no previous non-suits and all that.

9          MR. URBAN:  Yes, Your Honor.

10          THE COURT:  I didn't even look at it.

11    I'm so excited.  Pardon?

12          MS. TADROS:  I can check closely.  Like,

13    check --

14          THE COURT:  Oh, I can -- it's just --

15    all it has to say is there are no other non-suits

16    and -- but who knows what Ms. Tadros is writing in

17    there.

18          MR. URBAN:  I've never seen someone

19    write something on a non-suit.

20          THE COURT:  Yeah.  Well, it's kind of

21    consistent with the way this case is met.  Mr.

22    Stimel, that was the name.  I couldn't remember

1    the name.

2              MR. STIMEL:  Yes, Your Honor.

3              MR. URBAN:  And just for the record,

4    Your Honor, I apologize that I wasn't able to

5    notify you of this yesterday.  We just got the

6    authorization last night.

7              THE COURT:  Okay.  And you're back from

8    Texas?

9              MR. STIMEL:  I -- I am, Your Honor.

10             THE COURT:  How's your mother?

11             MR. STIMEL:  Well, she's in hospice and

12   I have to go back down there and get her.

13             THE COURT:  Okay.  Sorry to hear that.

14             MR. STIMEL:  Thank you for asking.

15             THE COURT:  Excuses for that.

16             MS. TADROS:  Your Honor, I've -- I've

17   written that -- because it says there's no

18   counterclaim pending, I've added in cross-claim or

19   third-party claim.  I had an objection relating

20   to, I think there's a $50,000 sanction award

21   relating to the venue motion --

22             THE COURT:  40, I believe.  That wasn't

1    gone -- that wasn't -- I didn't do that.

2              MS. TADROS:  I -- I -- I understand.  I

3    just -- I just put it in here--

4              THE COURT:  Okay.

5              MS. TADROS:  -- to preserve it.  40, 50,

6    it's a lot of money.

7              MR. URBAN:  Well, there's nothing to

8    preserve.  When you non-suit there's no bill.

9    It's not any of its jurisdiction, but, I guess,

10   they can write whatever they want.

11             THE COURT:  Absolutely.  Yes it was --

12   it was jurisdiction, but, you know, we all know

13   what's meant.

14             MR. URBAN:  We can make the corrections.

15             THE COURT:  It's fine.  I'll make it.

16             MS. TADROS:  Thank you, Your Honor.

17             THE COURT:  I'll change venue to

18   jurisdiction.  So it -- it was jurisdiction.

19   There we have it.  Thank you.  You all have a good

20   holiday.

21             (Off the record at 10:16 a.m.)

22

```
1              CERTIFICATE OF COURT REPORTER

2                I, Carl Hellandsjo, the officer

3    before whom the foregoing proceedings were taken,

4    do hereby certify that said proceedings were

5    electronically recorded by me; and that I am

6    neither counsel for, related to, nor employed by

7    any of the parties to this case and have no

8    interest, financial or otherwise, in its outcome.

9

10   Notary Registration No.:  7885926

11   My Commission Expires:  4/30/2024

12

13   Carl Hellandsjo

14   _____

15   Carl Hellandsjo, Court Reporter, in and for

16   the Commonwealth of Virginia

17

18

19

20

21

22
```

```
1              CERTIFICATION OF TRANSCRIPT

2         I, Krystin Spolar, do hereby certify that

3   theforegoing transcript, to the best of my ability,

4   knowledge, and belief, is a true and correct

5   record of the proceedings; that said proceedings

6   were reduced to typewriting under my supervision;

7   and that I am neither counsel for, related to, nor

8   employed by any of the parties to this case and

9   have no interest, financial or otherwise, in its

10  outcome.

11

12
    Krystin Spolar
13  _____

14  Krystin Spolar

15  Planet Depos, LLC

16  December 3, 2021

17

18

19

20

21

22
```

## A

**ability**
13:3
**able**
10:4
**about**
7:7
**absolutely**
11:11
**accompanying**
3:22
**according**
7:18
**accurate**
7:18
**added**
10:18
**affirm**
7:17
**afternoon**
8:22
**agreed**
5:21, 5:22
**agreement**
2:13
**ahead**
5:7
**all**
5:4, 6:16,
6:18, 6:22, 8:8,
9:7, 9:8, 9:15,
11:12, 11:19
**allow**
9:2
**also**
3:21
**annoyed**
7:21
**any**
8:15, 11:9,
12:7, 13:8
**anybody**
6:11, 6:12
**apologies**
5:4
**apologize**
10:4

**appearing**
6:12
**argument**
4:2
**arlington**
3:7
**asking**
10:14
**attend**
6:1
**authorization**
10:6
**available**
5:15, 5:16
**award**
10:20

## B

**back**
8:10, 10:7,
10:12
**bad**
8:7
**because**
10:17
**been**
6:17
**before**
1:12, 2:13,
6:1, 12:3
**begin**
6:2
**behalf**
3:3, 3:10
**belief**
13:4
**believe**
10:22
**benefit**
5:17
**best**
13:3
**better**
7:13
**bill**
11:8
**bridge**
2:6

**broome**
3:12
**brunt**
8:5

## C

**calendar**
6:21
**call**
5:20
**came**
8:19
**carl**
1:22, 2:13,
12:2, 12:15
**case**
1:4, 6:16,
6:17, 6:20, 7:5,
7:17, 9:21,
12:7, 13:8
**cenk**
1:6, 6:3
**certainly**
5:18
**certificate**
12:1
**certification**
13:1
**certify**
12:4, 13:2
**chain**
2:6
**chance**
7:8, 7:13
**change**
11:17
**characterized**
6:17
**charging**
6:22
**check**
9:12, 9:13
**christopher**
5:15
**circuit**
1:1, 2:5
**cl-**
1:5

**claim**
10:19
**closely**
9:12
**commission**
12:11
**commonwealth**
6:3, 12:16
**conciliation**
5:15, 5:17
**consistent**
9:21
**contains**
9:7
**continue**
6:20
**corner**
3:15
**correct**
13:4
**corrections**
11:14
**couldn't**
9:22
**counsel**
12:6, 13:7
**counterclaim**
10:18
**county**
1:1, 2:5
**court**
1:1, 2:5, 2:14,
4:7, 5:2, 5:4,
5:11, 5:14, 6:7,
6:11, 6:15,
6:19, 7:6, 7:10,
7:14, 7:16,
7:20, 8:2, 8:5,
8:8, 8:16, 8:21,
9:4, 9:7, 9:10,
9:14, 9:20,
10:7, 10:10,
10:13, 10:15,
10:22, 11:4,
11:11, 11:15,
11:17, 12:1,
12:15
**cross-claim**
10:18

## D

**danna**
8:3
**day**
5:16, 8:1
**december**
6:21, 13:16
**decision**
4:6
**defendant**
1:7, 3:10
**depos**
13:15
**dna**
7:13
**docket**
5:20
**doe**
1:3, 6:2
**down**
5:19, 10:12
**duly**
5:2

## E

**earlier**
8:6, 9:3
**either**
9:2
**electronically**
12:5
**employed**
12:6, 13:8
**esquire**
3:4, 3:11
**estimate**
5:21, 6:5
**estimates**
5:20
**even**
9:10
**ever**
8:21
**everybody**
6:7
**excited**
9:11

**excuses**
10:15
**expires**
12:11

## F

**faced**
8:5
**facility**
6:2
**fairfax**
1:1, 1:13, 2:5,
2:7
**faithful**
7:17
**federal**
7:14
**financial**
12:8, 13:9
**fine**
11:15
**first**
7:20, 8:22
**fletcher**
3:5
**floor**
3:6
**foregoing**
12:3
**forget**
6:13
**forward**
7:9
**freeze**
8:22
**friday**
1:14

## G

**gallows**
3:13
**gentleman**
6:13
**getting**
7:13
**give**
5:21
**glad**
7:21

**go**
5:7, 10:12
**going**
5:19, 6:16,
6:20, 7:15, 9:2
**gone**
11:1
**good**
6:4, 11:19
**guess**
11:9

## H

**hand**
7:8
**happy**
8:9
**heald**
3:5
**hear**
6:1, 7:21,
10:13
**hearing**
1:11, 2:1,
5:16, 9:4
**hearings**
6:2
**held**
2:1
**hellandsjo**
1:22, 2:13,
12:2, 12:15
**help**
6:19
**here**
6:7, 6:14, 6:15
**here's**
6:15
**here-**
11:3
**hereby**
12:4, 13:2
**hildreth**
3:5
**hold**
6:20
**holiday**
11:20

**honor**
6:4, 6:6, 7:2,
8:4, 8:19, 9:1,
9:9, 10:2, 10:4,
10:9, 10:16,
11:16
**honorable**
1:12
**hospice**
10:11
**how's**
10:10

## I

**interest**
12:8, 13:9
**ire**
8:6
**issue**
6:19

## J

**jane**
1:3
**job**
1:20
**jurisdiction**
11:9, 11:12,
11:18

## K

**kind**
9:20
**kinds**
6:18
**know**
5:18, 5:22,
6:17, 7:11,
11:12
**knowledge**
13:4
**knows**
9:16
**krystin**
13:2, 13:14

## L

**language**
9:8

last
10:6
leave
9:2
literally
8:12
llc
13:15
location
2:1
look
9:10
looks
8:9
lot
11:6

**M**

magic
9:7
make
7:22, 11:14,
11:15
mariam
3:11
marked
4:11
mask
5:7
matters
6:1, 6:18
meant
11:13
meantime
6:22
met
9:21
might
5:8
minutes
6:5
missing
8:10
money
11:6
more
8:8
morning
6:4

mother
10:10
motion
7:3, 7:5, 10:21

**N**

name
6:13, 9:22,
10:1
need
6:8
neither
12:6, 13:7
never
9:18
night
10:6
non-suit
7:3, 7:5, 8:17,
8:19, 9:19, 11:8
non-suits
9:8, 9:15
none
4:11
north
3:6
notary
12:10
nothing
11:7
notify
10:5
november
1:14

**O**

object
8:16, 8:19
objection
10:19
obstructionist
6:18
officer
12:2
oh
6:14, 9:14
okay
5:14, 6:15,

10:7, 10:13,
11:4
one
9:5
one-minute
5:21
opportunity
8:15
order
5:21, 5:22
other
9:15
otherwise
12:8, 13:9
outcome
12:8, 13:10

**P**

page
4:2, 4:6, 8:10
pages
1:21
pardon
9:11
part
7:20
parties
12:7, 13:8
pc
3:12
pen
8:20
pending
10:18
phonetic
8:3
plaintiff
1:4, 3:3
plan
7:11
planet
13:15
play
8:21
plc
3:5
present
3:21

preserve
11:5, 11:8
previous
9:8
procedures
7:18
proceedings
12:3, 12:4,
13:5
pursuant
2:13
put
11:3

**R**

ready
5:9, 5:12
received
7:2, 7:4, 8:12
record
10:3, 11:21,
13:5
recorded
1:22, 12:5
reduced
13:6
rees
3:12
registration
12:10
related
12:6, 13:7
relating
10:19, 10:21
remember
8:2, 9:22
reporter
2:14, 5:2,
7:19, 12:1,
12:15
reporter's
7:16
resolve
6:19
resolving
7:1
responsibility
7:1

right
5:4, 5:7, 6:13,
8:8
road
2:6, 3:13
robert
1:12
room
5:16
roseanna
8:3
roseanne
8:2

**S**

said
12:4, 13:5
sanction
10:20
say
9:15
says
10:17
seat
5:6
see
7:6
seen
9:18
self-inflicted
9:5
send
5:18
service
5:19
services
5:15, 5:18
setting
6:21
sidar
1:6, 6:3
sign
8:9
signature-mig2k
12:13
signature-p1kal
13:12
signatures
8:10

smith
1:12
some
8:10
someone
9:18
something
9:19
sorry
10:13
spolar
13:2, 13:14
standing
8:13
still
8:22
stimel
3:22, 9:22,
10:2, 10:9,
10:11, 10:14
street
3:6
suite
3:14
supervision
13:6
sure
7:10
swear
7:17
sworn
5:3

**T**

tactics
6:18
tadros
3:11, 4:3,
5:10, 5:12, 6:4,
6:10, 7:2, 8:7,
8:11, 8:12,
8:15, 8:18,
9:12, 9:16,
10:16, 11:2,
11:5, 11:16
take
5:6, 7:15
taken
12:3

texas
6:13, 10:8
th
3:6
thank
10:14, 11:16,
11:19
theforegoing
13:3
think
5:17, 7:12,
10:20
third-party
10:19
thomas
3:4
thought
7:22, 9:1, 9:2
time
5:20
today
8:6, 9:3, 9:5
transcribing
7:18
transcript
13:1, 13:3
trouble
5:5, 5:8
true
13:4
typewriting
13:6
tysons
3:15

**U**

under
13:6
understand
5:8, 11:2
until
6:20
urban
3:4, 3:22, 4:4,
6:6, 6:9, 6:14,
7:4, 7:7, 7:12,
7:22, 8:4, 8:14,
9:1, 9:6, 9:9,

9:18, 10:3,
11:7, 11:14
use
5:19

**V**

vaccinated
5:6
venue
10:21, 11:17
versus
6:3
virginia
1:1, 1:13, 2:7,
3:7, 3:15, 6:3,
12:16

**W**

want
5:6, 11:10
way
5:22, 9:21
we'll
5:13, 6:1
we're
5:5, 5:7, 6:16,
7:15
webex
5:8, 5:13, 6:12
whatever
11:10
whereupon
5:2
without
8:20
wonderful
8:1
write
9:19, 11:10
writing
9:16
written
10:17

**Y**

yeah
7:10, 9:20
yesterday
10:5

| $ | 22182 |
|---|---|
| | 3:15 |
| $50,000 | 22209 |
| 10:20 | 3:7 |

| . | 3 |
|---|---|
| .0400 | 30 |
| 3:8 | 6:5, 12:11 |
| .1911 | |
| 3:16 | 4 |

| 0 | 40 |
|---|---|
| 00 | 10:22, 11:5 |
| 6:22, 9:4 | 4110 |
| 0012642 | 2:6 |
| 1:5 | 415153 |
| | 1:20 |

| 1 | 5 |
|---|---|
| 10 | 50 |
| 1:15, 4:3, | 11:5 |
| 11:21 | 508 |
| 11 | 5:16 |
| 3:6, 4:4, 4:7 | |
| 13 | 7 |
| 1:21 | 700 |
| 1300 | 3:14 |
| 3:6 | 703.790 |
| 16 | 3:16 |
| 11:21 | 703.812 |
| 17 | 3:8 |
| 3:6 | 7885926 |
| 19 | 12:10 |
| 1:14 | |
| 1900 | |
| 3:13 | |
| 1st | |
| 6:21 | |

| 2 | |
|---|---|
| 2 | |
| 6:22, 9:4 | |
| 2019 | |
| 1:5 | |
| 2021 | |
| 1:14, 13:16 | |
| 2024 | |
| 12:11 | |
| 22030 | |
| 2:7 | |

# EXHIBIT 3

**From:** Mariam Tadros <MTadros@reesbroome.com>
**Date:** August 19, 2022 at 2:13:00 PM EDT
**To:** Walter Steimel <wes@sclgrp.com>
**Cc:** Tom Urban <urban@fhhlaw.com>
**Subject: Re: DNA Order**

 Walt - we have fourteen days to appeal what we believe is an erroneous order.
We have filed our memo outlining our reasons for the appeal. Mr. Sidar will not
appear until we get a final ruling on this issue. As this is ten days before the date
you had unilaterally, we see no prejudice and will strongly oppose any sanctions
motion.

Mariam

Sent from my iPhone

> On Aug 19, 2022, at 1:06 PM, Walter Steimel <wes@sclgrp.com>
> wrote:
>
>  Mariam,
>
> Respectfully, we do not consent to any such motion. Judge Buchanan
> was very clear in her ruling and Order. You do not identify any basis
> for appealing her Order and we believe none exists. Further, 28
> U.S.C. § 636(b)(1)(A) provides that a district judge may reconsider a
> magistrate judge's determination of a nondispositive pretrial matter if
> the magistrate judge's order is "clearly erroneous or contrary to law."
>  We believe that Judge Buchanan's Order is fully supported by all
> applicable law and is not "clearly erroneous" under any standard. The
> bar for overturning Judge Buchanan's Order is high, and you have
> presented no arguments for doing so. Therefore, we do not consent.
>
> Your email is the first indication that Defendant intended to appeal
> the Order. You made no statement on or off the record at the hearing
> that Defendant would be objecting to or appealing the Order, and
> waited until the last day to note that Defendant would be making such

a filing. We have already arranged for his appearance and testing.

I see nothing in the Local Rules or FRCP providing that an appeal of a Magistrate Judge's Order automatically stays that Order. Judge Buchanan's Order is in full effect, therefore, we expect Mr. Sidar to appear for DNA sample collection on August 29th, as set forth in Judge Buchanan's Order.  In the event that Mr. Sidar does not appear for testing we intend to move for sanctions, including but not limited to default judgment as noted by Judge Buchanan, and reimbursement for our time and costs.

As you know Mr. Urban is out of the country until early next week but we have consulted on this matter, and we are in agreement.

Thank you

Walt

Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com

> On Aug 19, 2022, at 11:08 AM, Mariam Tadros <MTadros@reesbroome.com> wrote:
>
> Counsel – We are appealing Judge Buchanan's order and intend to notice the motion for September 9. Please let me know if you consent to the motion. Also, please let me know your availability for September 9. If that date doesn't work, please provide your next available Friday.
>
> **Mariam Tadros | Rees Broome, PC**
> Shareholder
> 1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182
> t 703.790.1911 | f 703.848.2530
> mtadros@reesbroome.com | reesbroome.com
>
> <image001.png>
>
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use,

dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

**EXHIBIT 4**

**From:** Mariam Tadros
**Sent:** Friday, September 30, 2022 10:17 AM
**To:** Russell.Popplewell@met.police.uk; MHardcastle@kingsleynapley.co.uk
**Cc:** SPaul@kingsleynapley.co.uk
**Subject:** RE: CRIS: 6546422/17 - SIDAR

Mr. Popplewell:

As you may be aware, Ms. ███████ mas requested Mr. Sidar's DNA in a civil proceeding in the United States. The attached, which was filed by Ms. ███████ in the US litigation, lists several statements regarding communications with the London Police. Specifically, on page 2, Ms. ███████ counsel asserts that, "The London Metropolitan Police sent the rape kit collection sample to its outside labs, including Eurofins Europe…" The rape kit would include the DNA sample sent to the outside labs.

As for the profiling, Ms. ███████ lawyers claimed that, "The London Police, who the Defendant also has been in contact with, has told us that Eurofins profiled the DNA using ESI-17 profiling chemistry for standard DNA profiling, and that if YSTR work is required (not performed routinely) it would be Y-23." Can you let us know if this is accurate.

Lastly, can you confirm if you sent any DNA kits to Ms. ███████ She claims, "Plaintiff's counsel will have those kits at the hearing on August 5 and is expecting new kits from the London Metropolitan Police within the next few days, long before the sample collection occurs."

At the hearing on this matter, Ms. ███████ lawyers stated that they had spoken with the London Police to obtain this information.

We would want access to the sample in order to conduct our own test for the civil litigation.

I'm available for a call at your convenience to discuss this further.

**Mariam Tadros  |  Rees Broome, PC**
Shareholder
1900 Gallows Road, Suite 700  |  Tysons Corner, VA 22182
t 703.790.1911  |  f 703.848.2530

mtadros@reesbroome.com  |  reesbroome.com



This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911.

---

**From:** Russell.Popplewell@met.police.uk <Russell.Popplewell@met.police.uk>
**Sent:** Friday, September 30, 2022 3:23 AM
**To:** MHardcastle@kingsleynapley.co.uk; Mariam Tadros <MTadros@reesbroome.com>
**Cc:** SPaul@kingsleynapley.co.uk
**Subject:** RE: CRIS: 6546422/17 - SIDAR

Good morning,

If the points in my email to Matthew on 28.09.22 could be addressed, I will respond accordingly.

The points raised as follows:

Can you clarify if the questions asked regarding the forensic materials and profiles are in relation to Mr Sidar or Ms ███████? 
If in relation to Ms ██████, can I ask why Mr Sidar's legal team would want access to any sample held for Miss ██████ in any event and their necessity to have any sample?
I do not understand what the entirety of a 'rape kit' – this maybe terminology lost in translation – but can this be made clear and what 'forensic material' specifically includes please?

I will be seeking clarification from superiors and the lab to respond and if any information can be provided given the nature of the request.

Kind Regards,

DC Russell Popplewell

---

**From:** Matthew Hardcastle <MHardcastle@kingsleynapley.co.uk>
**Sent:** 29 September 2022 14:17
**To:** Popplewell Russell - MO2 Met Intelligence <Russell.Popplewell@met.police.uk>; Mariam Tadros <MTadros@reesbroome.com>
**Cc:** Sandra Paul <SPaul@kingsleynapley.co.uk>
**Subject:** CRIS: 6546422/17 - SIDAR

Hi Russell,

Please may I use this email to introduce you to Mariam Tadros, Mr Sidar's US lawyer. I believe that direct contact between the two of you will be the most efficient way to proceed.

Kind regards,

Matt

JA683

Matthew Hardcastle
Senior Associate
**Kingsley Napley LLP**

Kingsley Napley LLP | 20 Bonhill Street | London EC2A 4DN
Direct dial: +44 (0)20 3535 1581 | Mobile: +44 (0)7736 456 570
Switchboard: +44 (0)20 7814 1200 | Main fax: +44 (0)20 7490 2288
Email: mhardcastle@kingsleynapley.co.uk | Website: www.kingsleynapley.co.uk

 

**KINGSLEY NAPLEY LLP** is a limited liability partnership incorporated in England and Wales (under number OC343278) and authorised and regulated by the Solicitors Regulation Authority (under number 500046). The LLP's registered office address is 20 Bonhill Street, London EC2A 4DN. We use the term partner to refer to a member of the LLP. Partners are solicitors, barristers or costs lawyers. The names of the partners and their legal qualifications can be inspected on our website or at the registered office. Additional legal and regulatory information is published on our website: www.kingsleynapley.co.uk

**Confidentiality notice:** This email (and any attachment) is confidential. Legal privilege may also apply to it and protect it. It is intended only for the addressee(s) named above. Unauthorised disclosure or use of this email (or an attachment) is prohibited and may be unlawful. If you are not the intended recipient, please delete it from your system, destroy any copies and inform the sender by email or telephone. **Data protection and privacy notice:** To find out about our data protection policy and how we collect and hold data, visit the Privacy Notice on our website. **Email risks:** Email is not secure. It may corrupt or be intercepted, tampered with or delayed. Anyone who communicates with us by email accepts these risks. You should use anti-virus software to ensure that this email (and any attachment) is virus free. We monitor email in order to protect our clients and our business.

**Fraud warning:** Keep a look out for scams. We will never use email to notify you of a change to bank account details which we have already provided to you. Any email appearing to come from us which purports to do this will not be genuine. Do not act on it or reply to it, and instead contact us immediately by telephone not email. We will not accept responsibility if you transfer money into a bank account which does not belong to Kingsley Napley LLP.

NOTICE - This email and any attachments are solely for the intended recipient and may be confidential. If you have received this email in error, please notify the sender and delete it from your system. Do not use, copy or disclose the information contained in this email or in any attachment without the permission of the sender. Metropolitan Police Service (MPS) communication systems are monitored to the extent permitted by law and any email and/or attachments may be read by monitoring staff. Only specified personnel are authorised to conclude binding agreements on behalf of the MPS by email and no responsibility is accepted for unauthorised agreements reached with other personnel. While reasonable precautions have been taken to ensure no viruses are present in this email, its security and that of any attachments cannot be guaranteed.

JA684

**EXHIBIT 5**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

| | | |
|---|---|---|
| JANE DOE | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| Defendant. | : | |

---

### DECLARATION OF MARIAM W. TADROS

I, Mariam W. Tadros, pursuant to 28 U.S.C. § 1746, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am over 18 years of age and competent to make this affidavit.

2. I am counsel of record for Defendant Cenk Sidar.

3. I have been in communication with Sandra Paul, Mr. Sidar's counsel in London. Ms. Paul's office has attempted to have the London Police verify the information contained in Plaintiff's Motion and Reply brief, as well as in open court.

4. Exhibit 4 of the Opposition to Plaintiff's Motion for Sanctions and Further Compel Compliance with Magistrate Judge Buchanan's August 5, 2022 Order is a true and accurate copy of my communication with the London Police.

5. The London Police did not respond to my communication.

Dated: November 30, 2022

_____
Mariam W. Tadros

**EXHIBIT 6**

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | | |
|---|---|---|
| **JANE DOE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No. 2019 12642** |
| **v.** | * | |
| | * | |
| **CENK SIDAR,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

### PLAINTIFF'S RESPONSES TO
### DEFENDANT'S FIRST SET OF REQUESTS FOR DOCUMENTS TO PLAINTIFF

Plaintiff Jane Doe (hereinafter, "Doe" or "Plaintiff"), by and through the undersigned counsel, pursuant to Rule 4:9 of the Rules of the Supreme Court of Virginia, hereby serves the following Responses to the First Set of Requests for Production submitted by Defendant Cenk Sidar ("Sidar" or "Defendant").

### GENERAL OBJECTIONS

A.      Plaintiff objects to Sidar's Requests for Production to the extent that the requests seek to impose upon Plaintiff obligations greater than, or in contradiction to, those imposed by the Supreme Court of Virginia Rules and the rules and Orders of this Court.

B.      Plaintiff objects to Sidar's Requests for Production of Documents to the extent that the requests seek documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

C.      Plaintiff objects to Sidar's Requests for Production to the extent that the requests seek information protected by the attorney-client privilege, work product doctrine, or any other privilege or protection.

D.      Plaintiff objects to Sidar's Requests for Production to the extent that the requests seek evidence within its possession, custody, or control, are already in Sidar's possession, custody, or control, or are in the possession, custody, or control of third parties.

E.      Plaintiff objects to Sidar's Requests for Production to the extent that the requests are overly broad as they fail to specify a time period for which documents are requested.

F.      Plaintiff's agreement that she will produce any responsive non-privileged documents in her possession in response to any Request is not an admission that such documents exist.

G.      Plaintiff is willing to meet and confer regarding any objectionable Requests.

H.      In responding to Sidar's Requests for Production, Plaintiff expressly reserves her right to object to the admission into evidence of any and all information made available in response to any Request for Production on any ground including, but not limited to, the ground that the information or request is irrelevant and immaterial to the issues in this action.  Nothing in Plaintiff's responses to any Request for Production should be construed as an admission respecting the admissibility or relevance of any fact or document or the truth or accuracy of any characterization of any kind contained in the Requests for Production.

## MANNER OF COMPLIANCE

Subject to her objections, Plaintiff will produce responsive, non-privileged, and non-protected documents by providing Sidar's counsel with copies of such documents at a mutually acceptable time, place and/or manner.  Plaintiff's investigation is ongoing; Plaintiff reserves the right to supplement her production of documents if and when additional responsive documents are located.

Subject to and without waiver of the foregoing General Objections, Plaintiff responds and objects as follow:

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST  NO. 1:** Any document identified in your Answers to the First Set of Interrogatories which is currently in your possession, custody, or control.

**RESPONSE:**  Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 2:** Excluding communications between you and your attorney(s), any document relied on in crafting your Answers to the First Set of Interrogatories.

**RESPONSE:**  Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 3:** All documents to or from any expert witness you intend to call at the  trial (or evidentiary hearing) in this matter.

**RESPONSE:** Plaintiff objects to this Request on the grounds that such requests are not authorized in Rule 4:1(b)(4)(A) and a litigant cannot use a request for production of documents (under the guise of an interrogatory) under Rule 4:9 to circumvent the exclusive method established in Rule 4:1(b)(4) for discovering expert opinions, as set out in Flora v. Shulmister,

2

262 Va. 215, 222 (2001).  Plaintiff will negotiate with Defendant regarding a mutually acceptable arrangement regarding expert witnesses, but at the present time, Plaintiff has no such documents and, when such documents are created, will not produce any documents in response to this Request absent such an agreement.

**REQUEST NO. 4:** All documents received as a result of a subpoena filed in this action.

**RESPONSE:**  Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 5:** All exhibits you intend to use at the trial (or evidentiary hearing) in this matter.

**RESPONSE:**  Plaintiff objects to this Request to the extent that it seeks documents in violation of the attorney work product doctrine.  Plaintiff further objects to the extent that this Request seeks legal opinions.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will produce documents otherwise responsive to this Request to the extent that they are in Plaintiff's possession, custody or control and not otherwise protected or privileged.

**REQUEST NO. 6:** All written communications between you and the Defendant from September 1, 2016 to the present.

**RESPONSE:**  Plaintiff objects to this Request to the extent that these documents should already be in the possession of Defendant unless he has engaged in document destruction.  Notwithstanding and without waiving this objection and the General Objections, Plaintiff will produce documents responsive to this Request to the extent that they are in Plaintiff's possession, custody or control.

**REQUEST NO. 7:**    All written communications between you and anyone other than your attorney relating to the incident which gave rise to the Complaint.

**RESPONSE:**  Plaintiff objects to this Request to the extent that it is vague regarding the term "relating" as it is a subjective term, inappropriate for a request for production.  Notwithstanding and without waiving this objection and the General Objections, Plaintiff will produce written communications regarding the incident which gave rise to the Complaint to the extent that they are in Plaintiff's possession, custody or control and not otherwise protected or privileged.

**REQUEST NO. 8:**  All written communications between you and anyone other than your attorney regarding Defendant from September 1, 2016 to the present.

**RESPONSE:**  Plaintiff objects to this Request on the grounds that it is overly broad and includes documents not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Request to the extent that it seeks documents that may be

3

privileged or protected.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will produce documents otherwise responsive to this Request to the extent that they involve any aspect of Plaintiff's Complaint, are in Plaintiff's possession, custody or control, and are not otherwise protected or privileged.

**REQUEST NO. 9:** All documents regarding the care and treatment rendered to you as a result of the incident which gave rise to the Complaint, and as described in your Answers to Interrogatories.

**RESPONSE:** Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 10:** All documents concerning the care, treatment, hospital care, physical therapy, or any other medical or health care rendered to you from January 1, 2013 to the present.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad and includes documents (and time periods) not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Request to the extent that it seeks documents that may be privileged or protected.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will produce documents otherwise responsive to this Request to the extent that they involve any aspect of Plaintiff's Complaint, are in Plaintiff's possession, custody or control, and are not otherwise protected or privileged.

**REQUEST NO. 11:** All documents which tend to show evidence of the nature, amount, and degree of injury complained of in your Complaint.

**RESPONSE:** Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 12:** All documents showing lost wages which you claim were the result of the incident complained of in the Complaint.

**RESPONSE:** Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 13:** All documents relating to witness statements which relate to the matters complained of in the Complaint.

**RESPONSE:** Plaintiff objects to this Request to the extent that it is vague regarding the terms "relating" and "relate" as they are subjective terms, inappropriate for a request for production.  Notwithstanding and without waiving this objection and the General Objections, Plaintiff will produce witness statements which involve the matter complained of in the Complaint to the extent that they are in Plaintiff's possession and not otherwise protected or privileged.

4

**REQUEST NO. 14:**  All documents relating to prior injuries, illnesses, disease, or disabilities from January 1, 2013 to the present.

**RESPONSE:**  Plaintiff objects to this Request on the grounds that it is overly broad and includes documents (and time periods) not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Request to the extent that it seeks documents that may be privileged or protected.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will produce documents otherwise responsive to this Request to the extent that they involve any aspect of Plaintiff's Complaint, are in Plaintiff's possession, and are not otherwise protected or privileged.

**REQUEST NO. 15:**  All documents evidencing the amount of damages or losses you claim resulted from the incident complained of in the Complaint.

**RESPONSE:**  Plaintiff will produce all non-privileged documents in her possession that are responsive to this request.

**REQUEST NO. 16:**  Any diaries or logs reflecting notes or information about the incident giving rise to the Complaint.

**RESPONSE:**  Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in scope.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will provide any diaries or logs that specifically mention the incident giving rise to the Complaint, properly redacted to protect other personal information, to the extent that there are any such documents in her possession.

**REQUEST NO. 17:**  Any diaries or logs reflecting notes or information about medical treatment, pain complaints, or lost wages.

**RESPONSE:**  Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in scope.  Notwithstanding and without waiving these objections and the General Objections, Plaintiff will provide any diaries or logs that specifically mention the incident giving rise to the Complaint, properly redacted to protect other personal information, to the extent that there are any such documents in her possession.

**REQUEST NO. 18:**  If you are or have been involved in any other litigation as a plaintiff in the past ten (10) years, provide copies of the Complaints, your discovery responses, and transcripts from any deposition taken of you.

**RESPONSE:**  Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding and without waiving this objection and the General Objections, Plaintiff states there are no such documents.

**REQUEST NO. 19:**  Copies of any and all Facebook postings, Twitter messages, or

5

other social media messages regarding the incident in question or the injuries and damages claimed in this case.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:** Invoices for all attorney's fees claimed in this case.

**RESPONSE:** Plaintiff objects to this Request to the extent that it seeks documents protected by the attorney-client privilege and the work product doctrine. Notwithstanding and without waiving this objection and the General Objections, Plaintiff agrees that, if the jury finds Defendant liable for Plaintiff's attorneys' fees (other than those already paid for by Defendant), Plaintiff will produce properly redacted attorneys' fees invoices.

<div style="text-align: right">

Respectfully Submitted,

  /s/ Thomas F. Urban II
Thomas F. Urban II, Virginia Bar No. 40540
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA 22209
(703) 861-5235 FAX (703) 812-0486
Urban@fhhlaw.com

Walter Steimel, Jr. (*pro hac* vice)
Steimel Conner Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258
wes@sclgrp.com

*Counsel for Plaintiff*

</div>

6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT a true and accurate copy of the foregoing was sent via email and/or U.S. First Class Mail to

Anna Dvorchik, Esq.
The Law Office of Anna K. Dvorchik, PLLC
3970 Chain Bridge Road
Fairfax, VA 22030

Alexandros Mitrakas, Esq.
Mitrakas and Company, PC.
1001 19th Street North, Suite 1200
Arlington, VA 22209
*Counsel for Defendant*

on this the 1st day of October 2020.

/s/ Thomas F. Urban II
Thomas F. Urban II

**EXHIBIT 7**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| JANE DOE | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR | : |
| | : |
| Defendant. | : |

### PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
### FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

Plaintiff Jane Doe ("Plaintiff"), by counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, submits her objections to Defendant Cenk Sidar's ("Defendant") First Set of Requests for Production of Documents to Plaintiff.

### OBJECTIONS TO DOCUMENT REQUESTS

**Request No. 1:**

All documents referenced in Doe's answers to Defendant's First Set of Interrogatories.

**Response:**

We provide document Bates Numbers 1-140 related to Interrogatories 4 (Bates 1-18), 5 (Bates 149-63), Interrogatories 13 and 15 (Bates 132-46) and Interrogatories 19 and 20 (Bates 1-18). Some responsive documents are being withheld until a suitable protective order is in place that limits confidential documents to the parties, counsel, and expert witnesses, where applicable and claimed in Plaintiff's Interrogatory responses. Plaintiff reserves the right to continue to supplement

1

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

these documents as she discovers additional documents or additional documents are retrieved from her phone which is undergoing forensic investigation by Sensei Enterprises, Inc.

**Request No. 2**:

All correspondence, communications, agreements, documents, and other tangible items that Doe referred to, relied upon, reviewed, or consulted in preparing her answers to Defendant's First Set of Interrogatories.

**Response**:

See Bates 1-18, 132-146, and 149-63.

**Request No. 3**:

All communications between you and Defendant from September 17, 2017, through the present.

**Response**:

See Bates 1-18.

**Request No. 4**:

All communications between you and the Metropolitan Police regarding the alleged assault from September 17, 2017, through the present.

**Response**:

See Bates 149-63. These documents currently omit communications to which counsel was also a party. Plaintiff continues to attempt location of additional documents including those that may be retrieved from her cell phone.

**Request No. 5**:

All documents evidencing any medical treatments that you have had since September 17,

2

2017.

**<u>Response</u>**:

     Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**<u>Request No. 6</u>**:

     All documents evidencing any psychological treatments that you have had since September 17, 2017.

**<u>Response</u>**:

     Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**<u>Request No. 7</u>**:

     All communications between you and the London hospital, referenced in Paragraph 35 of your Complaint, regarding the alleged assault from September 17, 2017, through the present.

**<u>Response</u>**:

     Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**<u>Request No. 8</u>**:

     All communications between you and the London medical clinic, referenced in Paragraph 35

of your Complaint, regarding the alleged assault from September 17, 2017, through the present.

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from medical care providers. This request may be duplicative of Request No. 7. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 9**:

All communications you had with any third parties regarding facts giving rise to the Complaint from September 17, 2017, to the present.

**Response**:

Plaintiff is still working to retrieve any responsive and non-privileged documents.

**Request No. 10**:

All documents evidencing your housing arrangements in London from your arrival in September, 2017, to September 13, 2017, including reservations and receipts.

**Response**:

Plaintiff has none as she was staying with her boyfriend at the time.

**Request No. 11:**

All documents evidencing your attempts to "find a reasonably priced hotel room for the weekend," as alleged in Paragraph 18 of the Complaint.

**Response:**

Plaintiff made a few phone calls to hotels but could not find any that were reasonably priced or available on short notice. As Defendant must be aware, last-minute hotel

accommodations in London can be very expensive. As Plaintiff's inquiries were by phone, she has no responsive records.

**Request No. 12:**

All documents evidencing the injuries that you contend you sustained as a result of the alleged assault.

**Response:**

Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 13:**

All documents evidencing offers of employment for the past ten (10) years.

**Response:**

Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter. Plaintiff does provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential."

**Request No. 14:**

All of your employment agreements for the past ten (10) years.

**Response:**

Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this

matter. Plaintiff does provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential."

**Request No. 15**:

All medical records within your possession from all healthcare providers who have examined, treated, diagnosed, or evaluated you in the past five (5) years.

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 16**:

All documents evidencing the damages that you claim you sustained as a result of the alleged assault.

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from third parties. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter. Plaintiff's counsel is preparing their attorneys fees tables and will provide them when available. Plaintiff does provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential."

**Request No. 17**:

All photographs and/or videos of the injuries that you sustained as a result of the alleged assault.

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond with any documents after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 18**:

All records in your possession from any medical facilities that you visited in London for treatment regarding the alleged assault.

**Response**:

Plaintiff notes that this request appears redundant to Request Nos. 7 and 8. Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 19**:

All paystubs that you received from your employers over the past ten (10) years.

**Response**:

Plaintiff is still collecting these records from storage, and payments made overseas commonly do not have "paystubs" as referred to in this Request. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 20**:

All invoices and/or receipts that you have received from health care providers who have

examined, treated, diagnosed, or evaluated you in the past five (5) years.

**Response**:

 Plaintiff notes that this request is duplicative of Request No. 15. Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 21**:

 All invoices and/or receipts that you have received from hospitals who have examined, treated, diagnosed, or evaluated you in the past five (5) years.

**Response**:

 Plaintiff notes that this request is duplicative of Request No. 15. Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 22:**

 All invoices and/or receipts that you have received from clinics who have examined, treated, diagnosed, or evaluated you in the past five (5) years.

**Response:**

 Plaintiff notes that this request is duplicative. Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**Request No. 23**:

All documents you rely on in support of the damages you claim you sustained as a result of the alleged assault.

**Response**:

Plaintiff is still compiling these documents as noted above. Plaintiff has requested and is waiting to receive responsive documents from third parties. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter. Plaintiff does provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential."

**Request No. 24**:

All invoices and/or receipts that you have received from pharmacies for prescriptions you have filled in the past five (5) years.

**Response**:

Plaintiff notes that this request is duplicative. Plaintiff has requested and is waiting to receive responsive documents from medical care providers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 25**:

All receipts, including charges appearing on credit card statements, for the alcoholic drinks that you consumed on September 15, 2017, up to, and including, September 17, 2017.

**Response**:

Plaintiff does not believe that she paid for any alcoholic drinks during the time in question

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

and has no responsive documents.

**Request No. 26**:

All documents that you rely upon in support of your statement in Paragraph 52 of the Complaint that "Defendant's attack of Plaintiff was willful and outrageous and was characterized by evil motive, intent to injury, ill will, fraud, gross negligence, recklessness, and willful indifference and was done with actual malice."

**Response**:

Plaintiff attaches Bates Numbers 1-18 and 149-63. Plaintiff will supplement.

**Request No. 27:**

All documents given to, or received from, any expert witness that you intend to call at the trial (or any evidentiary hearing) of this matter.

**Response:**

Plaintiff will provide those when required under Paragraph 5 of the Joint Discovery Plan, ECF No. 29.

**Request No. 28:**

All exhibits that you intend to use at the trial (or any evidentiary hearings) in this matter.

**Response**:

Plaintiff will provide when due under the Joint Discovery Plan and Scheduling Order.

**Request No. 29:**

All documents showing the lost wages that you are claiming as a result of the assault alleged in the Complaint.

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from third parties and from her storage lockers. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter. Plaintiff does provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential." Plaintiff will be supplementing this response.

**Request No. 30**:

If you are, or have been, involved in any other litigation as a plaintiff in the past ten (10) years, provide copies of the Complaints, your discovery responses, and transcripts of any depositions taken of you.

**Response**:

Plaintiff has no responsive documents.

**Request No. 31**:

Invoices for all attorneys' fees claimed in this matter.

**Response**:

Plaintiff will provide invoices for all attorneys' fees she claims as damages, redacted for attorney client and attorney work product protected material upon the execution of an appropriate protective order.

**Request No. 32**:

All documents that you provided to the Metropolitan Police regarding the alleged assault from September 17, 2017, through the present.

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**Response**:

Plaintiff attaches Bates Numbers 1-18 and 147-63. Most documents were provided electronically, and Plaintiff does not have a copy of them. Plaintiff reserves the right to supplement.

**Request No. 33**:

All documents that the Metropolitan Police have provided you with in connection with the alleged assault from September 17, 2017, through the present.

**Response**:

Plaintiff attaches Bates Numbers 147-63 and reserves the right to supplement. This request is redundant to other requests above.

**Request No. 34**:

All documents that you provided to the London hospital, referenced in Paragraph 35 of your Complaint, in connection with the alleged assault from September 17, 2017, through the present.

**Response**:

Plaintiff provides Bates 1-18 and 147-8. Plaintiff cannot locate any other documents responsive to this request at this time. Plaintiff will respond after entry of an appropriate protective order protecting this information and limiting its dissemination to the parties, counsel, and expert witnesses in this matter.

**Request No. 35**:

All documents that the London hospital, referenced in Paragraph 35 of your Complaint, has provided you in connection with the alleged assault from September 17, 2017, through the present.

**Response**:

Plaintiff notes that this request is redundant to other requests. Plaintiff will respond after

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

entry of an appropriate protective order protecting this information and limiting its dissemination

to the parties, counsel, and expert witnesses in this matter.

**Request No. 36:**

All documents that you provided to the London medical clinic, referenced in Paragraph 35 of

your Complaint, in connection with the alleged assault from September 17, 2017, through the present.

**Response:**

Plaintiff notes that this request is redundant to other requests, but Plaintiff provides Bates

1-18 and 147-8. Plaintiff has not located any additional responsive documents in her possession.

Plaintiff reserves the right to respond further after entry of an appropriate protective order

protecting this information and limiting its dissemination to the parties, counsel, and expert

witnesses in this matter.

**Request No. 37:**

All documents that you provided to the London medical clinic, referenced in Paragraph 35 of

your Complaint, in connection with the alleged assault from September 17, 2017, through the present.

**Response:**

See response to Request No. 36.

**Request No. 38:**

Credit card statements for any credit cards that you used while you were in London in

September 2017.

**Response**:

Plaintiff has not yet located responsive documents, but is searching her storage.

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**Request No. 39**:

All documents evidencing your employment benefits for the past ten years.

**Response**:

Plaintiff has requested and is waiting to receive responsive documents from third parties.

Plaintiff will respond after entry of an appropriate protective order protecting this information and

limiting its dissemination to the parties, counsel, and expert witnesses in this matter. Plaintiff does

provide, however, redacted documents at Bates 132-46 that are also stamped "Confidential."


Dated:        August 11, 2022

<div align="right">

/s/ Thomas F. Urban II
Thomas F. Urban II, Virginia Bar No. 40540
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17<sup>th</sup> Street, Suite 1100
Arlington, VA 22209
(703) 861-5235 FAX (703) 812-0486
Urban@fhhlaw.com

Walter Steimel, Jr. (*pro hac* vice)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

</div>

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY THAT a true and accurate copy of the foregoing was sent via

electronic service or electronic mail to

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant*

on this the 11th day of August, 2022.

/s/ Thomas F. Urban II
Thomas F. Urban II

15

PLAINTIFF'S RESPONSES TO DEFENDANT CENK SIDAR'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**             ) | |
|     **A Domiciliary of the** ) | |
|     **Commonwealth of Virginia** ) | |
|                       ) | |
|     **Plaintiff,**       ) | **Civil Action No. 1:22-cv-00545** |
|                       ) | |
| **v.**                           ) | |
|                       ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR**        ) | |
|                       ) | |
|     **Defendant.**     ) | |

**PLAINTIFF'S REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR
SANCTIONS AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE
JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, files this Reply to

Opposition to Plaintiff's Motion for Sanctions and Further Compel Compliance with Magistrate

Judge Buchanan's August 5, 2022, Order ("Motion"). *ECF No. 65*.

Defendant's Opposition is untimely. Defendant's deadline for filing an Opposition was

Tuesday, November 29, 2022. Defendant chose to file his Opposition the following day. Despite

being late and inconveniencing Plaintiff, Plaintiff files this brief reply to inform this Court of the

factual inaccuracies and fabrications contained in Defendant's Opposition.

First, Defendant's reference to and inclusion of Judge Shannon's order is misleading.

Judge Shannon ruled upon Plaintiff's Rule 4:10 motion to collect DNA. At the time of that order,

and throughout the case, Defendant was in violation of a court order to produce himself for DNA

collection. Specifically, Judge Smith ordered Defendant to appear for DNA testing by order

dated February 21, 2020. See Exh. A. Defendant sought reconsideration of that order and

reconsideration was denied on August 7, 2020. Defendant was continuously under an order to present himself for testing and availed himself of self-help to refuse to submit.

Unable to force Defendant's compliance with the outstanding discovery order of the court Plaintiff filed a series of motions to compel and for sanctions. Judge Shannon's order related to only one of Plaintiff's attempts, was limited to Rule 4:10, and was entered without prejudice. Regardless, Defendant had been in active violation of Judge Smith' Order to submit to DNA testing for several months prior to then. Plaintiff nonsuited with the hopes that federal courts could compel compliance and sanction noncompliant conduct.

Second, Defendant's actions are not justified. It is the belief of the undersigned that parties and their counsel are not entitled to engage in self-help when they disagree with a court order. The undersigned is also of the opinion that in the absence of a stay the parties should proceed as ordered by a court. Without a stay in place (and only requested the Sunday afternoon before Monday morning testing was to take place), complying with the order was Plaintiff's only lawful and reasonable option. Plaintiff complied; Defendant chose not to appear even without a stay in place.

Third, the London police document attached to Defendant's motion has never been provided to Plaintiff and this is the first time Plaintiff is aware of such correspondence. The correspondence itself does not prove anything except that Defendant's counsel could not obtain a response from the London police in time to file with this court. Defendant's assertions stand in stark contrast with the correspondence and proof that Plaintiff has previously provided to this court that the London police have the rape kit and male sperm DNA sample and have profiled it. Plaintiff needs Defendant's DNA to profile and compare with that obtained by The Havens.

2

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

Fourth, Defendant is in active violation of Magistrate Judge Buchanan's Order, and no stay has ever been issued. Magistrate Judge Buchanan warned Defendant of the consequences of his conduct. Defendant should not be heard to attempt to re-litigate this issue over and over at the expense of Plaintiff and this Court. This Court should enforce its Order, and should command respect for its Order and Rules.

Finally, Defendant's arguments regarding the text messages are misleading. Plaintiff has provided her text messages in discovery. Plaintiff has provided the test messages that were given to the London police. Plaintiff has asked Defendant to produce his text messages, but the response from the Defendant has been that he doesn't have any. We have warned Defendant about the risks of spoilation. Defendant cannot simply delete his text messages and then claim that Plaintiff's messages are somehow fraudulent. As with his DNA, Defendant's conduct is to block Plaintiff's access to evidence and then claim that no good evidence exists.

WHEREFORE, Plaintiff Jane Doe moves the Court to grant Plaintiff's Motion for Sanctions and Further Compel Compliance with Magistrate Judge Buchanan's August 5, 2022, Order, and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: ___/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

3

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FURTHER
COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022,
ORDER

(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of December, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

4

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

Jane Doe,
    Plaintiff

v.

Cenk Sidar
    Defendant.

Case No. CL 2019-12642

### ORDER

This matter came to be heard on the 21ˢᵗ day of _February_ 2020 on the Plaintiff(s)/~~Complainant(s)~~/~~Defendant(s)~~'s motion _to Compel Samples for DNA and other Blood Tests from Defendant._

Upon the matters presented to the Court it is hereby

ORDERED as follows:

_The Motion is GRANTED. Defendant Cenk Sidar shall submit to DNA and blood testing at a facility of the Plaintiff's choosing no later than thirty (30) days after the date of the signing of this Order._

ENTERED this 21 day of _Feb_, 2020.

JUDGE

SEEN and _Agreed_

Counsel for Plaintiff/Complainant
Va Bar # 40540

SEEN and ~~Endorsement Waived~~
Per Rule 1:13

Counsel for Defendant

JA712

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JANE DOE,                          .    Civil Action No. 1:22cv545
                                   .
                Plaintiff,         .
                                   .
        vs.                        .    Alexandria, Virginia
                                   .    December 2, 2022
CENK SIDAR,                        .    10:01 a.m.
                                   .
                Defendant.         .
                                   .
.  .  .  .  .  .  .  .  .  .  .  .

                TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE JOHN F. ANDERSON
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              WALTER E. STEIMEL, JR., ESQ.
                                Steimel Counselors Law Group
                                1455 Pennsylvania Avenue, N.W.
                                Suite 400
                                Washington, D.C. 20004
                                  and
                                THOMAS F. URBAN, II, ESQ.
                                Fletcher Heald & Hildreth, PLC
                                1300 N. 17th Street, Suite 1100
                                Arlington, VA 22209

FOR THE DEFENDANT:              MARIAM W. TADROS, ESQ.
                                Rees Broome, P.C.
                                1900 Gallows Road, Suite 700
                                Tysons Corner, VA 22182
                                  and
                                ALEXANDROS K. MITRAKAS, ESQ.
                                Mitrakas & Co.
                                10521 Judicial Drive, Suite 310
                                Fairfax, VA 22315

TRANSCRIBER:                    ANNELIESE J. THOMSON, RDR, CRR
                                (703)629-3845

                        (Pages 1 - 22)

(Proceedings recorded by FTR Gold sound recording, transcript
 produced by computerized transcription.)

1                    P R O C E E D I N G S

2              THE CLERK:  Jane Doe versus Cenk Sidar, Civil Action

3    No. 22cv545.

4              THE COURT:  Counsel need to introduce themselves.

5              MR. STEIMEL:  Your Honor, Walter Steimel for

6    plaintiff, Jane Doe.  With me, Mr. Tom Urban.  I'm pro hoc, and

7    he's admitted to the district.

8              THE COURT:  Okay.

9              MS. TADROS:  Your Honor, good morning.  Mariam Tadros

10   here on behalf of the defendant, Cenk Sidar.  I have with me

11   Mr. Alex Mitrakas.

12             THE COURT:  And who's going to argue?

13             MS. TADROS:  I will, Your Honor.

14             THE COURT:  Okay.  Come forward.  I don't think I'm

15   going to need to hear from the plaintiff very much.

16             MS. TADROS:  All right.

17             THE COURT:  You may have a seat.

18             I'm going to ask you a few questions, and then I'll

19   give you an opportunity to respond.  You are aware that the

20   July 11 order entered by this Court set a discovery cutoff date

21   of December 9; is that correct?

22             MS. TADROS:  Yes, Your Honor.

23             THE COURT:  Okay.  And you're aware that on August 5,

24   2022, this Court entered an order requiring your client to

25   appear at a place on a specific date, that is, August 29 at

 1    10 a.m.?  You're aware of that?

 2              MS. TADROS:  Yes, Your Honor.

 3              THE COURT:  Okay.  Then on August 19, you filed

 4    objections to that order, right?

 5              MS. TADROS:  Correct.

 6              THE COURT:  Didn't seek a stay when you filed those

 7    objections.  You waited your 14 days to file your objections,

 8    knowing the deadline that was set to have your client appear.

 9    So on August 19, you filed objections.

10              MS. TADROS:  Yes, Your Honor.

11              THE COURT:  Did you seek an immediate hearing on

12    those objections?

13              MS. TADROS:  No, Your Honor.

14              THE COURT:  No.

15              MS. TADROS:  We had filed our motion --

16              THE COURT:  No, you did not.

17              MS. TADROS:  No.

18              THE COURT:  You filed a notice for a date after the

19    date that your client was to appear; is that right?

20              MS. TADROS:  That is correct, Your Honor.

21              THE COURT:  September 6.

22              The Sunday before, at 12 noon, that your client was

23    to appear at 10:00 on Monday morning, you apparently filed a

24    motion to stay.

25              MS. TADROS:  Yes, Your Honor.

1          THE COURT:  Help me understand how that was any way a

2     reasonable way to handle this situation.

3          MS. TADROS:  Your Honor, we had filed that motion, we

4     had told Mr. Urban and we told Mr. Steimel.

5          THE COURT:  No, there is a court order --

6          MS. TADROS:  I understand, Your Honor.

7          THE COURT:  -- that was in existence that said your

8     client had to appear at a particular date and time.

9          MS. TADROS:  I understand, Your Honor.

10          THE COURT:  You file a motion.  You apparently think

11     you can file it and grant it at the same time, but I'm just

12     trying to make sure I understand the time frame now.

13          MS. TADROS:  Your Honor --

14          THE COURT:  You filed the objections on the 14th day,

15     on the 19th, but you didn't seek an immediate hearing to make

16     sure that it got decided before the date of compliance, and you

17     didn't file a motion to stay when you filed the motion -- filed

18     the objections, right?

19          MS. TADROS:  Yes.

20          THE COURT:  So, so what is it you were thinking?

21          MS. TADROS:  Your Honor, we thought that filing the

22     objections was -- would have been sufficient.  We filed a

23     motion to stay.  We --

24          THE COURT:  Well, no.  Tell me why you would have

25     thought --

1          MS. TADROS:  We had looked at --

2          THE COURT:  -- that if you filed objections

3    automatically invalidates a court order?

4          MS. TADROS:  No, Your Honor, we did not think it

5    invalidated a court order.  We -- I had communicated to counsel

6    so that they would not have someone appear that my client would

7    not appear.  We filed the motion to stay, which I believe the

8    Court has not yet ruled on.  We waived oral argument on that

9    motion.

10          THE COURT:  Well, okay.

11          MS. TADROS:  We appealed to Judge Hilton.

12          THE COURT:  Let's go back to this.  You filed a

13   motion to stay, right?

14          MS. TADROS:  Yes, Your Honor.

15          THE COURT:  Okay.  The Sunday before your client was

16   to appear on Monday morning.

17          MS. TADROS:  Yes, Your Honor.

18          THE COURT:  Judge Buchanan's order was not stayed

19   upon your filing that motion to stay.

20          MS. TADROS:  I understand.  And it's not stayed as of

21   today.

22          THE COURT:  And your client failed to appear as he

23   was ordered to appear on August 29 at 10 a.m.; is that right?

24          MS. TADROS:  That is all correct, Your Honor.

25          THE COURT:  Okay.  So why is it that sanctions aren't

1  appropriate for your client failing to comply with a court

2  order?

3      MS. TADROS:  Your Honor, I don't dispute that he has

4  not complied with a court order.  We can go through the

5  sanctions, which yes, he has violated a court order.  Was this

6  harmless or substantially justified --

7      THE COURT:  Let me keep going through this because I

8  just want to make sure I've got the time frame right.

9      MS. TADROS:  Your Honor, you do have the time frame

10  correct.

11      THE COURT:  Okay.

12      MS. TADROS:  I can explain --

13      THE COURT:  So he doesn't -- he doesn't appear.

14      MS. TADROS:  He does not appear, no.

15      THE COURT:  Okay.  Judge Hilton then affirms Judge

16  Buchanan's order.

17      MS. TADROS:  Yes.

18      THE COURT:  He still doesn't appear.

19      MS. TADROS:  That is correct.

20      THE COURT:  Okay.  Thirty-one days after the court

21  order gets entered, you apparently file an appeal of that

22  decision to the Fourth Circuit; is that right?

23      MS. TADROS:  Yes.

24      THE COURT:  So again, tell me why 31 days?  Why

25  wouldn't that have been due within 30 days?

1          MS. TADROS:  I believe we had timely appealed that

2     order, Your Honor.

3          THE COURT:  Okay.  Well, help me understand that.  At

4     least according to the docket sheet, September 12 --

5          MS. TADROS:  It may have fallen on a Sunday and we

6     filed on a Monday; I'm not sure; but I don't think anyone has

7     raised the issue until now that it was untimely.

8          THE COURT:  Okay.  Well, I'm raising it now, and I'm

9     trying to find out.

10          MS. TADROS:  Your Honor, I don't even have a

11     calendar in front of me, but I will tell you that we believed

12     that we had timely filed it.  The Fourth Circuit has issued a

13     briefing schedule.  Our brief and appendices are due

14     December 20, 2002.

15          THE COURT:  Have you sought a stay in the Fourth

16     Circuit?

17          MS. TADROS:  We had not.  We had still filed a stay

18     motion with this Court that is still pending.

19          THE COURT:  There's no reason to stay anything that

20     has already been affirmed.  He affirmed his decision.  There

21     was nothing to stay.  The order was entered.  It's been

22     affirmed.  There's no reason to stay anything.

23          MS. TADROS:  Well, the order has been affirmed.  It

24     is now on appeal.

25          THE COURT:  Well, again, let me understand that

1    because at least according to the docket sheet -- and I think

2    even your brief indicates that the objection was overruled on

3    September 12, okay?

4            MS. TADROS:  Um-hum.

5            THE COURT:  Apparently, according to the docket

6    sheet, your appeal was filed on October 13, so that would be

7    30 days -- 31 days after the order was entered, but why was

8    it that you would wait 31 days to file your notice of appeal in

9    a case that you know the discovery cutoff date is December 9?

10           MS. TADROS:  Well, we had been -- I don't really

11    want to reveal the conversations I had been having with the

12    client.

13           THE COURT:  So you just wanted to wait until the last

14    day or day after the last day to do that?

15           MS. TADROS:  No, Your Honor, but I can't answer your

16    question without revealing client confidences.

17           THE COURT:  Okay.  And once you decided to file a

18    motion -- or decided to appeal this case to the Fourth Circuit,

19    you didn't seek any relief from the Fourth Circuit as to his

20    pending order to appear and give the sample that this Court had

21    ordered?

22           MS. TADROS:  No, Your Honor.  We thought that filing

23    the motion to stay, which is still pending before this Court,

24    would have been sufficient.

25           THE COURT:  Why?  Why?  He'd already affirmed the

1  order.

2        MS. TADROS:  But there is now a pending appeal, and

3  there is no order that has been --

4        THE COURT:  Well, there was no pending appeal when

5  you filed a motion to stay.

6        MS. TADROS:  Yes, but since the Court had not ruled

7  on the motion, that's still a pending motion before this

8  Court.

9        THE COURT:  Okay.  Why aren't sanctions appropriate?

10       MS. TADROS:  Well, looking at it is, is this, one,

11  whether the party violated a discovery rule; two, was it --

12       THE COURT:  And the answer to that is clearly yes.

13       MS. TADROS:  Yes.

14       THE COURT:  Okay.

15       MS. TADROS:  Was this harmless or substantially

16  justified, and which sanction is appropriate for the violation.

17  We would say that this is substantially justified.  As we --

18       THE COURT:  Why?  You failed to comply with the court

19  order.  You appealed it.  It got affirmed.  You haven't moved

20  to stay it.  It's still an order that is out there.  Hilton's

21  order did away with your stay.  It was stayed pending his

22  decision.  He decided it.  There's no longer a stay.

23       MS. TADROS:  Yes, but then going to the issue of is

24  it substantially justified, one, it is on appeal; two, there

25  was no evidence actually presented if the Court reviews the

1    motion to support the claims made specifically in plaintiff's

2    motion, in the reply, and in open court.  There has been

3    nothing to show that this is a sample against which you could

4    compare --

5            THE COURT:  I'm dealing with someone who has

6    blatantly failed to comply with this Court's order.  He was

7    told to appear on a particular date, told that if he didn't

8    appear at that particular date, there were going to be

9    sanctions.

10           MS. TADROS:  Yes.

11           THE COURT:  And they could be sanctions that could

12   range up to a default judgment, and he didn't show up.  He

13   didn't like it, didn't want to do it, didn't do it, but he just

14   didn't show up.

15           There was nothing that impacted the validity of this

16   Court's order such that he wasn't required to show up on

17   August 29.  You could have sought an immediate hearing.  You

18   could have filed a motion to stay and had it heard before the

19   compliance date, but you didn't do it, right?

20           MS. TADROS:  Your Honor, I don't think we're

21   disputing the facts.  I wanted to explain why this was

22   substantially justified, if the Court will --

23           THE COURT:  Well --

24           MS. TADROS:  -- allow me to explain.

25           THE COURT:  Okay.

1        MS. TADROS:  So going to the underlying merits of the

2  motion itself -- and I understand the Court's view that an

3  order has been entered, we need to comply with the order.

4        THE COURT:  Right.  Well, that's it, isn't it?  You

5  didn't do it.  You may not like the order.  You appealed it.

6  Judge Hilton found the objections to be inappropriate.  He

7  affirmed it.  You then still didn't do it.

8        MS. TADROS:  There's no disputing that, Your Honor.

9        THE COURT:  Okay.

10        MS. TADROS:  The issue is was it substantially

11  justified.  I understand the Court's view is that it must

12  enforce its orders.  We're saying there is something with the

13  initial order that is the subject of an appeal because if the

14  Fourth Circuit reverses Judge Buchanan's order and Judge

15  Hilton's order, we cannot unring that bell.  His DNA,

16  Mr. Sidar's DNA has already then been sent to London, who's

17  going to do God knows what with it.  So --

18        THE COURT:  Well, the sanctions that are before the

19  Court aren't necessarily that he has to comply with the order.

20  It can be a default --

21        MS. TADROS:  That is one of them.

22        THE COURT:  Yeah, but it can be a default judgment.

23        MS. TADROS:  Yeah, they have asked for default as to

24  liability.  They've asked for all of these other things.

25        THE COURT:  Right.

1          MS. TADROS:  So making him comply with the order, we

2     would think that's something that the Fourth Circuit could

3     reverse, but if the Fourth Circuit does reverse that, then he's

4     at a substantial disadvantage because he is now found in

5     default.  He has been -- liability has been imposed upon him,

6     and we have no idea if this alleged rape actually occurred.

7          THE COURT:  Well --

8          MS. TADROS:  Which is really the critical issue here.

9          THE COURT:  Well, that, that --

10         MS. TADROS:  And --

11         THE COURT:  The critical issue in front of me today

12    is whether I can allow someone to blatantly fail to comply with

13    a court order --

14         MS. TADROS:  And this -- Your Honor, this is not

15    someone who slept on his rights.  It's not as if we didn't

16    appeal to Judge Hilton and we didn't file a motion to stay or

17    to appeal to --

18         THE COURT:  You appealed to him on the 14th day and

19    didn't seek to stay the effectiveness of that.  You didn't move

20    expeditiously when you filed that appeal.  You set a date that

21    was a week after the compliance date.  You filed -- for some

22    reason, decided to file a motion to stay on a Sunday before the

23    compliance date on Monday.

24         MS. TADROS:  And I had let counsel know, I think, ten

25    days before.

1          THE COURT:  Letting counsel know and letting the

2    Court know and letting the validity of the order -- you just

3    don't file it and grant it yourself.

4          MS. TADROS:  We -- Your Honor, this is not a case of

5    self-help.  He -- my client understood the risks of not

6    appearing.

7          THE COURT:  Okay.  Well, then good.

8          MS. TADROS:  He has chosen --

9          THE COURT:  I'm glad your client knows it and he

10   knows what his recourses are for his failure to do that and

11   failure to take appropriate actions to have any action to stay

12   that order and him failing to comply.

13         MS. TADROS:  So going back to the issue of

14   substantial justification, the one thing that we have not

15   discussed is was there support for the Court's order.  I

16   understand Judge Buchanan's view.  She relied on counsel's

17   representation.  She told me at the hearing she was accepting

18   counsel's representation and that I could go verify that

19   information myself.

20         After that hearing, London counsel for Mr. Sidar

21   attempted to verify that information.  They were unsuccessful.

22   I then attempted to verify that information because there

23   should have been some type of affidavit or some evidence

24   attached to that underlying motion seeking to compel --

25         THE COURT:  I'm not having you reargue the motion.

1          MS. TADROS:  These are --

2          THE COURT:  This is an order that was entered, has

3    not been stayed.  You have not sought to have it stayed in the

4    Fourth Circuit.  You waited your 30 or 31 days to file your

5    notice of appeal.  You have not -- and so I have an order that

6    your client has knowingly apparently and voluntarily decided

7    not to comply with.

8          MS. TADROS:  I understand the Court's position.  What

9    I'm saying is that I'm not trying to reargue the motion.  I am

10   telling you what has happened since the motion.  Since Judge

11   Buchanan has said you can go verify that information yourself,

12   I did attempt to verify that information myself.

13         I could not get that verification.  So even as we sit

14   here today, that representation that was made in those

15   pleadings and in open court cannot be verified.

16         So I do feel that there is substantial justification

17   for Mr. Sidar not appearing for the DNA, and that is not

18   something that -- these are not motions that can, you know,

19   are routinely granted.  They're extraordinary motions, and they

20   are motions in this case that did not have the adequate

21   supporting evidence, and we were not able to obtain it after

22   the fact.  So I would contend that would be substantial

23   justification.

24         And then going to which sanction is appropriate for

25   the violation, the things sought, we've already discussed the

1  DNA.  The other thing that was sought was punitive damages in

2  excess of the cap of $350,000 under Virginia law.  I don't

3  believe that the Court can grant that request.

4       Deeming messages as admitted, I don't believe the

5  Court can grant that request.  I will say I received these

6  messages in Fairfax.  The name of Mr. Sidar was changed to

7  London Assailant.  So I got a text printout that had already

8  been altered.  It was not the underlying messages themselves

9  from WhatsApp, no metadata.  It was a printout that had been

10 changed.

11      So we would contend that's not appropriate for the

12 Court to just say these are deemed admitted because you still

13 have to meet the rules of evidence even if the Court were to

14 grant a sanction relating to liability.

15      So three of the four requests should be denied by

16 this Court, and I would contend with respect to the first

17 request, there is substantial justification given that there is

18 currently a pending appeal, and there has been no verification

19 of the claims made in the motion itself.

20      Does the Court have any further questions?

21      THE COURT:  No.

22      MS. TADROS:  Thank you.

23      THE COURT:  Okay.  All right.  Well, I've reviewed

24 this very closely as a matter of fact and gone through and

25 looked at the docket sheets and tried to understand what was

1  going on in this case, and I think it's probably clear from my

2  comments I'm at a loss as to understanding how this case was

3  handled.

4          It is clear that the parties knew starting mid-July

5  that they had a discovery cutoff date of December 9.  It is

6  also clear that when Judge Buchanan entered her order on

7  August 5 requiring a specific date for the defendant to appear,

8  that is, he was to appear at August 29 at 10 a.m. at

9  plaintiff's counsel's office, that that order was specific.  It

10  advised the defendant that failure to comply with the order

11  could result in the entry of sanctions, including default

12  judgment pursuant to 37(b)(2).

13          The defendant decided to object to that order and did

14  so on the 14th day, took no action at the time of filing the

15  objections to do anything that would have underlined the

16  validity of that pending order, that is, that had to comply

17  with the date done, did not file a motion to stay at that time,

18  did not seek immediate hearing, as Judge Hilton hears motions

19  every Friday, could have been noticed for the following Friday,

20  could have contacted his chambers to try and get an expedited

21  hearing, could have filed a motion to stay at the time they

22  filed their objections, but for some reason I still don't

23  understand, they waited until the Sunday before he was to

24  appear on Monday morning, at 11:58, according to the docket

25  sheet, filed a motion to stay, apparently thinking that filing

1  the motion to stay, they have the ability to file it and grant

2  it, and that he wouldn't need to comply with the Court's order.

3  He failed to comply with the Court's order and did not appear

4  on August 29 at plaintiff's counsel's office.

5  No stay had been entered.  Nothing had been set

6  aside.  No protective order had been entered, no action taken

7  to find or get a ruling on that in an expeditious manner.

8  Judge Hilton overruled the objection on September 12.

9  The defendant then took no action to comply with the order that

10  had now been affirmed by Judge Hilton.  According to the docket

11  sheet, that order was entered on -- sent out on September 12.

12  Again, defendant took no action to comply with what

13  was then a pending order to appear, decided on what as I

14  calculated is the 31st day -- if the order was entered on

15  September 12, at least according to the docket sheet, the

16  notice of appeal was docketed on October 13 -- and again has

17  sought no stay in the Fourth Circuit.

18  So those are the facts as I understand them to be for

19  me to make a decision as to whether sanctions should be awarded

20  and if so, what is an appropriate sanction.

21  I think, as I can understand it, the defendant has

22  acknowledged that they have failed to comply with the Court's

23  order, arguing that it is substantially justified because they

24  believe that the order is not valid and was subject to a

25  pending appeal but has not been stayed in any respects, but

1  they still think the order was wrong.

2  That's not the way we do things.  We have a valid

3  order.  It's out there.  You don't just get to pick and choose

4  the ones you want to comply with.  If you don't want to comply

5  with it, you've got to get a court order, a stay, or a

6  protective order to protect yourself from not -- from failing

7  to comply with a court order.

8  37(b)(2)(A) addresses the sanctions that are, that

9  are available for a party who fails to comply with a court

10  order, and this is, you know, this was a blatant failure to

11  appear.  Knew about it, clear, specific, knew that sanctions

12  could be awarded if they failed to do it.  They failed to do

13  it.

14  The sanctions that are set out in 37(b)(2)(A) include

15  directing the matters embraced in the order or other designated

16  facts be taken as established for the purposes of the action,

17  prohibiting the disobedient party from supporting or opposing

18  claims or defenses or introducing matters into evidence,

19  striking pleadings, staying further proceedings, dismissing the

20  action or proceeding, or entering a default judgment against a

21  disobedient party.

22  So those are the available sanctions that are before

23  the Court.  As the defendant points out in their memorandum in

24  opposition to this, the Fourth Circuit has set out four factors

25  that are to be considered.  It's in the *Anderson v. Foundation*

1  *for Advancement, Education and Employment of American Indians*,

2  155 F.3d 500 (4th Cir. 1998).

3          The four-part test:  whether there's bad faith, it's

4  clear to me based on the facts as I've outlined them here today

5  that there was bad faith on the part of the defendant.  Knew

6  the order.  The order was specific, a specific deadline to

7  appear, failed to appear, did not take specific action to

8  obtain relief from that order.  The order indicated that they

9  failed to comply, sanctions would be available, including the

10  default judgment.  Clearly bad faith in my view.

11          The amount of prejudice, you know, we have a

12  discovery cutoff date that was set back in July of December 9.

13  Failure to appear as ordered, failure to appear after it was

14  affirmed, waiting the 31 days or 30 days to file a notice to

15  appear, still taking no action to comply with a court order,

16  there is substantial precedent -- prejudice.

17          This -- and again, we don't know for sure, but it

18  certainly is the plaintiff's position that this would have been

19  a cornerstone of its liability case.  If it had gotten those

20  results, come back, it had shown that the DNA was the same,

21  that that would have been a substantial piece of their case

22  that they are not able to have during the time period that the

23  parties have known the discovery process was going to get

24  done.

25          So I think there is substantial prejudice involved in

1   the defendant's knowing and willful failure to appear with the

2   Court's order.  There is a great need to deter this type of

3   conduct.  It is reprehensible, to be honest with you, that a

4   party can fail to comply with a court order and think that they

5   merely file a motion to stay less than, you know, 24 hours, on

6   a Sunday, and think they can file it and grant it and there not

7   be serious consequences to that type of action.

8        So there is a great need to deter this type of

9   conduct going forward if parties ignore court orders, and that

10  is, in fact, what I think has happened here.

11       You know, then it comes to what is the appropriate

12  sanction in a case like this.  We have a case in which there is

13  a date that's set for the discovery cutoff.  The parties have

14  been -- have known about that date for several months.

15       The actions that were taken in this case, you know,

16  are significant.  I think under the facts that have been set

17  out, the analysis of the factor -- the first three factors, the

18  appropriate sanction here is to have a default entered here as

19  to liability.

20       You know, I think the evidence -- and again, we don't

21  know because the defendant failed to comply with the court

22  order, but certainly in the plaintiff's view, this would have

23  been the cornerstone of its case along with the testimony of

24  the plaintiff, that would have been the, certainly the -- some

25  type of sexual activity would have occurred then.  I guess the

1    issue would still remain as to whether it was consensual or

2    not, I don't know for sure, but, you know, they have been kept

3    from getting what they believe to be very substantial evidence.

4              I think given the delay tactics interposed by the

5    defendant in this case have been numerous, I think that there

6    is a real need to deter it, so I think appropriate action is

7    to go ahead and have -- recommend that a default be entered as

8    to liability and that the case will proceed as to damages

9    alone.

10             So given that ruling, I'm not going to grant any

11   motion to continue the discovery period.  The damages issues

12   are the damages issues.  Plaintiff doesn't need any

13   additional discovery to prove what amount of damages that were

14   the result of this action.  So discovery is not going to be

15   continued.

16             Final pretrial conference will be held on

17   December 15.  You'll get a trial date sometime probably after

18   the first of the year, January or February, to try your case on

19   damages.

20             I'll enter an order today setting out those, you

21   know -- briefly state what I stated from the bench as my facts

22   of the ruling that -- or recommendation that default be entered

23   against the defendant and that the case proceed to trial on

24   damages, okay?

25             Anything else from the plaintiff?  Okay.

1          MR. STEIMEL:  No, Your Honor.

2          THE COURT:  Thank you.  Court will be adjourned.

3                              (Which were all the proceedings

4                                had at this time.)

5

6                    CERTIFICATE OF THE TRANSCRIBER

7      I certify that the foregoing is a correct transcript from

8  the official FTR Gold sound recording of the proceedings in the

9  above-entitled matter.

10

11                              _____
                                              /s/
12                                Anneliese J. Thomson

13

14

15

16

17

18

19

20

21

22

23

24

25

Date: 12/02/2022

Judge: JOHN F. ANDERSON
Reporter: FTR

Start: 10:01
Finish: 10:28

Civil Action Number: 1:22-cv-545-CMH-JFA

Jane Doe

vs.

Cenk Sidar

Appearance of Counsel for Pltf ( ✓ ) Deft ( ✓ )

(   ) Matter is uncontested

Motion to/for:

[60] PLAINTIFF'S MOTION TO ENLARGE THE DISCOVERY PERIOD

[63] PLAINTIFF'S MOTION FOR SANCTIONS AND TO FURTHER COMPEL
COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

[63] Argued &
(✓) Granted (   ) Denied (   ) Granted in part/Denied in part
(   ) Taken Under Advisement (   ) Continued to _____

[60] Denied

(   ) Report and Recommendation to Follow
( ✓ ) Order(s) to Follow

JA735



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANE DOE,                              )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )      Civil Action No. 1:22cv545 (CMH/JFA)
                                       )
CENK SIDAR,                            )
                                       )
            Defendant.                 )
_____)

**DEC 2 2022**

## <u>ORDER</u>

This matter is before the court on plaintiff's motion to enlarge the discovery period

(Docket no. 60) and motion for sanctions and to further compel compliance with Judge

Buchanan's August 5, 2022, order (Docket no. 63). The court previously ordered defendant to

appear at plaintiff's counsel's office on August 29, 2022 at 10:00 a.m. to provide buccal swab

samples and warned that failure to comply may result in sanctions including default judgment.

(Docket no. 40). For the reasons stated during the hearing on December 2, 2022, the

undersigned finds defendant unjustifiably failed to comply with that order and still has not

complied with that order.

In determining the appropriate sanction for violating the court's order, the undersigned

considered the factors laid out by the Fourth Circuit in *Anderson v. Foundation for Advancement,*

*Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The undersigned finds that

defendant has acted in bad faith, in that defendant failed to obtain relief prior to the compliance

date laid out in the court's order and yet still failed to comply with the order. Plaintiff is

substantially prejudiced by defendant's failure to comply with the court's order, as obtaining this

discovery was an important component of presenting plaintiff's case on liability. There is a

strong need to deter parties that blatantly violate a clear court order when relief has not been granted prior to the compliance date.  Accordingly, the undersigned recommends the court enter a judgment of default against defendant as to liability and proceed on damages alone.

Given this ruling, the motion to enlarge the discovery period is denied.

Entered this 2nd day of December, 2022.

<div style="text-align:right">

_____/s/_____

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge
</div>

Alexandria, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|    **A Domiciliary of the** | ) | |
|    **Commonwealth of Virginia** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|    **Defendant.** | ) | |

**PLAINTIFF'S SECOND MOTION FOR SANCTIONS AND TO FURTHER COMPEL**
**COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER**

Plaintiff Jane Doe ("Plaintiff"), through counsel, pursuant to Fed. R. Civ. Proc. (b)(2)(A), files this Second Motion for Sanctions and to Further Compel Compliance with Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order ("DNA Order," ECF No. 40), as upheld on appeal by Judge Hilton (ECF No. 55).

As an additional sanction for Defendant's second non-compliance Plaintiff requests entry of an order (i) finding that Defendant is barred from contesting that he engaged in unwanted sexual assault in this case; (ii) finding that Defendant is in contempt of this Court and administer sanctions to punish Defendant for his continued willful noncompliance with and complete disregard for the orders of this Court and the Federal Rules of Civil Procedure; (iii) extending the discovery period in this matter until such time as the DNA Order is obeyed plus ninety (90) days; (iv) awarding Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance; and (v) awarding such other damages and sanctions that this Court find necessary and proper.

JA738

Plaintiff will file a Memorandum and Certification in support of this Motion.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By:   /s/ Thomas F. Urban II
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of December, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Thomas F. Urban II
Thomas F. Urban II

**Certification**

I, Thomas F. Urban II, VSB #40540, certify pursuant to Fed. R. Civ. Proc. 37(d)(1)(B) that counsel for Plaintiff has in good faith conferred and attempted to confer with Defendant in an effort to obtain the requested responses without court action.

By: __/s/ Thomas F. Urban II_____

THOMAS F. URBAN II, VSB #40540

FLETCHER, HEALD & HILDRETH, PLC

1300 17th Street North, Suite 1100

Arlington, Virginia 22209

(703) 812-0462; (703) 812-0486 (f)

urban@fhhlaw.com

December 8, 2022

PLAINTIFF'S SECOND MOTION FOR SANCTIONS AND TO FURTHER COMPEL COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

JA740

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**<br>   **A Domiciliary of the**<br>   **Commonwealth of Virginia**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**CENK SIDAR**<br><br>      **Defendant.** ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 1:22-cv-00545** |

**[PROPOSED] ORDER REGARDING
PLAINTIFF'S SECOND MOTION FOR SANCTIONS AND TO FURTHER COMPEL
COMPLIANCE WITH JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER**

Upon consideration of Plaintiff's Second Motion for Sanctions and to Further Compel

Compliance with Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order ("DNA

Order") and Memorandum ("Motion"), the briefs filed by the Parties, and any argument

regarding the Motion, the Motion is hereby GRANTED;

Specifically,

(1)     Defendant is barred from contesting that he engaged in unwanted sexual assault in

this case;

(2)     Defendant is in contempt of this Court and this Court hereby administers

sanctions to punish Defendant for his continued willful noncompliance with and complete

disregard for the orders of this Court and the Federal Rules of Civil Procedure;

(3)     The discovery period in this matter is extended until such time as the DNA Order

is obeyed plus ninety (90) days;

JA741

(4)     Defendant is ordered to pay attorneys' fee damages to Plaintiff in the amount

incurred by Plaintiff in seeking this Order and additional sanctions of $_____.

Plaintiff shall file a schedule of attorneys' fees within seven (7) days of this Order.


_____
Judge,  United States District Court
Eastern District of Virginia


cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

*Counsel for Plaintiff Jane Doe*

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant Cenk Sidar*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**               )<br>     **A Domiciliary of the**   )<br>     **Commonwealth of Virginia**  )<br>                     )<br>     **Plaintiff,**            )<br>                     )<br>**v.**                    )<br>                     )<br>**CENK SIDAR**         )<br>                     )<br>     **Defendant.**         ) | **Civil Action No. 1:22-cv-00545**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM SUPPORTING SECOND MOTION FOR SANCTIONS
AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE
BUCHANAN'S AUGUST 5, 2022, ORDER**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Memorandum Supporting

Second Motion ("Second Motion") for Sanctions and Further Compel Compliance with

Magistrate Judge Buchanan's August 5, 2022, Order ("DNA Order," ECF No. 40) upheld on

appeal by Judge Hilton (ECF No. 55). Plaintiff files her Second Motion pursuant to Fed. R. Civ.

Proc. 37(b)(2)(A).

Defendant has again disregarded the DNA Order and this Court's authority. The Court's

sanctions against Defendant in Magistrate Judge Anderson's Sanctions Order ("Sanction Order,"

ECF No. 70) were not a sufficient deterrent to prevent Defendant from engaging in the *exact*

*same conduct* a second time. Plaintiff requests this Court to again levy sanctions against

Defendant for his habitual and willful noncompliance with the Orders and Rules of this Court.

As an additional sanction for Defendant's second non-compliance Plaintiff requests entry

of an order (i) finding that Defendant is barred from contesting that he engaged in unwanted

sexual assault in this case; (ii) finding that Defendant is in contempt of this Court and administer

sanctions to punish Defendant for his continued willful noncompliance with and complete disregard for the orders of this Court and the Federal Rules of Civil Procedure; (iii) extending the discovery period in this matter until such time as the DNA Order is obeyed plus ninety (90) days; (iv) awarding Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance; and (v) awarding such other damages and sanctions that this Court find necessary and proper.

## Background

The background of this case, and prior facts supporting the Sanctions Order and which are relevant to this Motion, were detailed in Plaintiff's first motion for sanctions (ECF No. 63) and Plaintiff fully incorporates them into this Memorandum by reference. Plaintiff focuses below on more recent factual developments and argument for her Second Motion.

On December 2, 2022, Magistrate Judge Anderson issued the Sanction Order sanctioning Defendant for not complying with the DNA Order. In the Sanction Order Magistrate Judge Anderson noted that Defendant unjustifiably failed to comply with the DNA Order, acted in bad faith and failed to obtain relief prior to the compliance date. Magistrate Judge Anderson further noted that Defendant's conduct was prejudicial to Plaintiff. Magistrate Judge Anderson decided that a strong deterrent to such willful and wanton behavior was necessary and justified the sanction of default on liability.

As the DNA Order is still a valid and binding order of this Court, and due to the fact that Plaintiff still needs Defendant's DNA as part of her damages and punitive damages showing, *inter alia*, that the presence of Defendant's sperm in Plaintiff's vaginal exam would prove that not only did Defendant rape Plaintiff but doing so unprotected demonstrated gross negligence and a willful and wanton disregard of the health and life of Plaintiff justifying severe punitive damages, Plaintiff immediately noticed Defendant to again appear for a DNA buccal swab test.

JA744

Plaintiff noticed collection pursuant to the DNA Order again at the offices of counsel, Thomas Urban of Fletcher, Heald & Hildreth, for yesterday morning, Wednesday, December 7, 2022, at 10:30 a.m. *See*, Notice, Exh. A. Defendant did not appear for the noticed exam.

Defendant and his counsel duplicated their conduct which led Magistrate Judge Anderson to issue his Sanction Order. Defendant and counsel still have not requested a stay of the DNA Order. Defendant sent his "objections" after 6:30 p.m., clearly after close of business, the night before the noticed exam. *See*, Objections, Exh. B. These "objections" merely recited arguments that have repeatedly been rejected by this Court and were sent too late for Plaintiff's counsel to cancel the scheduled collection. Plaintiff immediately and forcefully rejected Defendant's "objections" which were no more than a thinly veiled repudiation of the authority of this Court and the Federal Rules of Civil Procedure. *See* Email from Mr. Urban, Exh. C. Plaintiff's counsel Mr. Steimel and Melanie of J and M Paternity appeared at Mr. Urban's office and waited in vain for almost two hours for Defendant to appear for the buccal swab test. Plaintiff again incurred unnecessary expenses of counsel's time and a no-show charge (the third) from Plaintiff's DNA collection expert.

### Defendant's Refusal to Comply With Multiple Court Orders

Despite the Sanction Order and the clear direction from this Court, Defendant has again continued his consistent defiance of Court Orders and Rules and refused to submit to a DNA buccal swab and testing. Three times he has failed to appear as and when ordered by a Court, causing Plaintiff to incur attorneys' and medical assistants' fees. Defendant continues to disobey Court Orders commanding him to produce himself for examination unsupported by any stay this Court's Orders. Defendant continues his proclivity to avail himself of self-help, disregarding this Court's orders as though they are a minor annoyance that do not apply to him or his counsel.

Defendant continues to believe that he can disregard orders of this Court without a stay or leave of this Court, even though Local Rule 8 explicitly states that "[f]iling a notice of appeal does not automatically stay the operation of the judgment, order or decision for which review is sought."

Defendant demonstrates a clear contempt and disregard for Plaintiff, this Court, the Fairfax County Court, for judicial process, and for the rule of law. Defendant's outrageous actions deny Plaintiff and this Court any semblance of orderly due process. Defendant continues to browbeat Plaintiff into submission through his dilatory tactics and disdain of Court orders.

## Legal Standard

District courts have wide authority to control discovery and impose a wide variety of sanctions for noncompliance with discovery orders. *Certain Underwriters v. AdvanFort Co*., Civil Action No. 1:18-cv-1421 (TSE/TCB) (E.D. Va. July 25, 2019), at 6, *citing Hinkle v. City* of *Clarksburg, W. Va*., 81 F.3d 416, 426 (4th Cir. 1996) (*citation omitted*); *see also Vir2us, Inc. v. Invincea, Inc*., 235 F. Supp. 3d 766, 779 (E.D. Va. 2017). When determining the appropriateness of sanctions courts should "consider (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (*citation omitted*)." *Certain Underwriters*, at 6.

## Analysis of Sanctions Standards

We apply the *Anderson* criteria to the facts.

### Four Part Criteria Considered in *Anderson*

(1)     Whether Non-Complying Party Acted in Bad Faith

4

PLAINTIFF'S MEMORANDUM SUPPORTING SECOND MOTION FOR SANCTIONS AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

JA746

Defendant, the non-complying party, is clearly acting in bad faith, and has been found to be acting in bad faith in the Sanction Order. Undeterred, Defendant doubles down on his conduct. Defendant clearly acts in bad faith and there can be no excuse or reward for his conduct.

(2)    Prejudice Caused Plaintiff

Defendant's request and conduct has been found to cause prejudice to the Plaintiff in the Sanction Order. Defendant's conduct continues to cause irrevocable harm and will continue to cause plaintiff harm going forward. Plaintiff's counsel and DNA test lab have already made themselves available three times for court ordered testing, only to have the Defendant not appear. Defendant's conduct disrespectful to counsel and opposing party, to this court and to legal process. Plaintiff has spent more time on this case attempting to secure Defendant's compliance with valid Court orders and rebutting frivolous claims than she has on the merits of her case.

(3)    Need for Deterrence

Defendant has demonstrated multiple times that he will continue to violate any court order with which he does not agree and attempt to manipulate the legal system. His conduct cannot be condoned and he must be deterred, and future litigants must also be deterred from similar conduct. Plaintiff strains to find an acceptable sanction that will deter Defendant's conduct and demonstrate to future litigants that such conduct will not be tolerated.

Counsel also plays a role in these matters. Counsel are officers of the Court and are bound to encourage compliance with Court orders and procedures. Ultimately, counsel is responsible for controlling their client, and when a client cannot be effectively controlled counsel must withdraw or suffer the consequences of facilitating a party's offensive and disruptive conduct.

PLAINTIFF'S MEMORANDUM SUPPORTING SECOND MOTION FOR SANCTIONS AND FURTHER COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

(4)  Whether Less Drastic Sanctions Would Be Effective

Despite being sanctioned in the Sanction Order Defendant continues to defy this Court, ignore its orders and blatantly refuse to comply with the DNA Order.

Defendant has been sanctioned several times for violating court orders, paying over $60,000 in attorneys fee sanctions in Fairfax County Circuit Court and sanctioned with default judgment on liability by the Sanction Order. None of these have led to a change in Defendant's behavior. Drastic measures are justified.

Plaintiff's requested sanctions include --

(i) finding that Defendant is barred from contesting that he engaged in unwanted sexual assault in this case;

(ii) finding that Defendant is in contempt of this Court and administer sanctions to punish Defendant for his continued willful noncompliance with and complete disregard for the orders of this Court and the Federal Rules of Civil Procedure;

(iii) extending the discovery period in this matter until such time as the DNA Order is obeyed plus ninety (90) days;

(iv) awarding Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance; and

(v) awarding such other damages and sanctions that this Court find necessary and proper.

These findings are necessary and proper considering Defendant's willful non-compliance, need to deter Defendant's conduct and to send a signal to similarly situated litigants.

6

**Prayer**

WHEREFORE, Plaintiff Jane Doe moves the Court to levy additional sanctions and enter an Order

(i)     finding that Defendant is barred from contesting that he engaged in unwanted sexual assault in this case;

(ii)    finding that Defendant is in contempt of this Court and administer sanctions to punish Defendant for his continued willful noncompliance with and complete disregard for the orders of this Court and the Federal Rules of Civil Procedure;

(iii)   extending the discovery period in this matter until such time as the DNA Order is obeyed plus ninety (90) days;

(iv)   awarding Plaintiff's attorney fees and costs caused by Defendant's willful non-compliance; and

(v)    awarding such other damages and sanctions that this Court find necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: ___/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (Pro hac vice)

7

Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

PLAINTIFF'S MEMORANDUM SUPPORTING SECOND MOTION FOR SANCTIONS AND FURTHER
COMPEL COMPLIANCE WITH MAGISTRATE JUDGE BUCHANAN'S AUGUST 5, 2022, ORDER

JA750

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of December, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

9

**EXHIBIT A**

**Notice**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) | |
|     **A Domiciliary of the** ) | |
|     **Commonwealth of Virginia** ) | |
| ) | |
|     **Plaintiff,** ) | **Civil Action No. 1:22-cv-00545** |
| ) | |
| **v.** ) | |
| ) | |
| **CENK SIDAR** ) | |
| ) | |
|     **Defendant.** ) | |

**PLAINTIFF'S SECOND NOTICE OF
PHYSICAL EXAMINATION AND DNA SAMPLING OF DEFENDANT**

PLEASE TAKE NOTICE that, pursuant to the Rules 34 and 35 of the Federal Rules of

Civil Procedure, Plaintiff Jane Doe (hereinafter, "Doe" or "Plaintiff"), by and through the

undersigned counsel and a suitably certified health care provider, will conduct an Physical

Examination of Defendant Cenk Sidar ("Defendant"), which will include the taking of a sample

of Defendant's Deoxyribonucleic acid (DNA):

- Plaintiff hereby sets December 7, 2022, at 10:30 a.m., for the taking of samples of Defendant's DNA for the purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit.  These tests will be analyzed by one or more independent laboratories of Plaintiff's choosing.

- Defendant will present himself for the taking of these samples at the office of Plaintiff's Counsel, Thomas F. Urban II, Esq., at FLETCHER, HEALD & HILDRETH, PLC, 1300 North 17th Street, Suite 1100, Arlington, VA 22209, at that time.

- The inspection and taking of the DNA sample will be for the purpose, among other things, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by The Havens.  This information will further be relevant to Plaintiff's claim for punitive damages.

- The evaluation shall be limited to the testing and sampling requested of Defendant.

- Plaintiff shall provide the Court and counsel with the written results of this testing within thirty (30) days after the completion of the analysis of the testing, or as soon thereafter as such results can be obtained from the laboratory.

Respectfully Submitted,

/s/ Thomas F. Urban II
Thomas F. Urban II, Virginia Bar No. 40540
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA 22209
(703) 861-5235 FAX (703) 812-0486
Urban@fhhlaw.com

Walter Steimel, Jr. (*pro hac* vice)
Steimel Conner Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258
wes@sclgrp.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and accurate copy of the foregoing was sent via

email and/or U.S. First Class Mail to

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

Alexandros Mitrakas, Esq.
Mitrakas and Company, PC.
1001 19th Street North, Suite 1200
Arlington, VA 22209
*Counsel for Defendant*

on this the 2nd day of December, 2022.

/s/ Thomas F. Urban II
Thomas F. Urban II

2

**EXHIBIT B**

**Objections**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR | : |
| | : |
|     Defendant. | : |

_____

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S NOTICE OF PHYSICAL**
**EXAMINATION AND DNA SAMPLING OF DEFENDANT**

Defendant, Cenk Sidar ("Defendant"), by counsel, objects to Plaintiff Jane Doe's

("Plaintiff") Notice of Physical Examination and DNA Sampling of Defendant ("Notice") on the

following grounds:[1]

    1.    Plaintiff's Notice fails to establish that "good cause" exists for the taking of a

DNA sample pursuant to Rule 35.

    2.    Plaintiff's Notice fails to establish the "in controversy" requirement for the

compulsion of a DNA sample pursuant to Rule 35.

    3.    Plaintiff's Notice fails to explain how Plaintiff intends to compare a DNA sample

compelled from Defendant to anything.

    4.    Plaintiff's Notice fails to allege that there is a DNA sample at The Havens that is

of such a quantity and of such a quality as to allow for accurate DNA analysis.

_____

[1] Defendant also incorporates by reference the arguments made, and authority relied upon, in his Opposition to the Motion to Obtain Physical Examination of and DNA Sample from Defendant.

5.      Plaintiff's Notice fails to establish that the integrity of a DNA sample at The Havens has been preserved or that it even still exists.

6.      Plaintiff's Notice fails to establish a prima facie showing of a reasonable possibility of a match between the alleged DNA sample from her and a DNA sample from Defendant.

7.      Plaintiff's Notice fails to comply with the requirements imposed by Rule 35 of specifying the manner, conditions, and scope of the examination, as well as the person(s) who will perform it.

8.      Plaintiff's Notice improperly designates Plaintiff's counsel's office, as opposed to a medical facility, for the taking of the DNA samples.

9.      Plaintiff's Notice does not specify how the DNA samples will be collected, including which type of samples will be taken and the methods used to take those samples.

10.      Plaintiff's Notice fails to specify where and how the DNA will be analyzed, stating only that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." It is also unclear what "tests" Plaintiff's Notice is referring to.

11.      Plaintiff's Notice states that the DNA collected will be compared "with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." Plaintiff fails to establish where these items currently are and what the chain of custody for these items has been.

12.      Plaintiff's Notice is overly broad as it states that the inspection and taking of the sample "will be for the purpose, *among other things*, ......." (emphasis added).

13.      Plaintiff's Notice asserts that the information "will further be relevant to Plaintiff's claim for punitive damages." Examinations pursuant to Rule 35 are not permissible to establish damages.

14.     Plaintiff has failed to make a prima facie showing of a reasonable possibility of a match and has failed to offer an evidentiary basis for concluding that any alleged DNA that she is in possession of belongs to Defendant.

15.     The issue of whether Plaintiff is required to submit to a physical examination is currently pending on appeal before the United States Court of Appeals for the Fourth Circuit.

16.     London Police have not verified the information asserted by counsel for Plaintiff in open court and in pleadings regarding the DNA sample.

Dated: December 6, 2022                  /s/ Mariam Tadros_____
                                         Mariam W. Tadros (VSB #75502)
                                         Abigail S. Reigle (VSB # 92947)
                                         REES BROOME, PC
                                         1900 Gallows Road, Suite 700
                                         Tysons Corner, VA 22182
                                         Tel: (703) 790-1911
                                         Fax: (703) 848-2530
                                         Email:  mtadros@reesbroome.com
                                         *Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

     I HEREBY CERTIFY that on December 6, 2022, a copy of the foregoing **DEFENDANT'S OBJECTION TO PLAINTIFF'S NOTICE OF PHYSICAL EXAMINATION AND DNA SAMPLING OF DEFENDANT** was served via email to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC 20004
wes@sclgrp.com

                         /s/ Mariam Tadros
                         Mariam W. Tadros

**EXHIBIT C**

**Response Email**

**From:** **Thomas Urban** urban@fhhlaw.com
**Subject:** Re: Jane Doe v. Cenk Sidar - Defendant's Objections to Plaintiff's Notice of Physical Examination and DNA Sampling of
Defendant
**Date:** December 6, 2022 at 6:57 PM
**To:** Walter Steimel wes@sclgrp.com

It will be good argument for Judge Hilton next week.

Sent from my iPhone

On Dec 6, 2022, at 11:55 PM, Walter Steimel <wes@sclgrp.com> wrote:

Crazy....


Walter E. Steimel, Jr.
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W. Suite 400
Washington, D.C. 20004
202-271-9258
wes@sclgrp.com


On Dec 6, 2022, at 6:49 PM, Thomas Urban <urban@fhhlaw.com> wrote:

Ms. Tadros-

Each of these objections have been rejected by the Court and your client has no legitimate basis
not to attend the appointment tomorrow.

Tom Urban

Sent from my iPhone

Begin forwarded message:

**From:** Corinne Bahner <cbahner@reesbroome.com>
**Date:** December 6, 2022 at 11:17:54 PM GMT
**To:** Thomas Urban <urban@fhhlaw.com>, wes@sclgrp.com
**Cc:** Mariam Tadros <MTadros@reesbroome.com>
**Subject: Jane Doe v. Cenk Sidar - Defendant's Objections to Plaintiff's Notice of Physical
Examination and DNA Sampling of Defendant**

Counsel,

Attached please find Defendant's Objections to Plaintiff's Notice of Physical Examination and
DNA Sampling of Defendant in the Jane Doe v. Cenk Sidar matter.

Thank you,

**Corinne Bahner** | **Rees Broome, PC**
**Associate Attorney**

1900 Gallows Road, Suite 700 | Tysons Corner, VA 22182
t 703.790.1911  **m. 703.770.0466**

cbahner@reesbroome.com | reesbroome.com

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify Rees Broome, PC by telephone at (703) 790-1911. You will be reimbursed for reasonable costs incurred in notifying us.

<image001.png><20221206 Objection to DNA Notice(2818530.1).pdf>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANE DOE,                          )
                                   )
         Plaintiff,                )
                                   )
    v.                             )          Civil Action No. 1:22cv0545 (CMH/JFA)
                                   )
CENK SIDAR,                        )
                                   )
         Defendant.                )
                                   )

DEC  1 2 2022

## ORDER

This matter is before the court on plaintiff's second motion for sanctions and to further compel compliance with Judge Buchanan's August 5, 2022 order. (Docket no. 74). Having reviewed the motion and memorandum in support (Docket no. 75), oral argument on this motion is not necessary and it will be decided on the papers given the undersigned's earlier ruling on this issue, that discovery has ended in this matter, and the case is set for a final pretrial conference on December 15, 2022.

On December 2, 2022, the court heard argument of plaintiff's first motion for sanctions and to further compel compliance with Judge Buchanan's August 5, 2022 order (Docket no. 63) and plaintiff's motion to enlarge the discovery period (Docket no. 60). After reviewing the pleadings submitted on those motions and hearing argument by counsel, the court issued an order granting plaintiff's motion for sanctions and denying the motion to enlarge the discovery period. (Docket no. 70). As explained during that hearing, defendant's failure to appear at plaintiff's counsel's office on Monday, August 29, 2022, to provide buccal swab samples was unjustified and was a clear and blatant violation of Judge Buchanan's order. While defendant filed an objection to that order on August 19, 2022 (Docket no. 43), defendant did not seek an immediate

1

hearing on that objection.  Defendant did not seek a protective order or stay of Judge Buchanan's order until noon on Sunday, August 28, 2022 (less than 24 hours before defendant was to appear at plaintiff's counsel's office), when a motion to stay was filed.  (Docket no. 46).  The memorandum in support of the motion to stay indicated that "Defendant seeks to stay the Order pending the Court's ruling on his Objection."  (Docket no. 47 at 2).  Other than filing this motion to stay, defendant took no action to obtain an immediate consideration of the motion and, in essence, granted the motion himself and failed to appear.  After the court affirmed Magistrate Judge Buchanan's order on September 12, 2022 (Docket no. 55), defendant did not appear and provide buccal swab samples.[1]  Defendant did nothing from September 12 to October 13, 2022, when he filed a notice of appeal on this interlocutory issue (Docket no. 56).  Even after filing the notice of appeal, defendant did not seek, or obtain, a stay of Judge Buchanan's order as affirmed by the District Judge.

Given this unjustified failure to comply with a clear and direct order of the court that specifically warned that failure to comply "may result in the entry of sanctions, including default judgment," the court weighed the various factors set forth in *Anderson v. Foundation for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) and recommended that a default be entered as to liability for the three claims raised in plaintiff's complaint (assault, battery, and intentional infliction of emotional distress) and that the case proceed to a trial limited to plaintiff's alleged damages.  (Docket no. 70).  That determination was based on the substantial prejudice to plaintiff's liability case resulting from defendant's failure to provide the buccal swab samples.  Given the recommendation that liability would not

---

[1] Given that the motion to stay filed on Sunday, August 28, 2022, sought (but never obtained) a stay until the court ruled on the pending objections, that motion was mooted by the affirmance of the order.

be an issue at trial and the trial would be limited to plaintiff's alleged damages, there was no further requirement that defendant provide the buccal swab samples to plaintiff or that any additional discovery from defendant was needed since the trial would be limited to plaintiff's damages, which information was already in her possession. For those reasons, plaintiff's earlier motion to extend the discovery period was denied. (*Id.*).

For these reasons, it is hereby

ORDERED that plaintiff's second motion for sanctions and to further compel compliance with Judge Buchanan's August 5, 2022 order requiring buccal swab samples and an extension of the discovery period is denied.

Entered this 12th day of December, 2022.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

3

JA765



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JANE DOE                          )
                                  )
        VS.                       )   1:22-CV-545  CMH
                                  )
                                  )   ALEXANDRIA, VIRGINIA
                                  )   DECEMBER 15, 2022
                                  )
CENK SIDAR                        )
_____)

_____

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE CLAUDE M. HILTON**
**UNITED STATES DISTRICT JUDGE**
_____

**Proceedings reported by stenotype, transcript produced by**

**Julie A. Goodwin.**

Julie A. Goodwin, CSR, RPR

1                    **A P P E A R A N C E S**

2

3   FOR THE PLAINTIFF:
          THE LAW FIRM OF FLETCHER, HEALD & HILDRETH, PLC
4         By:  MR. THOMAS F. URBAN II
          1300 17th Street North
5         Suite 1100
          Arlington, Virginia  22209
6         703.812.0462
          urban@fhhlaw.com
7
          STEIMEL COUNSELORS LAW GROUP PLLC
8         By:  MR. WALTER E. STEIMEL, JR.
          1455 Pennsylvania Avenue, N.W.
9         Suite 400
          Washington, D.C.  20004
10        202.271.9258
          wes@sclgrp.com
11

12

13  FOR THE DEFENDANT:
14        REES BROOME, PC
          By:  MS. MARIAM W. TADROS
15        1900 Gallows Road
          Suite 700
16        Tysons Corner, Virginia  22182
          703.790.1911
17        mtadros@reesbroome.com

18

19

20  OFFICIAL U.S. COURT REPORTER:
          MS. JULIE A. GOODWIN, RPR
21        United States District Court
          401 Courthouse Square
22        Eighth Floor
          Alexandria, Virginia  22314
23        512.689.7587

24

25

1  (DECEMBER 15, 2022, 11:23 A.M., OPEN COURT.)

2      THE COURTROOM DEPUTY:  Court calls civil case *Jane Doe*

3  *versus Cenk Sidar*; Case Number 2022-CV-545.

4      May I have appearances, please, first for the

5  plaintiff.

6      MS. TADROS:  Good morning.  My name is Mariam Tadros.

7  I'm here on behalf of the defendant, Cenk Sidar.

8      I saw plaintiff's counsel this morning in the

9  hallway.  And I think I saw him walk in, so I know that they're

10 here, but they're just not physically in the courtroom, Your

11 Honor.

12      THE COURT:  All right.  We'll get the Marshal to find

13 them.

14  (BRIEF PAUSE.)

15      COURT SECURITY OFFICER:  Not there.

16      THE COURT:  Nobody is there?

17      COURT SECURITY OFFICER:  Nobody there, Your Honor.

18      THE COURTROOM DEPUTY:  Judge, there were two.  They

19 came in this morning to check in.  They checked in this morning

20 with me, Walter Steimel and Thomas Urban.

21      THE COURT:  Check again, Marshal, and see.  There's

22 somebody walking around out there.

23  (BRIEF PAUSE.)

24      THE COURT SECURITY OFFICER:  No, Your Honor.

25      THE COURT:  Well, that's strange.  Well, if we know

1  they're here, maybe we better take a brief recess and make some

2  kind of a search for them.

3       MS. TADROS:  I'll go look outside for them, Your

4  Honor.

5       THE COURT:  All right.  Thank you.

6           I'll take a brief recess.

7       THE LAW CLERK:  All rise.  This Court takes a brief

8  recess.

9    (11:25 A.M. TO 11:28 A.M. RECESS TAKEN ~ OFF THE RECORD.)

10      THE COURTROOM DEPUTY:  Court recalls *Jane Doe versus*

11 *Cenk Sidar*; Case Number 2022-CV-545.

12          May I have appearances, please, first for the

13 plaintiff.

14      MR. STEIMEL:  Walter Steimel appearing *pro hac vice*

15 for plaintiff, along with my good friend and co-counsel, Tom

16 Urban, who is admitted to the bar of this Court.

17      THE COURT:  All right.  Good morning.

18      MS. TADROS:  Good morning again, Your Honor.  Mariam

19 Tadros here on behalf of the defendant, Cenk Sidar.

20      THE COURT:  All right.  Good morning.

21          Now, what do we have to set here today?  I've got a

22 recommendation from the magistrate judge concerning a default

23 judgment in this matter.  What are we here to do?

24      MR. STEIMEL:  Your Honor, we're here on a couple of

25 things.  One, as of Friday evening the parties executed a

1 stipulated protective order. And I have signed copies here for

2 the Court, which we would like to have you sign and enter into

3 the record.

4 THE COURT: All right.

5 MR. STEIMEL: Do you need more than one?

6 THE COURTROOM DEPUTY: Yes.

7 MR. STEIMEL: Secondly, we -- we think it's premature

8 to set deadlines in this case. Defendant has appealed the

9 default -- not the default -- the DNA order from Anderson that

10 you -- that you agreed with to the Fourth Circuit. And the

11 briefing schedule of the Fourth Circuit is for the joint

12 appendix, and defendant's brief would be due December 20th and

13 the plaintiff's brief due January 19th and a reply due 21 days

14 after that. If the Fourth Circuit reverses the order on the

15 DNA collection and perhaps on default judgment, then we would

16 have to retry the case if we set this thing for trial to start

17 with because we would have to try the whole liability issue.

18 In addition, Magistrate Judge Anderson denied our

19 request for DNA on -- on the point of damages as opposed to

20 liability and rejected a continuance. And we -- we plan on

21 objecting to that to you, and our deadline is not up for that

22 yet. And if we have a denial of that, we may also take the

23 denial of the right to take a DNA sample to prove liability up

24 to the Fourth Circuit. So it will be some period of time

25 before -- before we will have everything set for trial and may

1    have to retry the case if we get started anyway.

2         In addition, in failure -- defendant's failure to

3    comply with the Court order to submit himself for DNA testing,

4    we did receive a default judgment from Magistrate Judge

5    Anderson, but we'd further request that under Rule 37(a) that

6    all discovery deadlines get extended *nunc pro tunc* from the

7    date they should have appealed for the first DNA sampling,

8    which is August 29, 2022.

9         We further can't take any deposition of defendant

10   or it would be unwise for us to take deposition of defendant

11   until such time as we have the DNA sample so we can take a

12   complete deposition.  We had taken two depositions of defendant

13   in the case below in Fairfax County, but those related to his

14   then failed motion to contest personal jurisdiction.

15        I would also note that in this case defendant has

16   done everything in his power to -- to deplete plaintiff

17   resources with multiple appeals and objections to various

18   orders.  Defendant's appealed the orders I said to the -- to

19   the Fourth Circuit.  Appealed another order of the Fairfax

20   County Court -- Supreme Court of Virginia, which we prevailed

21   upon, and have a sanctions motion pending in Fairfax County

22   tomorrow morning against defendant for a frivolous appeal as

23   well as various objections and motions in this court, which

24   both delay our development of the case and strain our client's

25   resources.  And we would -- we would request this Court not

1   reward defendant for such conduct by accelerating this case.

2          Finally -- I'm sorry, Your Honor.  I had one other

3   point.

4          Oh, yeah.  So, we -- as I said, you'll need to hear

5   the objection to the magistrate's order, which we will be --

6   which we'll be sending to you before the deadline.

7          Oh, there is an objection pending before you today.

8   I'm sorry.  I'm a little nervous this morning.  And so we would

9   like to hear -- we'd like to have your hearing on our objection

10  today and accept the magistrate's recommendation on default

11  judgment, but add an extension of the discovery until defendant

12  complies.

13         We believe that defendant's activities in delaying

14  this case and continue to appear -- not appear for DNA plays

15  into defendant's hands.  That defendant's only objective is to

16  avoid ever having to provide a DNA sample, which was relevant

17  to the liability phase, and is -- remains to be relevant to the

18  damages phase, particularly as if the -- if we -- if plaintiff

19  demonstrates that defendant engaged in unprotected sex that

20  constituted a willful and wanton disregard for the rights of

21  the plaintiff and possibly exposed her to sexually transmitted

22  diseases, which were not tested for in any of defendant 's

23  medical reports, including HPV and herpes.  And we believe that

24  goes directly to the point of punitive damages.

25         Finally, we received defendant's final discovery

1  after execution of the protective order on Friday evening and

2  in which the defendant still did not give us any documents

3  having any financial records, even though he had given us

4  extensive financial records before in Fairfax County that are

5  now two years old.  Failed to respond to any of our discovery

6  on those points, and so we'd request additional time in order

7  to correct these items.

8  　　　　THE COURT:  Tell me again what you say is on appeal in

9  this case that would prevent us from going forward here.

10 　　　　MR. STEIMEL:  Defendant has appealed Anderson's

11 finding that defendant has provided DNA.  I'm sorry, Judge

12 Anderson's finding that -- that DNA should be -- should have

13 been provided, and the time has not yet run out for defendant

14 to appeal the issue of -- of default judgment in that matter.

15 But if the Fourth Circuit determines that DNA could not have

16 been, was incorrectly ordered to be delivered by this Court,

17 then it could reverse the default judgment.  We would have to

18 retry the damages phase, the liability phase.

19 　　　　THE COURT:  How do you appeal an order from the

20 magistrate which is not a final order?

21 　　　　MR. STEIMEL:  Defendant appealed -- well, the

22 magistrate's order -- defendant objected to you.  You upheld

23 the magistrate's order.  And defendant appealed that to the

24 Fourth Circuit, and that's currently pending before the Fourth

25 Circuit.

1          THE COURT:  Oh, I understand.

2          MR. STEIMEL:  I'm sorry.  I'm not being clear this

3    morning.

4          THE COURT:  All right.  Thank you.

5          MS. TADROS:  Your Honor, I believe that we can set

6    this matter for trial.  Going to the first issue, which is

7    affirmation of Judge Anderson's order regarding the discovery

8    being closed and no further extensions, there's nothing to show

9    that that order is clearly erroneous or contrary to law.

10          If the Court looks at the procedural posture of

11   this case, it was filed in May.  The Court issued the Rule

12   16(b) order in July.  All discovery was to completed -- to be

13   completed by December.

14          The plaintiff has already filed two motions to

15   compel, which were denied in this past week.  We provided what

16   we thought were appropriate answers to discovery in August.

17   They moved to compel -- basically effectively a week ago they

18   filed a motion.

19          The issue here is that plaintiffs forgot to

20   designate experts.  So in their -- in plaintiff's Rule 26(a)(1)

21   disclosure, which was submitted in August, she listed her

22   categories of damages, future lost wages of approximately $3

23   million.

24          There is no expert to testify about that in this

25   case.  They blew that deadline.

1         Medical expenses in the future of $250,000.  Again,

2  no expert.

3         Physical pain and suffering, future, 750,000.  No

4  expert.

5         Mental anguish, future, 500,000.  No expert.

6         Diminution and abilities, past and future, $2

7  million.  No expert.

8         This was all information that was within

9  plaintiff's control.  She knows her damages.  We do not.  I've

10  now received all of the financials, and I'll tell you, I don't

11  understand her damages.

12         But she didn't designate an expert.  That was her

13  failure, and there's no reason for the Court to extend the

14  scheduling order.

15         And I'll represent to this Court, if this Court

16  affirms Magistrate Judge Anderson's ruling on this issue, I

17  will withdraw my appeal.  We can have a trial in February.  We

18  are ready to go.  Because at this point, this is an issue of

19  damages.  And I think plaintiff knew what her damages were, and

20  she should be ready to go to trial because these are, again,

21  her damages.

22         As for the delay and the depletion of assets, the

23  reason we're in this court is that plaintiff originally filed

24  this suit in Fairfax County Circuit Court.  They took a

25  nonsuit.  They took a voluntary dismissal of the case to bring

1  it here.

2          We didn't cause that delay.  We were perfectly fine

3  litigating this case in Fairfax.

4          And as to the issue of DNA, that goes to liability.

5  This Court knows that Judge Anderson has already recommended

6  that default judgment be entered as to my client, and the issue

7  of liability is gone, so now it's just an issue of damages.

8          DNA is not relevant to damages.  Ms. Doe can

9  testify that she didn't have STDs before Mr. Sidar didn't use a

10 condom.  She somehow got an STD.  She can testify as to that.

11         But again, the problem is the plaintiff didn't

12 designate any expert.  You know, she didn't designate a doctor.

13 She didn't designate anybody.  So, the reason she's here in

14 this position is solely of her own doing.

15         Mr. Sidar has already been punished because he

16 can't contest liability, but he has nothing to do with the fact

17 that she did not designate experts with information that was

18 solely within her control.

19         So again, we would ask that the Court just set this

20 matter for trial, and it affirms Judge -- and if the Court is

21 inclined to affirm the ruling of Judge Anderson on discovery, I

22 am representing to the Court I will withdraw my appeal.  I

23 don't want to delay this case.  We are ready to go forward.

24         THE COURT:  Do you want to respond very briefly?

25         MR. STEIMEL:  Yes, Your Honor.

1          First, I would like to note that the -- in the

2    original production back in August, defendant held back

3    documents until a protective order was signed and did not

4    return the signed protective order to us until Friday evening,

5    this past Friday evening, and then only handed over five pages

6    of documents and no relevant responses to any other discovery.

7          Secondly, we were having difficulty with experts

8    without having evidence, especially DNA evidence, so the

9    experts that we'd inquire -- that we'd spoken with wanted to

10   know that the cases were completely developed before committing

11   to be expert witnesses, and that substantially delayed us.

12         Third, defendant has been fighting our discovery

13   request since the beginning.  And DNA is -- is required for

14   damages.  As I mentioned before, the default judgment on

15   liability plays in defendant's hands by denying the plaintiff

16   the right to obtain defendant's DNA and compare it to the rape

17   kit samples that were taken by The Havens in London.

18         Thank you, Your Honor.

19         THE COURT:  All right.

20         Well, I find that Judge Anderson's order is not

21   clearly erroneous or contrary to law, and it should be

22   affirmed.  And in doing that, I see no reason that this case

23   should be delayed any further.  You're ready to go to trial.

24   And that resolves the issues of liability and should resolve

25   whatever controversies are out there in discovery.

1        How about February the 27th?

2        MS. TADROS:  We're available, Your Honor.

3        MR. STEIMEL:  Yes, Your Honor.

4        THE COURT:  All right.  February 27, with a jury.

5        MS. TADROS:  Thank you, Your Honor.

6        THE COURT:  All right.  Thank you.

7        MR. STEIMEL:  Thank you, Your Honor.

8        THE COURT:  Thank you.

9        All right.  That concludes our business for the

10  morning.  We'll adjourn until tomorrow morning at 10:00

11  o'clock.

12        MS. TADROS:  Thank you.

13        THE LAW CLERK:  All rise.

14        (PROCEEDINGS CONCLUDED AT 11:42 A.M.)

15                        -oOo-

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4           I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9           I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action in

11 which this proceeding was taken, and further that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14           Certified to by me this 20TH day of APRIL, 2023.

15

16

17

18                    __/s/_____

19                    JULIE A. GOODWIN, RPR
                      Official U.S. Court Reporter
20                    401 Courthouse Square
                      Eighth Floor
                      Alexandria, Virginia  22314
21

22

23

24

25

Julie A. Goodwin, CSR, RPR

## *** CIVIL MOTION MINUTES ***

Date: 12/15/2022                    Before the Honorable: **CLAUDE M. HILTON**

Time: 11:23 a.m. – 11:25 a.m. (00:02)          Case No.: 1:22-cv-00545-CMH-JFA
     11:28 a.m. – 11:43 a.m. (00:15)
     (00:17)

Official Court Reporter: Julie Egal

Courtroom Deputy: Tanya Randall

---

# JANE DOE

V.

# CENK SIDAR

---

Appearances of Counsel for:

[ X ]  Plaintiff:  Walter Steimel, Jr. Thomas Urban, II
[ X ]  Defendant:  Mariam Tadros

**Re:**   [ 71 ]   Plaintiff's Objection to Magistrate Judge Anderson's December 2, 2022, Order
         Denying Plaintiff's Request to Enlarge the Discovery Period
        **FINAL PRETRIAL CONFERENCE**

Argued and:

- COURT affirms Magistrate Judge Anderson's December 2, 2022 Order Dkt. [70].

- JURY TRIAL set for 02/27/2022 at 10:00 a.m.

[  ] Granted   [  ]  Denied          [  ]  Granted in part/Denied in part

[  ] Taken Under Advisement        [  ]  Continued to

[  ]  Report and Recommendation to Follow

[  ] Order to Follow

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

```
                           )
JANE DOE                   )
                           )
                           )
      Plaintiff,           )
                           )
v.                         )  Civil Action No. 1:22-cv-00545
                           )
                           )
CENK SIDAR,                )
                           )
                           )
      Defendant.           )
                           )
```

**ORDER**

THIS MATTER comes before the Court on Plaintiff's Objection to Magistrate Judge's Order Denying Plaintiff's Request to Enlarge the Discovery Period. Defendant filed an opposition to Plaintiff's Objection. Having reviewed the Magistrate Judge's Order and recommendation to enter a sanction of default judgement, it appears to the Court that the Order is neither clearly erroneous nor contrary to law, and the December 2, 2022 Magistrate Judge's Order is affirmed on the sound reasoning of the Court. It is hereby

ORDERED that default judgement is entered against Defendant as to liability and this case shall proceed as to damages.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December _16_ , 2022

2

JA782

FILED:  December 16, 2022

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-2087
(1:22-cv-00545-CMH-JFA)
_____

JANE DOE

        Plaintiff - Appellee

v.

CENK SIDAR

        Defendant - Appellant

_____

O R D E R
_____

Upon consideration of the stipulated motion to voluntarily dismiss, the court

dismisses this appeal, upon such terms as have been agreed to by the parties,

pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.

For the Court--By Direction

/s/ Patricia S. Connor, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**                  ) <br>     **A Domiciliary of the**     ) <br>     **Commonwealth of Virginia**   ) <br>                  ) <br>     **Plaintiff,**            ) <br>                  ) <br> **v.**                  ) <br>                  ) <br> **CENK SIDAR**           ) <br>                  ) <br>     **Defendant.**         ) | **Civil Action No. 1:22-cv-00545** |

**PLAINTIFF'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE ANDERSON'S
DECEMBER 12, 2022 ORDER DENYING
PLAINTIFF'S SECOND MOTION TO COMPEL**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Jane

Doe, by counsel ("Plaintiff"), respectfully objects to the December 12, 2022 order of Magistrate

Judge John F. Anderson (*ECF 80*) that allows Defendant Cenk Sidar ("Defendant" or "Sidar") to

continue to ignore a valid Order issued by Magistrate Judge Theresa Carroll Buchanan on

August 5, 2022 (*ECF 63*) to provide a buccal swab to determine whether Defendant's DNA

matches sperm DNA taken by London Police from Plaintiff's vaginal area.

The current matter arose after Magistrate Judge Anderson had issued an Order on

December 2, 2022 recommending that Defendant be sanctioned with a default judgment on

liability for failing to comply with Magistrate Judge Buchanan's August 5 Order requiring Sidar

to provide a Buccal swab sample of his DNA to Plaintiff. *ECF 70.*  Later that day (December 2,

2022), Plaintiff issued a valid Notice for Sidar to comply with Magistrate Judge Buchanan's

August 5 Order and present himself for the sample on December 7, 2022, prior to the expiration

of the discovery period on December 9.  Sidar once again failed to comply with the Order and

new Notice.  Plaintiff filed a Motion to Compel such compliance on December 8, 2022, also

prior to the end of the discovery period.

Magistrate Judge Anderson erroneously denied that Motion without argument on

December 12, 2022.  The magistrate judge erred when he ruled that "[g]iven the

recommendation that liability would not be an issue at trial and the trial would be limited to

plaintiff's alleged damages,[1] there was no further requirement that defendant provide the buccal

swab samples to plaintiff or that any additional discovery from defendant was needed since the

trial would be limited to plaintiff's damages, which information was already in her possession."

*ECF* 80 at 1-2.  The magistrate's order ignores the fact that the buccal swab is necessary for

damages and punitive damages, which are both being sought by Plaintiff.

## STANDARD OF REVIEW

Rule 72(a) sets forth the standard of review applicable to this objection:

When a pretrial matter not dispositive of a party's claim or defense is referred to a
magistrate judge to hear and decide, the magistrate judge must promptly conduct the
required proceedings and, when appropriate, issue a written order stating the decision. A
party may serve and file objections to the order within 14 days after being served with a
copy. A party may not assign as error a defect in the order not timely objected to. The
district judge in the case must consider timely objections and modify or set aside any part
of the order that is clearly erroneous or is contrary to law.

The December 12 Order regarding Plaintiff's Second Motion to Compel should be

vacated by the district judge because it is both clearly erroneous as to the facts and contrary to

law and this Court should require Defendant Sidar to provide a buccal swab to Plaintiff, as he

---

[1]     Nowhere in the December 2, 2022 Recommendation (*ECF* 80) or any other order did
Magistrate Judge Anderson vacate the August 5, 2022 Order that required Sidar to provide that
sample.  Therefore, the Order was still valid.  Discovery had not yet closed on December 7, 2022
when Sidar was noticed to present himself for the taking of such a sample.  Thus, the refusal to
comply with the Notice was in violation of the Order.  Judge Hilton adopted the December 2,
2022 Recommendation regarding the default judgment on December 16, 2022.  *ECF 93*.

should have done on December 7, 2022.  This Court has repeatedly held that "[f]or questions of law there is no practical difference between review under Rule 72(a)'s **contrary to law** standard and a *de novo* standard." *Bruce v. Hartford*, 21 F. Supp.3d 590, 594 (E.D. Va. 2014) (emphasis added) (quoted in *Blowers v. Lerner,* 2017 WL 10897300, *3 (E.D. Va. July 20, 2017); *Victoria Select Ins. Co. v. D. Ortiz Co., Inc.*, 2017 WL 5089457, *4 (E.D. Va. March 21, 2017); *Sectek Inc. v. Diamond*, 2016 WL 5897763, * 2 (E.D. Va. Oct. 6, 2016); *Certus Technologies, LLC v. S & N Locating Serv., LLC*, 107 F. Supp.3d 500, 504 (E.D. Va. 2015)); *see also Tait v. United States*, 763 F. Supp.2d 786, 791 (E.D. Va. 2011) ("[u]nlike the more deferential review of factual determinations, when a district court is reviewing a magistrate judge's interpretation of a law, the review is *de novo*").  The Fourth Circuit has further held:

> … the party entitled to *de novo* review must be permitted to raise before the court any argument as to that issue that it could have raised before the magistrate.  The district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate's … [order] has been made and the appellant's right to *de novo* review by the district court thereby established.

*United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992).  Accordingly, the legal issues presented by this objection are subject to *de novo* review, while any purely factual issues would be subject to a clearly erroneous standard.

## BACKGROUND

Defendant Cenk Sidar raped Plaintiff Jane Doe in the early morning of September 17, 2017, while she was sleeping in an Airbnb apartment in London, England.  While Plaintiff slept, Defendant pulled Plaintiff's pajama bottoms to the side and entered her vagina with his penis.[2] Plaintiff woke up, throwing Sidar off her, quickly dressed, and quickly ran out of the apartment.

---

[2] At no time did Plaintiff consent to any physical activity with Sidar. Plaintiff knew Defendant was a married man with two children and had no romantic interest in him. Plaintiff had no reason to suspect that Defendant would attack her in her sleep.

Plaintiff immediately reported the attack to London police and the same day went to a medical clinic specializing in sexual assault, The Havens. The Havens conducted a medical examination of Plaintiff and collected evidence of the rape. Male DNA was found inside Defendant in the high vaginal swab taken by The Havens. When the London Police contacted Defendant, he initially provided them with a DNA sample, which the London Police inadvertently destroyed. Contacted by the London Police to provide a replacement sample, Defendant refused, as he refuses to this day.

Since then, Defendant has repeatedly refused to provide a DNA sample during discovery in this case and a previous case in Fairfax County Circuit Court.  In the Fairfax court, Defendant twice failed to appear as and when ordered by a Court, causing Plaintiff to incur attorneys' and medical assistants' fees. Ultimately, Defendant convinced one judge to refuse to require such a test.  Having successfully stymied the Fairfax County Circuit Court, Defendant persisted in the same conduct before this Court. Magistrate Judge Buchanan ordered Defendant to appear for DNA testing. *ECF 40*.[3]  Judge Buchanan ordered DNA collection for Monday, August 29, 2022, with a clear instruction that Defendant produce himself for a DNA buccal swab collection or face sanctions, including a potential default judgment.  Defendant ignored the warning and defied Magistrate Judge Buchanan's Order.  Defendant never obtained a stay of Magistrate Judge Buchanan's Order, despite challenging the Order before this Court (*ECF 43*) and appealing the Order to the U.S. Court of Appeals for the Fourth Circuit.  *ECF 56.*

---

[3]    Plaintiff's Notice for taking the DNA sample specifically stated that the sample was not only needed to establish liability against Sidar, but that the "information will further be relevant to Plaintiff's claim for punitive damages." *Dkt 26.1* at 1.  Plaintiff's Motion to Compel the DNA Sample also specifically explained that "existence of a DNA match would constitute an important element for punitive damages."  *ECF 26* at 3 (¶ 13); *see also ECF 26* at 2 (¶ 4).

Plaintiff filed a Motion to Compel and for Sanctions based upon Defendant's failure to comply with the Court's Order to provide the DNA sample. *ECF 63*.  In the Memorandum in Support of that Motion, Plaintiff clearly identified that the sample was necessary for both liability and Plaintiff's demand for punitive damages. *ECF 64* at 10.  At the hearing on Plaintiff's Motion on December 2, 2022, Magistrate Judge Anderson explained that the obligation to comply with Magistrate Judge Buchanan's Order was not stayed by any attempts to appeal it and the obligation to comply with the Motion was on-going as the Order continued to be valid.  As a result, Magistrate Judge Anderson found that "defendant unjustifiably failed to comply with [Magistrate Judge Buchanan's] order and still has not complied with that order" (*ECF 70 docket summary*) and recommended that "the court enter a judgment of default against defendant as to liability and to proceed on damages alone." *ECF 70* at 2.  Nowhere in that recommendation or order did Magistrate Judge Anderson vacate Magistrate Judge Buchanan's Order requiring Defendant to submit a DNA sample to Plaintiff.  Although Magistrate Judge Anderson denied Plaintiff's motion to extend discovery, discovery did not close until December 9, 2022, a week after the hearing and Order.

As a result of Magistrate Judge Anderson's ruling that Magistrate Judge Buchanan's Order was still valid despite Defendant's appeal to the Fourth Circuit, later that day Plaintiff served a Notice on Defendant requiring Defendant to come to Plaintiff's counsel's office on December 7, 2022 (before the close of discovery) and provide a DNA sample to Plaintiff. *ECF 75.1*.  Although Defendant filed an Objection to the Notice, *ECF 75.2*, the Objection merely regurgitated arguments that had been rejected by Magistrate Judge Buchanan and this Court. *ECF 40, 55*.  Defendant's Counsel did not notify Plaintiff that Defendant would not be attending the sampling.  Plaintiff had her medical contractor ready at the office on December 7, 2022,

ready, willing, and able to take the DNA sample.  Once again, Defendant failed to show up for the sampling required by Magistrate Judge Buchanan's Order.

On December 8, 2022, Plaintiff filed her Second Motion to Compel and for Sanctions based upon Defendant's failure to attend the DNA sampling appointment noticed on December 2, 2022.  The matter was referred to Magistrate Judge Anderson, who denied the Motion without full briefing or a hearing.  *ECF 80.*  Specifically, Magistrate Judge Anderson found that "[g]iven the recommendation that liability would not be an issue at trial and the trial would be limited to plaintiff's alleged damages, there was no further requirement that defendant provide the buccal swab samples to plaintiff . . . ."  *ECF 80* at 2-3.  Due to this finding, Magistrate Judge Anderson ordered that "plaintiff's second motion for sanctions and to further compel compliance with Judge Buchanan's August 5, 2022 order requiring buccal swab samples . . . is denied."  *Id.* at 3.

## **ARGUMENT**

Magistrate Judge Anderson's Order denying Plaintiff's Motion to Compel Defendant to provide a DNA sample to Plaintiff contains factual findings that are clearly erroneous and the ruling itself is contrary to law.

First, Magistrate Judge Anderson incorrectly found that the DNA Sampling Order was limited to providing evidence establishing liability in the current action.  As was made clear in the original Notice, the Motion to Require a DNA Sample, the Motion to Compel Compliance with the DNA Order, and the Second Notice, the request for the DNA sample and the subsequent Order issued by Magistrate Judge Buchanan was based upon evidence from the DNA sample being used for both liability and punitive damages.  Moreover, the DNA sample is relevant to Plaintiff's claim for Intentional Infliction of Emotional Distress, *Dkt* 1 at Count III (¶¶ 60-67), as well as emotional damages asserted in her Assault claim, *Dkt* 1 at Count I (¶ 51) and Battery

claim (¶ 55).

Second, Magistrate Judge Anderson's Order was contrary to law because it was based upon this erroneous factual finding and failed to require Defendant to comply with a valid Order of this Court which had been issued within the time period set for discovery in this matter.

Last, and most important, the public interest would be substantially violated if this Order allowing Defendant to avoid providing a DNA sample to Plaintiff is allowed to stand.  For Defendant, who is trying to escape full justice, providing this DNA would conclusively prove his guilt and subject him to consequences beyond the U.S. legal system.  By allowing Defendant to avoid providing this DNA sample, this Court would be assisting Sidar in thumbing his nose at our justice system and escaping the ramifications of his actions. In fact, Defendant's prior counsel was admonished in the prior action in Fairfax County Circuit Court for attempting to use a proposed protective order to interfere with a criminal investigation by the London Metropolitan Police. On September 4, 2020, Judge Smith specifically noted "[n]ow, the problem I have with that is it seems to me you are asking the Court to suppress evidence in a possible criminal trial. I'm not sure I should do that." Exhibit A.  He thereafter denied Defendant's request for a protective order that would prevent Plaintiff from sharing DNA results with the London Metropolitan Police.

For these reasons, this Order must be reversed and this Court must compel Defendant to provide a DNA sample to Plaintiff for use in establishing her entitlement to emotional damages for all three claims and punitive damages in this action.

I.     **THE MAGISTRATE JUDGE'S FACTUAL DETERMINATION THAT THE DNA SAMPLE WAS TO BE USED SOLELY FOR LIABILITY IS CLEARLY ERRONEOUS BECAUSE IT IS ALSO NECESSARY TO ESTABLISH ENTITLEMENT TO EMOTIONAL AND PUNITIVE DAMAGES.**

The magistrate judge clearly erred when, in his Order of December 12, 2022, based his ruling on the factual assertion that the DNA sample was only needed to establish liability. Specifically, the finding that "[g]iven the recommendation that liability would not be an issue at trial and the trial would be limited to plaintiff's alleged damages, there was no further requirement that defendant provide the buccal swab samples to plaintiff . . . .", *ECF 80* at 2-3, was clearly erroneous.  Plaintiff clearly explained in the original Notice (*ECF 26.1* at 1), the Motion to Require a DNA Sample (*ECF 26* at 2 (¶ 4), 3 (¶ 13)), the Motion to Compel Compliance with the DNA Order (*ECF 64* at 9, 10), and the Second Notice (*ECF 75.1* at 2), that the request for the DNA sample was necessary for establishing entitlement to punitive damages, as well as to liability.  Moreover, the DNA sample is relevant to Plaintiff's claim for Intentional Infliction of Emotional Distress, *Dkt* 1 at Count III (¶¶ 60-67), as well as emotional damages asserted in her Assault claim, *Dkt* 1 at Count I (¶ 51) and Battery claim (¶ 55).

In order to establish punitive damages under Virginia law, as well as the law of the District of Columbia and Maryland, a claimant must establish that the Defendant engaged in actual malice or such willful and wanton recklessness to evince a conscious disregard for the rights of the claimant.  *Flippo v. CSC Associates III, LLC,*  262 Va. 48, 60, 547 S.E.2d 216, 223 (2001); *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988).  In the present case, a positive match of the DNA sample taken from Sidar to the sperm DNA taken by London Police from Plaintiff's vaginal area would establish that Sidar was not using a condom when he raped Plaintiff and thus risked exposing her to pregnancy and sexually transmitted diseases.[4]  Such

---

[4]      The fact that Plaintiff had to fear that she would become pregnant or contract a sexually transmitted disease is a significant part of her emotional damages, which is part of the damages for all three of the claims for which default judgment has been entered.  This DNA evidence and a positive match are admissible for these damages.

conduct demonstrates willful and wanton recklessness, and denying Plaintiff the ability to prove this element of her case interferes with her right to develop and present evidence on damages when there is no better evidence than comparison of Defendant's DNA to the male sperm DNA collected during the vaginal exam conducted in London.  Thus, the DNA buccal swab was still necessary even after a default judgment was entered against Sidar and the Magistrate Judge's factual finding that the DNA sample was not still needed for Plaintiff's case after liability was established through the default judgment (*ECF 80* at 2-3) was clearly erroneous.

## II. THE MAGISTRATE JUDGE'S REFUSAL TO COMPEL DEFENDANT TO PROVIDE A DNA SAMPLE TO PLAINTIFF IS CONTRARY TO LAW.

Magistrate Judge Buchanan's erroneous factual finding was the basis for his denial for any further compliance with Judge Buchanan's August 5, 2022 order.  *ECF 80* at 3.  At the time that Magistrate Judge Anderson refused to require Sidar to comply with Magistrate Judge Buchanan's order, the order was still a valid order and the DNA sample was still necessary for establishing Plaintiff's entitlement to emotional and punitive damages.  Moreover, the Motion was timely filed because the discovery period had not yet run when the notice for the DNA sample was issued, when compliance with the notice was scheduled, and when the Motion was filed. *PCS Phosphate Co. v. Norfolk S. Corp.*, 238 F.R.D. 555, 558 (E.D.N.C. 2006) (("Generally, absent a specific directive in the scheduling order, motions to compel discovery filed prior to the discovery deadline have been held timely."); *see Medley v. Federal Express Corp.*, 115 Fed.Appx. 606, 2004 WL 2368117 (4th Cir. 2004) (vacating and remanding order denying motion to compel discovery and for extension of discovery filed prior to end of discovery period when the district court ruled the requests "moot").  The discovery period did not end under the agreed Scheduling Order until December 9, 2022.  The notice was served on Sidar's counsel on December 2, 2022; compliance with the notice based upon Magistrate Judge

Buchanan's Order was scheduled for December 7, 2022; and the Motion to Compel compliance with the Notice and still valid Order was filed on December 8, 2022. A district court may require compliance with discovery obligations even after the discovery period has ended do long as the motion was filed before the discovery period was over. *PCS Phosphate*, 238 F.R.D. at 559.

### III. PUBLIC POLICY AND THE BALANCE OF EQUITIES SUPPORT THE REVERSAL OF THE MAGISTRATE JUDGE'S ORDER.

The public interest would be substantially violated if Magistrate Judge Anderson's Order allowing Defendant to avoid providing a DNA sample to Plaintiff is allowed to stand. Defendant is not concerned about a default judgment because he knows that he is guilty of raping Plaintiff and that the evidence is so overwhelming that there was no way that he was going to win on liability had the DNA sample been provided and shown that his DNA matches the sperm DNA being held by the London Police. Defendant has mocked the United States federal judicial system by ignoring a valid Court order issued by a United States Magistrate Judge and affirmed by this Court. Defendant never had any intention of complying with this Court's order, but always intended to either run out the clock by repeated appeals that were filed on the very last day permitted for appeal and, if necessary, blatantly disregarding the Order of this Court, even had it been fully adjudicated all the way to the U.S. Supreme Court. For Defendant, who is trying to escape full justice, providing this DNA would conclusively prove his guilt and subject him to consequences beyond the U.S. legal system. By allowing Defendant to avoid providing this DNA sample, this Court would be assisting Sidar in thumbing his nose at our justice system and escaping the ramifications of his actions.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court vacate the Order issued by Magistrate Judge Anderson (*ECF 80*) because it contained factual findings that were clearly erroneous, and its holding is contrary to law and require Defendant Cenk Sidar to provide a DNA buccal swab to Plaintiff which may be used to establish her entitlement to emotional and punitive damages.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of December, 2022, counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Thomas F. Urban II_____
Thomas F. Urban II

11
JA794

# In The Matter Of:

*JANE DOE v.*

*CENK SIDAR*

*HEARING*

*September 4, 2020*



9408 Grant Avenue, Suite 403
Manassas, Virginia 20110
(703) 331-0212
office@icrdepos.com
www.icrdepos.com

*Min-U-Script® with Word Index*

1

1  V I R G I N I A

2     IN THE CIRCUIT COURT OF FAIRFAX COUNTY

3  --------------------------X

4  JANE DOE,                    :

5     Plaintiff,               :

6  v.                           :    Case No. CL 2019-12642

7  CENK SIDAR,                  :

8     Defendant.               :

9  --------------------------X

10                              Fairfax, Virginia

11                              Remote via Webex

12                      Friday, September 4, 2020

13        The above action came on to be heard

14  before the Honorable Robert J. Smith, a Judge in and

15  for the Circuit Court of Fairfax County, 4110 Chain

16  Bridge Road, Fairfax, Virginia 22030, beginning at

17  12:34 p.m.

18

19

20

21

22

2

```
 1              A P P E A R A N C E S

 2

 3    For the Plaintiff:

 4

 5         THOMAS F. URBAN, ESQUIRE

 6         Fletcher, Heald & Hildreth

 7         1300 North 17th Street, 11th Floor

 8         Arlington, Virginia 22209

 9         (703) 812-0462

10         urban@fhhlaw.com

11

12         and

13

14         WALTER STEIMEL, ESQUIRE

15         S/C/L/G PLLC

16         1455 Pennsylvania Ave., N.W. Suite 400

17         Washington, D.C. 20004

18         202-271-9258

19         wes@sclgrp.com

20

21

22
```

3

```
 1        A P P E A R A N C E S   (Continued)

 2

 3    For the Defendant:

 4        ALEXANDROS K.   MITRAKAS, ESQUIRE

 5        Mitrakas and Company

 6        1001 19th Street North, Suite 1200

 7        Arlington, Virginia 22209

 8        (703) 888-5517

 9        amitrakas@mitrakasco.com

10

11        and

12

13        ANNA K. DVORCHIK, ESQUIRE

14        The Law Offices of Anna K. Dvorchik

15        3970 Chain Bridge Road

16        Fairfax, Virginia 22030

17        anna@advofirm.com

18        (571) 839-2301

19

20

21

22
```

4

```
1              P R O C E E D I N G S
2         (The Court Reporter was sworn by the
3    Court.)
4         THE COURT:  All right.  First off, let me
5    -- Mr. Mitrakas, can you hear me?  I don't see you,
6    but I see you're on.  Can you hear me?
7         All right.  So he's not arguing; is he?
8         MS. DVORCHIK:  No, he's not.  I am.
9         THE COURT:  Okay.  All right.  So I
10   apologize for the lateness of this.  And all the --
11   all indications are that I am responsible.  So don't
12   -- my Clerks did everything they could and I'm the
13   one who dropped the ball.
14        So with that in mind, let us deal with
15   what we have today.
16        MS. DVORCHIK:  Your Honor, I believe that
17   the plaintiff's motion is filed first, so I don't
18   know if you would like them to go first and then we
19   would respond, or how would you like to go?
20        THE COURT:  Which motion was -- which
21   motion was filed first?
22        MR. STEIMEL:  Our motion for contempt.
```

23

1    custody orders or those types of things, the

2    sanction isn't -- and child support is -- that

3    people do go to jail, but in child custody you do

4    see a lot of monetary, you know, you have to pay

5    attorney's fees, you have to do this, these are the

6    things that you have to do.

7         So I'm illustrating only that those

8    sanctions are available to the Court because

9    sanctions are supposed to be remedial.  But, Your

10   Honor, I absolutely -- I absolutely understand the

11   importance of Court orders.  And that is why we

12   filed the motion -- filed a motion for a protective

13   order in this case.

14        THE COURT:  Let's go on to the protective

15   order.  You want -- as I understand it, you said you

16   will comply if I -- if this protective order is

17   signed?

18        MS. DVORCHIK:  Yes.

19        THE COURT:  Now, the problem I have with

20   that is it seems to me you are asking the Court to

21   suppress evidence in a possible criminal trial.  I'm

22   not sure I should do that.

24

1          MS. DVORCHIK:  So, Your Honor, the -- in

2     our argument in the document is that this is not a

3     civil -- civil case where the plaintiff has -- it's

4     not even an agent of the plaintiff that has custody

5     of the DNA here.  It is a police department in

6     another country that has custody of his profile and

7     her profile -- or had his -- had a DNA sample from

8     him.  They said they lost it.  They have an unknown

9     male profile that was generated from the kit there.

10    And those items are in the UK.

11          And my understanding from counsel, from

12    their motion that was -- opposition motion that they

13    wrote regarding your order which was from the motion

14    to reconsider they stated Mr. Mitrakas and Mr.

15    Steimel specifically discussed the issue in person

16    June 8th, 2020.  Mr. Mitrakas said the defendant if

17    prosecuted could not pay damages, plaintiff

18    concurred.  So counsel must communicate with the

19    London police because the rape kit taken there is in

20    the custody of The Haven, coordination of testing is

21    mandatory, but plaintiff has no interest in

22    prosecution of defendant.  That is the purview of

25

1   others.

2          So them saying they don't want it

3   prosecuted because they would like him to pay money

4   damages, but the need to coordinate with London to

5   take his DNA here to coordinate it with the rape

6   kit.  That's what they said it in their motion and I

7   take them at their word.

8          So they've not suggested in any way that

9   London would agree to send them the rape kit here.

10  But what -- but Mr. Sidar has rights in that

11  country.  He doesn't have to -- he cannot be

12  compelled to give his DNA there for prosecution.

13  And we have no problem with them comparing the

14  samples that have been received here in the United

15  States with the sample that London has here in the

16  United States so long as those tests and those

17  reports aren't sent to United Kingdom and they're

18  just used for this -- for this here, for the civil

19  trial.

20          THE COURT:  Mr. Steimel?

21          MR. STEIMEL:  Your Honor, we cannot compel

22  the London police or The Havens to send us their DNA

26

1    sample.  In fact, the conversations I've had with

2    them, they will not release those samples back to

3    us.

4         In order to do a proper comparison we have

5    to send our sample to London.  Whether not they want

6    to prosecute Mr. Sidar is not our issue.  Our issue

7    is the civil case here and -- but we need to be able

8    to prove that the DNA matches.  And the only way to

9    do that is to send the kit -- we can run a test

10   here, but we need to send a sample to them so they

11   can verify whether or not they match.  And I just --

12   we just don't have another choice.

13        This case is very much like the Ashby case

14   that I cited.  In Ashley -- and we have to remember

15   in this case Mr. Sidar has already voluntarily given

16   a DNA sample to the London police, which was then

17   lost or misplaced.  We're not sure what happened to

18   that.

19        But he has already kind of waived any

20   right he has to privacy or to not give up the

21   sample.  He has waived his right to privacy under

22   Carpenter v. United States and Smith v. Maryland,

27

1    and U.S. v. Miller where once someone has given up

2    their private information they can't say, oh, no,

3    no, we want to keep that private.  They've waived

4    their privacy.

5        But, more importantly, under the Ashby

6    case, which is almost the exact same case, a doctor

7    had given his DNA to Ancestry.com and then later he

8    wanted to enter a protective where the same DNA

9    could not be used.

10       Well, you can't -- the Court observed

11   properly that you can't do that because the

12   defendant could challenge the chain of custody, the

13   validity of comparisons.  And once the doctor had

14   already voluntarily given his DNA once for

15   comparison, he couldn't come back to try to block it

16   or otherwise qualify it.

17       The defendant's request is, you know, he

18   may be concerned about what's happening in London.

19   That's not our problem.  His request as written

20   actually prevents us from -- from moving forward

21   with the case.  And I think you observed correctly

22   if you were to enter an order saying, oh, we can't

28

1    share this DNA with London because we don't want the

2    London police to know it, it looks like that we're

3    helping to suppress evidence in a criminal trial in

4    another country.  And I think they probably wouldn't

5    look too kindly on that.  And so I think there's

6    some risk there.

7           THE COURT:  Ms. -- I can say, Ms.

8    Dvorchik, your solution is attractive in the sense

9    that it gets us over this impasse.  But I really

10   have trouble as a Court of record saying criminal

11   evidence can't be passed on to the law enforcement

12   investigating agency, the investigating law

13   enforcement agency.  I just don't think I have that

14   authority.  And it doesn't -- it doesn't pass the --

15   it doesn't pass the appearance.  The optics aren't

16   good.

17          MS. DVORCHIK:  Your Honor, if I could

18   address those things.  We obviously -- if this was

19   in the United States, everything was in United

20   States, it would be a very different case.  The

21   cases that Mr. Steimel talked about would be much

22   more applicable.  He actually has privacy rights in

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**              ) <br>     **A Domiciliary of the**    ) <br>     **Commonwealth of Virginia** ) <br>                         ) <br>     **Plaintiff,**          ) <br>                         ) <br> **v.**                        ) <br>                         ) <br> **CENK SIDAR**        ) <br>                         ) <br>     **Defendant.**       ) | **Civil Action No. 1:22-cv-00545** |

**ORDER VACATING**
**MAGISTRATE JUDGE ANDERSON'S DECEMBER 12, 2022 ORDER DENYING**
**PLAINTIFF'S SECOND MOTION TO COMPEL**

Upon consideration of Plaintiff's Rule 72(a) Objection to Magistrate Judge Anderson's Order

(*ECF* 80) Denying Plaintiff's Second Motion for Sanctions and to Further Compel Compliance

with Magistrate Judge Theresa Carroll Buchanan's August 5, 2022, Order ("DNA Order") and

Memorandum ("Objection"), the briefs filed by the Parties, and any argument regarding the

Objection, the Objection is SUSTAINED and Magistrate Judge Anderson's Order is VACATED

on the grounds that the Order contained factual findings that were clearly erroneous, and its

holding is contrary to law.

      The Court FURTHER ORDERS Defendant Cenk Sidar to provide a DNA buccal swab to

Plaintiff which may be used to establish her entitlement to punitive damages within seven (7)

days of the entry of this Order.  Plaintiff shall file a schedule of attorneys' fees within seven (7)

days of this Order.

_____
Judge,  United States District Court
Eastern District of Virginia

cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

*Counsel for Plaintiff Jane Doe*

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant Cenk Sidar*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

_____

**<u>DEFENDANT'S RENEWED MOTION TO REMOVE PSEUDONYM DESIGNATION</u>**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Renewed

Motion to Remove Pseudonym Designation included in Plaintiff Jane Doe's ("Plaintiff")

Complaint.

For the reasons set forth in the accompanying memorandum in support, Defendant Cenk

Sidar requests that the Court grant his Renewed Motion to Remove Pseudonym Designation,

enter an order requiring that references to Plaintiff Jane Doe in all filings and proceedings in this

matter shall be her true name, that her name is not to be redacted in all filings, that her true name

be used at trial, and grant such other and further relief in favor of Defendant as this Court deems

just and proper.

CENK SIDAR

By Counsel:

Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2022, a copy of the foregoing **DEFENDANT'S MOTION TO REMOVE PSEUDONYM DESIGNATION** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

Mariam W. Tadros

JA809

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

_____

**DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO**
**<u>REMOVE PSEUDONYM DESIGNATION</u>**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Memorandum in Support of his Renewed Motion to Remove the Pseudonym Designation in Plaintiff Jane Doe's ("Plaintiff") Complaint, as well as enter an order requiring that refences to Plaintiff in all filings and proceedings in this matter shall be her true name, that her name is not to be redacted, and that her true name be used at trial.

## I.   **BACKGROUND.**

On May 12, 2022, Plaintiff filed a three-count complaint in this Court, asserting claims against Defendant for Assault & Punitive Damages (Count I), Battery & Punitive Damages (Count II), and Intentional Infliction of Emotional Distress & Punitive Damages (Count III). On May 12, 2022, Plaintiff also filed a Motion to File Complaint and Proceed Under a Pseudonym (ECF No. 4). On May 13, 2022, a Notice of Correction was added to the docket noting that the filing user of ECF No. 4 was notified to file a Notice of Hearing Date or a Notice of Waiver of Oral Argument. On May 13, 2022, Plaintiff filed a waiver of oral argument (ECF No. 5) on her Motion to File Complaint and Proceed Under a Pseudonym, which the Court granted the same day. Defendant was not given the typical fourteen days to file an opposition to Plaintiff's motion. *See* E.D. Va. Local Civ. R. 7(F)(1) ("[T]he opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service."). In granting the Motion, the Court held that "there appearing to be good cause for granting the relief requested in the Motion . . . all references to Plaintiff in all filings and proceedings in this cause shall be to 'Jane Doe' and that Plaintiff's identity shall be redacted in all filings." (ECF No. 7).

Asserting that there was no good cause for Plaintiff to be granted the use of a pseudonym designation, on June 19, 2022, Defendant filed his Motion ("Motion") to Remove Pseudonym Designation (ECF No. 19), as well as his memorandum in support (ECF No. 20). Plaintiff filed

an opposition ("Opposition") to Defendant's Motion on July 11, 2022 (ECF No. 25), to which

Defendant filed a reply ("Reply") on July 18, 2022 (ECF No. 28). On July 29, 2022, the Court

entered an order denying Defendant's Motion and noting that it "may be renewed at time of

trial." (ECF No. 35). As discovery in this matter closed on December 9, 2022, as provided for in

the parties' Joint Discovery Plan (ECF No. 29 at 1), and a jury trial is set for February 27, 2023

(ECF No. 89), Defendant now files his Renewed Motion to Remove Pseudonym Designation

("Renewed Motion").

## II.    ARGUMENT.

### A.    Legal Standard.

Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint must

name all the parties." Fed. R. Civ. P. 10(a); *see also Doe v. Merten*, 219 F.R.D. 387, 390 (E.D.

Va. 2004) (noting that Federal Rule of Civil Procedure 10(a) "embodies the presumption . . . of

openness in judicial proceedings," which dates back to the English common law and is supported

by the First Amendment's protections of freedom of speech and press). As this Court has noted,

"[t]o allow a party to proceed under a pseudonym is a rare dispensation, as pseudonymous

litigation 'undermines the public's right of access to judicial proceedings.'" *Doe v. The Rector &*

*Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592 (E.D. Va. 2016) (quoting *Doe v.*

*Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)); *see also Richmond Newspapers, Inc. v.*

*Virginia*, 448 U.S. 555, 576 (1980) ("First Amendment guarantees of speech and press, standing

alone, prohibit government from summarily closing courtroom doors which had long been open

to the public at the time that Amendment was adopted."). "Indeed, the right of public access to

judicial proceedings has deep constitutional and common law roots." *Doe v. The Rector &*

*Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592 (E.D. Va. 2016); *see also Doe v.*

*Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to the public.").

"[U]se of a pseudonym is, in effect, a partial sealing of a lawsuit that removes from public access certain aspects of the judgment proceeding." *The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 592. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). "The public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 273 (internal citation omitted). "In short, '[t]he people have a right to know who is using their courts.'" *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 807 (E.D. Va. 2012) (quoting *Doe v. Blue Cross & Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).

Therefore, "a district court has an independent obligation to ensure that extraordinary circumstances support a request [to litigate under a pseudonym] by balancing the party's stated interest in anonymity against the public's interest in openness and prejudice that anonymity would pose to the opposing party." *Public Citizen*, 749 F.3d at 274.

The Fourth Circuit has listed several factors that should be considered when determining whether a request for anonymity should be granted by a court:

> [1] [w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly-personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental

3

or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). None of these five factors weighs in favor of Plaintiff being permitted to proceed under a pseudonym.

      **B.**      **Plaintiff is Not Permitted to Proceed Under a Pseudonym Merely to Avoid Criticism and Preserve Her Privacy When She Made the Decision to Initiate This Litigation.**

First, the Court considers, "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature[.]" *Jacobson*, 6 F.3d at 238. The Fourth Circuit has "explained that use of a pseudonym 'merely to avoid the annoyance and criticism that may attend . . . litigation . . .' is impermissible." *Public Citizen*, 749 F.3d at 265 (quoting *Jacobson*, F.3d at 238).

In regard to the first factor, Plaintiff alleged that her Complaint reveals "the sort of humiliating details that would compel the Court to maintain anonymity" and that she is "the alleged victim of a grievous and outrageous physical attack and rape, which would cause her additional trauma if her name were revealed publicly." ECF No. 4 ¶ 2. She asserted that "there is no public interest in knowing the Plaintiff's identity" and that she "seeks anonymity to protect her privacy from further assault and protect her privacy regarding the details of the assault that will be part of this case." ECF No. 4 ¶¶ 3-4. These bald statements fall far short of the types of cases where plaintiffs have been permitted to proceed under pseudonyms in litigation.

In *James*, which was the case where the five-factor test was first delineated, a patient and her husband requested to proceed anonymously in a medical malpractice and fraud action against their physician, Dr. Jacobson. *James v. Jacobson*, 6 F.3d 233, 234 (4th Cir. 1993). The plaintiffs engaged the services of Dr. Jacobson, a medical doctor who specialized in the diagnosis and

treatment of infertility, to provide artificial insemination of Mary James with the sperm of John

James. *Id.* at 235. Dr. Jacobson performed several artificial insemination procedures,

representing to the Jameses that the semen used was that of Mr. James; Mary James became

pregnant and had two children. *Id.* Approximately a decade later, the Jameses, through media

reports of criminal charges brought against Jacobson, learned that Jacobson might be the

biological father of the James children, as opposed to John. *Id.* The James parents testified, under

pseudonyms, at Jacobson's criminal trial, during which he was convicted of charges involving

"the fraudulent use of his own sperm rather than that of promised donors in impregnating

patients." *Id.* The Jameses were "[c]oncerned about the effect upon the children if they should

learn that John James was not their biological father," so they "sought professional advice." *Id.*

As a result of that advice, the Jameses revealed to their children that due to a "mix-up" in the

insemination, John James was not their biological father, but did not reveal that Jacobson almost

certainly was. *Id.* In early 1992, the James instituted the malpractice and fraud action against

Jacobson and, before filing their complaint, obtained an *ex parte* protective order permitting

them to use the pseudonyms "John James" and "Mary James." *Id.* After this order was initially

granted, the court later ruled that the Jameses could not use the pseudonyms at trial, which

resulted in them appealing the order to the Fourth Circuit. *Id.* at 236.

On appeal, the Fourth Circuit held that the district court had abused its discretion in not

permitting the Jameses to proceed anonymously because, in part, of the "risk of harm to the

children from revelation of the full circumstances of their birth." *Id.* at 241. The Court noted that

this was "revealed in affidavits of a consulting psychiatrist and a consulting psychologist filed by

the Jameses in support of their motion." *Id.* The affidavits made "the point that the specific risk

of harm to the children that should be avoided is narrowly only the risk of sudden, unplanned

revelation *at this particular time in their lives* while they are in particularly vulnerable pre-adolescence and soon after the revelation that their conception was by artificial insemination and that John James was not, as they had supposed, their biological father." *Id.* In making this ruling, the Court noted the privacy interests of the innocent non-parties, the children, which was supported by experts who submitted affidavits regarding the potential harm to the children if privacy was not maintained. Plaintiff in the present matter has made no such showing.

In *Doe v. Hallock*, an action brought pursuant to Title VII, "the plaintiff . . . sought to proceed under a pseudonym, 'Jane Doe,' in an effort to retain her anonymity." 119 F.R.D. 640, 641 (S.D. Miss. 1987).[1] The plaintiff, who also asserted state law claims for assault and battery, as well as intentional infliction of emotional distress, alleged that her former employers "sexually harassed her throughout her employment by treating her in a derogatory and humiliating manner solely because of her gender, that she was denied a promotion which ultimately went to a male employee because she refused to succumb to sexual advances by defendant Hallock, and that she was involuntarily terminated because of her gender." *Id.* at 641-42. The court noted that "plaintiff seeks to avoid disclosing her true name in order to protect herself against embarrassment and unwanted invasion of her personal privacy since the matters contained in her complaint, she charges, are private matters of an intimate personal nature." *Id.* at 643. The court, "while not unsympathetic with plaintiff's pleas for privacy, [wa]s not persuaded that the need for anonymity is so compelling as to permit nondisclosure." *Id.* The court noted that "[t]he nature of the claims charged by plaintiff in the case at bar does not involve any admission by plaintiff that she has violated the law or that she desires to engage in illegal conduct, nor does she seek to

---

[1] *Doe v. Hallock* is cited favorably by the United States District Court for the Eastern District of Virginia in both *James v. Jacobson*, 6 F.3d 233, 239 (E.D. Va. 1993) and *JL v. Polson*, 2017 WL 11500247, at *1 (E.D. Va. 2017). It is also cited in *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016), a United States District Court for the Western District of Virginia case that Plaintiff relied upon in her Motion. *See* ECF No. 4 ¶ 7.

challenge the validity of any governmental activity" and that "[r]ather she alleges improper conduct toward her by *private* individuals." *Id.* at 643-44.

Similarly, Plaintiff alleges that she seeks to keep private "humiliating details" and that she "seeks anonymity to protect her privacy." ECF No. 4 ¶¶ 2-4. Similarly to *Hallock*, this is insufficient. Regardless of whether these are private matters of an intimate personal nature, Plaintiff has not made any admissions that she violated the law, does not seek to challenge the validity of government activity, and is alleging improper conduct against her by a private individual.

In *JL v. Polson*, the plaintiff brought a complaint alleging "that a TSA officer struck him in the groin during a security pat-down at Dulles International Airport." *JL v. Polson*, 2017 WL 11500247, at *1 (E.D. Va. Jan. 1, 2017). The Court acknowledged that "[w]hile this incident was perhaps embarrassing to Plaintiff, it does not raise privacy concerns sufficient to warrant pseudonymous litigation." *Id.* Although the conduct underlying the suit could be characterized as "sexual battery," this did not entitle the plaintiff to proceed anonymously. *Id.* at *1. Similarly, Plaintiff's allegations do not raise privacy concerns sufficient to warrant pseudonymous litigation.

In Plaintiff's Opposition, she cited to a Seventh Circuit Court case for the proposition "that rape victims are entitled to anonymity." ECF No. 25 at 6 (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)). However, the Seventh Circuit which is not binding precedent in this Circuit in any manner, stated that "fictious names *are allowed* when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (emphasis added). The court also noted that "[t]he use of fictitious names is

7

disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Id.* at 872. Clearly such use is permissive, not a blanket entitlement.

The next case that Plaintiff heavily relied upon in her Opposition is from the United States District Court for the Eastern District of New York in which the plaintiff brought claims that he was sexually abused by a rabbi at a Jewish school when he was a child. *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 194 (E.D.N.Y. 2006). The plaintiff alleged that Rabbi Kolko sexually abused him while he was a minor student at Yeshiva, where Kolko was employed. *Id.* at 194. The plaintiff sought to procced anonymously in the litigation. In support, the plaintiff stated that he had been diagnosed with several psychiatric disorders, including post traumatic stress disorder, and that he would experience psychological harm if his identity was revealed in this case, "a claim supported by his treating psychiatrist," who submitted a declaration in support of the plaintiff's motion. *Id.* at 194-95. In *Kolko*, the court also noted that there were two other plaintiffs who publicly disclosed their identities, so this balanced out the fact that the rabbi's reputation was at stake and better gave him "a public forum to defend the charges of abuse." *Id.* at 196; *see also id.* at 198 ("[S]ince there are two other plaintiffs in this Court alleging similar conduct who will be proceeding under their real names, defendants will have an unfettered opportunity to present their defenses and to challenge the credibility of their accusers."). This is not similar to the present case.

Citing to the United States Supreme Court opinion *Coker v. Georgia*, Plaintiff asserted in her Opposition that "the U.S. Supreme Court has recognized the seriousness of rape." ECF No. 25 at 6. Defendant does not disagree. In fact, in *Coker*, the Supreme Court noted that it did "not discount the seriousness of rape as a crime" and that "[i]t is highly reprehensible, both in a moral

8

sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). This speaks to how the public would perceive an accused rapist, not a rape victim.

Plaintiff also attempted to rely upon the Seventh Circuit case of *Doe v. City of Chicago*. In *City of Chicago*, the plaintiff brought suit against a Chicago police officer, including claims for sexual harassment. 360 F.3d 667, 668 (7th Cir. 2004). The matter was on appeal related to the district court's grant of summary judgment, but the court noted that: "[a]s an aside, we express our concern about the plaintiff's litigating under a pseudonym." *Id.* In raising the issue *sua sponte*, the court continued that plaintiff:

> merely filed the complaint anonymously, there was no objection, and the judge conducted no inquiry into the propriety of anonymity. The judge's failure to make an independent determination of the appropriateness of the plaintiff's concealing her name was error because, as we have explained, "the use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts."

*Id.* at 669-70 (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (D.R.I. Dec. 28, 1993)). The court remanded the matter back to the district court to determine whether the plaintiff could anonymously litigate the matter, even though such designation was not being challenged by the defendant. *Id.* at 674. It is unclear why Plaintiff thinks that this opinion supports her Opposition.

Plaintiff also cited to the Virginia statute concerning crime victim and witness rights for the proposition that "Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution." ECF No. 25 at 6-7.

Relying on this statute, Plaintiff also asserts that "[t]he strong public policy to protect rape victims hews strongly in favor of Plaintiff retaining anonymity." ECF No. 25 at 7.

This statute, which, importantly, is within the *criminal* procedure title of the Virginia Code, says that victims and witnesses *to any crime* should be afforded certain rights, including that "their privacy is protected to the extent permissible under law." Va. Code § 19.2-11.01(A). This statute applies to *any* crime victim or witness and does not expound any policy to specifically protect rape victims. Regardless, again, this does not confer any *right* upon Plaintiff to proceed anonymously and any right to protection would be limited to the extent permissible under law, including under the *James* factors. *See also Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) ("[T]he criminal statutes cited by plaintiff apply to situations where the government chooses to prosecute a case, and offers anonymity to a victim who does not have a choice in or control over the prosecution. In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to procced on the public record. The Court is cognizant of the defendants' concerns, and finds that it would be fundamentally unfair to allow plaintiff to make sure serious allegations against them without standing, as they must, in a public forum.").

###  C.    Plaintiff Does Not Establish That Revealing Her Identity Would Pose Harm to Her.

Second, the Court considers "whether information poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties[.]" *Jacobson* 6 F.3d at 238. Regarding the second factor, Plaintiff alleges that she "works in the defense industry and attends military and defense conferences worldwide" and that "[i]dentifying her as a victim of sexual assault and battery would subject her to ridicule and risk, especially when working in certain foreign venues, and undermine her credibility furthering the damage she

suffered from Defendant's initial brutal sexual assault." ECF No. 4 ¶ 5. She alleges that "[s]he does not seek to protect her anonymity to avoid criticism or embarrassment, she does so to protect her business reputation and insulate her from retaliation or harm from other members of the industry," leading her to conclude that "these facts overwhelmingly meet the second *James* factor." ECF No. 4 ¶ 5. These underwhelming facts do *not* meet the second *James* factor. *See Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("An unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access. The district court erred by concluding otherwise.").

> Plaintiff's Opposition also asserted:

> > Plaintiff is also concerned for her personal safety if her identity is revealed. She currently works in government and defense sectors worldwide, with many of those projects based in the Middle East. As is demonstrated below, female rape victims are harassed and subject to severe legal and other sanctions when identified in certain Middle Eastern countries. Revealing her identity will subject her to great risk of personal harm and will serve no purpose other than to cause her additional emotional harm from having to discuss this matter with family and friends and physical harm of reprisals in the Middle East.

ECF No. 25 at 3. She further asserts that she "works in governmental and military contracting worldwide, including in the Middle East" and that "[i]t is a well-documented fact that women who have been raped are subjected to ridicule, abuse, arrest, and prosecution in the Middle East." ECF No. 25 at 8.

In support of this proposition, Plaintiff cites to a January 2019 *Frontiers in Psychology* article, specifically quoting the language: "Victims of sexual assault in many Middle Eastern communities are punished even outcast by their families, or must marry their rapists in order to restore honor to their families." ECF No. 25 at 8 (quoting ECF No. 21-1 at 15). However, she does not allege that she lives in the Middle East or that she has a Middle Eastern family. *See,*

*e.g.,* ECF No. 1 ¶ 6 ("Plaintiff is a natural person and a domiciliary of the Commonwealth of Virginia."). Furthermore, the *Frontiers in Psychology* article generally is not focused on sexual assault in Middle Eastern countries. Instead:

> This paper provides a comprehensive review of the research literature on victim blame in acquaintance rape cases, highlighting inconsistencies and drawing particular attention to area of research in need of further exploration. Specifically, we review the commonly studied individual (perceiver) facts that influence victim blaming, as well as common situational (target) factors included or manipulated within sexual assault scenarios. Our review reveals many inconsistent findings and interactions between perceiver and scenario factors. In an effort to make sense of these complex interactions and inconsistent findings, we suggest a need for more transparency in describing the scenarios used in research on victim blaming in sexual assault cases and greater empirical attention to sociocultural factors that may influence blaming tendencies.

ECF No. 24-1 at 1. Instead Plaintiff cites to the single sentence in the article that refers to sexual assault in Middle Eastern communities, which is a one-sentence summary of a 1998 article, in the background portion of the article on "Rape Culture." Plaintiff did not even take the time to cite to, or probably even review, the article that actually discussed this topic.

Plaintiff also cites to an *Asia Times Online* article, quoting the portion that reads: "in some countries such as the United Arab Emirates, rapists can face the death penalty, but sex outside marriage, or *zena*, is also a serious crime, and women who have reported sexual assaults have then been arrested themselves." ECF No. 25 at 8 (quoting ECF No. 24-2). This article is referring to people who report their sexual assault to Middle Eastern authorities after the sexual assault happens in the Middle East. Plaintiff did not report any sexual assaults in the Middle East or to any Middle Eastern authorities. Rather, she reported to London authorities that she was allegedly sexually assaulted in London and then brought claims in the United States.

Regardless of the inapplicability of these articles, they are an improper attempt to admit expert testimony as hearsay and lack any foundation. "Under Virginia law, issues 'beyond the realm of common knowledge and experience of a lay jury' generally require expert testimony" and "[t]he expert testimony rule applies in diverse settings." *Benedict v. Hankook Tire Co. Ltd.*, 286 F. Supp. 3d 785, 791 (E.D. Va. 2018) (quoting *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994)). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The evidence that Plaintiff is attempting to introduce—that victims of sexual assault in the Middle East are subject to assault and arrest in the Middle East—is beyond the realm of common knowledge and would require expert testimony. However, the articles she attempts to introduce are hearsay that, *inter alia*, lack any sort of foundation. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Plaintiff is attempting to rely on the articles, written by authors who are not submitting affidavits and who presumably do not even know who Plaintiff is, for the truth that women in the Middle East who are sexually assaulted can be arrested themselves. Somehow, she also makes the leap that women who are sexually assaulted in London and pursuing civil claims against the purported assailant in the United States will also be subject to arrest in the Middle East if they happen to travel there. This is quite a leap.

Plaintiff concluded that she "is rightfully afraid of the consequences if the fact that she was raped becomes publicized, especially in countries where she works and visits regularly," and that "[i]n light of her own personal experiences and well documented research and reporting, this

fear is fully justified." ECF No. 25 at 8. The scintilla of support that Plaintiff cobbled together

after a quick internet search is a far cry from "well documented research and reporting."

> **D.** **Both the Third and Fourth Factors Weigh Against Plaintiff, as She is Not a Minor and Defendant is a Private Party.**

Plaintiff alleges that the "third and fourth factors" of the *James* test are "inapplicable."

ECF No. 4 ¶ 6. This is inaccurate and misleading – both factors *are* clearly applicable, but just

do not weigh in Plaintiff's favor. The fact that they favor Defendant does not make them

inapplicable.

As for the third factor, the Court considers "the ages of the persons whose privacy

interests are sought to be protected[.]" *Jacobson*, 6 F.3d at 238. "Courts are more willing to

allow parties to proceed anonymously in order to protect the privacy rights of children."

*Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012) (quoting *Doe v.*

*N.C. Cent. Univ.*, 1999 WL 1939248, at *4 (M.D.N.C. April 15, 1999)).

Plaintiff states that she was thirty-six-years old at the time of the alleged attack, meaning

that she is now at least forty years old. ECF No. 1 ¶ 14. This makes her far from a child. Plaintiff

is not a child who is entitled to special protection. *See, e.g., Candidate No. 452207 v. CFA Inst.*,

42 F. Supp. 3d 804, 809 (E.D. Va. 2012) (denying the plaintiff's request to proceed under a

pseudonym and noting "Plaintiff does not plead that he is an age that would favor allowing him

to proceed without disclosing his legal name").

Fourth, the Court considers "whether the action is against a governmental or private

party[.]" *Jacobson*, 6 F.3d at 238. This is because "[c]ourts are more likely to grant a plaintiff

permission to anonymously bring suit against a governmental entity than a private entity because

'an action against a private party can result in damage to the defendant's reputation as well as

economic harm' in ways that do not raise similar concerns in civil actions against the

<div align="center">14</div>

government." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012)

(quoting *Doe v. Merten*, 219 F.R.D. 387, (E.D. Va. 2004)).

Plaintiff asserts that in *Doe v. Virginia Polytechnic Institute & State University*, "the

Court determined that the third *James* factor is crucial when a party is underage but otherwise

neutral when they are not." ECF No. 25 at 9. However, this is certainly not what the Western

District of Virginia Court held. This is another case in which the plaintiff who sought to proceed

anonymously was the *alleged sexual assailant. See Doe v. Va. Polytechnic Inst. & State Univ.*,

2022 WL 972629, at *1 (W.D. Va. March 30, 2022). Plaintiff was a student at the university and

a female accused him of sexual assault. *Id.* A student conduct hearing was held and the plaintiff

was dismissed from the university. *Id.* He brought claims against the university, as well as some

of the people involved in the disciplinary process, for violations of his procedural due process

rights. *Id.* Regarding the third factor, the court noted that "the age of the female student who

made the accusation against Doe is unknown" and that "identifying Doe increases the chances

that the female student also will be identified and if she was a minor or very young adult when

she filed her complaint against Doe, identifying him could bring unwanted attention to her." *Id.*

at 3. Therefore, "[o]n balance, the court finds Doe's age to be a neutral factor in deciding

whether he should proceed under a pseudonym." *Id.* It is undisputed that both Plaintiff and

Defendant in the present matter are adults so this case weighs against Plaintiff proceeding under

a pseudonym.

In *Cabrera*, a case heavily relied upon by Plaintiff in her Opposition, the court noted that

"[w]here victims are not minors, courts are generally less inclined to let the alleged victim

proceed in litigation under a pseudonym" and that "[h]ere, the plaintiff was not a minor at the

time of the incident . . . so *this factor weighs against allowing the plaintiff to proceed*

*anonymously.*" *Doe v. Cabrera*, 307 F.R.D. 1, 7-8 (D.D.C. 2014) (emphasis added); *see also*

*W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("Plaintiff's

age tips in favor against anonymity; while the Complaint and instant Motion are silent as to the

issue, it appears he is an adult who had been employed since at least 2013."); *Doe v. De Amigos*,

2012 WL 13047579, at *2 (D.D.C. April 30, 2012) ("Plaintiff was eighteen at the time of the

alleged sexual assault and at least eighteen at the time she filed the complaint in this action, so

she was an adult under District of Columbia law. This weighs against anonymity.") (internal

citation omitted).

In regard to the fourth factor, Plaintiff admits that "[t]his action is between private

parties, and not against a government or public entity." ECF No. 25 at 9. This is where the

analysis should end. However, for some reason, Plaintiff thinks that "[t]his factor would only

weigh against Plaintiff if there was any risk of harm to the Defendant's reputation that would

offset Plaintiff's need for anonymity." ECF No. 25 at 9. Relying again on *Virginia Polytechnic*

*Institute & State University*, Plaintiff argues that this factor is "neutral in this case." ECF No. 25

at 9. The *Virginia Polytechnic Institute* court did find that the fourth factor "weighs neither in

favor nor against allowing Doe to proceed anonymously," but that was because "although Doe

names individual defendants, he is suing them only in their official capacities." *Doe v. Va.*

*Polytechnic Inst. & State Univ.,* 2022 WL 972629, at *3 (W.D. Va. March 30, 2022). This

somehow led Plaintiff to conclude that "[l]ifting the veil of anonymity only harms Plaintiff,

extends and amplifies the emotional toll this has taken on her, adds an additional layer of

financial burden in responding to Defendant's motion at this late stage in their litigation history

and risks exposing her to new physical, mental and financial harm." ECF No. 25 at 9.

Also in relation to the fourth factor, the *Cabrera* court, again, noted that "[i]n assessing whether pseudonymous litigation is appropriate, courts must also consider whether an accused defendant is a governmental entity or a private party" and, as a result, "[t]his factor weighs against allowing the plaintiff to use a pseudonym because the defendant is a private litigant, who undoubtedly has concerns about his reputation." *Id.* at 8; *see also W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("The fourth factor also weighs against anonymity, as this action is brought against a private party and not a governmental entity."); *Doe v. De Amigos*, 2012 WL 13047579, at *3 (D.D.C. April 30, 2012) ("Defendant challenging the use of pseudonym in this action is a private corporation . . . . This factor also weighs against anonymity.").

Despite Plaintiff's attempts to muddy the waters and conflate issues with baseless allegations and inflammatory language, it is crystal clear that both the third and fourth *James* factors weigh in favor of Plaintiff not being to proceed anonymously because both Plaintiff and Defendant are adults and they are both private parties.

**E.     Basic Fairness Requires that Plaintiff's Identity Be Revealed in This Matter.**

Fifth, the Court considers "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Jacobson*, 6 F.3d at 238. Plaintiff asserts that permitting her "to proceed anonymously will cause Defendant no unfairness, harm or detriment." ECF No. 4 ¶ 6. However, this is far from true.

"When parties 'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'" *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (quoting *Union Oil Co. of. Calif. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)). "[C]ivil actions against private parties expose them to the risk of

reputational and economic harms." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 810 (E.D. Va. 2012).

In *Doe v. The Rector & Visitors of George Mason University*, Plaintiff Doe brought an action against George Mason University following a disciplinary process that he asserted was constitutionally-inadequate, which resulted in his expulsion after he was found responsible for sexual misconduct." *Id.* at 585. The Court noted that "Plaintiff has been accused of sexual misconduct, the mere accusation of which, if disclosed, can invite harassment and ridicule." 179 F. Supp. 3d 583, 593 (E.D. Va. 2016). The Court noted that "it is possible that plaintiff could be targeted for 'retaliatory physical or mental harm' based on the accusations alone." *Id.* (quoting *James*, 6 F.3d at 238). The Court recognized that "most litigation entails embarrassment of some form for one or both parties." *Id.* The Court noted that "some potential for embarrassment or criticism may result . . . does not justify removing litigation materials from public access." *Id.* However, in this mater, "what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct—a rapist." *Id.* The Court that continued that "[i]f plaintiff is ultimately found not responsible" as to the sexual misconduct allegations, "then he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma." *Id.* at 594. The Court concluded that "this is a case in which the nature of the accusations against plaintiff are sufficiently severe that they rise to the level of an extraordinary circumstance in support of the use of a pseudonym." *Id.* (internal quotation and citation omitted). Defendant has been accused of sexual misconduct—the mere accusation of which can invite harassment and ridicule. The Court permitted the accused rapist to proceed under a pseudonym because of the potential harm of the label of "accused rapist." As such,

Defendant's reputation is clearly at stake; if Plaintiff did not afford him the opportunity to proceed under a pseudonym, she should not be permitted to.

Plaintiff conceded *Doe v. Rector & Visitors of Georgia Mason University* is the closest to the instant case, and that the Court "*granted* Plaintiff's request for pseudonymity." ECF No. 25 at 5. However, Plaintiff fails to mention that the *plaintiff* was the alleged rapist, not the victim, in that case. This fully supports Defendant's position that he has been harmed by having his name in the public  and that Plaintiff should not be given anonymity when he is not afforded the same privileges.

In *Doe v. University of Rhode Island*, a matter in which a plaintiff alleged that she was sexually assaulted and sought to proceed under a pseudonym, the court noted that:

> While I am sympathetic to plaintiff's quest for privacy, I do not find her situation is so compelling that nondisclosure is appropriate. It must be remembered that plaintiff is a victim and not the perpetrator of a violent, abusive and criminal act. The nature of plaintiff's claim does not involve any admission on her part that she has or will be engaged in any illegal activity, that she has violated the law or that she willingly engages in unaccepted sexual practices.

*Doe v. Univ. of R.I.*, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993).

In *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, four female lawyers, seeking to proceed anonymously, brought Title VII sex discrimination cases. 599 F.2d 707, 708-09 (5th Cir. 1979).[2] The court began by noting that "[t]he mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *Id.* at 713. The law firms that were defendants in the matter stood "publicly accused of serious violations of federal law," so "[b]asic fairness dictates

---

[2] *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe* is cited favorably by the United States District Court for the Eastern District of Virginia in *James v. Jacobson*, 6 F.3d 233, 239 (E.D. Va. 1993).

19

that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." *Id.* The court found that the plaintiffs faced "no greater threat of retaliation that the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms." *Id.* Therefore, the court concluded that the Title VII plaintiffs could not sue under fictious names. *Id.* So too does basic fairness require Plaintiff to proceed under her real name if she wishes to lodge serious allegations against Defendant.

In *Candidate No. 452207 v. CFA Institute*, a candidate for chartered financial analyst ("CFA") certification brought an action for monetary, injunctive, and declaratory relief against the organization that developed and administered the exam, claiming that the organization falsely determined that he had cheated on his exam; the candidate sought to proceed anonymously. 42 F. Supp. 3d 804, 805-06 (E.D. Va. 2012). The Court denied the motion, determining that "Plaintiff does not plead a substantial privacy right or a substantial risk of openness in judicial proceedings." *Id.* at 807. Going through the *Jacobson* factors, the Court noted that the plaintiff merely had "an interest in avoiding the embarrassment and exposure to public scrutiny that commonly attend litigation," that the plaintiff was an adult, and that the plaintiff's suit "is against a private party and poses a risk to that party's reputation such that basic fairness requires the disclosure of Plaintiff's identity in connection with the suit." *Id.* at 812. The Court noted that "[g]iven the risks Plaintiff's suit poses to CFA Institute's reputation, basic fairness dictates that Plaintiff JA, as the Institute's accuser, advance its suit under his real and full legal name." *Id.* at 810. Furthermore, "permitting Plaintiff to assert his claims against the Institute without having to disclose his name would invite meritless lawsuits from other CFA candidates against whom the Institute has taken disciplinary action, offering them a forum to tarnish the reputation of the

Institute without risk of harm to their own reputation." *Id.* Given the risks that Plaintiff's suit poses to Defendant's reputation, basic fairness requires the disclosure of Plaintiff's identity in connection with this suit.

In *Doe v. Hallock*, the court noted that it "does not wish to minimize the significance of the plaintiff's fears of humiliation, embarrassment, and reprisal, but nevertheless concludes that plaintiff, if she desires to proceed with this lawsuit, must reveal her true identity as a matter of basic fairness and consistent with the policy of disclosure of parties' identities." 119 F.R.D. 640, 644 (S.D. Miss. 1987).

Plaintiff asserted that "Defendant has described no unfairness to him in maintaining Plaintiff's anonymity." ECF No. 25 at 10. This could not be further from the truth. These issues are addressed in a case from the District Court for the Southern District of New York.[3] In *Doe v. Shakur*, the District Court for the Southern District of New York addressed the "difficult question of whether the victim of a sexual assault may prosecute a civil suit for damages under a pseudonym." 164 F.R.D. 359, 360 (S.D.N.Y. 1996). The court ultimately held:

> The present case is a difficult one. If the allegations of the complaint are true, plaintiff was the victim of a brutal sexual assault. Quite understandably, she does not want to be publicly identified and she has very legitimate privacy concerns. On balance, however, these concerns are outweighed by the following considerations.
>
> First, plaintiff has chosen to bring this lawsuit. She has made serious charges and has put her credibly in issue. Fairness requires that she be prepared to stand behind her charges publicly.
>
> Second, this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws . . . .

---

[3] Throughout her Opposition, Plaintiff relied heavily upon the Eastern District of New York case *Doe No. 2. v. Kolko.* Utilizing her logic, a Southern District of New York case should be equally persuasive.

> Third, [defendant] has been publicly accused. If plaintiff were
> permitted to prosecute this case anonymously, [defendant] would be
> placed at a serious disadvantage, for he would be required to defend
> himself publicly while plaintiff could make her accusations from
> behind a cloak of anonymity.

*Id.* at 361. Plaintiff asserts that she "is a rape victim" and "if rape victims like her are required to

disclose their anonymity it will serve as a caution note [sic] to other rape victims and be viewed

as another tool of retaliation by Defendants [sic]." ECF No. 25 at 6.[4] The *Shakur* court also noted

that "[i]t may be, as plaintiff suggests, that victims of sexual assault will be deterred from

seeking relief through civil suits if they are not permitted to proceed under a pseudonym" and

"[t]hat would be an unfortunate result . . . however, plaintiff and others like her must seek

vindication of their rights publicly." *Id* at 362; *see also Doe v. Hartz*, 52 F. Supp. 2d 1027, 1048

(N.D. Iowa 1999) (noting, in the context of a sexual assault case, that the "court considers it

appropriate here to weigh the speculative nature of the potential harm to Doe from revealing her

identity against the very real embarrassment her accusations have already caused the

defendants").

Given the risks that Plaintiff's suit poses to Defendant's reputation, basic fairness

requires the disclosure of Plaintiff's identity in connection with this suit.

### F.  Plaintiff Has Not Demonstrated That She is Risking Irreparable Harm by Removing the Pseudonym Designation.

Plaintiff alleged in her Opposition that in *Doe v. Alger*, a Western District of Virginia

case, "the court weighed a sixth factor, that is, the Plaintiff's identity, if made public, would

cause her irreparable harm." ECF No. 4 ¶ 7. Plaintiff continues that her "chosen profession

---

[4] Plaintiff also relied on the Southern District of West Virginia case of *W.M. v. Braskem America, Inc.*, 2020 WL
1492544 (S.D. W. Va. Mar. 26, 2020). In *W.M.*, the plaintiff sought to proceed using his initials to keep private the
results of a drug test that he alleged was improperly disclosed. *Id.* at 2. Importantly, the court noted that "Defendant
has not even opposed Plaintiff's motion." *Id.* at 2. In the present matter, Defendant is opposing Plaintiff's use of a
pseudonym.

exposes her to enough risk—that risk does not need to be amplified by her identity being made public" and she "needs not be victimized further while pursing a remedy for her sexual assault." ECF No. 4 ¶ 7.

In *Doe v. Alger*, a male student brought a § 1983 action against a university and university officials, alleging that his suspension for five and a half years for sexual misconduct with a female student violated his rights under the Due Process Clause. 317 F.R.D. 37, 38 (W.D. Va. 2016). The male student moved for leave to proceed under a pseudonym and for a protective order prohibiting the use of his real name. *Id.* at 39. After proceeding through the *James* factors, the court noted "Doe argues that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." *Id.* at 42. The Court concluded that after weighing all of the factors, "Doe's privacy interest outweighs the presumption of openness in judicial proceedings and that he may thus proceed anonymously in this case" and found "good cause to protect Roe and the other students involved in the disciplinary proceedings, and so the use of their real names will be prohibited as well." *Id.* Again, this was a matter in which both parties were permitted to proceed anonymously—Plaintiff in the present matter did not provide Defendant with that opportunity and, furthermore, has failed to demonstrate that she would suffer from irreparable harm from removing the pseudonym in this case.

**G.    In Her Opposition, Plaintiff Failed to Rely on Case Law that is Binding on this Court.**

In her Opposition, Plaintiff argued that the "cases cited by Defendant are inapposite" and "do not address the anonymity of rape victims." ECF No. 25 at 4.  Plaintiff asserted that "[t]he instant case is a rape case, and cases which address rape and sexual misconduct are the only ones relevant to Defendant's Motion." ECF No. 25 at 5. However, Plaintiff did not point to any binding case law in this circuit, or cases in the Fourth Circuit generally, to rely on her claims. While there

may be no "rape victim" cases in the Fourth Circuit, there are plenty of cases, as discussed throughout Defendant's Memorandum, that discuss the principles behind the *James* factors. The application of the principles that the Fourth Circuit has elaborated upon is much more applicable to the present case in the Eastern District of Virginia as opposed to "rape victim" cases in other jurisdictions with different standards.[5] Regardless, the cases that Plaintiff attempts to rely upon do not support her claims.

The first case that Plaintiff attempts to rely upon in her Opposition is *Doe v. Cabrera*, a United States District Court for the District of Columbia opinion. ECF No. 25 at 5. In *Cabrera*, a plaintiff brought a civil action against the defendant for allegations of assault, battery, and intentional infliction of emotional distress and sought to proceed under a pseudonym. 307 F.R.D. 1, 2 (D.D.C. 2014). The court found that "the public disclosure of the plaintiff's true identity is very likely to result in psychological trauma," a finding, based in part, by the plaintiff's submission of an affidavit "by a licensed clinical social worker, with over ten years of experience, who has evaluated the plaintiff." *Id.* at 7 n.10. The Plaintiff here did not submit any such evidence.

Finally, Plaintiff failed to note that the *Cabrera* court held that if the matter proceeded to trial, the plaintiff would not be allowed to use a pseudonym. *Id.* at 10 n. 15 ("It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the plaintiff to conceal her true identity. The Court cannot afford the plaintiff that potential advantage at the expense of the defendant, who like the plaintiff is also entitled to a fair trial.").

---

[5] In her Opposition, Plaintiff insinuated that this Court should give less weight to the Fourth Circuit case *Doe v. Public Citizen* because it was *criticized* in the *District of Columbia Circuit Court*, which is completely separate from the Fourth Circuit. ECF No. 25 at 4. Plaintiff further brings attention to the fact that *Doe v. Merten*, an Eastern District of Virginia case, was cited in contradiction by an opinion issued by the *Attorney General of Texas*. ECF No. 25 at 4. Defendant is not going to waste this Court's time by distinguishing this clearly irrelevant District of Columbia Circuit Court case and completely inapplicable opinion issued by the Attorney General of Texas.

Next, Plaintiff relies upon *Doe v. De Amigos, LLC*, another case from the United States District Court for the District of Columbia. In *De Amigos*, the plaintiff alleged that she was sexually assaulted after being served underage at a venue owned and operated by the defendant. *Doe v. De Amigos*, 2012 WL 13047579, at *1 (D.D.C. April 30, 2012). In that case, the reputational concerns against the defendant were different because the defendant was merely accused of serving alcohol to an underage individual, not of committing rape. *See id.* at *3 ("Here, the defendant challenging plaintiff's motion is not the alleged attacker, but the venue that allegedly served her alcohol. Thus, the stigma that the courts feared would attach to the defendants in those cases is not of particular concern here."). Plaintiff also relies on *Doe v. Evans*, an Eastern District of Pennsylvania case in which alleged sexual assault victims brought civil rights claims against the Commissioner of the Pennsylvania State Police. 202 F.R.D. 173, 175 (E.D. Pa. 2001). The *Evans* plaintiff brought claims against the government, as opposed to a private entity.

## III.    <u>CONCLUSION.</u>

For the reasons set forth herein, Defendant Cenk Sidar requests that the Court grant his Renewed Motion to Remove Pseudonym Designation, enter an order requiring that references to Plaintiff Jane Doe's in all filings and proceedings in this cause shall be her true name, that her identity is not to be redacted in all filings, that her true name be used at the upcoming trial, and grant such other and further relief in favor of Defendant as this Court deems just and proper.

Dated: December 30, 2022

CENK SIDAR
By Counsel:

_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 30, 2022, a copy of the foregoing
**DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO
REMOVE PSEUDONYM DESIGNATION** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____
Mariam W. Tadros

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:22-cv-00545 (CMH/TCB) |
| | : | |
| CENK SIDAR, | : | |
| | : | |
| Defendants. | : | |

### NOTICE OF HEARING

PLEASE TAKE NOTICE that on Friday, January 6, 2022, at 10:00 a.m., or as soon

thereafter as the undersigned may be heard, Defendant Cenk Sidar will present argument on his

Renewed Motion to Remove Pseudonym Designation to the Court.


Dated:  December 30, 2022        Respectfully submitted,

CENK SIDAR


/s/ Mariam W. Tadros
Mariam W. Tadros (VSB No. 75502)
REES BROOME, PC
*Counsel for Defendant*
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
Email: mtadros@reesbroome.com

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that a true and accurate copy of the foregoing **DEFENDANT'S NOTICE OF HEARING** was filed this 30th day of December, 2022, with the Clerk of the Court by using the CM/ECF system which will then send a notification of such filing (NEF) to all counsel of record in this action.

/s/ Mariam W. Tadros_____\
Mariam W. Tadros (VA Bar No. 75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
Tel: (703) 790-1911
Fax: (703) 848-2530
mtadros@reesbroome.com
*Counsel for Defendant*

JA838

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE | : |
| | : |
|      Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : |
| CENK SIDAR | : |
| | : |
|      Defendant. | : |

_____

## ORDER

This matter comes before the Court on Defendant Cenk Sidar's Motion to Remove Pseudonym Designation. Having reviewed the motion, any opposition thereto, and the argument of counsel, if any, it is hereby:

**ORDERED** that Defendant's Renewed Motion to Remove Pseudonym Designation is **GRANTED**; and it is

**ORDERED** that references to Plaintiff Jane Doe in all filings and proceedings in this cause shall be her true name; and it is further

**ORDERED** that Plaintiff's identity is not to be redacted in any further filings; and it is further

**ORDERED** that Plaintiff's identity true name be used at the upcoming trial.

ENTERED this _____ day of _____, 2022.

_____
Claude M. Hilton
United States District Court Judge

JA839

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

_____

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE ANDERSON'S DECEMBER 12, 2022 ORDER DENYING PLAINTIFF'S <u>SECOND MOTION TO COMPEL</u>**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Opposition to Plaintiff's Objection to Magistrate Judge Anderson's December 12, 2022 Order Denying Plaintiff's Second Motion to Compel.

I.    **BACKGROUND.**

   A.    **Procedural History**

On May 12, 2022, Plaintiff Jane Doe ("Plaintiff") filed a Complaint against Defendant for assault (Count I), battery (Count II), and intentional infliction of emotional distress (Count III) resulting from an alleged rape. In the Complaint, Plaintiff sought judgment against Defendant for $2,000,000.00 in compensatory damages and $4,000,000.00 in punitive damages, plus interest, costs, and any other relief deemed proper by the Court.

On July 15, 2022, Plaintiff served to Defendant Plaintiff's Notice of Physical Examination and DNA Sampling of Defendant (ECF No. 26-1). A few hours after serving her Notice, also on July 15, 2022, Plaintiff filed her Motion to Obtain Physical Examination of and DNA Sample from Defendant (ECF No. 26). On July 29, 2022, Defendant filed his opposition to Plaintiff's motion (ECF No. 37). In accordance with Local Rule 26(C), simultaneously with his opposition, Defendant served his objections to the notice (ECF No. 37-1). Plaintiff filed a reply to Defendant's opposition on August 3, 2022 (ECF No. 38).

Counsel for the parties appeared before Magistrate Judge Theresa Carroll Buchanan on August 5, 2022, after which, the same day, she granted Plaintiff's motion and entered a corresponding order ("Order"). The Order mandated that Defendant "appear on Monday, August 29, 2022, at 10:00 a.m. at the office of Plaintiff's counsel . . . and shall submit to the employee(s) of J and M Paternity Service, LLC for the buccal swab samples . . . ." ECF No. 40 at 1. The

Order continues that "J and M Paternity Service, LLC shall transfer the samples to Eurofins Europe/London Police and Bode Technologies for testing . . . ." ECF No. 40 at 1.

On August 19, 2022, Defendant filed his Objections to Magistrate Judge's Ruling or Recommendation ("Objection") re the Order (ECF No. 43), as well as a memorandum in support (ECF No. 44). On August 28, 2022, Defendant filed a Motion to Stay the Order (ECF No. 46). The Court ruled on Defendant's Objection on September 12, 2022, and it affirmed Magistrate Judge Buchanan's Order. On October 13, 2022, Defendant filed a Notice of Appeal (ECF No. 56) noting that, pursuant to the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 546 (1949), Defendant appealed to the United States Court of Appeals for the Fourth Circuit from the order filed on September 12, 2022, and entered on September 15, 2022, denying Defendant's Rule 72 Objection to Magistrate Judge's August 5, 2022, Order regarding Plaintiff Jane Doe's Motion to Obtain DNA Sample from Defendant (ECF No. 56).

After Defendant's appeal of the Order, Plaintiff filed a Motion to Compel and for Sanctions for Failure to Comply with Court Order re DNA Sample (ECF No. 63), which Defendant opposed (ECF No. 65). Following a hearing on December 2, 2022, Magistrate Judge John F. Anderson granted the Motion and ordered that a default judgment was the appropriate remedy for Defendant's failure to comply with the Order. ECF No. 70 at 1. Judge Anderson did not grant the Plaintiff's Request to order Defendant to produce a DNA sample.

On December 8, 2022, Plaintiff filed a Second Motion to Compel and for Sanctions (ECF No. 74). In the Second Motion to Compel, Plaintiff asserts that, despite entry of default, she issued yet another a subpoena to compel Defendant to produce his DNA on the morning on Wednesday, December 7, 2022 (the "Notice"). The Notice was issued on December 3, 2022 and

required compliance on December 7, 2022. Defendant did not submit a DNA sample in response to the Notice.

Without receiving an Opposition from Defendant, Magistrate Anderson issued an Order on December 12, 2022 denying Plaintiff's Second Motion to Compel. ECF No. 80. Notably, Magistrate Anderson concluded that as the court recommended entry of default judgment, trial would be limited to plaintiff's damages, which information was already in plaintiff's possession; thus, there was no further requirement that Defendant provide the buccal swab samples or that further discovery was necessary. ECF No. 80 at 3.

Plaintiff has filed an Objection to the December 12, 2022 Order. However, as this Court has already entered a default judgment against Defendant, Defendant requests that the Court deny Plaintiff's Motion.

## II.   ARGUMENT.

### A.   Legal Standard.

Pursuant to Federal Rule of Civil Procedure 72, a party has fourteen days to object to the order of a magistrate judge regarding a pretrial matter that is not dispositive of a party's claim or defense. *See* Fed. R. Civ. P. 72(a). Rule 72(a) provides that a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed R. Civ. P. 72(a). A ruling is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *CertusView Techs.*, *LLC v. S&N Locating Servs.*, *LLC*, 107 F. Supp.3d 500, 504 (E.D. Va. 2015). "In practical terms, the 'contrary to law' standard is equivalent to *de novo* review." *Riddick v. Norfolk S. Ry. Co.*, 2022 WL 2614877, at *1 (E.D. Va. May 6, 2022). This Court has recognized a "leading treatise on federal practice and procedure [that] describes the

alteration of a magistrate's non-dispositive order as 'extremely difficult to justify.'" *Bruce v. Hartford*, 21 F. Supp.3d 590 (E.D. Va. May 1, 2014) (quoting 12 Charles Alan Wright et al., Federal Practice and Procedure § 3069 (2d ed. 1997)).

> **B.**  **The Magistrate Judge's Denial of the Second Motion to Compel was not Clearly Erroneous or Contrary to Law.**

In his December 12th Order, Judge Anderson wrote, "Given the recommendation that liability would not be an issue at trial and the trial would be limited to plaintiff's alleged damages, there was no further requirement that defendant provide the buccal swab samples to plaintiff…" Judge Anderson's reasoning is sound. Despite Plaintiff's assertions to the contrary, the DNA sample only goes to the issue of Defendant's liability. It does not go to the issue of damages as the category of damages asserted by Plaintiff (lost wages, pain and suffering, attorneys fees, etc.) has nothing to do with the Defendant's DNA.

Further, the notice at issue was issued four days before the required compliance on December 7, 2022. However, the Notice clearly states that it is being brought pursuant to Fed. R. Civ. P. 34 and 35. Fed. R. Civ. P. 34 states, "The party to whom the request is directed must respond in writing within 30 days after being served." Here, the Notice did not provide Mr. Sidar with 30 days to comply, making it invalid under Rule 34.

The Notice also does not comply with Rule 35. Rule 35 requires a court order directing compliance. The Notice was not a court order, as evidenced by the fact that Plaintiff had to file the Second Motion to Compel to compel enforcement of the Notice. To that end, Plaintiff did not validly issue the Notice pursuant to Rule 35. Thus, even if Judge Anderson's December 12th Order was clearly erroneous (it was not), the Plaintiff's Motion still fails because she did not comply with either Rule 34 or Rule 35 in issuing her Notice.

III.     **CONCLUSION.**

For the reasons set forth herein, Defendant Cenk Sidar respectfully requests that the

Court deny Plaintiff's Objection to Magistrate Judge Anderson's December 12, 2022 Order

Denying Plaintiff's Second Motion to Compel, and grant such other and further relief in favor of

Defendant as this Court deems just and proper.

Dated: January 11, 2023

                              CENK SIDAR
                              By Counsel

_____
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No. (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 11, 2023, a copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE ANDERSON'S DECEMBER 12, 2022 ORDER DENYING PLAINTIFF'S SECOND MOTION TO COMPEL** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____
Mariam W. Tadros

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/JFA) | |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

_____

**PROPOSED ORDER**

This matter comes before the court on Defendant's Opposition to Plaintiff's Objection to

Magistrate Judge Anderson's December 12, 2022, Order Denying Plaintiff's Second Motion to

Compel. Having reviewed the motion, the opposition thereto, if any, it is hereby:

**ORDERED** that the Defendant's Opposition to Plaintiff's Objection to Magistrate Judge

Anderson's December 12, 2022, Order Denying Plaintiff's Second Motion to Compel is

**GRANTED**.

ENTERED this _____ day of _____, 2023.

_____
Claude M. Hilton
United States District Court Judge
Eastern District of Virginia

JA847

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO REMOVE PSEUDONYM DESIGNATION**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, files this Opposition to Defendant's Renewed Motion to Remove Pseudonym Designation ("Motion"). *ECF No. 65.* Specifically, Defendant Cenk Sidar ("Sidar") once again demands that this Court remove the designation "Jane Doe" that has prevented Plaintiff from being traumatized a second time by Defendant's rape of her.

### I.     Background

Defendant's Motion is just one more example of the manner that he and his counsel have litigated this lawsuit – attempting to make this lawsuit as expensive as possible for Plaintiff knowing that she has significantly fewer financial resources than does Mr. Sidar. Sidar hopes to make this litigation as painful as possible in order to coerce a settlement that does not fairly compensate Plaintiff for her injuries.  Since current counsel joined this case, counsel has filed frivolous motions, meritless objections, and a baseless appeal to the Fourth Circuit.  Moreover, Sidar has refused to comply with his obligations to participate in good faith in discovery, not

only refusing to provide a DNA sample as required by an Order of this Court, but also failing to provide most of the written discovery requested by Plaintiff.  Plaintiff has not had the financial resources to fight Sidar on all of these fronts and still pursue her case against him in order to see that justice is done regarding his rape of her.

This case was originally filed in Fairfax County Circuit Court on September 13, 2019 with a motion to have Plaintiff's name be replaced with a pseudonym filed concurrently with the Complaint.  For over two years, Sidar's previous counsel never complained about the use of a pseudonym.  Current counsel entered the case in October 2021 and defended Sidar for over 6 weeks before Plaintiff entered a non-suit in late November 2021, with Plaintiff's counsel announcing that they would refile the case in federal court so that they could obtain the DNA evidence they needed for their case.  During that six week period, counsel never complained about the pseudonym designation. For the six months from the non-suit until the case was refiled in this Court, Sidar's current counsel never made any request nor raised any objection to the idea that the case would be filed with Plaintiff using a pseudonym. It was only after Sidar's counsel realized that the removal of the pseudonym could be used as leverage to attempt to obtain a better settlement for Sidar did counsel object to the use of the pseudonym.

The fact that Sidar has taken extreme efforts to prevent Plaintiff from obtaining a DNA sample from him so that she can compare it to the sperm DNA that was taken from her vaginal area the morning of the rape is strong evidence that Sidar knows that the DNA will be a match. Much like the assertion of the Fifth Amendment right to silence in a civil case, his refusal to comply with the Order entered by Magistrate Judge Buchanan on August 5, 2022 is a damning indictment that Sidar clearly raped Plaintiff on September 17, 2019.  Sidar's refusal to provide

the DNA sample should be treated as seriously as a spoliation of evidence. Plaintiff notes that Defendant has also refused to provide his cell phone, text and social media records, both before this Court and in Fairfax County, and has never responded over two years to several spoliation demand letters from Plaintiff.

This Court denied Sidar's previous attempt to remove the pseudonym designation and expose Plaintiff's name in this case. *ECF 36.* The arguments supporting continued use of the pseudonym and the balance of the equities for such a designation have only become more compelling in favor of Plaintiff since that Order.

## II. Argument

Sidar's Renewed Motion merely regurgitates almost verbatim the arguments that he made when his motion was denied in July 2022. Sidar provides no explanation why it is necessary to remove the pseudonym at this time. As explained below, each of the factors that supported continuing the use of the pseudonym back in July are only stronger now.

### A. Standard and Balance of Interests

#### 1. General Standard; Five Part Test

While the Federal Rules of Civil Procedure requires identification of parties, in certain circumstances a party may be afforded the protection of anonymity if that party meets the five-part test set forth in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). After a review of various criteria discussed in other circuits, the *James* court chose the following five criteria that "have relevance to this case…." *Id.* These factors include

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory

3

physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Numerous courts have applied the *James* test to either grant or deny requests for anonymity. The cases cited by Defendant are inapposite. They do not address the anonymity of rape victims. The cases cited by Defendant, for example, relate to Title VII claims (*Doe v. Hallock*, 119 F.R.D. 640 (S.D. Miss. 1987); *Southern Methodist Univ Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)); Section 1983 claims (*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016)); a TSA pat-down (*JL v. Polson*, 2017 WL 11500247 (E.D. Va. Jan. 1, 2017)); risk of harm to a company related to an infant death from a defective product (*Co. Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014)(*criticized in Roe v. Doe*, Civil Action No. 18-666 (CKK) (D.D.C. Aug. 9, 2018)); public interests in government litigation or challenging laws or regulations (*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004) (*cited in contradiction by Opinion No. GA-0699* (Ops. Tex. Atty. Gen. Mar. 19, 2009), at fn. 2); and cheating on exams (*Candidate # 452207 v. CFA Institute*, 42 F. Supp. 3d 804 (E.D. Va. 2012)).

The closest case to the instant one cited by Defendant is *Doe v. Rector & Visitors of George Mason Univ*., 179 F. Supp. 3d 583 (E.D. Va. 2016) in which the court *granted* Plaintiff's request for pseudonymity specifically citing that sexual misconduct carries a stigma, is a "matter of sensitive and highly personal nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations alone." *Rector*, 179 F. Supp. 3d at 593, *citing James*, 6 F.3d at 238. The instant case is a rape case, and cases which address rape and sexual misconduct are the

4

only ones relevant to Defendant's Motion. The legal standard is the application of the *James* factors to rape cases.

### B.      Balancing of Factors

Besides the five-factor test in *James*, there is another consideration. Counterbalancing the public's right to know the identity of persons availing themselves of the court system is the public interest in protecting rape victims. In *Cabrera*, the Court recognized that "[c]ourts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects." *Cabrera*, 307 F.R.D. at 5 (*citations omitted*). The court continued to observe "a strong [public] interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'" *De Amigos*, No. 11-cv-1755, at *6 (*quoting Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006))." *Cabrera*, 307 F.R.D. at 6. In *Kolko,* the court observed "[a]dditionally, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes. *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa.2001) (granting anonymity to sexual assault victim)." *Kolko*, 242 F.R.D. at 195-96.

A recent New York state appellate decision accurately assessed the problem when it dismissed a defamation claim by an accused abuser, holding that the lower court's decision allowing the claim to proceed "has the effect of emboldening sexual assaulters who seek to weaponize the legal system in order to silence their victims." *Sagaille v. Carrega*, 194 A.D.3d 92, 94, 143 N.Y.S.3d 36, 38 (N.Y. App. Div. 2021), *leave to appeal denied,* 37 N.Y.3d 909, 174 N.E.3d 710 (2021).  As the *Sagaille* court noted,

> sexual assaults remain vastly underreported, primarily due to victims' fear of
> retaliation. . . . most victims cannot afford years of litigation, nor do they

5

wish to have their personal information disclosed through invasive
discovery or to relive their personal trauma through litigation, including
depositions, filings, and testimony in court. They do not wish to endure
continued unwanted interaction with the person alleged to have assaulted
them through the litigation process.

*Id.* at 194 A.D.3d 94 (footnote omitted).

In the instant case, Plaintiff is a rape victim. Unlike when this motion was previously
heard, the Court has declared that Sidar is liable for the three counts brought in the Complaint –
Assault, Battery, and Intentional Infliction of Emotional Distress.  If rape victims like her are
required to disclose their identities, it will serve as a caution note to other rape victims and be
viewed as another tool of retaliation by Defendants. This Court should not let that happen.

The *Doe v. Rector & Visitors of George Mason Univ*. case is particularly instructive.  179
F. Supp. 3d 583 (E.D. Va. 2016).  Underlying the decision in that case was the fact that this
Court believed that the Plaintiff, Doe, had been wrongfully accused of sexual misconduct.  This
Court noted that such an accusation carries a stigma, is a "matter of sensitive and highly personal
nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations
alone." *Rector*, 179 F. Supp. 3d at 593. In the present case, the evidence is overwhelming,
including Sidar's attempts to avoid providing a DNA sample, that Sidar raped Plaintiff.  Like in
the *George Mason* case, the wronged party should not be exposed to public exposure of her rape,
which is a "matter of sensitive and highly personal nature."  As explained in Plaintiff's Affidavit,
Exhibit A, she will be exposed to "'retaliatory physical or mental harm' based on the accusations
alone," including significant damage to her reputation and ability to obtain work in the Middle
East, where most of her work is located, Exhibit A at ¶¶ 3-4, the fact of her rape will be exposed
to her family, who she has not told about the rape, *id.* at ¶ 13, and she will be further traumatized

6

JA853

after the initial trauma of the rape itself.  *Id.* at 7-12.  All of these factors weigh against Sidar's attempt to remove the pseudonym that is protecting Plaintiff from these further harms.

Next, we discuss the *James* factors considering the general test, and the admonition in *Cabrera, Evans and Kolko*.

**B.    Factors**

**1.    Avoidance of Annoyance and Criticism versus Preservation of Privacy in a Matter of Sensitive and Highly Personal Nature**

Plaintiff details throughout her Complaint the mental harm and emotional anguish the rape caused her. Complaint, *ECF No. 1*, paras. 41-43, 51, 58, 66. The harm to her mental health is real and exposing her name publicly will only add to her anguish and suffering. It is not hard to imagine the mental anguish of publicizing that she was a victim of rape, especially given that her family does not even know about this rape.

The Court in *Doe No. 2 v. Kolko* outlines the scope of protection afforded rape victims in the various circuits citing opinions including *James*. The court noted that even the 7th Circuit, which hews strongly against the use of fictitious names, recognizes that sexual assault victims are commonly accorded anonymity. *Kolko*, 242 F.R.D. at 195, *citing Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (recognizing that rape victims are entitled to anonymity) (" fictitious names are allowed when necessary to protect the privacy of ... rape victims, and other particularly vulnerable parties or witnesses"), 112 F. 3d at 872; *see also Doe v. City of Chicago*,360 F.3d 667, 669 (7th Cir.2004).

The *Kolko* court also noted that the U.S. Supreme Court has recognized the seriousness of rape. *See Coker v. Georgia*, 433 U.S. 584, 597, 97 S.Ct. 2861 (1977) ("Short of homicide, [rape] is the ultimate violation of self") *cited in Kolko*, 242 F.R.D. at 196. Although written into the

7

criminal code, Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution. *See*, Va. Code Section 19.2-11.01, A., A.1. and A.2. Although addressing victim rights in a criminal law context, this section clearly sets forth the Commonwealth's policy of protection of rape victims.

In the current case, Plaintiff is seeking restitution for her rape. Rape victims are still punished and criticized. Defendant sent text messages over several days trying to paint himself as the victim and begging Plaintiff not to take any action that will harm him, disregarding the harm he caused Plaintiff. Throughout the proceedings in Fairfax County Circuit Court, he sought to avoid jurisdiction and attempts to collect his DNA. In one instance, he requested a protective order limited to prohibiting Plaintiff from sharing DNA results with the London Metropolitan Police. The Court wisely declined noting that it would not be a party to suppressing evidence in a criminal investigation in another country. The strong public policy to protect rape victims hews strongly in favor of Plaintiff retaining anonymity.

          **2.**        **Risk of Retaliatory Physical or Mental Harm to the Requesting Party or even more critically, to innocent non-parties**

Another deciding factor in favor of anonymity is the risk of retaliatory physical or mental harm. "Related to the third factor is the concern "'whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties . . . .' *James*, 6 F.3d at 238." *Kolko*, 242 F.R.D. at 195.

Plaintiff has been subjected to numerous baseless motions by Defendant in his attempts to delay her efforts to seek redress. One instance is the baseless personal jurisdiction motion pressed by Defendant, leading to Judge Bellows in Fairfax County finding personal jurisdiction and levying attorneys' fees due to the baseless nature of Defendant's claim. Another is his

numerous attempts to avoid having to produce a DNA sample even though he voluntarily provided one to the London Metropolitan Police.

Beyond Defendant's continued assault on Plaintiff is a more important issue. As noted above, the Plaintiff works in governmental and military contracting worldwide, including in the Middle East. It is a well-documented fact that women who have been raped are subjected to ridicule, abuse, arrest, and prosecution in the Middle East. In January 2019, Frontiers in Psychology published a paper entitled *Blaming the Victim of Acquaintance Rape: Individual, Situational, and Sociocultural Factors. ECF 24.1.* In that study the authors stated --

> Victims of sexual assault in many Middle Eastern communities are punished, even
> outcast by their families, or must marry their rapists in order to restore honor to
> their families (Ruggi, 1998).

*Id.* at 15. In an article published in Asia Times, the authors note that "[i]n some countries such as the United Arab Emirates, rapists can face the death penalty, but sex outside marriage, or *zina*, is also a serious crime, and women who have reported sexual assaults have then been arrested themselves." Asia Times online, *Arab countries struggle with the stigma associated with rape*, Ghazal, R., Jan. 1, 2019. *ECF 24.2*.

Plaintiff is rightfully afraid of the consequences if the fact that she was raped becomes publicized, especially in countries where she works and visits regularly. In light of her own personal experiences and well documented research and reporting, this fear is fully justified. Plaintiff should not have to suffer personal physical and legal risk in her work locations because she is pursuing her rights in the court system.

### 3.    Ages of the Persons Whose Privacy Interests are Sought to be Protected

Both parties to this case are of majority age. As in *Va. Polytechnic* this factor is neutral.

*Doe v. Va. Polytechnic Inst*., Civil Action 7:21-CV-378 (W.D. Va. Mar. 29, 2022), at 4-5. That court noted that some of the James factors may be relevant to a case where others are not. *Id*. at 3. In the case of the Plaintiff in *Va. Polytechnic,* the Court determined that the third *James* factor is crucial when a party is underage but otherwise neutral when they are not. *Id*. at 4-5. The court determined that this factor weighed neither in favor nor against anonymity. *Id*. Given the fact neither party is a minor and considering the severe effect Defendant's rape of Plaintiff has had on Plaintiff's mental, emotional, and financial state, and significant risk of causing additional physical, legal, and financial harm if her identity is unmasked, this factor is at best neutral.

### 4.      Whether the Action is Against a Governmental or Private Party

This action is between private parties, and not against a government or other public entity. This factor would only weigh against Plaintiff if there was any risk of harm to the Defendant's reputation that would offset Plaintiff's need for anonymity. *See, generally, Va. Polytechnic* at 6. It is neutral in this case because Defendant has taken no steps, from the time of the rape until now, to conceal his identity, redact personal information from his discovery responses, request lifting of anonymity, or raise any risk of prejudicial harm to him. Plaintiff, on the other hand, has consistently and carefully worked to preserve her anonymity, and unlike the situation in *Cabrera*, further has taken no actions to publicly humiliate Defendant, even going so far as to mask his name in her contact list when first approaching the London Police. Lifting the veil of anonymity only harms Plaintiff, extends and amplifies the emotional toll this has taken on her, adds an additional layer of financial burden in responding to Defendant's motion at this late stage in their litigation history and risks exposing her to new physical, mental, and financial harm. At best, this factor is neutral in the analysis of the *James* factors.

10

### 5.      Risk of Unfairness to the Opposing Party

As set forth in the Introduction, there is no risk of unfairness to the Defendant. The

Defendant has known the identity of the Plaintiff from the time he raped her. In fact, he had

known her through an academic program many years before the rape. He sent her extensive text

messages over several days beginning within minutes of raping her in attempts to get her to stay

quiet and not report the rape to the police or take other actions. He voluntarily met with the

London Police and provided a DNA sample. He has known her identity from the beginning of

the case. As is noted in numerous cases where the defendant knows the plaintiff's identity, there

can be no prejudice to the defendant by maintaining pseudonymity. Defendant has described no

unfairness to him in maintaining Plaintiff's anonymity. *See Doe v. Va. Polytechnic Inst.*, Civil

Action 7:21-CV-378 (W.D. Va. Mar. 29, 2022), at 6; *W. M. v. Braskem Am., Inc.*, Civil Action

No. 3:20-cv-00141 (S.D.W. Va. Mar. 26, 2020).

### C.      Waiver or Laches; No Requests for Over Two and a Half Years

Prior to filing suit, counsel for the Plaintiff and Defendant engaged in extensive

discussions. In none of those discussions did Defendant request anonymity, even when Plaintiff

made clear that she would be filing an action. Plaintiff proceeded under a pseudonym in Fairfax

County from the time she filed suit, in September of 2019 until she filed a nonsuit in November

of 2022. At no time in those proceedings did Defendant request a lifting of the pseudonym

designation. Defendant's filing is the first time he has raised this issue.

Defendant waived any right to relief on his motion, and that his motion is filed solely to

create additional angst and emotional harm on Plaintiff. Like Defendant's untimely petition of

appeal of an attorneys' fee award to the Virginia Supreme Court, filed after Plaintiff non-suited

and almost two years after the June 16, 2020 Order awarding attorneys' fees and which was summarily rejected by that Court just five days after the argument on the petition, Plaintiff believes Defendant is on a crusade to bankrupt Plaintiff in order to attempt to obtain a more favorable settlement, rather than address the merits of her case.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court deny Defendant's Renewed Motion to Remove Pseudonym Designation and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of January, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*_____
Thomas F. Urban II

12

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JANE DOE                                          :
                                                  :
     Plaintiff,                                 :
                                                  :
v.                                                : Civil Action No. 1:22-cv-00545 (CMH/TCB)
                                                  :
CENK SIDAR                                        :
                                                  :
     Defendant.                                 :
_____

**AFFADIVIT OF PLAINTIFF JANE DOE**
**REGARDING DEFENSE MOTION TO LIFT PSEUDONYM**

I, Jane Doe, by pseudonym, being duly sworn, hereby states as follows:

1.      I am the Plaintiff in the above-captioned case. I am over twenty-one years of age

and all of my statements herein are based upon my personal knowledge.

2.      Although a domiciliary of the Commonwealth of Virginia I work internationally

in military and government contracting. In 2012 and 2013 I was employed in the UAE by the

Abu Dhabi government. I developed an expertise in an arcane area of government contracting

work in the Middle East. As a result, my work is principally based in Dubai and the United Arab

Emirates. I spend much of my time there and in other locations in the Middle East in conjunction

with my work.

3.      My specialty focuses on government and military contracting. I deal with US and

other private contractors and their Middle East counterparts daily. My work requires me to stay

in the Middle East for weeks at a time negotiating business arrangements, attending meetings,

inspecting locations and similar work. I have to attend meetings all day every day in person.

Most people I work with are men – there are very few females in my line of work. These

industries are male-dominated industries. Many of the people I work with were born and grew up in the Middle East. My work and my life are dominated by their laws, culture and social norms. I am thankful for the opportunity to work here but am cognizant of the risks and demands.

4.      The Middle East can be a challenging place for professional women to work in these industries. I am deeply concerned that if the details in this case or my identity were to be revealed in any of the communities in which I work it would cause me to be ostracized and subjected to legal inquiry or discriminatory treatment. I'm afraid of what could happen to me both professionally and personally, and that identification of me as the Plaintiff in this case could ruin the work prospects and business relationships I have worked so hard to develop since Defendant raped me.

5.      Defendant's rape of me has been deeply disturbing, causing me personal emotional pain, psychological harm, and professional damage. I went to the sexual assault clinic for forensic evidence collection immediately after Defendant raped me, and have continued to work with the London Police virtually and in-person to investigate this case over a nearly five (5) year period.

6.      Prior to when Defendant raped me, when he and I were talking, he asked me about my professional life. I told him what I do and that I'm based in the Middle East. He only cares about himself as is evident from the text messages he sent me after he raped me.

7.      I sought counseling with a professional in South Africa soon after Defendant raped me. We only had one or two sessions – I felt that having to recount the events and work through them was more painful than trying to deal with the pain and anguish myself.

8.      I still struggle with the memory of Defendant raping me – being attacked while asleep by someone I knew, who I knew to be married with children – someone that I assumed

2

AFFADIVIT OF PLAINTIFF JANE DOE
REGARDING DEFENDSE MOTION TO LIFT PSEUDONYM

could be trusted. The experience haunts me, interrupting my ability to focus, and my ability to

trust others and to establish a new relationship.

9.      Trying to get restarted is difficult enough. If my identity were revealed I would be

required to divulge these painful memories before I am prepared to do so. I have a difficult

enough time dealing with the psychological burden now. If confronted with the facts of this case

by friends, co-workers and others before I know that I can trust them will cause me to withdraw

more and likely cause additional emotional damage.

10.     I press forward with this case hoping that my trust in the judicial process will be

validated, that I can believe reporting my assault was not in vain, and knowing that Defendant

may have previously done this or could do this again to someone else, especially if he is able to

walk away from this as he has been able to walk away from the London police by refusing to

work with them.

11.     My text exchanges from the night Defendant raped me and attached to the

Complaint give a window into the severe distress his rape caused me. And then after the rape, his

only concern was to protect himself and make excuses, Defendant had no concern about the

physical, emotional and mental harm he caused me.

12.     Defendant texted "I am luck [sic] this happened with you." Defendant texted "I

basically acted like an animal." I have no words to describe the intense pain and suffering

Defendant's rape of me has caused, Defendant's excuses and pleadings after raping me has

caused, and Defendant's efforts to avoid responsibility have caused. I want to avoid having to

relive the pain and suffering over and over, and from having the whole world know the details of

my assault.

3

AFFADIVIT OF PLAINTIFF JANE DOE
REGARDING DEFENDSE MOTION TO LIFT PSEUDONYM

13.     Because of the emotional harm that this rape has caused to me and the stigma associated with this rape, I have not told any of my relatives including my parents or any of my friends, other than those who have helped me investigate and litigate this case, about the rape.

I declare under penalty of perjury that the foregoing is true and correct, and all statements are based upon personal knowledge.

_____
Jane Doe

Dated:  July 19, 2022

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|    **A Domiciliary of the** | ) | |
|    **Commonwealth of Virginia** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CENK SIDAR** | ) | |
| | ) | |
|    **Defendant.** | ) | |

**[PROPOSED] ORDER DENYING DEFENDANT'S RENEWED
MOTION TO REMOVE PSEUDONYM DESIGNATION**

Upon consideration of Defendant's Renewed Motion To Remove Pseudonym

Designation ("Motion"), the briefs filed by the Parties, and any argument regarding the Motion,

it is hereby ORDERED:

    1.    That the Motion is hereby DENIED.

    2.    That all references to Plaintiff in all filings and proceedings in this cause shall

continue to be to "Jane Doe" and that Plaintiff's identity shall continue to be redacted in all

filings throughout the trial of this case.

_____

Judge,  United States District Court
Eastern District of Virginia

JA864

cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

*Counsel for Plaintiff Jane Doe*

Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

*Counsel for Defendant Cenk Sidar*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) | |
| **A Domiciliary of the** ) | |
| **Commonwealth of Virginia** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 1:22-cv-00545** |
| ) | |
| **v.** ) | |
| ) | |
| **CENK SIDAR** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
RULE 72(a) OBJECTION TO MAGISTRATE JUDGE ANDERSON'S DECEMBER 12,
2022 ORDER DENYING PLAINTIFF'S SECOND MOTION TO COMPEL AND
MOTION TO STRIKE OPPOSITION**

Plaintiff Jane Doe, by counsel ("Plaintiff"), hereby respectfully files this Reply to

Defendant's Opposition to Plaintiff's Objection to the December 12, 2022 Order of Magistrate

Judge John F. Anderson (*ECF 80*) that allows Defendant Cenk Sidar ("Defendant" or "Sidar") to

continue to ignore a valid Order issued by Magistrate Judge Theresa Carroll Buchanan on

August 5, 2022 (*ECF 63*) to provide a buccal swab to determine whether Defendant's DNA

matches sperm DNA taken by London Police from Plaintiff's vaginal area.  Plaintiff further

moves to strike Defendant's Opposition as untimely manner under Local Rule 7(F)(1).

<u>**ARGUMENT**</u>

1. **Defendant's Opposition to Plaintiff's Objection was Untimely and Should be
   Struck**

Pursuant to Local Rule 7(F)(1), the non-moving party has fourteen (14) days in which to

file their Opposition to a motion.  In the present case, Plaintiff's Objection was filed on

December 23, 2022.  Therefore, Defendant had until January 6, 2023 to file his Opposition.

Instead, he filed his Opposition on January 11, 20023, five days after the deadline for any opposition.  The prejudice to Plaintiff is that the late filing of the Opposition prevented Plaintiff from having those five days in which to prepare and file her Reply.  Plaintiff should have had six (6) days to file her Reply.  Instead, she has had mere hours, especially given that the Court has announced that it is deciding this Motion on the pleadings without the benefit of argument.

Throughout this case, Defendant has insisted that Plaintiff be required to hew to the strict deadlines of briefing and discovery and the Court has supported this requirement.[1]  It is only fair that Defendant be held to the same standard and his Opposition must be struck.

### 2.  Defendant's Opposition Fails to Address the Need for the DNA Sample for Punitive Damages and Cites No Authority for His Argument that "DNA Sample is Not Relevant to Damages."

Despite the fact that Plaintiff in her Rule 72 Objection repeatedly asserts that she needs the DNA sample in order to litigate her punitive damages claim, *ECF 101* at 2, 4 n.3, 5, 6, 7-11. Sidar nowhere in his Opposition addresses this argument.  It is clear that Defendant has no legitimate argument in contravention to this need which has been asserted since the filing of the Complaint, *ECF 1* at ¶¶ 51, 55, and 60-67, in each notice request for the DNA sample, *ECF 26.1; ECF 75.1* at 2, and in each of Plaintiff's filings dealing with the DNA sample.  *ECF 26* at 2; *ECF 64* at 9-10*; ECF 75* at 2.

Moreover, Sidar asserts, without any authority or factual support, that

Despite Plaintiff's assertions to the contrary, the DNA sample only goes to the issue of Defendant's liability. It does not go to the issue of damages as the category of damages asserted by Plaintiff (lost wages, pain and suffering, attorneys fees, etc.) has nothing to do with the Defendant's DNA.

*ECF 107* at 4.

---

[1]      For example, the Court refused Plaintiff's request for a continuance of the discovery deadline despite the fact that Sidar failed to comply with the Order to provide a DNA sample and to comply with numerous other discovery obligations.

The DNA sample is relevant to Plaintiff's claim for Intentional Infliction of Emotional Distress, *ECF* 1 at Count III (¶¶ 60-67), as well as emotional damages asserted in her Assault claim, *ECF* 1 at Count I (¶ 51) and Battery claim (*ECF 1*at ¶ 55). Therefore, the Magistrate Judge's Order which finds that "[g]iven the recommendation that liability would not be an issue at trial and the trial would be limited to plaintiff's alleged damages, there was no further requirement that defendant provide the buccal swab samples to plaintiff . . . .", *ECF 80* at 2-3, is clearly erroneous and must be vacated and reversed.

> **3.      Sidar Waived Any Objection to Any Alleged Non-Compliance with FRCP Rule 34 and 35 by Not Including Them in His Objection to the Second Notice, Even if Such an Objection Were Valid**

In his Opposition, Sidar asserts that "the notice at issue was issued four days before the required compliance on December 7, 2022," and that this limited notice was insufficient under FRCP 34 and 35. *ECF 107* at 4. This is not accurate. At the time that the Second Notice was issued on December 2, 2022, the Order issued by Magistrate Judge Buchanan was a valid order. Thus, there was no requirement that Plaintiff provide Sidar with 30 days' notice to further delay the providing of the DNA.

Moreover, Sidar filed 16 Objections to the Second Notice of DNA Sampling, Exhibit A, and nowhere in those 16 objections did Sidar raise any objection to the amount of notice that Plaintiff provided for the DNA sample. Therefore, Sidar waived any such objection.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court 1) strike Defendant's Opposition (*ECF 107*) to Plaintiff's Rule 72 Objection and 2) vacate and revers  the Order issued by Magistrate Judge Anderson (*ECF 80*) because it contained factual findings that were clearly erroneous, and its holding is contrary to law and require Defendant

Cenk Sidar to provide a DNA buccal swab to Plaintiff which may be used to establish her

entitlement to punitive damages.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: __ _/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of January, 2023, counsel electronically
filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send
notification of such filing to all counsel of record.

/s/ Thomas F. Urban II_____
Thomas F. Urban II

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| JANE DOE | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR | : |
| | : |
| Defendant. | : |

_____

## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S NOTICE OF PHYSICAL EXAMINATION AND DNA SAMPLING OF DEFENDANT

Defendant, Cenk Sidar ("Defendant"), by counsel, objects to Plaintiff Jane Doe's ("Plaintiff") Notice of Physical Examination and DNA Sampling of Defendant ("Notice") on the following grounds:[1]

1.      Plaintiff's Notice fails to establish that "good cause" exists for the taking of a DNA sample pursuant to Rule 35.

2.      Plaintiff's Notice fails to establish the "in controversy" requirement for the compulsion of a DNA sample pursuant to Rule 35.

3.      Plaintiff's Notice fails to explain how Plaintiff intends to compare a DNA sample compelled from Defendant to anything.

4.      Plaintiff's Notice fails to allege that there is a DNA sample at The Havens that is of such a quantity and of such a quality as to allow for accurate DNA analysis.

_____

[1] Defendant also incorporates by reference the arguments made, and authority relied upon, in his Opposition to the Motion to Obtain Physical Examination of and DNA Sample from Defendant.

5.      Plaintiff's Notice fails to establish that the integrity of a DNA sample at The Havens has been preserved or that it even still exists.

6.      Plaintiff's Notice fails to establish a prima facie showing of a reasonable possibility of a match between the alleged DNA sample from her and a DNA sample from Defendant.

7.      Plaintiff's Notice fails to comply with the requirements imposed by Rule 35 of specifying the manner, conditions, and scope of the examination, as well as the person(s) who will perform it.

8.      Plaintiff's Notice improperly designates Plaintiff's counsel's office, as opposed to a medical facility, for the taking of the DNA samples.

9.      Plaintiff's Notice does not specify how the DNA samples will be collected, including which type of samples will be taken and the methods used to take those samples.

10.      Plaintiff's Notice fails to specify where and how the DNA will be analyzed, stating only that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." It is also unclear what "tests" Plaintiff's Notice is referring to.

11.      Plaintiff's Notice states that the DNA collected will be compared "with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." Plaintiff fails to establish where these items currently are and what the chain of custody for these items has been.

12.      Plaintiff's Notice is overly broad as it states that the inspection and taking of the sample "will be for the purpose, *among other things*, ......." (emphasis added).

13.      Plaintiff's Notice asserts that the information "will further be relevant to Plaintiff's claim for punitive damages." Examinations pursuant to Rule 35 are not permissible to establish damages.

14.     Plaintiff has failed to make a prima facie showing of a reasonable possibility of a match and has failed to offer an evidentiary basis for concluding that any alleged DNA that she is in possession of belongs to Defendant.

15.     The issue of whether Plaintiff is required to submit to a physical examination is currently pending on appeal before the United States Court of Appeals for the Fourth Circuit.

16.     London Police have not verified the information asserted by counsel for Plaintiff in open court and in pleadings regarding the DNA sample.

Dated: December 6, 2022                          /s/ Mariam Tadros_____
                                                 Mariam W. Tadros (VSB #75502)
                                                 Abigail S. Reigle (VSB # 92947)
                                                 REES BROOME, PC
                                                 1900 Gallows Road, Suite 700
                                                 Tysons Corner, VA 22182
                                                 Tel: (703) 790-1911
                                                 Fax: (703) 848-2530
                                                 Email:  mtadros@reesbroome.com
                                                 *Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on December 6, 2022, a copy of the foregoing
**DEFENDANT'S OBJECTION TO PLAINTIFF'S NOTICE OF PHYSICAL EXAMINATION AND DNA SAMPLING OF DEFENDANT** was served via email to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC 20004
wes@sclgrp.com

/s/ Mariam Tadros
Mariam W. Tadros

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JANE DOE, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR, | : |
| | : |
| Defendant. | : |

**<u>DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
RENEWED MOTION TO REMOVE PSEUDONYM DESIGNATION</u>**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Reply to Plaintiff Jane Doe's ("Plaintiff) Opposition ("Opposition") to Defendant's Renewed Motion to Remove Pseudonym Designation.

### A.     The Doctrines of Waiver and Laches Do Not Apply.

As a threshold matter, Plaintiff makes the bald and unsupported allegations that "[t]here can be no prejudice to the defendant by maintaining pseudonymity" and that "Plaintiff . . . has taken no actions to publicly humiliate Defendant . . . ." ECF No. 108, at 9-10. This is simply untrue. Plaintiff's allegations submit Defendant to reputational harm, including in relation to his profession. **Exhibit 1**, Sidar Decl. ¶ 8. For example, Plaintiff's counsel has already sent correspondence to the Chief Administrative Officer of Defendant's employer outlining the baseless allegations made by Plaintiff in this matter. Sidar Decl. ¶ 9.

Plaintiff also takes issue with the fact that Defendant did not seek to remove the pseudonym designation in Fairfax Circuit Court.[1] ECF No. 108 at 2. However, the same ease for widespread dissemination of the allegations was not present in Fairfax Circuit Court as it is in the District Court. Fairfax does not have an electronic public access system to court records like PACER. The only electronic system that Fairfax has is CPAN, which is a subscription-based service that allows users to view the docket itself and not the pleadings and documents filed in a matter, as well as the allegations contained therein.[2] PACER allows anyone to view full pleadings and documents filed

---

[1] Plaintiff makes various ad hominem attacks against undersigned counsel. These attacks deter from the real issue in this case, which is whether a Plaintiff should be able to file a $12,000,000 lawsuit without having to disclose her identity. Case law simply does not support this request.

[2] Specifically, for civil cases, the information available online in CPAN is limited to "the case number, date filed, status, plaintiff(s), defendant(s), case subtype, attorney(s), and a register of actions with the most recent activities shown first." **Exhibit 2,** Fairfax Circuit Court, Court's Public Access Network Information Package, at 3.

in a matter without having to physically go to the courthouse to retrieve those documents, which is the case in Fairfax Circuit Court.

Plaintiff asserts that the default entered against Defendant effectively precludes him from seeking to strike the pseudonym designation. Aside from lacking any case law to support this argument, the Plaintiff ignores that the harm to Defendant is the same regardless of whether a default is entered against him. Defendant still has to defend this matter, and his reputation, while Plaintiff wishes to remain anonymous.

Plaintiff also asserts that prior to filing her case in Fairfax Circuit Court she undertook extensive discussions with Defendant's counsel in efforts to avoid litigation and that Defendant did not request confidentiality or anonymity. ECF No. 108 at 11. However, Plaintiff fails to mention that her counsel threatened to ruin Defendant's reputation in what can be charitably called extortion to try to force some sort of settlement. Sidar Decl. ¶¶ 3-7. Additionally, Defendant did not have counsel at that time. Sidar Decl. ¶¶ 4, 7. Plaintiff concludes that "Plaintiff believes that Defendant has waived any right to relief on his motion, and that his motion is filed solely to create additional angst and emotional harm on Plaintiff." ECF No. 108 at 11. However, Plaintiff cites no support for her arguments that Defendant waived any rights or that the doctrine of laches is in any way applicable.[3]

"Laches is one of the affirmative defenses generally allowable under Fed. R. Civ. P. 8(c), although it is properly relevant only where the claims presented may be characterized as equitable, rather than legal." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Laches imposes on the defendant (or, rather, Plaintiff, under the theory that she is advancing) the burden of proving "(1)

---

[3] Plaintiff also stresses that "Defendant took few, if any, steps to protect his identity . . . ." ECF No. 25 at 2. Besides being untrue, this is also irrelevant to the analysis of revealing Plaintiffs' identity.

lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Constello v. United States*, 365 U.S. 265, 282 (1961). The first element, lack of diligence, exists where "the plaintiff delayed inexcusably or unreasonably in filing suit." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987). Prejudice to the defendant, the second element, "is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Obviously neither of these elements, and, by extension the doctrine of laches itself, applies to the present motion.

**B.     Plaintiff Fails to Rely on Case Law that is Binding on this Court.**

Plaintiff begins her Opposition arguing that the "cases cited by Defendant are inapposite" and "do not address the anonymity of rape victims." ECF No. 108 at 4. Plaintiff asserts that "[t]he instant case is a rape case, and cases which address rape and sexual misconduct are the only ones relevant to Defendant's Motion." *Id*. However, as detailed below, Plaintiff does not point to any binding case law in this circuit, or really cases in the Fourth Circuit generally, to rely on her claims. While there may be no "rape victim" cases in the Fourth Circuit, there are plenty of cases, as discussed throughout Defendant's Memorandum, that discuss the principles behind the *James* factors. The application of the principles that the Fourth Circuit has elaborated upon is much more applicable to the present case in the Eastern District of Virginia as opposed to "rape victim" cases in other jurisdictions with different standards.[4] Regardless, the cases that Plaintiff relies upon do not support her claims.

---

[4] Plaintiff insinuates that this Court should give less weight to the Fourth Circuit case *Doe v. Public Citizen* because it was *criticized* in a *District of Columbia Circuit Court*, which is completely separate from the Fourth Circuit. ECF No. 108 at 4. Plaintiff further brings attention to the fact that *Doe v. Merten*, an Eastern District of Virginia case, was cited in contradiction by an opinion issued by the *Attorney General of Texas*. ECF No. 108 at 4. Defendant is not going to waste this Court's time by distinguishing this clearly irrelevant District of Columbia Circuit Court case and completely inapplicable opinion issued by the Attorney General of Texas.

Plaintiff attempts to rely upon *Doe v. Cabrera*, a United States District Court for the District of Columbia opinion. ECF No. 108 at 5. In *Cabrera*, a plaintiff brought a civil action against the defendant for allegations of assault, battery, and intentional infliction of emotional distress and sought to proceed under a pseudonym. 307 F.R.D. 1, 2 (D.D.C. 2014). The court found that "the public disclosure of the plaintiff's true identity is very likely to result in psychological trauma," a finding, based in part, by the plaintiff's submission of a detailed affidavit describing her trauma and, as a result, subjecting herself to perjury charges if her allegations were later determined to be untrue. *Id.* at 6. Plaintiff in the present matter did not submit an affidavit with her Opposition. Even more importantly, the plaintiff in *Cabrera* submitted an affidavit confirming her concerns "by a licensed clinical social worker, with over ten years of experience, who has evaluated the plaintiff." *Id.* at 7 n.10. The Plaintiff here did not submit any such evidence.

Finally, Plaintiff fails to note that the *Cabrera* court held that if the matter proceeded to trial, the plaintiff would not be allowed to use a pseudonym. *Id.* at 10 n. 15 ("It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the plaintiff to conceal her true identity. The Court cannot afford the plaintiff that potential advantage at the expense of the defendant, who like the plaintiff is also entitled to a fair trial."). It is telling that the Plaintiff omitted this very crucial fact.

Next, Plaintiff relies upon *Doe v. De Amigos, LLC*, another case from the United States District Court for the District of Columbia. In *De Amigos*, the plaintiff alleged that she was sexually assaulted after being served underage at a venue owned and operated by the defendant. *Doe v. De Amigos*, 2012 WL 13047579, at *1 (D.D.C. April 30, 2012). In that case, the reputational concerns against the defendant were different because the defendant was merely accused of serving alcohol to an underage individual, not of committing rape. *See id.* at *3 ("Here, the defendant challenging

4

plaintiff's motion is not the alleged attacker, but the venue that allegedly served her alcohol. Thus, the stigma that the courts feared would attach to the defendants in those cases is not of particular concern here."). Plaintiff also relies on *Doe v. Evans*, an Eastern District of Pennsylvania case in which alleged sexual assault victims brought civil rights claims against the Commissioner of the Pennsylvania State Police. 202 F.R.D. 173, 175 (E.D. Pa. 2001). The *Evans* plaintiff brought claims against the government, as opposed to a private entity.

Plaintiff concedes *Doe v. Rector & Visitors of Georgia Mason University* is the closest to the instant case, and that the Court "*granted* Plaintiff's request for pseudonymity." ECF No. 108 at 6. However, Plaintiff fails to mention that the *plaintiff* was the alleged rapist, not the victim, in that case. As detailed in Defendant's Memorandum in Support, in *Rector & Visitors of George Mason University*, Plaintiff Doe brought an action against George Mason University following a disciplinary process that he asserted was constitutionally-inadequate, which resulted in his expulsion after he was found responsible for sexual misconduct." 179 F. Supp. 3d 583, 585 (E.D. Va. 2016). The Court noted that "Plaintiff has been accused of sexual misconduct, the mere accusation of which, if disclosed, can invite harassment and ridicule." *Id.* at 593. The Court noted that "it is possible that plaintiff could be targeted for 'retaliatory physical or mental harm' based on the accusations alone." *Id.* (quoting *James*, 6 F.3d at 238). The Court concluded that "what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct—a rapist." *Id.* The Court then continued that "[i]f plaintiff is ultimately found not responsible" as to the sexual misconduct allegations, "then he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma." *Id.* at 594. The right to use a pseudonym was given to the plaintiff because of the potential harm of the label of "accused rapist," not to a defendant who is alleging she is a "rape victim." This fully supports

Defendant's position that he has been harmed by having his name in the public, relating to accusations that he denies, and that Plaintiff should not be given anonymity when he is not afforded the same privileges.

In *Doe v. University of Rhode Island*, a matter in which a plaintiff alleged that she was sexually assaulted and sought to proceed under a pseudonym, the court noted that:

> While I am sympathetic to plaintiff's quest for privacy, I do not find her situation is so compelling that nondisclosure is appropriate. It must be remembered that plaintiff is a victim and not the perpetrator of a violent, abusive and criminal act. The nature of plaintiff's claim does not involve any admission on her part that she has or will be engaged in any illegal activity, that she has violated the law or that she willingly engages in unaccepted sexual practices.

*Doe v. Univ. of R.I.*, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993). In sum, unlike the cases, which are not binding authority, regardless, that Plaintiff relies upon, she offered no actual support for her claims from anyone who has knowledge of the facts giving rise to this case, instead relying upon two inapplicable "articles," as detailed further, below. She has accused a private individual of being a rapist and has not made any admissions on her own part that she has engaged in any illegal activity or that she violated the law. She has no basis upon which to proceed under a pseudonym.

## C.   Plaintiff is Not Permitted to Proceed Under a Pseudonym Merely to Avoid Criticism and Preserve Her Privacy.

Plaintiff cites to a Seventh Circuit Court case for the proposition "that rape victims are entitled to anonymity." ECF No. 108 at 7 (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)). However, the Seventh Circuit which is, again, not binding precedent in this Circuit in any manner, stated that "fictious names *are allowed* when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)

6

(emphasis added). The court also noted that "[t]he use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Id.* at 872. Clearly such use is permissive, not a blanket entitlement.

The next case that Plaintiff heavily relies upon is from the United States District Court for the Eastern District of New York in which the plaintiff brought claims that he was sexually abused by a rabbi at a Jewish school when he was a child. *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 194 (E.D.N.Y. 2006). The plaintiff alleged that Rabbi Kolko sexually abused him while he was a minor student at Yeshiva, where Kolko was employed. *Id.* at 194. The plaintiff sought to procced anonymously in the litigation. In support, the plaintiff stated that he had been diagnosed with several psychiatric disorders, including post traumatic stress disorder, and that he would experience psychological harm if his identity was revealed in this case, "a claim supported by his treating psychiatrist," who submitted a declaration in support of the plaintiff's motion. *Id.* at 19495. In *Kolko*, the court also noted that there were two other plaintiffs who publicly disclosed their identities, so this balanced out the fact that the rabbi's reputation was at stake and better gave him "a public forum to defend the charges of abuse." *Id.* at 196; *see also id.* at 198 ("[S]ince there are two other plaintiffs in this Court alleging similar conduct who will be proceeding under their real names, defendants will have an unfettered opportunity to present their defenses and to challenge the credibility of their accusers."). This is not similar to the present case, where Plaintiff has not even provided an affidavit subjecting herself to perjury.

Citing to the United States Supreme Court opinion *Coker v. Georgia*, Plaintiff asserts that "the U.S. Supreme Court has recognized the seriousness of rape." ECF No. 108 at 7. Defendant does not disagree. In fact, in *Coker*, the Supreme Court noted that it did "not discount the

seriousness of rape as a crime" and that "[i]t is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). This speaks to how the public would perceive an accused rapist, not a rape victim.

Plaintiff also attempts to rely on the Seventh Circuit case of *Doe v. City of Chicago*. In *City of Chicago*, the plaintiff brought suit against a Chicago police officer, including claims for sexual harassment. 360 F.3d 667, 668 (7th Cir. 2004). The matter was on appeal related to the district court's grant of summary judgment, but the court noted that: "[a]s an aside, we express our concern about the plaintiff's litigating under a pseudonym." *Id.* In raising the issue *sua sponte*, the court continued that plaintiff:

> merely filed the complaint anonymously, there was no objection, and the judge conducted no inquiry into the propriety of anonymity. The judge's failure to make an independent determination of the appropriateness of the plaintiff's concealing her name was error because, as we have explained, "the use of fictious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts."

*Id.* at 669-70 (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (D.R.I. Dec. 28, 1993)). The court remanded the matter back to the district court to determine whether the plaintiff could anonymously litigate the matter, even though such designation was not being challenged by the defendant. *Id.* at 674. It is unclear why Plaintiff thinks that this opinion supports her Opposition.

Plaintiff also cites to the Virginia statute concerning crime victim and witness rights for the proposition that "Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution." ECF No. 108 at 8. Relying

on this statute, Plaintiff also asserts that "[t]he strong public policy to protect rape victims hews strongly in favor of Plaintiff retaining anonymity." *Id*.

This statute, which, importantly, is within the *criminal* procedure title of the Virginia Code, says that victims and witnesses *to any crime* should be afforded certain rights, including that "their privacy is protected to the extent permissible under law." Va. Code § 19.2-11.01(A). This statute applies to *any* crime victim or witness and does not expound any policy to specifically protect rape victims. Regardless, again, this does not confer any *right* upon Plaintiff to proceed anonymously and any right to protection would be limited to the extent permissible under law, including under the *James* factors. *See also Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) ("[T]he criminal statutes cited by plaintiff apply to situations where the government chooses to prosecute a case, and offers anonymity to a victim who does not have a choice in or control over the prosecution. In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record. The Court is cognizant of the defendants' concerns, and finds that it would be fundamentally unfair to allow plaintiff to make sure serious allegations against them without standing, as they must, in a public forum".).

### D. Plaintiff Does Not Establish That Revealing Her Identity Would Pose Harm to Her.

Plaintiff's Opposition asserts:

> Plaintiff works in governmental and military contracting worldwide, including in the Middle East. It is a well-documented fact that women who have been raped are subjected to ridicule, abuse, arrest, and prosecution in the Middle East.

ECF No. 108 at 9.

In support of this proposition, Plaintiff cites to a January 2019 *Frontiers in Psychology* article, specifically quoting the language: "Victims of sexual assault in many Middle Eastern communities are punished even outcast by their families, or must marry their rapists in order to

<div align="center">9</div>

restore honor to their families." ECF No. 108 at 9. However, she does not allege that she lives in the Middle East or that she has a Middle Eastern family. *See, e.g.,* ECF No. 1 ¶ 6 ("Plaintiff is a natural person and a domiciliary of the Commonwealth of Virginia."). Furthermore, the *Frontiers in Psychology* article generally is not focused on sexual assault in Middle Eastern countries. Instead:

> This paper provides a comprehensive review of the research literature on victim blame in acquaintance rape cases, highlighting inconsistencies and drawing particular attention to area of research in need of further exploration. Specifically, we review the commonly studied individual (perceiver) facts that influence victim blaming, as well as common situational (target) factors included or manipulated within sexual assault scenarios. Our review reveals many inconsistent findings and interactions between perceiver and scenario factors. In an effort to make sense of these complex interactions and inconsistent findings, we suggest a need for more transparency in describing the scenarios used in research on victim blaming in sexual assault cases and greater empirical attention to sociocultural factors that may influence blaming tendencies.

ECF No. 108-1 at 1. Instead Plaintiff cites to the single sentence in the article that refers to sexual assault in Middle Eastern communities, which is a one-sentence summary of a 1998 article, in the background portion of the article on "Rape Culture." Plaintiff did not even take the time to cite to, or probably even review, the article that actually discussed this topic.

Plaintiff also cites to an *Asia Times Online* article, quoting the portion that reads: "in some countries such as the United Arab Emirates, rapists can face the death penalty, but sex outside marriage, or *zena*, is also a serious crime, and women who have reported sexual assaults have then been arrested themselves." ECF No. 108 at 9 (quoting ECF No. 108-2). This article is referring to people who report their sexual assault to Middle Eastern authorities after the sexual assault happens in the Middle East. Plaintiff did not report any sexual assaults in the Middle East or to

any Middle Eastern authorities. Rather, she reported to London authorities that she was allegedly sexually assaulted in London and then brought claims in the United States.

Regardless of the inapplicability of these articles, they are an improper attempt to admit expert testimony as hearsay and lack any foundation. "Under Virginia law, issues 'beyond the realm of common knowledge and experience of a lay jury' generally require expert testimony" and "[t]he expert testimony rule applies in diverse settings." *Benedict v. Hankook Tire Co. Ltd.,* 286 F. Supp. 3d 785, 791 (E.D. Va. 2018) (quoting *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The evidence that Plaintiff is attempting to introduce—that victims of sexual assault in the Middle East are subject to assault and arrest in the Middle East—is beyond the realm of common knowledge and would require expert testimony. However, the articles she attempts to introduce are hearsay that, *inter alia*, lack any sort of foundation. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Plaintiff is attempting to rely on the articles, written by authors who are not submitting affidavits and who presumably do not even know who Plaintiff is, for the truth that women in the Middle East who are sexually assaulted can be arrested themselves. Somehow, she also makes the leap that women who are sexually assaulted in London and pursuing civil claims against the purported assailant in the United States will also be subject to arrest in the Middle East if they happen to travel there. This is quite a leap.

Plaintiff concludes that she "is rightfully afraid of the consequences if the fact that she was raped becomes publicized, especially in countries where she works and visits regularly," and that

"[i]n light of her own personal experiences and well documented research and reporting, this fear is fully justified." ECF No. 108 at 9. The scintilla of support that Plaintiff cobbled together after a quick internet search is a far cry from "well documented research and reporting."

### E.   Both the Third and Fourth Factors Weigh Against Plaintiff.

Plaintiff asserts that in *Doe v. Virginia Polytechnic Institute & State University*, "the Court determined that the third *James* factor is crucial when a party is underage but otherwise neutral when they are not." ECF No. 108 at 10. However, this is certainly not what the Western District of Virginia Court held. This is another case in which the plaintiff who sought to proceed anonymously was the *alleged sexual assailant. See Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *1 (W.D. Va. March 30, 2022). Plaintiff was a student at the university and a female accused him of sexual assault. *Id.* A student conduct hearing was held and the plaintiff was dismissed from the university. *Id.* He brought claims against the university, as well as some of the people involved in the disciplinary process, for violations of his procedural due process rights. *Id.* Regarding the third factor, the court noted that "the age of the female student who made the accusation against Doe is unknown" and that "identifying Doe increases the chances that the female student also will be identified and if she was a minor or very young adult when she filed her complaint against Doe, identifying him could bring unwanted attention to her." *Id.* at 3. Therefore, "[o]n balance, the court finds Doe's age to be a neutral factor in deciding whether he should proceed under a pseudonym." *Id.* It is undisputed that both Plaintiff and Defendant in the present matter are adults so this case weighs against Plaintiff proceeding with a pseudonym.

In *Cabrera*, a case heavily relied upon by Plaintiff in her Opposition, the court noted that "[w]here victims are not minors, courts are generally less inclined to let the alleged victim proceed in litigation under a pseudonym" and that "[h]ere, the plaintiff was not a minor at the time of the

incident . . . so *this factor weighs against allowing the plaintiff to proceed anonymously.*" *Doe v. Cabrera*, 307 F.R.D. 1, 7-8 (D.D.C. 2014) (emphasis added); *see also W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("Plaintiff's age tips in favor against anonymity; while the Complaint and instant Motion are silent as to the issue, it appears he is an adult who had been employed since at least 2013."); *Doe v. De Amigos*, 2012 WL 13047579, at *2 (D.D.C. April 30, 2012) ("Plaintiff was eighteen at the time of the alleged sexual assault and at least eighteen at the time she filed the complaint in this action, so she was an adult under District of Columbia law. This weighs against anonymity.") (internal citation omitted).

In regard to the fourth factor, plaintiff admits that "[t]his action is between private parties, and not against a government or public entity." ECF No. 108 at 10. This is where the analysis should end. However, for some reason, Plaintiff thinks that "[t]his factor would only weigh against Plaintiff if there was any risk of harm to the Defendant's reputation that would offset Plaintiff's need for anonymity." *Id.* Relying again on *Virginia Polytechnic Institute & State University*, Plaintiff argues that this factor is "neutral in this case." ECF No. 25 at 9. The *Virginia Polytechnic Institute* court did find that the fourth factor "weighs neither in favor nor against allowing Doe to proceed anonymously," but that was because "although Doe names individual defendants, he is suing them only in their official capacities." *Doe v. Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *3 (W.D. Va. March 30, 2022). This somehow led Plaintiff to conclude that "[l]ifting the veil of anonymity only harms Plaintiff, extends and amplifies the emotional toll this has taken on her, adds an additional layer of financial burden in responding to Defendant's motion at this late stage in their litigation history and risks exposing her to new physical, mental and financial harm." ECF No. 108 at 10.

13

Also in relation to the fourth factor, the *Cabrera* court, again, noted that "[i]n assessing whether pseudonymous litigation is appropriate, courts must also consider whether an accused defendant is a governmental entity or a private party" and, as a result, "[t]his factor weighs against allowing the plaintiff to use a pseudonym because the defendant is a private litigant, who undoubtedly has concerns about his reputation." *Id.* at 8; *see also W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("The fourth factor also weighs against anonymity, as this action is brought against a private party and not a governmental entity."); *Doe v. De Amigos*, 2012 WL 13047579, at *3 (D.D.C. April 30, 2012) ("Defendant challenging the use of pseudonym in this action is a private corporation . . . . This factor also weighs against anonymity.").

Despite Plaintiff's attempts to muddy the waters and conflate issues with baseless allegations and inflammatory language, it is crystal clear that both the third and fourth *James* factors weigh in favor of Plaintiff not being to proceed anonymously because both Plaintiff and Defendant are adults and they are both private parties.

**F.    Fairness Requires that Plaintiff's Identity Be Public.**

Plaintiff asserts that "Defendant has described no unfairness to him in maintaining Plaintiff's anonymity." ECF No. 108 at 11. This could not be further from the truth. These issues are addressed in a case from the District Court for the Southern District of New York.[5] In *Doe v. Shakur*, the District Court for the Southern District of New York addressed the "difficult question of whether the victim of a sexual assault may prosecute a civil suit for damages under a pseudonym." 164 F.R.D. 359, 360 (S.D.N.Y. 1996). The court ultimately held:

---

[5] Throughout her opposition, and as detailed, *infra*, Plaintiff relies heavily upon the Eastern District of New York case *Doe No. 2. v. Kolko*. Utilizing her logic, a Southern District of New York Case should be equally persuasive.

> The present case is a difficult one. If the allegations of the complaint are true, plaintiff was the victim of a brutal sexual assault. Quite understandably, she does not want to be publicly identified and she has very legitimate privacy concerns. On balance, however, these concerns are outweighed by the following considerations.
>
> First, plaintiff has chosen to bring this lawsuit. She has made serious charges and has put her credibly in issue. Fairness requires that she be prepared to stand behind her charges publicly.
>
> Second, this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws . . . .
>
> Third, [defendant] has been publicly accused. If plaintiff were permitted to prosecute this case anonymously, [defendant] would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity.

*Id.* at 361. Plaintiff asserts that she "is a rape victim" and "if rape victims like her are required to disclose their anonymity it will serve as a caution note [sic] to other rape victims and be viewed as another tool of retaliation by Defendants [sic]." ECF No. 108 at 6.[6] The *Shakur* court also noted that "[i]t may be, as plaintiff suggests, that victims of sexual assault will be deterred from seeking relief through civil suits if they are not permitted to proceed under a pseudonym" and "[t]hat would be an unfortunate result . . . however, plaintiff and others like her must seek vindication of their rights publicly. *Id* at 362; *see also Doe v. Hartz*, 52 F. Supp. 2d 1027, 1048 (N.D. Iowa 1999) (noting, in the context of a sexual assault case, that the "court considers it appropriate here to weigh

---

[6] Plaintiff also relies on the Southern District of West Virginia case of *W.M. v. Braskem America, Inc.*, 2020 WL 1492544 (S.D. W. Va. Mar. 26, 2020). In *W.M.*, the plaintiff sought to proceed using his initials to keep private the results of a drug test that he alleged was improperly disclosed. *Id.* at 2. Importantly, the court noted that "Defendant has not even opposed Plaintiff's motion." *Id.* at 2. In the present matter, Defendant is opposing Plaintiff's use of a pseudonym.

the speculative nature of the potential harm to Doe from revealing her identity against the very real

embarrassment her accusations have already caused the defendants").

## III.   <u>CONCLUSION.</u>

For the reasons set forth herein, Defendant Cenk Sidar requests that the Court grant his

Renewed Motion to Remove Pseudonym Designation, enter an order requiring that references to

Plaintiff Jane Doe in all filings and proceedings in this cause shall be her true name, that her

identity is not to be redacted in all filings, and grant such other and further relief in favor of

Defendant as this Court deems just and proper.

<div style="text-align:center">

CENK SIDAR
By Counsel

</div>

/s/ Mariam W. Tadros
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
Email:  mtadros@reesbroome.com
Counsel for *Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 12, 2023, a copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO REMOVE PSEUDONYM DESIGNATION** was served electronically through CM/ECF to:

> Thomas F. Urban II, Esq.
> FLETCHER, HEALD & HILDRETH, PLC
> 1300 North 17th Street, Suite 1100
> Arlington, VA  22209
> Fax: (703) 340-1450
> urban@fhhlaw.com
>
> Walter Steimel, Jr., Esq.
> STEIMEL CONNER LAW GROUP PLLC
> 144 Pennsylvania Ave., N.W., Suite 400
> Washington, DC  20004
> wes@sclgrp.com

<div align="right">

/s/ Mariam W. Tadros         
Mariam W. Tadros

</div>

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JANE DOE        :
           :
   Plaintiff,     :
           :
v.           : Civil Action No. 1:22-cv-00545 (CMH/TCB)
           :
CENK SIDAR       :
           :
   Defendant.    :
_____

## DECLARATION

The undersigned, Cenk Sidar, pursuant to 28 U.S. Code § 1746, submits the following declaration in connection with Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Remove Pseudonym Designation.

1.  I am over the age of 18 and competent to testify.

2.  I have personal knowledge of the facts relevant to this matter.

3.  Prior to Plaintiff's counsel, Thomas Urban, filing the Fairfax Circuit Court case in this matter, Plaintiff's counsel contacted me.

4.  I did not have counsel at the time.

5.  He attempted to both settle claims Plaintiff made against me and obtain my consent to providing a DNA sample.

6.  Mr. Urban said to me: "You are a businessman, you are married, and have kids, and don't want this to be a major issue for you, so why don't you just do what we ask you to do and provide DNA?"

1

7.      The statement in Plaintiff's Opposition that "[p]rior to her filing, she undertook extensive discissions with Defendant's counsel in efforts to avoid litigation" is false, as I was not represented by counsel at the time.

8.      Plaintiff's allegations subject me to reputational harm, including in relation to my profession.

9.      For example, Walter Steimel, Plaintiff's other attorney in this matter, sent the correspondence, attached to this declaration as **<u>Exhibit A</u>**, to the Chief Administrative Officer of my employer, Enquire AI, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2022.

_____
Cenk Sidar





**STEIMEL COUNSELORS LAW GROUP**
A PROFESSIONAL LIMITED LIABILITY CORPORATION

Mr. Fatih Orhan
Chief Administrative Officer
Enquire AI, Inc.
May 25, 2022
Page 3

founders, investors or owners, including but not limited to policies addressing harassment, sexual conduct, business conduct, discrimination, or similar policies.

The scope of this notification relates to Discoverable Data owned, accessed, maintained, or used by, or within the possession, custody or control of, Enquire, both as a company and by any officers, directors, founders, investors, owners or employees in both their personal and professional or business capacity generated, stored or created on or after September 1, 2017, through the present date.

Electronic documents and the storage media on which they reside contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we seek retention of all documents in their electronic form along with meta data or information about those documents contained on the media. We demand preservation of all meta data, document property fields (unchanged), statistics, version data, author and commenter data and any other digital data associated with any documents, regardless of the data field or document type. We seek retention of paper printouts of only those documents that contain unique information created after they were printed (e.g. paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which corresponding electronic files exist. In any event, we seek retention of all electronic versions of such documents and all meta data and other statistics related to each and all versions of such documents.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, Enquire must take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies, retrieving equipment in the possession of others and limiting access to files and systems to prevent deletion or destruction of Discoverable Data. We ask Enquire to maintain the highest vigilance to maintain all Discoverable Data.

In addition to previously created documents, with regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence should not be destroyed and your company is to take the appropriate steps required to avoid destruction of such evidence.

In responding to this letter, please retain, including but not limited to, all Discoverable Data including but not limited to each and every file and record over which Enquire, prior counsel, advisors, officers, investors, third parties or others, have control which pertain to the subject matter of this Notice. The following list is not comprehensive but is intended to provide

STEIMEL COUNSELORS LAW GROUP, PLLC
1455 PENNSYLVANIA AVENUE NW, SUITE 400, WASHINGTON DC 20004
TELEPHONE: 202-271-9258                                    E-MAIL: WES@SCLGRP.COM





# Fairfax Circuit Court

## <u>C</u>OURT'S <u>P</u>UBLIC <u>A</u>CCESS <u>N</u>ETWORK

## Information Package



https://ccr.fairfaxcounty.gov/cpan/

## Introduction

This package describes the information accessible through the Court's Public Access Network (CPAN). It also describes the software your organization will need as well as your responsibilities.

If you wish to become a CPAN subscriber, complete the **CPAN Entity Agreement** and have all users listed on **page 7** complete the **CPAN User Agreement**. Please also include your **first quarterly payment of $150 per user** with the forms. Upon receipt of your completed agreements, we will initiate the enrollment process. Original, notarized documents are required before the enrollment process can get started. Both of the agreements must be completed in their entirety.

The forms required for access to CPAN (listed above) are found here:
https://www.fairfaxcounty.gov/circuit/online-services/court-public-access-network

If you have questions, you may call the Circuit Court Information Systems staff at (703) 246-2366 or send email inquiries to ccrhelp@fairfaxcounty.gov .

Thank you for your interest in CPAN.

## OS/Browser requirements

In order to participate in the Court's Public Access Network (CPAN), the subscriber must own a Windows-compatible personal computer (PC). At a minimum, the organization's PC configuration must include the following:

Software

1. Windows 8 (or later) with Internet Explorer 11.0 (or later).

2. Internet Explorer, Microsoft Edge and Chrome are the only supported browsers at this time.

Anything less than the above listed software will make participation in CPAN difficult. It is the subscriber organization's responsibility to obtain personal computer equipment that sufficiently matches the list above.

## CPAN login site

Fairfax County will grant permission for the subscriber to access and connect to CPAN through https://ccr.fairfaxcounty.gov/cpan/ .

## Customer Support

Fairfax Circuit Court will provide limited customer support in the following areas:

CPAN Info v8
Revised 01/28/2022

2

JA900

1. Assistance in initial connection to CPAN.

2. Questions regarding system availability.

3. Questions about adding additional users.

4. Limited search questions.

5. Revoked and/or locked out UserIDs.

## Information Available Through CPAN

### Circuit Court Civil/Criminal Case Information

CPAN information on pending and concluded Circuit Court Civil and Criminal cases is available through two search applications. The FullCourt search includes case activity information from October 18, 2004 to the present and the Legacy search includes case information prior to October 18, 2004, from our old mainframe-based case management systems.

- Cases can be accessed via the FullCourt search using the Case Number, Attorney, Judge, or Party
- Civil and Criminal case information retrieved from the FullCourt search includes the case number, date filed, status, plaintiff(s), defendant(s), case subtype, attorney(s), and a register of actions with the most recent activities shown first.
- Information on Circuit Court Civil and Criminal case activity prior to October 18, 2004, including Civil and Criminal Service Information, may be found in the Legacy search. This search provides users read only access to historical data about Circuit Cases.
- In compliance with the Code of Virginia, Adoption cases and Juvenile Appeals cases are not available on CPAN.

### Real Estate Assessments (managed by the Department of Tax Administration)

The iCare system consists of real estate information (land description, assessment information, improvement characteristics, and ownership data) for all properties in Fairfax County. This information can be accessed by street address number, owner name, or tax map number. Real Estate Accounts Receivable information is also available.

### Delinquent Real Estate Tax Information (managed by the Department of Tax Administration)

The iCare system contains delinquent real estate tax records searchable by owner or street address. Information includes up to 20 years of delinquent real estate tax information (owner name, address, map reference number, property description, tax year, and tax due), and payment history information.

### Zoning and Land Development

LDSNet provides information on zoning applications and land development plans and their related documents. LDSnet is comprised of two systems: the Zoning Case Search System (ZAPS) and the Plan and Waiver System (PAWS). Through LDSnet, it is possible to search for individual zoning applications and/or plans and studies submitted to the County to perform land-disturbing activities. In addition, the LDS database can be searched for zoning applications or construction plan submissions meeting any combination of the thirty-one search criteria.

**Information Available Through CPAN**

**CARS** (Courts Automated Recording System) includes the following:

| Record Type | Index Data/Images | Date Range | Book # |
|---|---|---|---|
| Land Records | Document Images | 1742 - Present | All |
| Land Records | Index Data | 1980 - Present | 5391 and up |
| Land Records | Index Book Images | 1742 - 1979 | A1 - 5390 |
| | | | |
| Judgments | Document Images | 1967-1984; Sept 18, 2000 - Present | 1-36; 75 and up |
| Judgments | Index Data | July 1967 - June 1979; 1985 - Present | 1-21; 37 and up |
| | | | |
| Charters | Document Images | 1934 - 1978 | 1 - 173 |
| Charters | Document Images | 1991 - Present | 397 and up |
| Charters | Index Book Images | 1934 - 1978 | 1 - 173 |
| Charters | Index Data | 1979 - Present | 174 and up |
| | | | |
| Financing Statements | Document Images | 1983 - Present | |
| Financing Statements | Index Data | 1979 - Present | |
| | | | |
| Marriage License | Document Images | 1853 - Present | All |
| Marriage License | Index Book Images | 1853 - 1983 | 1 - 62 |
| Marriage License | Index Data | 1984 - Present | 63 and up |
| | | | |
| Trade Names* | Document Images | 1934 - Present | All |
| Trade Names | Index Book Images | 1934 - 1978 | 1 - 38 |
| Trade Names | Index Data | 1979 - Present | 39 and up |
| | | | |
| Notaries | Document Images | Apr 2000 - Present | |
| Notaries | Index Data | July 1980 - Present | |
| | | | |
| Probate (Wills) | Document Images | 1742 - Present | All |
| Probate (Wills) | Index Book Images | 1742 - 1978 | A1 - 252 |
| Probate (Wills) | Index Data | 1979 - Present | 253 and up |
| | | | |
| Bonds | Document Images | Nov 2004 - Present | 320 and up |
| Bonds | Index Data | 1979 - Present | 154 and up |
| | | | |

*Trade Names are also known as Fictitious Names.

CPAN Info v8
Revised 01/28/2022

4

JA902

### Summary of Requirements

The following is a summary of the responsibilities of the subscriber and the County.

**Your responsibility:**

1. To apply for access from the Circuit Court. **A separate UserID is required for each individual person accessing CPAN**.

2. Payment should be made payable to the "Clerk of the Court" and due at the time of submission. For example, if you apply for access for one user, attach a payment of $150.00 ($50.00 per month for the first quarter).

3. To purchase and/or upgrade all equipment necessary to sufficiently match the PC configuration listed in the OS/Browser requirements section.

4. To acquire Internet Service and establish connection to the provider's home page.

5. If you are an existing subscriber and your company experiences a name change, you will be required to execute the **CPAN Entity Agreement** under the new company name. You also need to have your authorized users execute the **CPAN User Agreement** under the new name of the company.

6. If you are an existing subscriber and have new user(s) that require access, you must execute an **CPAN User Agreement** along with a request to add the new user(s) written on company letterhead.

**County's responsibility:**

1. To provide USERID access code and password.

2. To provide online CPAN user documentation

NOTE:
    Before being granted access to CPAN, your organization must complete a CPAN Entity Agreement. For each person listed as an "Authorized User" on Page 7 of the CPAN Entity Agreement, a CPAN User Agreement is required. Original notarized documents are required. Additional responsibilities will be listed therein.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
JANE DOE                      )
                              )
                              )
                              )
        Plaintiff,            )
                              )
v.                            )  Civil Action No. 1:22-cv-00545
                              )
                              )
CENK SIDAR,                   )
                              )
                              )
        Defendant.            )
```

**ORDER**

THIS MATTER comes before the Court on Plaintiff's Rule 72(a) Objection to Magistrate Judge's December 12, 2022 Order Denying Plaintiff's Second Motion to Compel.

The Court finds that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law, and that the Court's Order Denying Plaintiff's Second Motion to Compel was correct for the reasons stated. It is hereby

ORDERED that Plaintiff's Objection is OVERRULED and the Magistrate Judge's Order of December 12, 2022 is AFFIRMED.

_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 18, 2023

JA904

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) <br>     **A Domiciliary of the** ) <br>     **Commonwealth of Virginia** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **CENK SIDAR** ) <br> ) <br>     **Defendant.** ) | **Civil Action No. 1:22-cv-00545** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S NOTICE OF APPEAL**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys and pursuant to the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), appeals to the United States Court of Appeals for the Fourth Circuit from the order signed and entered January 18, 2023, ECF No. 113, denying Plaintiff's Rule 72(a) Objection to Magistrate Judge's December 12, 2022, Order denying Plaintiff Jane Doe's Second Motion to Compel a DNA Sample from Defendant.

Dated: February 8, 2023

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: ___/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of Febuary, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

2

PLAINTIFF'S NOTICE OF APPEAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**                     ) <br>     **A Domiciliary of the**     ) <br>     **Commonwealth of Virginia** ) <br>                                ) <br>     **Plaintiff,**              ) <br>                                ) <br> **v.**                            ) <br>                                ) <br> **CENK SIDAR**            ) <br>                                ) <br>     **Defendant.**          ) | **Civil Action No. 1:22-cv-00545** <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION TO STAY PROCEEDINGS PENDING DECISION ON**
**APPEAL TO THE FOURTH CIRCUIT**

Plaintiff Jane Doe ("Plaintiff"), through counsel, hereby respectfully moves that this

Court enter an order staying further proceedings in this matter until the U.S. Court of Appeals for

the Fourth Circuit has ruled on her appeal of Judge Hilton's Order upholding Magistrate Judge

Anderson's denial of Plaintiff's Motion to Compel Defendant's DNA for the purposes of use in

the damages phase of this matter, and awarding such other relief that this Court find necessary

and proper. Contemporaneous with this Motion, Plaintiff is filing a Memorandum in support of

this Motion.

                                     Respectfully Submitted,

                                     Jane Doe, by Counsel
                                     THE LAW FIRM OF FLETCHER, HEALD &
                                     HILDRETH, PLC

                                     By:   */s/ Thomas F. Urban II*
                                     THOMAS F. URBAN II, VSB #40540
                                     FLETCHER, HEALD & HILDRETH, PLC
                                     1300 17th Street North, Suite 1100
                                     Arlington, Virginia 22209

(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of February, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

2

MOTION TO STAY PROCEEDINGS PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE**           )<br>      **A Domiciliary of the**   )<br>      **Commonwealth of Virginia** )<br>           )<br>      **Plaintiff,**      )<br>           )<br>**v.**           )<br>           )<br>**CENK SIDAR**      )<br>           )<br>      **Defendant.**    )  | **Civil Action No. 1:22-cv-00545**<br><br><br>**JURY TRIAL DEMANDED** |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO STAY PROCEEDINGS**
**PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT**

Upon consideration of Plaintiff's Motion to Stay Proceedings Pending Decision on

Appeal to the U.S. Court of Appeals for the Fourth Circuit, the briefs filed by the Parties, and

any argument regarding the Motion, it is hereby ORDERED that the Motion is hereby

GRANTED. Specifically, all proceedings in this matter are stayed until the U.S. Court of

Appeals for the Fourth Circuit rules on Plaintiff's Appeal.

_____
Judge, United States District Court
Eastern District of Virginia

cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (PRO HAC VICE)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

Counsel for Plaintiff Jane Doe


Mariam W. Tadros, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

Counsel for Defendant Cenk Sidar

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Memorandum Supporting

Motion to Stay Proceedings Pending Decision on Appeal to the Fourth Circuit ("Motion").

**Background**

Plaintiff filed a Notice of Appeal on February 8, 2023 (*ECF No. 118*), appealing Judge

Hilton's Order (*ECF No. 113*)("Order") affirming and overruling Plaintiff's objection to

Magistrate Judge Anderson's December 22, 2022, Order (*ECF No. 80*) which denied Plaintiff's

request for buccal swab samples from Defendant for purposes of proving damages. Plaintiff

requests that this Court stay the current proceedings pursuant to Fed. R. App. Proc. 8(a)(1)(A)

until the U.S. Court of Appeals for the Fourth Circuit has ruled on Plaintiff's interlocutory appeal

of the Order.

**Legal Standard**

To prevail on a request for stay under Rule 8(a)(1)(A), Plaintiff must meet four criteria:

(1)      Plaintiff has made a strong showing that she is likely to succeed on the merits;

(2)      Plaintiff will be irreparably injured absent a stay;

(3)      Issuance of the stay will not substantially injure the other parties interested in the

proceedings; and

(4)      Issuance of a stay meets the public interest.

*See Wolfe v. Clarke*, 819 F.Supp.2d 574, 578 (E.D. Va. 2011) (Jackson, J.)(*citing Hilton v.

Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *See also Dumas v.

Clarke*, 324 F. Supp. 3d 716, 717 (E.D. Va. 2018).

Plaintiff's request meets these four criteria as set forth below, and requests that this Court

issue a stay in these proceedings until her appeal is decided. Plaintiff's appeal of Judge Hilton's

upholding Magistrate Judge Anderson's denial of Plaintiff's demand to collect and test the DNA

of Defendant is both appealable under *Cohen (cited infra)*, and resolves an important question

independent of the subject matter of the litigation.

<div align="center">

**Argument**

</div>

**I.      Plaintiff Is Likely to Succeed on the Merits**

**A.      Appealability; Collateral Order Doctrine**

Plaintiff appeals the Order under the collateral order doctrine established in *Cohen v.

Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). " *See James v.

Jacobson*, 6 F.3d 233, 236 (4th Cir. 1993). The *James* court recited the elements required to

permit an interlocutory appeal, citing *Taylor v. Nelson*, 788 F.2d 220 (4th Cir. 1986), but leaving

out a critical element of the *Taylor* analysis applicable to the current case. In *Taylor* this Court

found

> The *Cohen* rule permits interlocutory appeal of an order under 28 U.S.C. § 1291
> (1982) if the appealed order conclusively determines the question in the trial court,
> resolves an important question independent of the subject matter of the litigation,

<div align="center">

2

</div>

is effectively unreviewable on appeal from a final judgment or so important that review should not wait upon final judgment, and presents a serious and unsettled question on appeal. *Bever v. Gilbertson,*724 F.2d 1083, 1085 (4th Cir. 1984).

*Taylor v. Nelson*, 788 F.2d 220, 224 (4th Cir. 1986).

### 1.    Conclusive Determination

The Order conclusively determines the question of whether Defendant is required to provide a buccal sample so that Plaintiff can compare the results from the male sperm DNA found in the high vaginal swab sample collected immediately after the rape by The Havens in London. This determination is an important one setting the rights of a plaintiff in a rape case. It seems that a plaintiff rape victim should be afforded that right. The Plaintiff agonized about the risk of pregnancy and exposure to STDs for weeks after the rape and was administered emergency prophylactic STD and pregnancy medications immediately after the rape.

Plaintiff has a right to know the extent of the harm caused by the Defendant. Her right arises from the unprovoked actions of Defendant, and not on any choice of hers. Her rights are substantially greater than any right the Defendant might have. The Defendant cannot complain of harm to him as any harm directly arose from his own decisions and actions. In addition, Defendant waived any rights to privacy or similar rights when he voluntarily provided his DNA sample to the London Metropolitan Police ("Met Police") during his interview after the rape. Plaintiff has briefed this issue extensively in her other filings and incorporate them here by reference. *See, e.g.*, *ECF Nos. 26, 38, 64, 67, 72, and 75*.

While this Court ordered Defendant to provide a buccal swab DNA sample to Plaintiff, he refused to show up for the Court-ordered sample collections. Defendant's refusal to comply with Orders of this Court resulted in entry of a default judgment against Defendant on the issue of liability. *ECF No. 70*. While the entry of a default judgment against Defendant on liability

3

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

remedies Defendant's disregard for Orders of this Court and provides a great measure of relief to Plaintiff, it still does not alter the fact that Plaintiff has a right to the DNA sample, a right granted by (i) Defendant's unilateral action of raping Plaintiff, (ii) Defendant's waiver of any right to privacy in his DNA sample, and (ii) Court opinions in other courts previously cited by Plaintiff that support Plaintiff's position.

### 2.      Important Question

Plaintiff's appeal to the Fourth Circuit will help settle an important question independent of the subject matter, that is, does a civil plaintiff have a right to a DNA sample from a rapist, and in this case a Defendant that is presumed to have raped Plaintiff pursuant to the default judgment. It will conclusively determine the relative rights between Plaintiff rape victims and Defendant rapists for this case and future cases.

If Plaintiff were a complainant in a criminal rape case in Virginia, or in D.C., the police or D.A. would collect the rapist's DNA. But, the rape took place in London and the Met Police were the investigatory body. While Defendant did previously, voluntarily, provide his DNA to police in London, they accidentally lost it. The Met Police have not been able to collect another sample because Defendant refuses to return to London to provide the sample and the Met Police have not issued an Interpol arrest warrant. Why should a rape victim's rights be less, and a rapist's rights be greater, in instances where the Plaintiff rape victim is proceeding in a civil action? This issue needs to be addressed in the U.S. Court of Appeals for the Fourth Circuit.

### 3.      Effectively Unreviewable OR Serious and Unsettled Question

The third criteria under the *Cohen* collateral order doctrine is whether (i) the issue on appeal is effectively unreviewable on appeal, or (ii) presents an unsettled question. Plaintiff's appeal meets both alternate criteria.

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

The rape occurred in September of 2017, five and one-half years ago. As time passes the rape kit DNA sample test results in London run the risk of being less available or accessible. The Met Police have already lost the sample the Defendant voluntarily provided. Time is of the essence and this question must be resolved now. Failure to resolve this question immediately could irreparably injure Plaintiff's rights and ability to prosecute both the compensatory and punitive damages portion of this case.

Further, Plaintiff's appeal presents an important question that appears to be unsettled given the Court declining to require Defendant to provide a buccal swab sample for damages even though it required a sample for liability. The Court's Order is contrary to the required liberal interpretation of Fed. R. Civ. App. 35. *See*, *Ray v. Park*, 2:21-cv-04001-NKL, at *1 (W.D. Mo. Sep. 24, 2021)("Like other rules of discovery, Rule 35 should be "broadly and liberally construed.")*(citing Stillman v. Wal-Mart Stores East I, L.P.,* No. 4:19-CV-00222, 2019 WL 11851712, at *1 (W.D. Mo. Dec. 3, 2019)*(citing RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.,* No. 4:18-CV-06037-DGK, 2019 WL 3291570, at *1 (W.D. Mo. July 22, 2019))")*, 07-C-086-C (W.D. Wis. May 25, 2007).

Further, it is contrary to decisions in other circuits, including those previously cited by Plaintiff in this case. *See Ray*; *Rousseau v. Coates*, No. 2:18-cv-205 (D. Vt. July 17, 2019); *Ashby v. Mortimer*, 329 F.R.D. 650 (D. Idaho 2019); *D'Angelo v. Potter,* 224 F.R.D. 300, 302-304 (D. Mass. 2004); McGrath *v. Nassau Health Care Corp.*, 209 F.R.D. 55, 61 (E.D.N.Y. 2002). Whether a rapist defendant can avoid providing a buccal swab sample in a civil case to assist Plaintiff in proof of damages when liability is already settled is also an unsettled question that needs to be addressed by the Court of Appeals. Once settled, the Court of Appeals' ruling will determine how this case is tried, and if the Court of Appeals sides with Plaintiff, and she

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

believes it will, the damages portion of the case would have to be retried to the immense harm to Plaintiff, and to the possible loss of the DNA sample from the high vaginal swab.

**B.      Success on the Merits**

Plaintiff also believes that she will succeed on the merits. The Federal Rules of Civil Procedure contemplate taking of a DNA sample in situations such as this.  *See D'Angelo,* 224 F.R.D. at 302-304; *McGrath*, 209 F.R.D. at 61. In *Ashby* the Court ordered a Defendant doctor to submit to DNA testing after he had voluntarily submitted his DNA to Ancestry.com. The court found that DNA testing was a "minimal" invasion of privacy because Dr. Mortimer had already voluntarily provided his DNA to Ancestry.com. *Ashby,* 329 F.R.D. at 656. The voluntary provision of DNA once constitutes a waiver of any argument against providing DNA evidence.

Furthermore, these is no reason why a DNA sample would not be required just because it was being used in the damages phase of a case. If a DNA sample is relevant and central to addressing an issue in a case, as it is here, there can be no justification for not requiring it for the damages phase. Plaintiff believes that the Fourth Circuit will definitively determine that a Defendant rapist must provide a DNA sample in a civil case, especially when he had voluntarily provided it to Met Police in London.

**II.      Irreparable Injury to Plaintiff Absent Stay**

Plaintiff is building a case for her damages – the only relief she can obtain in a civil action after being raped by Defendant. Defendant's DNA is critical to the damages portion of this case. While liability has been established, Defendant has moved to block many of Plaintiff's claims for damages even before Plaintiff has presented her case to the jury. When a DNA sample from Plaintiff matches the DNA collected in London, it will not only further prove that Defendant raped Plaintiff, but that he did so with reckless disregard for her health and safety.

6

When the DNA matches, it will demonstrate that he recklessly and with wanton and willful intent exposed Plaintiff to the possibility of pregnancy and sexually transmitted diseases (STDs) without her consent, and without her knowledge as she was asleep when he commenced the rape. Plaintiff's inability to present these facts and arguments to the jury will deny her the ability to prove an element of her damages case.

This prejudice may not be correctable on appeal in the ordinary course. As noted above, the passage of five and one-half years makes the likelihood of the comparison sample or analysis no longer being available with additional delays. The Met Police have already lost the sample the Defendant voluntarily provided and the risk of loss of the comparative information is too high to contemplate a further delay that may prejudice Plaintiff in her quest for justice. If Plaintiff does not obtain this information now, the opportunity to obtain a comparison between the DNA taken from her vaginal area in London and Defendant may be forever lost.

### III.    No Substantial Injury to the Other Parties

Defendant has already accepted a default judgment rather than submit himself to buccal swab DNA collection. Defendant had previously voluntarily provided a DNA sample to the Met Police. The Defendant is the only other party in this proceeding and has waived all injuries he could arguably sustain. In fact, resolving this issue immediately could lead to a rapid resolution of this case which would be in the best interests of all parties, including the Defendant.

### IV.    Issuance of a Stay Meets the Public Interest

The question to be decided by the Court of Appeals is an important legal question that will apply to many rape cases. When a defendant rapes a plaintiff does he have the right to frustrate the judicial process by refusing to provide a DNA sample for comparison? In a case such as this, can he maintain that right even when he has voluntarily provided his DNA in the

<div align="center">7</div>

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

<div align="center">JA917</div>

past, waiving any rights to privacy that may have applied? Firmly setting forth the rights of

plaintiffs in rape cases to obtain a DNA sample from the defendant to determine both that the

rape occurred, which is now determined by default in this case, and for damages – both

compensatory damages and punitive damages - that Defendant wantonly, willfully and with

reckless disregard subjected Plaintiff to a risk of pregnancy and STDs - will be applicable to all

similar cases in the future regardless of the underlying facts of this case.

**Prayer**

WHEREFORE, Plaintiff Jane Doe moves the Court to stay further proceedings in this

case until the U.S Court of Appeals for the Fourth Circuit has ruled on her appeal of Judge

Hilton's Order upholding Magistrate Judge Anderson's denial of Plaintiff's Motion to Compel

Defendant's DNA for the purposes of use in the damages phase of this matter, and awarding

such other relief that this Court find necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: ___/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

8

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

JA918

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 15th day of February, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                           )
JANE DOE                   )
                           )
                           )
        Plaintiff,         )
                           )
v.                         )   Civil Action No. 1:22-cv-00545
                           )
                           )
CENK SIDAR,                )
                           )
                           )
        Defendant.         )
```

ORDER

THIS MATTER comes before the Court on Defendant's Renewed Motion to Remove Pseudonym Designation included in Plaintiff Jane Doe's Complaint.

There is a general presumption of openness of judicial proceedings. See Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981). However, it is in the trial court's discretion to inquire into the circumstances of a case to determine whether a party should be allowed the rare use of anonymity throughout a judicial proceeding. See id.

Courts consider the following five factors in determining a party's request for anonymity. See James v. Jacobson, 6 F.3d 233 (4th Cir. 1993).

1

JA920

The first James factor is whether the use of a pseudonym is to preserve privacy in a highly personal and sensitive case. Mere annoyance and criticism that may come from a party's identity being known, is not sufficient to proceed under a pseudonym. The Plaintiff in this case has chosen to bring this civil suit in the United States and seek damages. Further, there are no allegations of wrongful conduct against Plaintiff or any illegal activity of hers that is at risk of becoming public. While the Court understands the underlying facts of this case are sensitive, Plaintiff has not demonstrated the level of need for anonymity sufficient to allow nondisclosure.

The second James factor is whether proceeding without a pseudonym could cause the risk of retaliatory physical or mental harm to the party. Plaintiff works in the government and defense sectors worldwide, including the Middle East. Plaintiff states that women in the Middle East who are known to be victims of rape are harassed and put at risk of personal harm. The speculation on what could happen if those working in the defense sector in the Middle East discovered the facts in this case, lacks sufficient support to have this factor weigh in favor of anonymity. Further, Plaintiff lives in the United States and this suit deals with events that happened in the United Kingdom. Plaintiff fails to point to a particularized potential harm that could come to her if this case proceeds without a pseudonym.

The third _James_ factor requires the court to look at the age of the person requesting their privacy be protected by a pseudonym. When the requesting person is a minor, courts provide special protection for the privacy rights of children. Plaintiff in this case was thirty-six at the time of the underlying events. Also, the Court is not presented with any evidence of minors at risk of incident harm if Plaintiff's legal name is disclosed.

The fourth _James_ factor considered is whether the action is against a governmental or private party. This suit is between two private parties. The concerns present when a private party sues a governmental entity are not present.

The fifth _James_ factor is the risk of unfairness to the opposing party from allowing the case to continue using a pseudonym. Plaintiff brought this public civil suit, making allegations against Defendant in the Complaint while remaining anonymous. Defendant, who is the party that has now been found liable through a default judgement entered by this Court, continues in the suit using his legal name. Fairness requires Plaintiff to also proceed in her suit under her legal name.

Following the Court's consideration of the five factors, there is no showing of a need to proceed under a pseudonym further.

3

JA922

It is hereby ORDERED that Defendant's Renewed Motion to
Remove Pseudonym Designation is GRANTED.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February *16*, 2023

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|    **A Domiciliary of the** | ) | |
|    **Commonwealth of Virginia** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|    **Defendant.** | ) | |

**PLAINTIFF'S NOTICE OF APPEAL**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys and pursuant to the

collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp*., 337 U.S. 541,

546 (1949), appeals to the United States Court of Appeals for the Fourth Circuit from the order

signed and entered February 16, 2023, *ECF No. 151*, granting Defendant's Renewed Motion to

Remove Pseudonym Designation included in Plaintiff Jane Doe's Complaint.

Dated: February 16, 2023

                                    Respectfully Submitted,

                                    Jane Doe, by Counsel
                                    THE LAW FIRM OF FLETCHER, HEALD &
                                    HILDRETH, PLC

                                    By: __*/s/ Thomas F. Urban II*_____
                                    THOMAS F. URBAN II, VSB #40540
                                    FLETCHER, HEALD & HILDRETH, PLC
                                    1300 17th Street North, Suite 1100
                                    Arlington, Virginia 22209
                                    (703) 812-0462; (703) 812-0486 (f)
                                    urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**PLAINTIFF'S EMERGENCY MOTION TO STAY PROCEEDINGS PENDING
DECISION ON APPEAL TO THE FOURTH CIRCUIT**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Emergency Motion to Stay

Proceedings Pending Decision on Appeal to the Fourth Circuit ("Motion").

On February 16, 2023, this Court entered an order removing the pseudonym designation

included in Plaintiff Jane Doe's Complaint ("Order"). *ECF No. 151*. Plaintiff immediately filed a

notice of appeal to the Fourth Circuit. *ECF No. 154*. Plaintiff respectfully requests the Court stay

the effectiveness of the Order and stay further proceedings in this case until the Fourth Circuit

has had an opportunity to rule on Plaintiff's appeal. Contemporaneous with this Motion, Plaintiff

will file a Memorandum in support of this Motion.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: __*/s/ Thomas F. Urban II*_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC

1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (*Pro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                     */s/ Thomas F. Urban II*
                     Thomas F. Urban II

PLAINTIFF'S EMERGENCY MOTION TO STAY PROCEEDINGS PENDING DECISION
ON APPEAL TO THE FOURTH CIRCUIT

JA927

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE** | ) | |
|     **A Domiciliary of the** | ) | |
|     **Commonwealth of Virginia** | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No. 1:22-cv-00545** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION TO STAY
PROCEEDINGS PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT**

      Upon consideration of Plaintiff's Motion to Stay Proceedings Pending Decision on

Appeal to the Fourth Circuit, the briefs filed by the Parties, and any argument regarding the

Motion, it is hereby ORDERED that the Motion is hereby GRANTED.  Specifically, all

proceedings in this matter are stayed until the Fourth Circuit rules on Plaintiff's Motion.

 

                      _____
                      Judge,  United States District Court
                      Eastern District of Virginia

cc:

Thomas F. Urban II, VSB #40540
Fletcher, Heald & Hildreth, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209

Walter E. Steimel, Jr. (*PRO HAC VICE*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004

Counsel for Plaintiff Jane Doe


Mariam W. Tadros, Esq.
Corrine Marie Bahner, Esq.
John David Perry, Esq.
Rees Broome, PC
1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182

Alexandros Kosmas Mitrakas, Esq.
MDE Law Group, PLLC
10521 Judicial Drive, Suite 305
Fairfax, Virginia 22030

Counsel for Defendant Cenk Sidar

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JANE DOE** ) | |
|     **A Domiciliary of the** ) | |
|     **Commonwealth of Virginia** ) | |
| ) | |
|     **Plaintiff,** ) | **Civil Action No. 1:22-cv-00545** |
| ) | |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CENK SIDAR** ) | |
| ) | |
|     **Defendant.** ) | |

**PLAINTIFF'S MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY**
**PROCEEDINGS PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT**

Plaintiff Jane Doe ("Plaintiff"), through counsel, files this Memorandum Supporting

Emergency Motion to Stay Proceedings Pending Decision on Appeal to the Fourth Circuit

("Motion").

On February 16, 2023, this Court entered an order removing the pseudonym designation

included in Plaintiff Jane Doe's Complaint ("Order"). *ECF No. 151*. Plaintiff immediately filed a

notice of appeal to the Fourth Circuit. *ECF No. 154*. Plaintiff respectfully requests the Court stay

the effectiveness of the Order and stay further proceedings in this case until the Fourth Circuit

has had an opportunity to rule on Plaintiff's appeal.

Plaintiff takes her appeal under the collateral order doctrine established in *Cohen v.*

*Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). The Fourth Circuit has held that an

order lifting anonymity is appealable under the collateral order doctrine. *James v. Jacobson*, 6

F.3d 233, 236-38 (4th Cir. 1993). This rule is not an anomaly, as every circuit in the United

States adheres to the same rule. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 65-66 (1st Cir.

JA930

2022); *Doe v. Coll. of N.J.*, 997 F.3d 489, 494 (3d Cir. 2021); *United States v. Pilcher*, 950 F.3d 39, 41 (2d Cir. 2020) (per curiam); *In re Sealed Case*, 931 F.3d 92, 95-96 (D.C. Cir. 2019); *Doe v. Vill. of Deerfield*, 819 F.3d 372, 375-76 (7th Cir. 2016); *Plaintiff B v. Francis*, 631 F.3d 1310, 1314-15 (11th Cir. 2011); *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 410 (10th Cir. 2005); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1066-67 (9th Cir. 2000); James v. Jacobson, 6 F.3d 233, 236-38 (4th Cir. 1993); ); *Doe v. Frank*, 951 F.2d 320, 322 & n.1 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. 1981).

Given that the Order is immediately appealable under the collateral order doctrine, Plaintiff addresses the necessity for a stay of these proceedings. These proceedings must be stayed pending appeal because once anonymity is lifted it cannot be reversed – the genie cannot be put back in the bottle. If the Fourth Circuit ultimately rules in favor of Plaintiff, as Plaintiff believes it will, the result will be a hollow victory and the irreversible harm will be done. Given the proximity of the trial date the Fourth Circuit will not be able to rule in time for trial, therefore, these proceedings must be stayed. In *James*, which the Court followed in the Order, the Fourth Circuit issued a stay when the District Court failed to grant that plaintiff's motion for stay. *James*, 6 F.3d at 236 and fn. 2.

Further urgency in issuing a stay is evident from the posture and proceedings in this case to date, and the precursor case in Fairfax County Circuit Court. Plaintiff has been litigating her claims against Defendant for almost three and a half years. For all that time, Plaintiff's identity has been concealed from the public (and her relatives) through the pseudonym Jane Doe. The Defendant's most recent motion is Defendant's second attempt during the pendency of this case in this Court to expose Plaintiff's identity. The Defendant is on a mission to damage Plaintiff by

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

any means necessary to convince her to forfeit her claims -- this Court must act expeditiously to prevent Defendant from destroying Plaintiff's anonymity before the Fourth Circuit can rule.

Judge Hilton previously denied Defendant's very same motion on July 29, 2022 (*ECF No. 36*), and in his most recent Order does not explain this Court's change in reasoning. In fact, this Court ignores facts in evidence that have been the basis for Plaintiff's anonymity since she first filed in Fairfax County. Contrary to the Order, while Plaintiff is a resident of the Commonwealth, she lives part-time and works in the Middle East. Plaintiff works in the arms trade in the Middle East. Exposing Plaintiff's name and the facts of this case in countries in which she works would expose her to legal liability and the distinct possibility of public harm and lead to additional attempts by men to take advantage of her. Moreover, as explained previously, Ms. Doe's family does not know about the rape or of this lawsuit, both of which would be exposed if this Order is not stayed.  There has been no change on the law and no change in the facts to support the Court's Order, and the Order is contrary to the clear and unchanged facts. The Defendant Sidar merely re-filed his same motion without any explanation regarding the change in circumstances and the Court similarly gave no rationale for a change.

### Legal Standard

To prevail on a request for stay under Rule 8(a)(1)(A), Plaintiff must meet four criteria:

(1)     Plaintiff has made a strong showing that she is likely to succeed on the merits;

(2)     Plaintiff will be irreparably injured absent a stay;

(3)     Issuance of the stay will not substantially injure the other parties interested in the proceedings; and

(4)     Issuance of a stay meets the public interest.

<div align="center">3</div>

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

<div align="center">JA932</div>

*See Wolfe v. Clarke*, 819 F.Supp.2d 574, 578 (E.D. Va. 2011) (Jackson, J.)(*citing Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *See also Dumas v. Clarke*, 324 F. Supp. 3d 716, 717 (E.D. Va. 2018).

Plaintiff's request meets these four criteria and requests that this Court issue an emergency stay of these proceedings until her appeal is decided. This Court relied on *James* in writing its Order and following *James* should immediately grant an emergency stay of these proceedings until Plaintiff Jane Doe's appeal has been heard.

<div align="center">

**Argument**

</div>

**I.      Plaintiff Is Likely to Succeed on the Merits**

As demonstrated above, every circuit in the United States, including the Fourth Circuit, permits the interlocutory appeal of an order lifting anonymity under the collateral order doctrine. Plaintiff believes that she will succeed on the merits in line with prior orders of Fairfax County Circuit Court and this Court in its prior Order, particularly because neither the facts nor anything else has changed to suddenly change the rights of the Plaintiff, or of the parties vis-à-vis each other. In addition, lifting the stay will operate to chill similarly situated plaintiffs, women who have been raped and are afraid to come forward. Plaintiff addresses this issue further in point IV, *infra*.

Moreover, this is a case in which liability has been established – Defendant raped Plaintiff.  While this determination was made because of Defendant's refusal to comply with this Court's Order to provide a DNA sample, this was no technical violation of a discovery order. Rather, it was a calculated decision by Defendant, who knows that his DNA will match that being held by the London Police which was taken from Plaintiff's vagina after the rape. Defendant does not want to provide the DNA because of the other legal ramifications of a

<div align="center">

4

</div>

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

positive match, including criminal prosecution. Given the default judgment finding that Defendant raped Plaintiff, it is even more incumbent on the courts to protect her identity. *See Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (court *granted* Plaintiff's [person likely wrongfully accused of sexual misconduct] request for pseudonymity specifically citing that sexual misconduct carries a stigma, is a "matter of sensitive and highly personal nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations alone.") If this Court can protect a person who may have been wrongfully accused of sexual misconduct, it surely can protect a woman who was clearly the victim of sexual misconduct. If this Court will not, it is likely that the Fourth Circuit will.

## II.      Irreparable Injury to Plaintiff Absent Stay

Plaintiff's anonymity will be forever destroyed if a stay is not issued pending appeal. This harm to Plaintiff cannot be reversed. This prejudice is not correctable on appeal.

## III.     No Substantial Injury to the Other Parties

Defendant cannot be harmed by a stay pending a ruling by the Fourth Circuit. Plaintiff has been litigating her case as "Jane Doe" for three and a half years without any harm from such designation.[1] The Fourth Circuit will determine the rights of the parties, which is not impacted by a stay being issued. Only the Plaintiff will suffer from a failure of this Court to issue a stay.

## IV.      Issuance of a Stay Meets the Public Interest

The question to be decided by the Court of Appeals is an important legal question that will apply to many rape cases, and lifting anonymity without proper consideration will deter other women to move forward against their rapists – causing a chill over women's rights to

---

[1]      Defendant is well aware of the identity of Jane Doe.

5

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

proceed against a rapist. It is undeniably in the public interest to stay the proceedings until this

issue is decided. The Court in *Doe v. Mass. Inst. of Tech* aptly summarized this issue as follows:

> That public interest, moreover, would be imperiled by deferring appellate review
> of a pseudonym denial until after the entry of final judgment, with the litigant
> compelled to proceed unmasked. Once the litigant's true name is revealed on the
> public docket, the toothpaste is out of the tube and the media or other interested
> onlookers may take notice in a way that cannot be undone by an appellate decision
> down the road. *See Standard Fin. Mgmt*., 830 F.2d at 407. A party whose
> pseudonym motion is denied will find cold comfort in the prospect of reversal on
> appeal months or years after being forced into the glare of the legal spotlight. Such
> belated redress will not dispel the "discernible chill," *Mohawk*, 558 U.S. at 110, 130
> S.Ct. 599, felt by those who fear litigating under their own names. A district court's
> denial of a pseudonym motion, therefore, would be effectively unreviewable
> without the help of the collateral order doctrine.

*Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 66 (1st Cir. 2022).

This Court relied on *James* in writing its Order. The Fourth Circuit issued a stay in

*James*, when the District Court did not. This Court should follow *James* and immediately grant

an emergency stay of these proceedings until Plaintiff Jane Doe's appeal has been heard.

### Prayer

WHEREFORE, Plaintiff Jane Doe moves the Court to stay further proceedings in this

case until the Fourth Circuit Court of Appeals has ruled on her appeal of Judge Hilton's Order

(*ECF No. 151*) removing the pseudonym designation included in Plaintiff Jane Doe's Complaint,

and awarding such other relief that this Court find necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC


By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*
Thomas F. Urban II

7

MEMORANDUM SUPPORTING EMERGENCY MOTION TO STAY PROCEEDINGS
PENDING DECISION ON APPEAL TO THE FOURTH CIRCUIT

JA936

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JANE DOE                      )
                              )
                              )
                              )
        Plaintiff,            )
                              )
v.                            )  Civil Action No. 1:22-cv-00545
                              )
                              )
CENK SIDAR,                   )
                              )
                              )
        Defendant.            )
                              )

ORDER

Pursuant to the Order of February 23, 2023, this case is
stayed pending further order from the United States Court of
Appeals for the Fourth Circuit. It is hereby

ORDERED that the case is stayed until further order of the
Court.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 24, 2023

JA937

**FOURTH CIRCUIT TRANSCRIPT ORDER FORM**

Case Style  Jane Doe v. Cenk Sidar
Dist. Ct. No.  1:22-cv-545              District  Eastern District of Virginia
Date Notice of Appeal filed _____02/16/2023_____ Court of Appeals No. 23-1151; 23-1177
Name of Court Reporter/Electronic Rec. (use separate form for each reporter) Julie Goodwin Egal, RPR
Address of Reporter US District Court, 401 Courthouse Sq. 8th Flr, Alexandria, VA 22314

Appellant must order any necessary transcript within 14 days of noting the appeal by completing a separate transcript order form for each reporter and a single order form for all electronic recordings requested, submitting the orders to the court reporters and the district court, and attaching copies to the docketing statement filed in the court of appeals.  The transcript order form should not include requests for transcripts that are on file or are on order.  The completed order form must show that necessary financial arrangements have been made.  In CJA cases, counsel must certify that AUTH-24 requests have been submitted through the **district court's eVoucher system** for approval by the district judge.  Once the transcript has been prepared, counsel also submits the CJA-24 voucher for payment in the district eVoucher system.  For assistance, see District eVoucher Contacts for Transcript Authorization and Payment.

In sentencing appeals, a transcript of the sentencing hearing must be ordered.  In Anders appeals, plea (or trial) and sentencing transcript must be ordered, along with any necessary hearing transcripts (e.g., suppression hearings).  In multi-defendant cases involving CJA defendants, only one original trial transcript should be purchased from the court reporter on behalf of CJA defendants, and copies should thereafter be made at commercially competitive rates not to exceed $.15 per page.  Co-defendants may obtain paper or electronic copies of prepared transcript from the court reporter, co-counsel, or the district court.

If appellee finds other parts of the proceedings necessary, appellee must designate the additional parts within 14 days after service of the transcript order.  If appellant has not ordered the additional parts within 14 days, appellee may, within the following 14 days, order the additional parts or move in the district court for an order requiring appellant to do so.

Counsel must review transcript and notify the district court of any intention to direct redaction of personal data identifiers within 7 days of filing of the transcript, and thereafter submit a statement of redactions to the court reporter within 21 days of filing of the transcript, as required by the Judicial Conference Policy on Privacy and Public Access to Electronic Case Files.  Counsel should obtain full-size transcript from the court reporter, since condensed transcript may not be used in the appendix.  Counsel should verify that the witness name and type of examination appear in the top margin of each page of testimony, as required for inclusion in the appendix on appeal.  Local Rule 30(b).

A.  This constitutes an order of the transcript of the following proceedings.  Check appropriate box(es), provide date of hearing, and indicate total number of estimated pages.  Specific CJA authorization is required for opening and closing statements, voir dire, and instructions.

| PROCEEDING | HEARING DATE(S) |
|---|---|
| ☐ Voir Dire | _____ |
| ☐ Opening Statement (Plaintiff) | _____ |
| ☐ Opening Statement (Defendant) | _____ |
| ☐ Closing Argument (Plaintiff) | _____ |
| ☐ Closing Argument (Defendant) | _____ |
| ☐ Opinion of Court | _____ |
| ☐ Jury Instructions | _____ |
| ☐ Sentencing | _____ |
| ☐ Bail Hearing | _____ |
| ☒ Pre-Trial Proceedings (specify) | Motions hearings. 7/29/22; 8/5/22; 12/2/22; 12/15/22 |
| ☐ Testimony (specify) | _____ |
| ☐ Other (specify) | _____ |
| **TOTAL ESTIMATED PAGES** _____120_____ | |

B.  ☐ Expedited transcript completion requested within ☐ 14 days ☐ 7 days ☐ 3 days.

C.  I certify that I have contacted the court reporter (or court reporter coordinator if electronic recording) and satisfactory financial arrangements for payment of the transcript have been made as follows:
☐   Private funds.  (Deposit of $_____ enclosed with court reporter's copy.  Check No. _____.)
☐   CJA AUTH-24 request submitted in district eVoucher system.
☐   Government expense (civil case--IFP).  Motion for transcript at government expense is pending with district judge.
☒   Advance payment waived by court reporter.  Payment in full is due upon receipt of transcript.
☐   Federal Public Defender - no CJA 24 authorization necessary.
☐   United States appeal.

D.  Transcript is requested in ☐  paper format  ☒  electronic format

Signature /s/ Walter E. Steimel, Jr.                    Typed Name  Walter E. Steimel, Jr.
Address  1455 Pennsylvania Ave., N.W., Suite 400, Washington, D.C. 20004
Email  wes@sclgrp.com                    Telephone No.  202-271-9258
Date Sent to Reporter_____03/03/2023_____

11/25/2019 CAD

| Print to PDF for Filing | Reset Form |

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
# OFFICE OF THE CLERK

1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517
www.ca4.uscourts.gov

Patricia S. Connor
Clerk

Telephone
804-916-2700

March 7, 2023
_____

TRANSCRIPT ORDER ACKNOWLEDGMENT
_____

No. 23-1151 (L), <u>Jane Doe v. Cenk Sidar</u>
1:22-cv-00545-CMH-JFA

This acknowledgment establishes a deadline for filing all transcript ordered from this court reporter. Please notify the court if arrangements are made for expedited filing of the transcript.

**Court Reporter:** Julie Egal
**Current Deadline:** 05/15/2023
**Proceedings:** Motions hearings on 07/29/22, 08/05/22, 12/02/22 and 12/15/22
**Ordering Party(ies):** Jane Doe

Counsel may request the transcript in either electronic or paper form. In multi-defendant CJA cases, electronic or paper copies of necessary transcript prepared for one defendant must be provided to co-defendants by the court reporter, co-counsel, or the district court clerk. Payment for transcript copies is claimed on a **CJA 24 voucher** and is limited to commercially competitive rates not to exceed $.15 per page. For assistance in obtaining electronic copies of the transcript, see **Record Access for New Appellate Counsel** or contact the Fourth Circuit appointments deputy, Lisa McFarland.

Seven days have been added to the court reporter deadlines to permit appropriate financial arrangements to be completed. If the district court has not yet acted on a request for transcript under the Criminal Justice Act, counsel should confirm that the CJA 24 application has been filed with the district court for approval by the

judge.

If the transcript order is deficient or the CJA 24 application is not approved within 7 days of this acknowledgment, the court reporter must complete and file a **Transcript Order Deficiency Notice** with this court within 14 days of this acknowledgment. If the court reporter has grounds for an extension of time, a request for extension may be sought using the **Transcript Extension Request** form.

This court is notified of the filing of the **Appeal Transcript** in the district court through the district court's CM/ECF system. If the transcript is not filed by the due date, a transcript sanction takes effect, as provided in the **Guidelines for Preparation of Appellate Transcripts in the Fourth Circuit**. If a transcript sanction is in effect, the court reporter must file a **Certification of filing of transcript/sanctions form** with this court at the time the transcript is filed with the district court, certifying that the appropriate sanction has been deducted from the transcript fee. Court forms are available for completion as links from this notice and at the court's web site, **www.ca4.uscourts.gov**.

Rickie Edwards, Deputy Clerk
804-916-2702

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### TRANSCRIPT ORDER DEFICIENCY NOTICE

No.  23-1151 (L), <u>Jane Doe v. Cenk Sidar</u>
1:22-cv-00545-CMH-JFA

**To permit confirmation of financial arrangements, including approval by the district court of the CJA 24 form, 7 days have been added to the period established by the transcript guidelines for filing of appellate transcript. If financial arrangements are not confirmed within 7 days or if there are other problems with the transcript order, the court reporter should, within 14 days of issuance of the transcript order acknowledgment, file a transcript order deficiency notice with the Court of Appeals identifying the problem. Copies of the deficiency notice will be sent via CM/ECF to the parties and the district court.**

[ ]     **Transcript has previously been filed with district court. (specify)**
[ ]     **Not all requests on CJA 24 application were granted by**
         **district court. (specify)**
[ ]     **Motion for transcript at government expense has not been granted**
         **(28 U.S.C. § 753(f)).**
[ ]     **Satisfactory financial arrangements have not been made. (specify)**
[ ]     **Transcript order is unclear. (specify)**
[ ]     **Other (specify):**

Relief Requested:          [ ] Rescission of filing deadline
                           [ ] Extension of filing deadline to _____

**Court Reporter:**
**Signature:**
**Date:**

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**TRANSCRIPT EXTENSION REQUEST**

No.  23-1151 (L), Jane Doe v. Cenk Sidar
                    1:22-cv-00545-CMH-JFA

**If an extension of time is needed to complete the transcript, the court reporter may file a Transcript Extension Request with the Court of Appeals at least 10 days in advance of the deadline, setting forth specific information in support of the request. Copies of the request shall be served on the parties to the case and the district court Reporter Coordinator. The granting of an extension also constitutes a waiver of sanctions through the date of the extension.**

**Court Reporter: Julie Egal**
**Current Deadline: 05/15/2023**
**Extension Requested to:**

**As of this date, approximately      pages have been completed and      pages are yet to be transcribed. Justification is as follows:**
   1. **Outstanding District Court transcripts ordered within 90 days of this request: Any pending appellate transcripts will be taken into consideration in deciding this request.**

   2. **In-Court Time: (give total days/hours by month)**

   3. **Travel: (give hours spent traveling to and from Court by month)**

   4. **Other: (please provide information you would like the Court to consider when reviewing your request. Please be aware that this information will be posted on the public docket.)**

**Signature:**
**Date:**