No. 23-1177

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Jane Doe,
*Plaintiff-Appellant,*
v.
Cenk Sidar,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
The Honorable Claude M. Hilton
Case No. 1:22-cv-00545-CMH-JFA

## BRIEF OF *AMICUS CURIAE* PROF. EUGENE VOLOKH IN
## SUPPORT OF NEITHER PARTY

Eugene Volokh
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

# Table of Contents

Table of Contents ...............................................................................i

Table of Authorities.........................................................................iii

Interest of *Amicus Curiae* .........................................................1

Summary of Argument.....................................................................1

Argument...........................................................................................4

    I.   Being identified as a litigant risks stigma to defendants as
well as to plaintiffs .................................................................4

   II.  The presumption that parties must be named deters
defendants' meritorious defenses as much as plaintiffs'
meritorious claims .................................................................5

  III. One-sided pseudonymity can be unfair to the
nonpseudonymous party in the litigation process ....................7

       A.  Generally .................................................................7

       B.  Skewed effect on settlement ....................................8

       C.  Difficulty of public defense....................................9

       D.  One-sided effect on the candor and availability of
witnesses .................................................................10

       E.  Risk of giving pseudonymous party's claim greater
weight .................................................................11

       F.  Risk of witness and juror confusion....................................12

       G.  This unfairness may cut in favor of either mutual
pseudonymity or absence of pseudonymity .........................13

IV. Even if one-sided pseudonymity might be proper here because defendant has defaulted as to his culpability, such a holding should then be limited to such unusual cases ........... 14

Conclusion ................................................................. 15

Certificate of Compliance ......................................... 17

Certificate of Service ................................................ 18

# Table of Authorities

## Cases

*A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494 (App. Div. 1995) .................. 12

*Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49 (D.D.C. 2019) ....................................................................................... 9

*Doe v. City of New York*, 201 F.R.D. 100  (S.D.N.Y. 2001) ..................... 13

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006) ...................................... 11

*Doe v. Delta Airlines Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015) ................... 10

*Doe v. Delta Airlines*, 672 F. App'x 48 (2d Cir. 2016) ............................ 10

*Doe v. Doe*, No. 20-CV-5329 (KAM)(CLP), 2020 WL 6900002 (E.D.N.Y. Nov. 24, 2020) ...................................................... 13

*Doe v. Elson S Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-cv-00145-SMJ, 2021 WL 4197366 (E.D. Wash. Mar. 24, 2021) ................................................................... 12

*Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220 (JPO), 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) ........................................ 8

*Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137 (S.D. Ind. 1996) ................................................................................................. 9

*Doe v. McLellan*, No. 20-CV-5997 (GRD) (AYS), 2020 WL 7321377 (E.D.N.Y. Dec. 10, 2020) ....................................................... 8

*Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022) ..................................................... 1

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ................................. 4

*Doe v. Purdue Univ.*, No. 4:18-cv-89, 2019 WL 1757899 (N.D. Ind. Apr. 18, 2019) ..................................................................... 13

*Doe v. Settle*, 24 F.4th 932 (4th Cir. 2022) ................................................ 1

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996) .......................................8

*Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005) ..........................................8, 9

*Doe v. Smith*, No. 1:19-CV1121 (GLS/DJS), 2019 WL
    6337305 (N.D.N.Y. Nov. 27, 2019)......................................13

*Doe v. Tenzin Masselli*, No. MMXCV145008325, 2014 WL
    6462077, (Conn. Super. Ct. Oct. 15, 2014) ........................................14

*Doe v. Zinsou*, No. 19 Civ. 7025 (ER), 2019 WL 3564582
    (S.D.N.Y. Aug. 6, 2019)..................................................8

*In re Sealed Case*, 931 F.3d 92 (D.C. Cir. 2019) ........................................7

*Lawson v. Rubin*, No. 17CV6404BMCSMG, 2019 WL
    5291205 (E.D.N.Y. Oct. 18, 2019)......................................12

*Rapp v. Fowler,* 537 F. Supp. 3d 521 (S.D.N.Y. 2021)............................7

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555
    (1980)..................................................11

*Roe v. Doe*, Civil Action No. 18-666 (CKK), 2019 WL
    1778053 (D.D.C. Apr. 23, 2019)..........................................13

*Tolton v. Day*, No. CV 19-945 (RDM), 2019 WL 4305789
    (D.D.C. Sept. 11, 2019) ........................................12

## Other Authorities

Eugene Volokh, *The Law of Pseudonymous Litigation*, 73
    Hastings L.J. 1353 (2022)........................................ 1, 4, 5, 6, 10, 14

## Interest of *Amicus Curiae*[1]

Eugene Volokh is the Gary T. Schwartz Distinguished Professor of Law at UCLA School of Law. He is the author of *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022), http://www.law.ucla.edu/volokh/pseudonym.pdf, and over 50 other law review articles and a casebook on First Amendment law. His work on pseudonymous litigation has been cited by this court in *Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022), as well as by *Doe v. MIT*, 46 F.4th 61, 69-70 (1st Cir. 2022), and other cases.

## Summary of Argument

In deciding this case, this Court ought to be attentive to the costs of one-sided pseudonymity in sexual assault cases—generally, when a plaintiff seeks to sue pseudonymously, but names the defendant. This brief does not take a categorical position on whether such one-sided pseudonymity should always be forbidden in sexual assault cases, but it does

---

[1] No party or party's counsel has wholly or partly authored this brief, or contributed money to fund preparing or submitting the brief. No person has contributed money to so fund the brief, except that UCLA School of Law will pay for printing and mailing.

seek to explain why there may be an especially strong presumption against it.

In particular:

1. While plaintiffs in many cases are understandably concerned that being identified as (for instance) an alleged sexual assault victim is stigmatizing, defendants' being identified as an alleged sexual assaulter is at least as stigmatizing.

2. Some plaintiffs may be deterred from filing even meritorious lawsuits, for fear that being publicly identified will damage their reputations—for instance, stigmatize them as litigious employees—or, especially in sexual assault cases, will compromise their privacy. Pseudonymity for plaintiffs is sometimes defended as diminishing this risk. But defendants may be equally deterred from raising even meritorious defenses (such as "I did not do it," or "any sexual behavior was consensual"), for fear that being publicly identified will damage their reputations—especially when defending the lawsuit, rather than settling before it is filed, stigmatizes them as alleged rapists. The case for pseudonymity for sexual assault defendants thus stands on roughly the same footing in this respect as the case for pseudonymity for sexual assault plaintiffs.

3. One-sided pseudonymity can also be unfair to the nonpseudony-mous sexual assault defendant because of how it affects the process of litigation. One-sided pseudonymity can change the settlement value of a case. Party-witnesses' pseudonymity may diminish their incentives to tell the whole truth. Party pseudonymity may also prevent other witnesses from coming forward. And allowing one party to proceed pseudonymously may signal to the jury that the other party is dangerous and thus perhaps culpable.

To be sure, one possible solution to the problem—mutual pseudonymity—interferes with the public's right of access to court proceedings even more than one-sided pseudonymity does. But on balance, the unfairness of one-sided pseudonymity should generally cut against allowing such pseudonymity, whether or not the optimal solution for a case would be mutual pseudonymity or no pseudonymity.

4. In this particular case, where defendant Sidar has already been determined to be liable because of his refusal to provide a DNA sample, there may be reason for this Court to be less concerned about his interests than about Jane Doe's interests. But if this is the basis for this Court's decision, this Court should stress that it is relying specifically on this

unusual feature of the case, and is not deciding in favor of one-sided pseudonymity more broadly.

## Argument

### I. Being identified as a litigant risks stigma to defendants as well as to plaintiffs

There is of course a strong presumption against pseudonymity, which can be overcome only "in exceptional circumstances." *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014). When such circumstances are present is a complicated question, on which court decisions are unsettled. *See generally* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022). Indeed, court decisions are sharply split even on the specific question whether sexual assault plaintiffs may proceed pseudonymously. *See id.* at 1430-37 (cataloging cases).

But to the extent that courts are concerned that naming a party should be avoided, because such naming would cause stigma, that concern often arises for defendants as much as for plaintiffs. That is especially so in sexual assault cases. Regrettably, being identified as an alleged sexual assault victim does indeed stigmatize the plaintiff in some measure (though one hopes this is less so today than it was in past decades). But

of course being identified as an alleged sexual assault perpetrator stigmatizes the defendant at least as much, and likely more. Indeed, it may spell professional ruin for a defendant, even if the defendant is ultimately vindicated.

Of course, when defendants are indeed sexual assault perpetrators, then they deserve to be stigmatized. But while the case is being litigated, they are generally merely accused. They are not presumed guilty; indeed, the burden of proof even in a civil case remains on the accuser. Some of the defendants may well be innocent. And in any event, to remain impartial, the civil justice system cannot just assume away their privacy interests on the theory that they are likely guilty while their accusers are likely correct.

## II.  The presumption that parties must be named deters defendants' meritorious defenses as much as plaintiffs' meritorious claims

One reason sometimes given for pseudonymity is that requiring plaintiffs to be publicly identified can undermine the public policy that the civil causes of action are aimed to serve. *See* Volokh, *supra*, at 1394-95. Plaintiffs faced with the prospect of these harms might choose not to lit-

igate: People who were sexually assaulted, for instance, might be reluctant to continue with their lawsuits once pseudonymity is denied; likewise for people who have been libeled, or who have been pretextually fired by their employers. They might decline to sue or might decline to continue with their lawsuits once pseudonymity is denied. *See id.*

But lack of pseudonymity for defendants can likewise undermine the presentation of meritorious defenses. Defendants—especially ones accused of an extremely serious offense such as sexual assault—might equally settle before complaints are filed, if they are facing a lawsuit where they would be publicly identified as defendants, even if they have sound legal or factual defenses. Someone who is being accused of rape might feel unable to publicly defend himself if he knows that the very filing of the lawsuit would publicly label him as an accused rapist. And that is so even if he did not actually commit a sexual assault, for instance because the sexual activity did not happen, or happened but was actually consensual.

## III. One-sided pseudonymity can be unfair to the nonpseudony-mous party in the litigation process

### A. Generally

Protecting only one party from the possible stigma or chilling effect that pseudonymity causes can also unfairly affect the other party's litigation position. This Court and others have recognized this, noting that pseudonymity can create a "risk of unfairness to the opposing party," *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019), even when the defendant knows the plaintiff's identity. "[F]undamental fairness suggests that defendants are prejudiced when 'required to defend [themselves] publicly before a jury while plaintiff[s] make accusations from behind a cloak of anonymity.'" *Rapp v. Fowler,* 537 F. Supp. 3d 521, 531-32 (S.D.N.Y. 2021) (alteration in original) (sexual assault case) (quoting *Doe v. Delta Airlines. Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015)).

> If plaintiff were permitted to prosecute this case anonymously, [defendant] would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity. *See Southern Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 (Because "the mere filing of a civil action against . . . private parties may cause damage to their good names and reputation," "[b]asic fairness" dictates that plaintiffs who publicly accuse defendants in civil suits "must [sue] under their real names."

*Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (sexual assault case) (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). "[A]nonymity provides a shield behind which defamatory charges may be launched without shame or liability." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

## B. Skewed effect on settlement

One particular way that one-sided pseudonymity can be unfair to the nonpseudonymous party is by skewing the settlement value of a case. "While a publicly accused defendant might be eager to settle in order to get its name out of the public eye, a pseudonymous plaintiff might hold out for a larger settlement because they face no such reputational risk." *Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-CV-8220 (JPO), 2018 WL 2021588, at *2 (S.D.N.Y. Apr. 27, 2018). "Allowing Plaintiff to proceed anonymously would put Defendants at a genuine disadvantage [and cause significant prejudice], particularly when it comes to settlement leverage." *Id.* at *3; *see also Doe v. Zinsou*, No. 19 Civ. 7025 (ER), 2019 WL 3564582, at *7 (S.D.N.Y. Aug. 6, 2019); *Doe v. McLellan*, No. 20-CV-5997 (GRD) (AYS), 2020 WL 7321377, at *3 (E.D.N.Y. Dec. 10, 2020).

This is particularly true in a sexual assault case, for reasons similar to those discussed in Part II. In a sexual assault case, both sides will often risk stigma from exposure. While, regrettably, sexual assault victims do face stigma, accused rapists also face stigma, even before any verdict is rendered (and may remain stigmatized even if they eventually prevail in the case). One-sided pseudonymity is thus quite likely to skew the settlement value of the case in favor of the pseudonymous party, even entirely apart from who is actually in the right and who is in the wrong.

### C. Difficulty of public defense

A plaintiff's pseudonymity may also make it hard for defendants to defend themselves in public:

> The defendants . . . have a powerful interest in being able to respond publicly to defend their reputations [against plaintiff's allegations] . . . in . . . situations where the claims in the lawsuit may be of interest to those with whom the defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the plaintiff's credibility . . . . [Plaintiff] cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism.

*Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996); *see also Smith*, 429 F.3d at 710; *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 68 n.9 (D.D.C. 2019). A defendant may have information

that provides support for his position—and that helps recuperate his reputation—but that he cannot reveal without disclosing the plaintiff's identity. Even if no formal gag order accompanies the pseudonymity order (see Volokh, *supra*, at 1375-76, for examples of such gag orders), defendants likely would not feel fully comfortable publicly identifying an adversary as to whom the judge had issued a pseudonymity order. They might worry that doing so, even if not a violation of the letter of the order, would be seen as defying its spirit. And a litigant whose case is before that judge might be reluctant to engage in anything that can be perceived as defiance.

## D. One-sided effect on the candor and availability of witnesses

Pseudonymity can also make the fact-finding process less reliable because "pseudonymous witness[es]" may feel less inhibited "from fabricating or embellishing an account." *Doe v. Delta Airlines Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016). When one side is pseudonymous and the other is not, that side will thus be given something of an edge in the litigation process.

Pseudonymity also makes it less likely that valuable witnesses will come forward. *See, e.g.*, *id.* (denying pseudonymity partly because "witnesses, upon the disclosure of Doe's name, [may] 'step forward [at trial] with valuable information about the events or the credibility of witnesses'" (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596-97 (1980) (Brennan, J., concurring) ("Public trials come to the attention of key witnesses unknown to the parties."))). In a case such as this, for instance, witnesses who hear about the case could come forward to (for instance) help Doe by offering negative information about Sidar. But witnesses could not come forward to help Sidar by offering negative information about Doe, precisely because they do not know who Doe is. The nonpseudonymous party is thus handicapped in some measure in litigation relative to the pseudonymous party.

### E. Risk of giving pseudonymous party's claim greater weight

Letting a party testify pseudonymously might also prejudice the jury (in those cases that go to trial) by "'risk[ing] . . . giving [the party's] claim greater stature or dignity,'" *Lawson v. Rubin*, No. 17-cv-6404 (BMC) (SMG), 2019 WL 5291205, *3 (E.D.N.Y. Oct. 18, 2019) (quoting *Doe v.*

*Delta Airlines*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015)), or by implicitly "tarnish[ing]" a defendant by conveying to the jury "the unsupported contention that the [defendant] will seek to retaliate against [the plaintiff]." *Tolton v. Day*, Civil Action No. 19-945 (RDM), 2019 WL 4305789, *4 (D.D.C. Sept. 11, 2019). "Defendant might well be prejudiced in defending against a complaint by being perceived as a wrongdoer by the very fact of anonymity alone." *A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 504 (App. Div. 1995).

### F. Risk of witness and juror confusion

Pseudonyms can also confuse witnesses (at trial or in depositions) and jurors. For example, in a student lawsuit over a medical school's disciplinary actions, a court rejected pseudonymity at trial partly because witnesses called by the defendant, "who know Plaintiff by her true name, may come across as less credible if they are struggling to remember to use Plaintiff's pseudonym," which would create "a risk of prejudice to Defendant." *Doe v. Elson S Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-cv-00145-SMJ, 2021 WL 4197366, *3 (E.D. Wash. Mar. 24, 2021).

## G. This unfairness may cut in favor of either mutual pseudonymity or absence of pseudonymity

Concerns such as those given above have often led to courts insisting that plaintiffs proceed under their real names. At the same time, those concerns might counsel in favor of mutual pseudonymity, in those situations where the plaintiff has not identified the defendant at the outset. "[I]f the plaintiff is allowed to proceed anonymously, . . . it would serve the interests of justice for the defendant to be able to do so as well, so that the parties are on equal footing as they litigate their respective claims and defenses." *Doe v. Doe*, No. 20-CV-5329 (KAM)(CLP), 2020 WL 6900002, at *4 (E.D.N.Y. Nov. 24, 2020); *see also Roe v. Doe*, Civil Action No. 18-666 (CKK), 2019 WL 1778053, at *3 (D.D.C. Apr. 23, 2019); *Doe v. Smith*, No. 1:19-CV1121 (GLS/DJS), 2019 WL 6337305, at *2–3, *3 n.1 (N.D.N.Y. Nov. 27, 2019). "If we are to have a policy of protecting the names of individual litigants from public disclosure, there is a very substantial interest in doing so on a basis of equality." *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001). *But see Doe v. Purdue Univ.*, No. 4:18-cv-89, 2019 WL 1757899, at *3 (N.D. Ind. Apr. 18, 2019) (rejecting mutual pseudonymity). This preference for mutual pseudonymity suggests that, had Ms. Doe sued Mr. Sidar as a Richard Roe at the outset,

she could have properly remained pseudonymous, though her choice to name Mr. Sidar now leaves that avenue unavailable.

To be sure, such mutual pseudonymity, while providing more protection to the parties' privacy and reputations, also undermines public access to information about the lawsuit even more than one-sided pseudonymity does. *See* Volokh, *supra*, at 1383. Nonetheless, on balance, the concerns about unfairness outlined above should cut against allowing one-sided pseudonymity, whether the court's preferred alternative is to allow pseudonymity to both sides or to deny it to both sides.

## IV. Even if one-sided pseudonymity might be proper here because defendant has defaulted as to his culpability, such a holding should then be limited to such unusual cases

Of course, the unfairness described above is especially stark when the plaintiff and defendant are both merely presenting their claims, and either might be correct. When the defendant has been found to be guilty of the underlying sex offense, the unfairness may be absent. *See, e.g.*, *Doe v. Tenzin Masselli*, No. MMXCV145008325, 2014 WL 6462077, at *2 (Conn. Super. Ct. Oct. 15, 2014) (endorsing mutual pseudonymity in principle but rejecting it when the defendant had already pleaded no contest to a

criminal charge arising out of the same facts). Likewise, when the defendant has defaulted as to liability, as the lower court ruled Sidar had done, it might be fine to treat the defendant—who has been concluded to be guilty—worse than the innocent plaintiff.

*Amicus* takes no stand on this narrow question, which arises in this case but relatively few others. But *amicus* asks that, if this Court is inclined to rule in Doe's favor as to pseudonymity because of the default judgment against Sidar, the Court would expressly stress that factor as a basis for its decision. That way, District Courts and future panels of this Court would remain free to consider the arguments about the unfairness of one-sided pseudonymity in the more typical cases: cases where either the plaintiff or the defendant might yet prove to be correct on the merits.

## Conclusion

Though there are powerful reasons to allow sexual assault plaintiffs to remain pseudonymous, there are also powerful reasons to treat sexual assault plaintiffs and sexual assault defendants similarly with respect to pseudonymity. For those reasons, a plaintiff who chooses to name the defendant in a sexual assault complaint should generally not be allowed to

proceed pseudonymously, even if pseudonymity would be proper if the Doe plaintiff sues the defendant as a Roe.

To be sure, the analysis might be different in a case such as this one, where the defendant has either been found guilty in a separate proceeding or has defaulted as to liability in this very case. But if this Court is inclined towards Doe on this particular ground, *amicus* asks this Court to limit such a decision in favor of pseudonymity to this unusual factual situation.

Respectfully Submitted,

s/ <u>Eugene Volokh</u>

*Amicus Curiae*
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,100 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook.

Dated: July 7, 2023

s/ Eugene Volokh
*Amicus Curiae*

**Certificate of Service**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on July 7, 2023.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: July 7, 2023

s/ <u>Eugene Volokh</u>
*Amicus Curiae*
