**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

*JANE DOE,*

*Plaintiff/Appellant,*

v.

*CENK SIDAR,*

*Defendant/Appellee.*

**On Appeal from the United States District Court for the Eastern District of**
**Virginia**
**No. 1:22-cv-00545-CMH-JFA**
**(The Honorable Claude M. Hilton)**

**REPLY BRIEF OF APPELLANT JANE DOE**
**(CORRECTED)**

WALTER E. STEIMEL, JR.
STEIMEL COUNSELORS
    LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
 (202) 271-9258; (202) 652-2308 (f)
wes@sclgrp.com

THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD
    & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
 urban@fhhlaw.com

**Dated:**  August 21, 2023
        (Corrected September 6, 2023)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

ARGUMENT ........................................................................................................... 1

I.    Introduction ................................................................................................... 1

II.   Standard of Review for Both Issues. ............................................................ 2

      A.    Generally. ........................................................................................... 2

      B.    Specific to DNA Discovery Issue. .................................................... 4

III.  Preservation of Jane Doe's Anonymity. ...................................................... 5

      A.    Anonymity Consistently Preserved. .................................................. 5

      B.    Lack of Changed Circumstances, Facts, or Law. .............................. 6

      C.    Waiver. ............................................................................................... 7

      D.    Flawed *James* Analysis. .................................................................. 7

            1.    District Court Flawed Analysis; First *James* Factor ............ 8

            2.    District Court Recitation of Imaginary Facts; Second Factor. ........... 9

            3.    District Court's Conclusory Recitation; Third and Fourth Factors. ............................................................................. 9

            4.    Fifth Factor; Gross Abuse of Discretion. ............................ 10

      E.    Change in Case "Posture". ............................................................... 11

      F.    Further Notes on Applicability of *James* in the Commonwealth. ............ 14

IV.   DNA Testing; Violation of Court Orders. .................................................. 15

A.  Statement of Jurisdiction. ..................................................................15

B.  Statement of Issues Presented. ...........................................................17

C.  District Court's Discussion of Magistrate Buchanan's DNA Order. ........18

D.  Admissions Against Interest; Future Assumptions are Not in

    Record. ...........................................................................................20

V.  Arguments Not Presented to District Court. ....................................................21

VI.  Joint Appendix. .........................................................................................23

VII. *Amicus* Brief. ..........................................................................................24

A.  Procedure. ......................................................................................24

B.  Merits. ...........................................................................................25

CONCLUSION ..................................................................................................27

# TABLE OF AUTHORITIES[*]

## CASES

*America Online v. Anonymous Publicly Traded Co.*, 261 Va. 350, 364 (Va. 2001)*.............................................................. 6, 14

*Doe v. Bell Atlantic Business Systems Services, Inc.*, 162 F.R.D. 418 (D. Mass. 1995) ..................................................... 12, 13

*In re Grand Jury Subpoena* , 870 F.3d 312, 316 (4th Cir. 2017)* .......................... 4

*James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)* ................................ 3, 4, 7, 20

*Jones v. OSS Orthopaedic Hosp.*, Civil No. 1:16-CV-1258, at *4 (M.D. Pa. July 12, 2016) ............................................... 13

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.* , 748 F.3d 160, 172, 178 (4th Cir. 2014)* ...................................................... 4

*MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994) .................... 17

*Mezu v. Morgan State University*, 495 Fed. Appx. 286 (4th Cir. 2012)................... 2

*Morris v. Wachovia Sec., Inc.,* 448 F.3d 268 (4th Cir. 2006)............................... 2, 3

*Ostergren v. Cuccinelli*, 615 F.3d 263, 273-74 (4th Cir. 2010) ........................... 13

*Scott v. Vantage Corp.*, No. 21-2596, at *15 (3d Cir. Apr. 5, 2023)....................... 3

*Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) ........................... 4

## RULES

Rule 11................................................................................... 2, 3

---

[*]Authorities upon which Jane Doe chiefly relies are marked with asterisks.

Rule 3:3 of the Rules of the Supreme Court of Virginia ........................................ 14

Rule 60(b)(5) ................................................................................................... 2

## ARGUMENT

Plaintiff-Appellant Jane Doe ("Jane Doe") respectfully submits this reply brief.

## I.     Introduction.

Defendant-Appellee Cenk Sidar's ("Sidar") Response Brief misstates the standards of review applicable to these appeals, ignores decisive facts in the case, imputes nonexistent reasoning into the District Court's orders, makes new arguments never advanced before the trial court, recites new facts not in the record, cites precedents from other jurisdictions that are not controlling in this Circuit, cites unpublished opinions that are not controlling precedent in this Circuit, and cites cases for tangential and irrelevant issues. Sidar's recitation of new facts and arguments contain no cross-references to the record because there are none. Sidar's Brief also ignores Sidar's long standing defiance of court orders and disrespect for court rules and procedures. Sidar's actions have frustrated this court's processes and caused additional unnecessary costs to Jane Doe.

The District Court opinions on appeal share a common characteristic – they are contrary to the facts of the case and controlling precedent and constitute an abuse of discretion. Sidar provides no legitimate grounds warranting denial of Jane Doe's appeals, which should be granted.

## II.     Standard of Review for Both Issues.

### A.     Generally.

Sidar proposes a deferential abuse of discretion standard that does not apply to the appeals before this Court, and grossly misstates the applicable standard of review. His citation to *Mezu v. Morgan State University*, 495 Fed. Appx. 286 (4th Cir. 2012), is misplaced as it specifically states that it is unpublished and is not to be cited as precedent. Further, it is a *Perlman* doctrine case discussing unrelated third-party discovery. It is irrelevant to this case.

His citations to inapplicable Ninth Circuit rulings are equally unavailing. Reliance on those cases is defective because the Ninth Circuit applies a different standard to abuse of discretion reviews than the Fourth Circuit, and because both Ninth Circuit cases cited by Sidar address abuse of discretion review in the context of reviewing Rule 60(b)(5) orders requesting relief from a judgment or order. These cases have no relevance or application to the issues before this Court.

When Sidar finally does cite to Fourth Circuit cases, he cites to a Rule 11 review case, and an expert witness qualification case. These also do not apply to the instant appeal. Sidar's citation to *Morris v. Wachovia Sec., Inc.,* 448 F.3d 268 (4th Cir. 2006) is both incomplete and misleading. *Morris* is a review of a district court's application of Rule 11 sanctions and specifically states that the standard of review is tailored to the fact that the trial court has had an opportunity to view the

conduct of the attorneys over the course of a case. It has nothing to do with the facts in evidence or application of law to those facts. The inapplicability of *Morris* is crystal clear in Third Circuit rulings that follow *Morris*. In *Scott,* the Court observed that they "join the Fourth Circuit in holding that review of a district court's PSLRA-mandated Rule 11 inquiry is, as with other Rule 11 determinations, subject to the deferential abuse of discretion standard. *Morris v. Wachovia Sec., Inc., 4*48 F.3d 268, 277 (4th Cir. 2006)." *Scott v. Vantage Corp.*, No. 21-2596, at *15 (3d Cir. Apr. 5, 2023) (cleaned up).

It is clear that the standard review for both appeals is an abuse of discretion standard. This standard is nuanced by separate requirements for its application to appellate review of findings of fact and questions of law. The correct application of an abuse of discretion standard review in this Circuit is clear error for facts. The standard calls for legal conclusions to be reviewed *de novo*.

As set forth in her Opening Brief, *James* states that "abuse of discretion is 'an exercise that is flawed by erroneous factual or legal premises.'" *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993). "Failure to take relevant factors into account or acting on the basis of legal or factual misapprehensions respecting those factors makes an exercise of discretion not "informed", hence potentially an abuse of discretion." *James*, at 242. Refusal to exercise jurisdiction, failure to take into account judicially recognized factors, and erroneous factual or legal premises all

support a finding of abuse of discretion. *Id*. at 239. As in *James*, this Court failed to take into account proffers, through affidavits, that Jane Doe lives in the Middle East. *See*, *James*, at 241. The standard is not a discretionary standard that Sidar appears to advance, but one that requires an examination of facts recited by the court and its application of those facts to judicially recognized factors, and a *de novo* review of the law as applied. Here, the District Court adopted new facts not in the record, ignored facts on the record including the proffer of facts by Jane Doe[1], and misapplied the law.

## B. Specific to DNA Discovery Issue.

District courts enjoy "considerable discretion in overseeing discovery," and the Fourth Circuit will disturb a district court's discovery rulings only if it finds an abuse of that discretion. *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.* , 748 F.3d 160, 172, 178 (4th Cir. 2014). In applying the abuse-of-discretion standard, we review the district court's factual conclusions for clear error and its legal conclusions de novo. *In re Grand Jury Subpoena* , 870 F.3d 312, 316 (4th Cir. 2017))(discussing discovery privileges); *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

---

[1] In *James,* the Fourth Circuit quoted the trial court's musing -- "but frankly, I'm not willing to have people testifying in this court under pseudonyms and that sort of thing. That, to me, is improper" and the musing to be an example of an application of an impermissible preconceived notion. *James*, at 240 n.4.

Therefore, the first question is whether the District Court made a clear error in its factual conclusions. Jane Doe established in her Opening Brief that the District Court based its opinion on facts that were either not in the record or directly contrary to the record, rendering the Court's opinion a nullity. Then, this Court makes a *de novo* review of the legal rulings.

## III. Preservation of Jane Doe's Anonymity.

### A. Anonymity Consistently Preserved.

Jane Doe has preserved her anonymity since before filing her first underlying case in the Fairfax County Circuit Court to the present. JA858. At no time before filing or during the prosecution of the Fairfax County Circuit Court case did Sidar challenge Jane Doe's anonymity, nor at any time suggest that anonymity was inappropriate. JA061, JA858, JA931-932. Likewise, Sidar at no time requested anonymity for himself. JA061, JA122, JA858. Sidar did not raise the anonymity issue until after Jane Doe re-filed in the Eastern District of Virginia after non-suiting her Fairfax County case. JA113-114, JA858.

Sidar filed to lift Jane Doe's anonymity after she filed in the Eastern District of Virginia. JA301. Jane Doe's request for anonymity was granted when she first filed and before Sidar made an appearance in the case. JA063. At that time, Sidar had no right to object as he had not made an appearance. Jane Doe's right to anonymity was affirmed after Sidar challenged it for the first time ever. JA312,

JA319, JA320. In its order denying Sidar's first request to lift anonymity, the Court noted that it would revisit the issue prior to trial. JA312.

### B.     Lack of Changed Circumstances, Facts, or Law.

While a Court can revisit anonymity, any such review would need to be occasioned by a change in circumstances. The Virginia Supreme Court opined on when changes to anonymity rulings might be in order, stating "circumstances may change as litigation progresses, thereby requiring reconsideration of initial rulings." *America Online v. Anonymous Publicly Traded Co.*, 261 Va. 350, 364 (Va. 2001). In the instant case, there were NO changes in applicable circumstances. Sidar made no new arguments, advanced no new legal theories, nor introduced any new facts. Nor could Sidar introduce new facts – he had never taken Jane Doe's deposition or made any inquiries of Doe that touched on the issue of anonymity. Sidar simply rearranged and refiled his initial motion. Then, somewhere out of whole cloth, the Court invented facts and reversed itself when there were no changes in law, facts, or circumstances. The District Court cited no changes when reversing its earlier ruling. Jane Doe seeks to preserve the District Court's prior correct ruling.

The Court's recitation of facts not in the record, opposing application of *James* without explanation for the changes, and ignoring facts, arguments, and the

principles of waiver and laches, led the Court to enter an order that is based upon reversible error.

## C.    Waiver.

Jane Doe's consistent maintenance of her anonymity without challenge for over two (2) years raises the issue of waiver. JA122-123, JA162-163, JA301. She raised waiver with the District Court and the Court expressly decided to ignore the issue. JA312. The court's ignoring of the issue is *per se* abuse of discretion. As recognized in *James*, the most "obvious manifestation [of abuse of discretion] is in a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James*, at 239. The same reasoning applies here. The District Court should have ruled on Jane Doe's significant waiver argument and abused its discretion by explicitly refusing to consider the argument.

## D.    Flawed *James* Analysis.

Jane Doe seeks to preserve the two original rulings of the District Court that granted her anonymity. No fact in the record changed. No law changed. No relevant circumstance changed. The District Court entered a random and unsupported reversal of position. Sidar's reference to *Westberry*, another expert witness case, is misplaced and it is inapplicable. The applicable methodology for an abuse of discretion review, as discussed above, is that facts are reviewed for

clear error, and law reviewed *de novo*. In this case the Court's factual findings were clearly in error and its application of law deeply flawed.

Sidar mischaracterizes the District Court's order lifting anonymity as a "thoughtful and thorough reflection." Doc. 45, p. 13. Yet Sidar does not, and cannot, cite to a single quote or discussion that supports "thoughtful and thorough reflection" because it was nonexistent. The District Court simply made up facts and reversed itself with no basis or change in law or facts. The District Court's basis was deeply flawed.

### 1.    District Court Flawed Analysis; First *James* Factor.

The Court found that Jane Doe "has chosen to bring this civil suit in the United States and seek damages." Doc. 151, p.2. No *James* factor authorizes the punishment of a party for bringing an action in the United States. The Court's statement ignores the fact that Jane Doe had to bring this action in the United States because Sidar is avoiding jurisdiction in the U.K. where he raped her. JA790, JA793, JA855-856. The trial court then jumped to the conclusion that Jane Doe "has not demonstrated the level of need for anonymity sufficient to allow nondisclosure." JA921. How the Court came to this conclusion, which was the exact opposite of his earlier ruling, remains a mystery – a mystery that Sidar cannot explain, as there is no support in the record for this conclusion.

### 2. District Court Recitation of Imaginary Facts; Second Factor.

The Court then invents a new fact that Jane Doe "lives in the United States." JA921. The Court's statement is directly contrary to Jane Doe's affidavit of record, and neither the trial court nor Sidar ever took any depositions or contrary evidence from Jane Doe to support this fiction. The trial court conflates this fiction with the fact that the rape took place in the United Kingdom. JA921. This random sequence of statements does not support any kind of rational analysis but concludes that Plaintiff failed to point to any particularized harm that could come to her from her anonymity being lifted. Jane Doe raised multiple significant harms that would befall her if her anonymity were lifted and the District Court disregarded them with a summary finding. The Court's determination that Jane Doe has now not claimed harm with any particularity when no fact or circumstance has changed is without support in the record.

### 3. District Court's Conclusory Recitation; Third and Fourth Factors.

The Court recites the third and fourth factors, but it is impossible to tell what weight was given to them. Jane Doe had presented argument that these are neutral factors, and if so, they should not have been part of the Court's calculus at all. Sidar invents out of whole cloth the Court's reasoning or balancing of these factors. The Court did mention the factors, but it is unclear why as it did not assign a weight to them or mention their significance. Mere mention of factors by a court

does not mean that the court engaged in any analysis. The analysis imputed to the District Court is Sidar's own analysis, created for this appeal. This purported "trial court analysis" is not accompanied by any Joint Appendix citations, because there are none.

Contrary to Sidar's unsupported argument, the District Court assigned no weight to either factor and in fact, these factors are neutral, as Jane Doe explained in her Opening Brief. There is no basis in the record, or in the Order on appeal, to state that these factors had been weighed against anonymity.

### 4. Fifth Factor; Gross Abuse of Discretion.

The trial court recited the fifth *James* factor – risk of unfairness to Sidar. The court's observations on this point are highly offensive and constitute a clear abuse of discretion and lack of reasoned judgment. The court recited that "Defendant, who is the party who has now been found liable through a default judgment entered by this Court, continues in the suit using his legal name" and concludes that fairness dictate that Jane Doe proceed under her legal name as well. Doc. 151, p. 3. Of course, Sidar continues under his legal name. What other name would he use, and why is that fact relevant to any determination? The trial court's analysis seems to be that now it has awarded a default judgment to Jane Doe, she must be unmasked out of some sense of fairness to her rapist? Was it fair for her to be raped in the first place and forced to sue Sidar in this jurisdiction because he has

been evading jurisdiction in London where the police were conducting a criminal investigation of his conduct? The court did not explain what was supposed to be fair. These are not relevant *James* factors, and it is abhorrent to the fair administration of justice to reward an adjudicated rapist with the right to publicly shame the victim.

There is no lack of evidence in the record that Sidar is evading London jurisdiction. JA790, JA793, JA855-856. Jane Doe's efforts to find a jurisdiction to sue Sidar has been difficult. Sidar brought a baseless challenge to the jurisdiction of the Commonwealth that resulted in sanctions being levied upon him. JA024, JA036-037, JA303, JA855 There is also no doubt from the record that the default judgment on liability was the result of a deal made between Sidar and the trial court. JA775-776. Sidar exchanged dropping his first appeal to the Fourth Circuit and accepting a default judgment on liability as part of a deal to avoid having to supply his DNA sample to Jane Doe for damages purposes. JA775-776. Sidar took this bargain, with the trial court's concurrence, in order to suppress evidence.

### E.     Change in Case "Posture".

Sidar raises, for the first time (and not before the District Court) the issue he frames as the "posture" of the case. This "posture" refers to the fact that Sidar agreed to accept a default judgment on liability in exchange for dismissing his Fourth Circuit appeal of his initial challenge to the first DNA order and apparently

for being able to shield his DNA from examination by Jane Doe. This was a deal that met an overriding goal of his – to prevent his DNA from ever being examined apparently because of his fear of prosecution for rape in London – a jurisdiction he is avoiding. JA790, JA793, JA855-856.

Neither the District Court, nor Sidar before the court, ever raised the issue of credibility before a jury. These issues were raised only in the *amicus* brief and in Sidar's opposition brief. These issues could not have been factors in the District Court's decision because they were not before the court. Nor are any of the reasons cited by Sidar part of the District Court's ruling on fairness. As these issues had never been presented to or addressed by the District Court, consideration of them on appeal is improper.

Although they are improper for consideration on appeal, these concerns are also inapplicable to this appeal and inconsistent with Virginia policy regarding rape victims as raised by Jane Doe in the case below. JA118-119. Sidar did cite *Doe v. Bell Atlantic Business Systems Services, Inc*., 162 F.R.D. 418 (D. Mass. 1995) below, but for the proposition that rape shield laws apply to government prosecutions. First, this case has no precedential value in the Fourth Circuit. Further, the case has been questioned by another district court and it may not represent good law in any jurisdiction. In *Jones*, the court addressed anonymity and found that "Jones has made a substantial showing that disclosure of her

identity will result in a social stigma in some quarters of a type which may, and should, be avoided." *Jones v. OSS Orthopaedic Hosp.*, Civil No. 1:16-CV-1258, at *4 (M.D. Pa. July 12, 2016)(*citing Bell Atlantic* for the single opposing view). While *Jones* reviewed anonymity in the context of an HIV positive diagnosis, it indicates that showing a resulting stigma justifies anonymity. Likewise, Jane Doe has demonstrated the likelihood of a stigma and harm where she lives and works and should be afforded the same protection.

But beyond this, this Circuit has found that when the government has an interest in protecting privacy interests in judicial proceedings, the states must respond with procedures to avoid public documentation. In discussing whether under the First Amendment the press can be punished for reporting facts contained in the public records, and finding that they cannot, the Court stated "[a]t the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records. . . . Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it." *Ostergren v. Cuccinelli*, 615 F.3d 263, 273-74 (4th Cir. 2010). The Court explained that "[i]f there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information." *Id.* at 272 (cleaned up)

As discussed in the record and Jane Doe's Opening Brief, Virginia law provides anonymity for rape victims in criminal rape proceedings. This fact evidences that the Commonwealth has an interest in protecting rape victims. The District Court should not be permitted to lift Jane Doe's anonymity contrary to Commonwealth policy, particularly where Sidar is an adjudicated rapist and the only issue before the Court will be damages.

**F.     Further Notes on Applicability of *James* in the Commonwealth.**

Regarding the applicable standards and the laws of the Commonwealth, Jane Doe notes that *James* is more restrictive than Virginia law. The Supreme Court of Virginia has stated

> Rule 3:3 of the Rules of the Supreme Court of Virginia embraces the normative principle of disclosure and requires the "names" of the parties to be stated in pleadings. However, like other courts that have considered the issue, we recognize that there are certain circumstances when permitting a plaintiff to proceed under a pseudonym must be entrusted to the sound discretion of the trial court. We are persuaded that the factors considered by the Fourth Circuit in *James*, while not exhaustive, are appropriate for consideration by state courts in Virginia. Accordingly, we hold that, upon showing of special circumstances when a party's need for anonymity outweighs the public's interest in knowing the party's identity and outweighs the prejudice to the opposing party, a court may exercise its discretion to allow a party to proceed anonymously. Further, we recognize that circumstances may change as litigation progresses, thereby requiring reconsideration of initial rulings.

*America Online*, 261 Va. at 364. Under the standard followed by the Virginia Supreme Court, "need for anonymity outweighs the public's interest in knowing

the party's identity and outweighs the prejudice to the opposing party," protecting Jane Doe's anonymity would be even more clear than under the more limited *James* standard.

Here, Jane Doe has shown that her need for anonymity, supported further by the fact that she has remained anonymous for almost three (3) years at this point, vastly outweighs any public interest in knowing her identity. Sidar has been adjudicated to be her rapist – the sole issue before the District Court is a determination of damages. No benefit is served in this limited scope by making Jane Doe's identity public. If anything, the fact that liability is settled – that single change in "circumstances" – should serve to further strengthen Jane Doe's right to maintain her anonymity, rather than punish her for Sidar being adjudicated her rapist.

## IV. DNA Testing; Violation of Court Orders.

### A. Statement of Jurisdiction.

Sidar misstates Jane Doe's assertion of jurisdiction in this Court. Jane Doe originally filed her appeal under the Collateral Order doctrine but made clear in her Opening Brief that the consolidation of the appeals and overlap of issues between the consolidated appeals invokes the Pendent Issue doctrine providing this Court with jurisdiction to the extent that the Collateral Order doctrine does not. Jane Doe continues her assertion of the applicability of the Pendent Order doctrine, as fully

argued in her Opening Brief. The Pendent Order doctrine is fully applicable here as the District Court's abuse of discretion, misquoting facts and misapplying caselaw precedent, is so thorough as to require this Court of Appeals to vacate the trial court's opinion with instructions. Further, the District Court's unwillingness to enforce its orders against a party, Sidar, who flaunts rulings and rules of the courts, needs to be addressed prior to this case proceeding to trial.

Sidar refused to comply with court orders. JA747, JA790, Doc. 55. Sidar self-granted a stay in violation of the rules and was admonished that such conduct could lead to sanctions. JA714-726. Sidar objected to the filing of the amicus brief, by a counsel who was not of record in this case and then refuses to file a reply to the amicus brief requesting amicus status – until threatened with sanctions. Doc. 55. The only matter that will get the attention of Sidar will be an order that he must comply with his obligation to submit to DNA testing as part of Jane Doe's liability case. This will be one order that he cannot refuse or bargain away with the trial court.

The first interlocutory appeal taken in this case was Sidar's appeal of Magistrate Buchanan's DNA Order to the Fourth Circuit. JA615, JA718-726. At no time does Sidar explain why he thought that his appeal of Magistrate Buchanan's DNA Order was permissible under the Collateral Order doctrine, but now magically when Jane Doe appeals the later DNA ruling, the Collateral Order

doctrine does not apply. Jane Doe submits that Sidar's original appeal of
Magistrate Buchanan's DNA Order is an admission that the Collateral Order
doctrine applies to Jane Doe's appeal, and that he has waived any objection to this
appeal.

**B.     Statement of Issues Presented.**

The question raised by Jane Doe in her appeal of the DNA Order involves an
"important question independent of the subject matter of the litigation" to quote
from *MDK, Inc. v. Mike's Train House, Inc*., 27 F.3d 116 (4th Cir. 1994) cited by
Sidar. Despite Sidar's restatement of issues, the "important question" before this
Court is whether the District Court abused its discretion in failing to enforce an
outstanding order that had not been modified, complied with, or withdrawn. Sidar
has exhibited a pattern of blatantly violating Court Orders and Rules and abusing
the judicial process. The court's unwillingness to enforce its orders and rules
increasingly emboldens Sidar to ignore his obligations and undermines the rule of
law. The court's reticence to enforce its orders and rules in this case provides a
guide to future litigants that they can also ignore the orders and rules of this court
without consequence.

Further, the issues presented in the DNA accessibility determination go to
the heart of victims' rights against their attackers – and is brought into sharp focus
as Sidar has already been adjudged to be a rapist, and to have raped Jane Doe.

Limiting discovery and failing to enforce outstanding discovery orders serves to punish the victim in favor of the rapist and does not serve the efficient or fair administration of justice.

### C. District Court's Discussion of Magistrate Buchanan's DNA Order.

Contrary to Sidar's assertion, neither the Magistrate Judge nor the District Judge articulated whether DNA testing and comparison goes to the issue of damages. This absence of articulation is evident from the absence of citations to the record. Jane Doe has asserted from the beginning the need for DNA testing as part of the damages phase of the case – it goes to prove recklessness and callous disregard in not using a condom during a rape – adding another level of damages. JA772. Magistrate Judge Buchanan's original DNA order did not distinguish between liability and damages, it constituted a blanket finding that Sidar must appear for DNA testing. JA437-441.

The DNA Issue is one that is not likely to be preserved on appeal. Sidar and the District Court must know, as Jane Doe has argued below and before this Court, that every day he delays providing his DNA sample testing, the likelihood that the sample in London, or the test results, may no longer be available. He was willing to make a "bargain" with the District Court – he would withdraw his appeal and take a default judgment on liability in order to avoid having to supply a DNA sample. Bargaining a trade off with a District Court that impacts the rights of the

parties should not be permitted. The District Court cannot permit a litigant to ignore court orders and then trade a default judgment on liability to protect him from having to provide an important piece of evidence in his possession, especially knowing that the comparison sample will not be available forever. Like the attorney-client privilege or pseudonymity, which are clearly reviewable in an interlocutory appeal because once lost they cannot be recovered, access to biological evidence may also be irrecoverable due to its delicate and unstable nature.

There can be no mistake that Sidar's trade off – dismissing an appellate challenge to Magistrate Buchanan's DNA Order for a default judgment on liability – was reasonably calculated to protect Sidar from having to provide his DNA to anyone. Sidar had already admitted, extensively in text messages, that he had raped Jane Doe. JA028, JA042-056, JA255. He apologized for "acting like an animal" and demanded her silence. JA028, JA042-056, JA255. Sidar did not trade away anything, he was going to lose on liability, so his trade was made in an effort to suppress evidence. This Court cannot contemplate such horse-trading with a District Court.

The District Court's failure to address the fact that Magistrate Buchanan's DNA Order was still outstanding and that Sidar was in active violation of that order invokes the same refusal to address an issue that this Court has recognized to

be an "obvious manifestation" of an abuse of discretion. *James*, at 239.

Comparison of Sidar's DNA to the rape kit sample in London is a critical

component of the damages phase of this case, as argued by Jane Doe below.

JA617, JA632, JA744, JA772, JA787-792. The District Court's failure to

recognize that Sidar's DNA is still a critical component of the liability phase of

this case or address this issue invokes the same analysis and requires the same

conclusion. The District Court abused its discretion.

### D. Admissions Against Interest; Future Assumptions are Not in Record.

Sidar makes several interesting admissions against interest in his Brief.

(Doc. 45, p. 33). He admits that a judicial finding has been made that Sidar did not

use a condom when he raped Jane Doe. He further admits that the jury can

"assume" that the DNA found in the rape kit is that of Sidar. These are new

admissions by Sidar that did not previously exist in the record of this case. Doc.

45, p. 33. Finally, he states that once the jury is instructed that a default judgment

was entered on liability then the jury will "assume" that the rape occurred.

Whether or what a jury might "assume" at trial is a futile exercise, not within

the record of the case, and attempts to predict what a jury might think. Sidar's

admissions demonstrate that indeed, a DNA match is required to "prove" (rather

than let the jury "assume") that Sidar raped and penetrated Jane Doe with utter and

reckless disregard for her health, safety, and emotional state. It demonstrates that

DNA is an essential element to prove that he penetrated Jane Doe without protection, ejaculating in her, assaulting her on even a more personal level by depositing his sperm, unwanted, inside of her. These facts, when proven at trial, will be more powerful than predictions of what a jury might "assume" and demonstrates Sidar's level of hysteria in his attempts to bar Jane Doe from obtaining his DNA sample. Future assumptions about future party arguments, future jury instructions, future evidence, and future "assumptions" are not proper or relevant to the issues before this Court and should be disregarded. They will be relevant, however, to limiting Sidar's ability to make contrary arguments in any future proceedings below.

## V.      Arguments Not Presented to District Court.

Sidar's arguments from the last paragraph on page 12 (Doc. 45, p. 17) through the first full paragraph on page 14 (Doc. 45, p.19), and the last full paragraph on page 22 (Doc. 45, p.27), were not made before the District Court. Sidar provides no cites into the record because there are none. Likewise, Sidar does not cite to any statement by the District Court, either in the transcripts or its Order, that discusses or balances these issues, because there are none. At no point in the record did Sidar discuss the "posture" of the case, issues of prejudice before a jury (or the long line of Second Circuit cases cited), issues of comparable credibility, or the new issue of a supposed long time "friendship" that has never been raised at

any point in the proceedings. No factual allegation of a "friendship" has ever been made, and is not cited in the record, because it is imaginary and nonexistent. Having not been made below, these arguments cannot be considered now.

Contrary to Sidar's unsupported and newly revealed fantasy of "friendship," the record demonstrates the lack of anything close to "friendship." Sidar, then a married father of two small children (JA042-056), cheats on his wife by raping, in the middle of the night and without consent (JA042-056), a woman who had attended the same university as he ten (10) years prior (JA025, JA042-056), and with whom he had no communications for several years. JA042-056. After raping her, he admits that "he acted like an animal" (JA 028) and begs her not to tell anyone because it will ruin *his* life. JA042-056. Sidar's warped view of friendship informs this Court of his real motivations – shame and expose the victim's identity in order to harm her as much as possible as retaliation for telling anyone that he raped her.

This so-called "friend" then avoids jurisdiction and prosecution in London and frustrates the investigation by the London police, requiring Jane Doe to file in the United States and not in the U.K., which provides blanket pseudonymity to rape victims, even in civil settings. Once sued in the Commonwealth, he wastes months in a baseless appeal to the jurisdiction which he loses and is sanctioned.

JA036-037. These are not indicators of "friendship," a concept introduced for the first time in this action.

These issues and claims, never before presented to the District Court nor in any pleadings filed by the parties, are highly prejudicial and not supported by fact. These have no bearing on the instant appeal and must be disregarded. Further, some court needs to provide instructions to Sidar that victim shaming and introduction of unsupported facts will not be tolerated in this Circuit or the District Court for the Eastern District of Virginia.

## VI.  Joint Appendix.

When assembling the Joint Appendix, the undersigned asked Sidar's counsel to concur. Sidar objected to inclusion of the memoranda of law filed by the parties but did not otherwise comment or make suggestions on the Joint Appendix. Faced with no cooperation on the Joint Appendix, Jane Doe had no choice other than to include the complete record relevant to the two issues before this court. Out of an abundance of caution, Jane Doe included all the memorandum and arguments of counsel relevant to the issues to ensure that both parties would have a complete record for citation in support of its arguments.

Given that all arguments and memoranda relevant to his appeal are contained in the Joint Appendix, there is no excuse for a party to fail to cite to the record. Failures in citation indicate that there is no basis in the record for

statements or arguments. Sidar's failure throughout his opposing Brief to cite to the record demonstrates that no support exists in the record. A review of this extensive Joint Appendix will not reveal any instance in which Sidar had previously made many of his arguments. Those arguments cannot be considered by this court.

## VII. *Amicus* Brief.

### A.    Procedure.

Jane Doe makes a brief observation regarding concurrence in Professor Volokv's request to file an *amicus* brief. While she was concerned about the position Professor Volokv might take in this appeal, she also recognized that he has filed in similar proceedings, and that courts, including this Court, had granted his requests in the past. She also believes that the critical issues raised in this appeal could benefit from a robust discussion of the underlying legal principles, particularly by a preeminent scholar and professor steeped in these legal issues. Recognizing these factors, she consented to his filing an *amicus* brief.

In contrast, and in line with his conduct throughout these cases, Sidar refused to consent to Professor Volokv filing his *amicus* brief. Sidar's refusal was transmitted by an attorney named Alex Mitrakas. He was Sidar's attorney in the original Fairfax County Circuit Court action but was not counsel of record in this appeal at that time.

This Court made multiple requests to make Sidar brief his objections to Professor Volokv's *amicus* brief request. It was not until this Court threatened sanctions that he filed. He then insulted this Court by filing only a one-sentence brief. Sidar's initial refusal required Professor Volokv to file a motion for permission to file – which was unnecessary. Sidar's subsequent delay also complicated Jane Doe's reply briefing, as she had to leave open how to address issues in her brief well into her limited time period. Sidar's conduct is not unusual in this case, and sheds light on issues related to his inability or refusal to follow court procedures and orders. We believe that his conduct provides further context for this appeal.

## B.    Merits.

Professor Volokv, the author of the *amicus* brief, is not a proponent of anonymity in proceedings. Even he agrees that under the facts of the instant case anonymity may be required, and he requests that any ruling by this Court on the issue be limited to the facts of the case. Jane Doe is not advocating for blanket anonymity for all rape victims, as justified as that may be. She is advocating for her continued anonymity when Sidar has already been adjudicated as her rapist, and her living in the Middle East while working in the defense sector would expose her to excessive risk of harassment and physical harm should her identity be exposed.

The justifications for denial of anonymity advanced by Professor Volokv are not present or are inapplicable in this case. Sidar has already been adjudicated to be a rapist, eliminating the need for a public identification of Jane Doe to assist with Sidar's defense. Settlement discussions should not be a factor in determining the grant of anonymity, but particularly when Sidar has been adjudicated to be the rapist. Professor Volokv recognizes that this Court should be less concerned with Sidar's interests than Jane Doe's because the Court has ruled that he did rape her. (p. 3)

Mutual anonymity is not an option in this case. Sidar never requested anonymity, and until this case, for over two years, never challenged Jane Doe's anonymity.

Finally, Professor Volokv's observations regarding the need for pseudonymity to protect a rape victim from harm and stigmatization support Jane Doe's request. He recognizes that "regrettably" being identified as a sexual assault victim stigmatizes the victim. (p. 4) He "hopes" that the stigma "is less today" but any review of current press, in particular the assault on women's rights in other countries would challenge that "hope" as applied to Jane Doe, who works and resides in the Middle East. "Hope" is not helpful. Jane Doe should be protected, especially against her adjudicated rapist.

Jane Doe hoped that Professor Volokv, being a constitutional scholar, would have addressed the balancing of First Amendment, Fourteenth Amendment, and Jane Doe's privacy rights in his brief. Although he did not, Jane Doe asserts that her privacy rights and constitutional privacy rights prevail over the general presumption of the openness of court proceedings, especially under the facts of this case. Jane Doe appreciates that Professor Volokv observes that Jane Doe's case is an example of the type of situation where a rape victim should be accorded anonymity and asks that this Court preserve her anonymity.

## CONCLUSION

Jane Doe's appeal demonstrates that the Districts Court abused its discretion by not articulating reasonable bases for its orders, relying on facts not in evidence, and misapplying the law. This Court must apply an abuse of discretion standard to both issues on appeal – one that reviews factual findings for clear error and lack of record support, and legal issues *de novo*.

Jane Doe requests that this Court vacate both orders of the District Court and direct the District Court to enforce Jane Doe's anonymity throughout the remainder of the proceedings in this matter. Jane Doe also requests that this Court direct the District Court to order Sidar to make himself available for DNA testing and to adjourn further proceedings in the case until that sample can be taken and analyzed, and a report be provided to the District Court. Finally, Jane Doe requests

that this Court direct that future violations of Court Orders be met with swift and severe sanctions, including contempt and/or incarceration if Sidar fails or refuses to provide a DNA sample.

Dated: August 21, 2023
          (Corrected September 6, 2023)

                    Respectfully submitted,


                    /s/ Walter E. Steimel, Jr.
                    WALTER E. STEIMEL, JR.
                    STEIMEL COUNSELORS LAW GROUP PLLC
                    1455 Pennsylvania Ave., N.W., Suite 400
                    Washington, D.C. 20004
                    (202) 271-9258; (202) 652-2308
                    wes@sclgrp.com

                    THOMAS F. URBAN II, VSB #40540
                    FLETCHER, HEALD & HILDRETH, PLC
                    1300 17th Street North, Suite 1100
                    Arlington, Virginia 22209
                    (703) 812-0462; (703) 812-0486 (f)
                    urban@fhhlaw.com

                    *Counsel for Appellant Jane Doe*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Local Circuit Rule 32(g), I hereby certify that the foregoing Reply Brief of Appellant Jane Doe (Corrected) contains 6,547 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count, and therefore is within the word limit set by the Court.


Dated:    September 6, 2023


/s/ Walter E. Steimel, Jr.
Walter E. Steimel, Jr.

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 25, I hereby certify that on this 6th day of September 2023, a copy of the foregoing Reply Brief of Appellant Jane Doe (Corrected) was served electronically through the Court's CM/ECF system on all ECF-registered counsel.

/s/ Walter E. Steimel, Jr.
Walter E. Steimel, Jr.
