**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1151

JANE DOE,

    Plaintiff – Appellant,

v.

CENK SIDAR,

    Defendant – Appellee.

No. 23-1177

JANE DOE,

    Plaintiff – Appellant,

v.

CENK SIDAR,

    Defendant – Appellee.

-------------------------------

PROFESSOR EUGENE VOLOKH,

    Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:22-cv-00545-CMH-JFA)

Argued: December 7, 2023                                          Decided: February 21, 2024

Before WILKINSON, KING, and HEYTENS, Circuit Judges.

Appeal in No. 23-1151 dismissed. Order in No. 23-1177 vacated and remanded with instructions by published opinion. Judge Heytens wrote the opinion, which Judge Wilkinson and Judge King joined. Judge Wilkinson wrote a concurring opinion.

**ARGUED:** Walter E. Steimel, Jr., STEIMEL COUNSELORS LAW GROUP PLLC, Washington, D.C., for Appellant. Mariam Wagih Tadros, WOMBLE BOND DICKINSON (US) LLP, Tysons, Virginia, for Appellee. **ON BRIEF:** Thomas F. Urban, II, FLETCHER, HEALD & HILDRETH, PLC, Arlington, Virginia, for Appellant. Eugene Volokh, UCLA SCHOOL OF LAW, Los Angeles, California, for Amicus Curiae.

2

TOBY HEYTENS, Circuit Judge:

A woman sued a man for sexually assaulting her and used a pseudonym throughout discovery. After the man refused to comply with its discovery orders, the district court entered a default judgment against him and ordered the woman to use her real name going forward. The woman appeals the district court's non-anonymity order, along with a separate order denying her request to compel the man to provide a DNA sample. We dismiss the appeal from the discovery order for lack of jurisdiction. On the non-anonymity order, we hold the district court committed legal error by understating the woman's interest in anonymity, appearing to announce a general rule that fairness considerations invariably cut against allowing a plaintiff to be anonymous at trial unless the defendant is also anonymous, and failing to recognize the significance of its default judgment on liability. We thus vacate the non-anonymity order and remand for further proceedings.

I.

Because the district court entered a default judgment on liability, we treat it as conclusively established that Cenk Sidar raped Jane Doe in London in September 2017. As this Court has explained, "[t]he legal effect of a default judgment is that the defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting . . . the facts thus established." *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) (quotation marks removed). For that reason, we must assume that Sidar "admitted that he . . . raped" Doe and the truth of her allegations about how he did so. JA 27–28.

Doe first sued Sidar in Virginia state court for assault, battery, and intentional infliction of emotional distress. After litigating that case for more than a year, Doe

3

voluntarily dismissed it by taking a "nonsuit" under Virginia law. See Va. Code § 8.01-380. As Doe later explained, she grew frustrated with her inability to get Sidar to comply with discovery orders—particularly his failure to provide a DNA sample—and thought she might have better luck in federal court.

Six months later, Doe filed this suit in federal district court, invoking diversity jurisdiction and asserting the same claims. As she had done in state court, Doe filed her complaint using a pseudonym and asked the district court to allow her to "participate in this proceeding in an anonymous capacity." JA 62. The court granted that motion the next day.

A little more than a month later, Sidar filed a motion asking the district court to require that Doe use "her true name" in "all filings and proceedings." JA 72. The district court denied that motion in an oral ruling but left open the possibility that Sidar could "renew" it "at the time of trial." JA 312.

The case proceeded to discovery. Again, Doe tried to obtain a sample of Sidar's DNA, asking the court to order him to provide one under Federal Rule of Civil Procedure 35. A magistrate judge granted Doe's motion, and the district court upheld that order over Sidar's objections.

But Sidar flouted the court's order—without obtaining a stay, he failed to appear to produce a DNA sample at the time set by the court. See JA 763 (describing Sidar's conduct as "a clear and blatant violation of" the court's order). In response, Doe filed a "motion for sanctions and to further compel compliance with" the order to produce a DNA sample. JA 617. After a hearing, a magistrate judge recommended that the district court "enter a

4

judgment of default against [Sidar] as to liability and proceed on damages alone" but declined Doe's request to take further efforts to force Sidar to provide a DNA sample. JA 737.

The district court agreed with the magistrate judge on both points. In one order, the court entered a "default judgment . . . against [Sidar] as to liability," while stating the case "shall proceed as to damages." JA 781. In another order, the district court affirmed the magistrate judge's refusal to force Sidar to provide a DNA sample. In so doing, the court adopted the magistrate judge's reasoning that, because "liability would not be an issue at trial and the trial would be limited to [Doe's] alleged damages, there was no further" need for Sidar to provide his DNA. JA 764–65. Doe noticed an appeal from the second order, which was docketed as No. 23-1151 in this Court.

Two weeks after the district court entered a default judgment against him and limited any further proceedings to damages, Sidar filed a "renewed motion to remove" Doe's "pseudonym designation" and asked the court to order Doe to use "her true name" going forward. JA 808. A month and a half later—and 11 days before trial was to start—the district court granted Sidar's motion. Doe appealed that order too, and that appeal (No. 23-1177) was consolidated with her appeal from the discovery order. This Court granted Doe's motion to stay proceedings in the district court pending resolution of the two appeals.

II.

We begin, as we must, with our own jurisdiction. See, *e.g.*, *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("An appellate federal court must satisfy itself . . . of its own jurisdiction[.]"). Usually, no appeal will lie until a district court has issued a decision that

5

"ends the ligation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Doe does not contend that standard is satisfied here. Instead, she says her appeal from the district court's non-anonymity order falls within the collateral order doctrine and that we have jurisdiction over her appeal from the discovery order under both the collateral order doctrine and the doctrine of pendent appellate jurisdiction.

Doe has the first part of that argument right. As both parties recognize, this Court has held "non-anonymity order[s]" are appealable under the collateral order doctrine. *James v. Jacobson*, 6 F.3d 233, 236–38 (4th Cir. 1993). We thus have jurisdiction in No. 23-1177.

We conclude, however, that we lack jurisdiction over Doe's appeal from the district court's refusal to take further steps to compel Sidar to provide a DNA sample. As Doe acknowledges, that appeal "involves the review of a District Court's discovery order[]." Doe Br. 2. Such orders are "generally" interlocutory, and "courts have rather routinely declined to extend the collateral order doctrine to discovery rulings." *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119–20 (4th Cir. 1994).

Doe's efforts to buck that trend fail. Doe insists the order preventing her from obtaining a sample of Sidar's DNA "is tantamount to a summary judgment against" her with respect to a portion of her damages claim. Doe Br. 3. But even orders that *actually*—not just practically—grant partial summary judgment to a defendant are not appealable under the collateral order doctrine. See, *e.g.*, *American Petrol. Inst. v. Cooper*, 718 F.3d 347, 353 n.7 (4th Cir. 2013) (appeal of partial summary judgment order filed after final

6

judgment was timely because the partial summary judgment order was not immediately appealable when issued). In any event, the Supreme Court "has expressly rejected efforts to reduce" the collateral order doctrine to a "case-by-case appealability determination," stating we must examine "the entire category" of district court rulings "to which a claim belongs." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (alterations and quotation marks removed).

The relevant category here is district court orders denying requests for a physical or mental examination under Federal Rule of Civil Procedure 35. Doe cites no decision holding such rulings are appealable under the collateral order doctrine. Contra *Donnelly v. Parker*, 486 F.2d 402, 408 (D.C. Cir. 1973) (describing such orders as "interlocutory and nonappealable").

In fact, it appears this Court has already resolved the relevant question. In *Bowles v. Commercial Casualty Insurance Co.*, 107 F.2d 169 (4th Cir. 1939), our Court dismissed for lack of appellate jurisdiction an appeal "from an order . . . directing that [the] defendant submit to a physical examination." *Id.* at 169. Orders compelling a party to submit to a physical or mental examination implicate serious privacy interests and cannot be undone later. If those sorts of orders are not immediately appealable, it seems obvious that orders denying such requests—the type of order we have here—are not immediately appealable either.

It could be argued that *Bowles* is no longer binding on this point because it was decided a decade before the Supreme Court announced the now-canonical formulation of the collateral order doctrine in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541,

7

546 (1949). But "[w]e do not lightly presume that the law of this circuit has been overturned, especially where, as here" it is possible to read our existing precedent as "harmonious[ ]" with the Supreme Court's current approach. *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (quotation marks removed). *Bowles* is consistent both with the view of most federal circuits that orders granting (and, by inevitable implication, denying) requests for physical or mental examinations are not appealable under the collateral order doctrine,[*] and with the Supreme Court's repeated admonition that *Cohen*'s "narrow exception" to the usual finality rules "should stay that way." *Digital Equip. Corp.*, 511 U.S. at 868 (quotation marks removed). For that reason, we think *Bowles*' conclusion remains sound. We thus hold that the category of orders at issue—those denying a request for a physical or mental examination—falls outside the collateral order doctrine.

That leaves Doe's argument that because we have jurisdiction over her appeal from the district court's non-anonymity order, we have pendent appellate jurisdiction to hear her appeal from the discovery order. Here too, we disagree.

Pendent appellate jurisdiction is also a "narrow" exception to the usual finality requirements. *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006). Where that exception applies, appellate courts have "discretion to review issues that are not otherwise subject to immediate appeal." *Id.* In this circuit, pendent appellate jurisdiction "is available

---

[*] See *Reise v. Board of Regents of Univ. of Wis. Sys.*, 957 F.2d 293, 294–95 (7th Cir. 1992); *Parker v. University of Pa.*, 128 Fed. Appx. 944, 947 n.5 (3d Cir. Apr. 29, 2005). Compare *Accosta v. Tenneco Oil Co.*, 913 F.2d 205, 208 (5th Cir. 1990) (holding that the Rule 35 order at issue "in the instant case" was appealable under the collateral order doctrine), with *Goodman v. Harris Cnty.*, 443 F.3d 464, 467–69 (5th Cir. 2006) (holding that Rule 35 order was not appealable under the collateral order doctrine.)

8

only (1) when an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of an immediately appealable issue." *Id.* (quotation marks removed).

The discovery order here fits within neither category. Doe notes that both the district court's non-anonymity and discovery orders arise from the same general set of facts and asserts that both "embolden assailants to weaponize the judicial system against victims" and "discourage victims from defending their rights." Doe Br. 3. Maybe so. But that does not mean the legal issues presented by the two orders are "inextricably intertwined" or that reviewing the discovery order now is "necessary to ensure meaningful review" of the non-anonymity order. *Rux*, 461 F.3d at 475. Doe's challenge to the discovery order involves the proper application of Federal Rule of Civil Procedure 35, as well as the scope of the district court's authority to manage discovery and impose sanctions. None of that has any direct bearing—much less an unavoidable one—on whether the district court erred by requiring Doe to use her real name during the remedial phase. (Indeed, as the reader will soon see, our discussion of the non-anonymity order makes no mention of Rule 35, DNA testing, or discovery standards.) We thus dismiss the appeal in No. 23-1151 for lack of jurisdiction and turn to the merits of Doe's appeal from the non-anonymity order.

III.

There is a "presumption" that parties must sue and be sued in their own names. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). "Pseudonymous litigation undermines the public's right of access to judicial proceedings" because "[t]he public has an interest in

9

knowing the names of litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) (citations removed). For that reason, few cases warrant anonymity, and few litigants request it. See *Doe v. Doe*, 85 F.4th 206, 211 (4th Cir. 2023) (noting that litigant anonymity should be "rare" and justified by "exceptional" circumstances (emphasis removed)).

Like most questions "involving management of the trial process," whether to allow a litigant to proceed anonymously is "committed in the first instance to trial court discretion." *James*, 6 F.3d at 238. But "[d]iscretion is not whim," and "'a motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807) (No. 14,692d) (Marshall, C.J.)) (alterations in original).

This Court's decisions establish several guideposts for resolving requests to proceed anonymously. To begin, district courts may not deny such requests "on the basis of general disapproval of party anonymity at trial" or act based on any "general rule." *James*, 6 F.3d at 239, 242. Instead, the decision whether to permit use of a pseudonym must be based on "the circumstances of particular cases." *Id.* at 238.

This Court has also identified "five nonexhaustive factors for district courts to consider when deciding motions to proceed by pseudonym." *Doe v. Doe*, 85 F.4th at 211. The first focuses on why the requesting party is seeking anonymity, asking whether "the justification" "is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature." *James*,

10

6 F.3d at 238. The second factor directs the court's attention to risks of denying anonymity by asking "whether identification [of the requesting party] poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties." *Id.* The third likewise focuses on the claimed need for anonymity by considering "the ages of the persons whose privacy interests are sought to be protected." *Id.* In contrast, the fourth and fifth factors focus on the legitimate interests on the other side by asking "whether the action is against a governmental or private party" and assessing "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Id.*

Having reviewed the record and the district court's explanation, we hold that its decision to remove Doe's anonymity on the eve of the damages-only trial strayed from the "legal constraints on" its discretion in three ways. *James*, 6 F.3d at 239.

*First*, the district court "fail[ed] to adequately take into account" the nature and strength of Doe's legitimate interest in anonymity. *Doe v. Doe*, 85 F.4th at 210 (alterations and quotation marks removed). The district court acknowledged that "the underlying facts of this case are sensitive." JA 921. But the court thought Doe failed to "demonstrate[] the level of need for anonymity sufficient to allow nondisclosure" because she "chose[] to bring" the "suit in the United States" and there are "no allegations" that Doe herself engaged in "illegal activity." *Id.*

That explanation seriously understates Doe's legitimate privacy interests. To begin, the fact that Doe chose "to bring this civil suit in the United States and seek" damages (JA 921) will be true of every plaintiff seeking to proceed anonymously in federal court

11

and is thus irrelevant to the required case-specific analysis.

In addition, the issues here are not merely sensitive—they involve intimate details of Doe's sexual assault and resulting "psychological trauma." JA 33. Courts have recognized "a plaintiff's interest in preserving privacy where the allegations concern sexual assault." *Doe v. Doe*, 85 F.4th at 212. In fact, this Court has noted that "the practice of closing courtrooms to members of the public while a victim of sex crimes testifies"—a step far more drastic than the "limited form of closure" represented by allowing a sexual assault victim to use a pseudonym—"has not been uncommon." *Bell v. Jarvis*, 236 F.3d 149, 167 (4th Cir. 2000) (first and third quote); *James*, 6 F.3d at 238 (second quote). For that reason, "[f]ictitious names are" often "allowed when necessary to protect the privacy of children, *rape victims*, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (emphasis added). The importance of these privacy interests is not limited to criminal cases. To the contrary, there is an entire provision of the Federal Rules of Evidence whose purpose is to protect the privacy interests of sexual assault victims—including alleged victims—in both criminal and civil cases. See Fed. R. Evid. 412. This case thus implicates "privacy or confidentiality concerns" of the highest order. *James*, 6 F.3d at 238.

*Second*, the district court's analysis was legally flawed in its suggestion that fairness considerations invariably cut against anonymity unless the opposing party is also proceeding anonymously. The court said "[f]airness require[d]" Doe to use her legal name at trial because Doe "brought this public civil suit, making allegations against [Sidar]" and Sidar "continues in this suit using his legal name." JA 922. The only case-specific fact

12

mentioned by the district court in this portion of its opinion is that Sidar "has now been found liable through a default judgment" (*id.*)—something that, as we will explain, cuts sharply in Doe's favor. See pp. 13–15, *infra*. The district court thus appears to have endorsed a "flat rule" that the fairness factor always counsels against letting a plaintiff in a civil action use a pseudonym at trial unless the defendant is also using one. *James*, 6 F.3d at 240 n.4.

That is not the law. This Court has never endorsed such a principle, which would stray from the "particularized assessment of the equities" mandated by *James*. 6 F.3d at 239. Indeed, in *James* this Court vacated an order forbidding the plaintiffs from testifying anonymously even though no one was suggesting the defendant should also be anonymous. See *id.* at 236, 242–43. (We note, moreover, that Sidar has never requested anonymity in this case or in the state court proceedings.)

*Third*, the district court's decision was based on a "flawed . . . legal premise[]" because it did not grapple with the fact that its entry of a default judgment tipped powerfully in Doe's favor. *James*, 6 F.3d at 239. To the extent the court referenced the default judgment at all, it appeared to view it as cutting against Doe's request for anonymity, mentioning it only in the portion of its opinion concluding that "[f]airness require[d]" Doe to use her legal name going forward. JA 922.

That too was legal error. That Sidar has already been found liable for raping Doe and that further proceedings will be limited to determining the damages he must pay significantly reduces any "risk of unfairness to" Sidar resulting from Doe's continued anonymity. *James*, 6 F.3d at 238.

13

To see why, consider two sources of potential unfairness when a plaintiff seeks to proceed anonymously while making allegations against a known defendant. For one, there is a concern that anonymity may serve as a "shield behind which" false or "defamatory charges may be launched without shame or liability," *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005), thus creating the risk a blameless defendant will suffer embarrassment and reputational damage merely by being sued. There is also the one-sidedness of allowing a plaintiff to "have [their] cake and eat it too" by gaining the ability to stay anonymous if they lose—thus avoiding reputational harms from disclosing the underlying facts or bringing an unsuccessful lawsuit—while retaining the power to reveal their identity if they win. *Doe v. Doe*, 85 F.4th at 217.

Those risks evaporate once liability has been established. At this point, Doe is not seeking to keep her identity secret because she fears she might lose this case. There is also no risk Sidar's reputation will be damaged by false accusations of wrongdoing. The district court's default judgment conclusively establishes that Doe is a victim and Sidar raped her, and nothing that happens at a damages-only trial can change that.

The district court's default judgment also reduces the risk that Sidar would suffer any unfair prejudice at trial. Where liability has not been established, there is at least some risk that jurors may view a decision to let one side proceed anonymously as suggesting that the anonymous party's claims are valid or that it has the better case than the non-anonymous party. See *James*, 6 F.3d at 241 (recognizing the "concern that the jury's very knowledge that pseudonyms were being used" could "tend to validate" the plaintiff's claims); see also *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (noting "risk that the . . .

14

use of pseudonyms might prejudice the jury" in the anonymous party's favor). But any such concerns are weakened—if not eliminated—here because the jury will have no need to guess about the court's view of the merits of Doe's claims. Instead, the court will tell the jury that Doe's claims succeed as a matter of law and that the jury may not revisit that issue. It is hard to see how Sidar will suffer any extra prejudice from letting Doe use a pseudonym in a case where the jury will be told it must take as a given that he raped her.

We thus conclude the district court exceeded the bounds of its discretion in its order requiring Doe to use her real name at trial. Consistent with our past practice, we vacate that "order and remand with directions to reconsider in light of this opinion." *James*, 6 F.3d at 242. By doing so, we acknowledge "the continued superiority of the trial court's vantage point in making this sort of discretionary decision" while expressing "confidence" in the district court's ability "to engage in true reconsideration that accepts and takes into account the specific concerns with the decision under review that are expressed in this opinion." *Id.* at 243.

\*   \*   \*

The appeal in No. 23-1151 is dismissed for lack of jurisdiction. In No. 23-1177, the district court's order is vacated, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

15

WILKINSON, Circuit Judge, concurring:

I concur in the majority's thoughtful opinion. I appreciate especially its recognition of the potential for pseudonymous litigation to "undermine[] the public's right of access to judicial proceedings" and how "disclosing the parties' identities furthers openness of judicial proceedings." Maj. at 9–10.

Transparency is not only important for its own sake. It is integrally linked to the need of courts to maintain public trust. *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014). We are reliant in the first instance on the executive to enforce our judgments. And ultimately, we are reliant on the public's trust in the process by which those judgments are reached. David F. Levi, et al., *Losing Faith: Why Public Trust in the Judiciary Matters*, Judicature, Vol. 106 No. 2 (2022).

To reduce litigants to "Does" and initials risks making of them stick figures and algebraic symbols. To forsake real names is to put the judicial process at one more remove from the flesh and blood of life.

In pointing out the virtues of transparency, I do not intend to downplay the privacy interests of those who have experienced sexual assault. There are few crimes so violative of human autonomy and dignity as rape. And insult compounds this injury as victims of this heinous crime are often stigmatized through no fault of their own. District courts must retain discretion to protect the privacy of those who have suffered such an offense. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

But pseudonymity generally, and one-sided pseudonymity particularly, is not without its risks. Indeed, those accused of crimes can suffer reputational damage even when

16

a court later finds that the accusations were unfounded. *See* Brief of Amicus Curiae, Eugene Volokh, at 4–5. Allowing one party to proceed anonymously increases the potential for abusive suits that use the threat of reputational damage to exact revenge or to extract settlements from innocent parties. *Id.* at 8–9. Having one party incognito but not the other can tilt the scales of justice in the direction of guilt by anonymous accusation, a prospect which would be just as abhorrent to civil litigation as it is to our criminal justice system. *Rapp v. Fowler*, 537 F. Supp. 3d 521, 531–32 (S.D.N.Y. 2021); *see also* Volokh, *supra* at 8–15.

In the criminal context, a third party, the government, must conclude there is enough grounding to an accusation to warrant prosecution. In the civil context, this third-party filter is generally absent. Pseudonymity may enhance the incentives for well-founded complaints to be filed, but it may also serve as a cover for actions that tarnish the innocent. Just as district courts must have the discretion to protect victims' need for privacy, they must also retain the discretion to prevent pseudonymous abuse.

I concur in the majority opinion because it eschews a categorical approach to case-sensitive questions which cannot be answered categorically. *See James*, 6 F.3d at 239–40. The majority is also right to emphasize the importance of the default judgment here. Simply put, the defendant is a rapist in the eyes of the law. While a trial as to damages might reveal further details to the defendant's detriment, the defendant has impaired his claim to reputational damage by defaulting on liability. These limiting features in the majority's fine opinion persuade me that it has not locked the names of litigants behind closed doors to the disservice of that transparency that alone earns us public confidence and trust.

17